# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILTON LINHARES, Individually and On Behalf of All Others Similarly Situated, | No. 1:23-CV-02246-KMW-SAK |
| | Hon. Karen M. Williams, U.S.D.J. |
| Plaintiff, | MOTION DATE: June 5, 2023 |
| v. | |
| CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, THOMAS GOTTSTEIN, ULRICH KORNER, DAVID R. MATHERS, and DIXIT JOSHI | |
| Defendants. | |
| BRADEN TURNER, Individually and On Behalf of All Others Similarly Situated, | No. 1:23-cv-01476-KMW-SAK |
| | Hon. Karen M. Williams, U.S.D.J. |
| Plaintiff, | MOTION DATE: June 5, 2023 |
| v. | |
| CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, ULRICH KORNER, DIXIT JOSHI, THOMAS GOTTSTEIN, and DAVID R. MATHERS | |
| Defendants. | |

*(Additional Case Caption Continued on Following Page)*

| | |
|---|---|
| PATRICK CALHOUN, Individually and On Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, ULRICH KORNER, and DIXIT JOSHI<br><br>             Defendants. | No. 1:23-cv-01297-KMW-SAK<br><br>Hon. Karen M. Williams, U.S.D.J.<br><br>MOTION DATE: June 5, 2023 |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ALI DIABAT FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF HIS SELECTION OF COUNSEL</u>

**KAHN SWICK & FOTI, LLC**

Kim E. Miller (*PHV* forthcoming)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Email: kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Email: lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*Ali Diabat and Proposed Lead Counsel*
*for the Class*

**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**

Vincent M. Giblin
Richard F.X. Regan
61 South Paramus Road, Suite 250
Paramus, NJ 07652
Telephone: (201) 347-2136
Telephone: (201) 907-5276
Email: vgiblin@decotiislaw.com
Email: rregan@decotiislaw.com

*Local Counsel for Lead Plaintiff*
*Movant Ali Diabat and Proposed*
*Liaison Counsel for the Class*

## TABLE OF CONTENTS

**Page:**

I.      PRELIMINARY STATEMENT ................................................................1

II.    PROCEDURAL BACKGROUND ........................................................3

III.   FACTUAL BACKGROUND ...............................................................5

IV.   ARGUMENT.......................................................................................11

    A.   The Court Should Consolidate the Related Actions................................11

    B.   Mr. Diabat is the Presumptive "Most Adequate Plaintiff" and the Court Should Appoint Him Lead Plaintiff .................................13

        1.   Mr. Diabat Filed a Timely and Procedurally Complete Motion for Lead Plaintiff ........................................................14

        2.   Mr. Diabat Has the Largest Known Financial Interest in the Relief Sought..............................................................15

        3.   Mr. Diabat "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23 ...................................................16

    C.   Mr. Diabat's Claims Are Typical of the Claims of All the Class Members ...................................................................16

    D.   Mr. Diabat Will Adequately Represent the Class ...................................17

    E.   THE COURT SHOULD APPROVE MR. DIABAT'S CHOICE OF COUNSEL........................................................................19

V.    CONCLUSION .................................................................................20

# TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Baby Neal for and by Kanter v. Casey,*
43 F.3d 48 (3d Cir. 1994) ...................................................................................17

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ..............................................................................19

*In re Doral Fin. Corp. Sec. Litig.,*
414 F. Supp. 2d 398 (S.D.N.Y. 2006) ..................................................................6

*In re Party City Sec. Litig.,*
189 F.R.D. 91 (D.N.J. 1999)......................................................................... 14, 17

*Patel v. Coinbase Glob., Inc.,*
No. 22-cv-4915, 2022 U.S. Dist. LEXIS 223170 (D.N.J. Dec. 12, 2022) ...........12

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.,*
No. 11-cv-6247, 2012 U.S. Dist. LEXIS 118692 (D.N.J. June 13, 2012) ...........11

*Stires v. Eco Sci. Sols., Inc.,*
No. 17-cv-3707, 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb. 13, 2018)......... 6, 12

*Takata v. Riot Blockchain, Inc.,*
No. 18-cv-2293, 2018 U.S. Dist. LEXIS 189585 (D.N.J. Nov. 6, 2018).............13

**Statutes**

15 U.S.C. § 78u-4(a)(1) ......................................................................................13

15 U.S.C. § 78u-4(a)(2)(A)..................................................................................15

15 U.S.C. § 78u-4(a)(3)(A)........................................................................ 3, 13, 15

15 U.S.C. §78u-4(a)(3)(B) ........................................................................... passim

**Other Authorities**

Wright & Miller, *Consolidation—Discretion of Court,*
9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.).......................................................11

**Rules**

Fed. R. Civ. P. 23(a)(3)........................................................................................16

Fed. R. Civ. P. 23(a)(4)........................................................................................17

Fed. R. Civ. P. 42 ......................................................................................... 11, 12

Fed. R. Civ. P. 6 ..................................................................................................15

Ali Diabat ("Mr. Diabat" or the "Movant") respectfully submits this Memorandum of Law in support of his motion to: (1) consolidate the Related Actions against Credit Suisse Group AG ("Credit Suisse" or the "Company") and other related Defendants; (2) appoint Movant as Lead Plaintiff in the Consolidated Action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act ("PLSRA"); (3) approve Movant's selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel and DeCotiis, FitzPatrick, Cole & Giblin, LLP ("DeCotiis FitzPatrick") as Liaison Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

## I.    PRELIMINARY STATEMENT

The PSLRA provides that a court must appoint as lead plaintiff of a securities class action the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(i). Mr. Diabat is the most adequate plaintiff in this matter because he timely moved to be lead plaintiff, has the largest financial interest in the litigation, and otherwise satisfies the representative requirements set forth in Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). For the reasons summarized herein and discussed more fully below, Mr. Diabat's Motion should be approved in its entirety.

Mr. Diabat fully understands his duties and responsibilities to the Class and is willing and able to oversee the vigorous prosecution of this action. As described in

the Certification and Loss Chart attached to the Declaration of Vincent M. Giblin in Support of Mr. Diabat's Motion to Consolidate Related Actions, Be Appointed Lead Plaintiff, and to Approve Proposed Lead Plaintiff's Selection of Counsel ("Giblin Decl.") at Exhibit A (Diabat PSLRA Certification) and Exhibit B (Diabat Loss Chart), Mr. Diabat has suffered substantial losses as a result of his purchases of Credit Suisse securities between February 18, 2021 and March 20, 2023, inclusive (the "*Linhares* Class Period").[1] *See* Giblin Decl. at Ex. A, Ex. B. To the best of his knowledge, Mr. Diabat has sustained the largest losses of any investor(s) seeking to be appointed Lead Plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, Mr. Diabat's Declaration, submitted herewith, demonstrates his intent to serve as Lead Plaintiff in this matter, including his cognizance of the duties of serving in that role. *See* Giblin Decl. at Exhibit F (Diabat Declaration). Moreover, Mr. Diabat satisfies both the applicable requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 23 of the Federal Rules of Civil Procedure.

Accordingly, Mr. Diabat respectfully submits this memorandum of law in support of his motion, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), for an Order: (1) consolidating the Related Actions; (2) appointing Movant as Lead Plaintiff in the

---

[1] *See infra* at § III., n.3.

Consolidated Action; and (3) approving his selection of KSF as Lead Counsel and DeCotiis FitzPatrick as Liaison Counsel for the Class.

## II.    PROCEDURAL BACKGROUND

The first lawsuit against Credit Suisse and related Defendants, *Patrick Calhoun, et al. v. Credit Suisse Group AG, et al.*, No. 1:23-cv-01297 (the "*Calhoun* Action"), was filed in the District of New Jersey on March 8, 2023. Pursuant to 15 U.S.C § 78u-4(a)(3)(A)(i), on the same day, the first notice that a class action had been initiated against Defendants was published over *PR Newswire*, a widely circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than May 8, 2023. *See* Giblin Decl. at Exhibit C (Statutory Notice). Thereafter, on March 16, 2023, the second lawsuit against Credit Suisse and related Defendants, *Braden Turner, et al., v. Credit Suisse Group AG, et al.*, No. 1:23-cv-01476 (the "*Turner* Action"), alleging similar conduct and claims as the *Calhoun* Action, was filed this District. Whereas the *Calhoun* Action alleged violations of the Securities Exchange Act on behalf of purchasers and acquirors of Credit Suisse securities between December 1, 2022 and February 17, 2023, inclusive (the "*Calhoun* Class Period"), the *Turner* Action alleged violations of the Securities Exchange Act on behalf of purchasers and acquirors of Credit Suisse American Depository Shares ("ADSs") between March 10, 2022 and March 15, 2023, inclusive (the "Initial

*Turner* Class Period"). Further, while both the *Calhoun* Action and the *Turner* Action named Credit Suisse, Axel P. Lehmann ("Lehmann," Chairman of Credit Suisse's Board of Directors), Ulrich Korner ("Korner," Credit Suisse's Chief Executive Officer ("CEO")), and Dixit Joshi ("Joshi," Credit Suisse's Chief Financial Officer "CFO")), the *Turner* Action also named Thomas Gottstein ("Gottstein," Credit Suisse's CEO from February 2020 to July 2022) and David R. Mathers ("Mathers," Credit Suisse's CFO from October 2010 to April 2022). That same day, Plaintiff Turner published notice of the expanded class action over *PR Newswire* advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than May 8, 2023. *See* Giblin Decl. at Exhibit D (Turner Notice). Just four days later, Plaintiff Turner filed an Amended Complaint further expanding the Initial *Turner* Class Period to include purchasers and acquirors of Credit Suisse ADSs between March 10, 2022 and March 20, 2023, inclusive (the "Amended *Turner* Class Period").

Finally, on April 21, 2023, the third lawsuit against Credit Suisse and related Defendants, *Milton Linhares, et al., v. Credit Suisse Group AG, et al.*, No. 1:23-cv-02246 (the "*Linhares* Action"), alleging similar conduct and claims as the *Calhoun* Action and the *Turner* Action, was filed in this District. While the *Linhares* Action named the same Defendants as the *Turner* Action, it further expanded the class period to assert Securities Exchange Act claims on behalf of purchasers and

4

acquirors of Credit Suisse securities, "including the Company's AT1 Bonds, in a domestic transaction in the U.S.," between February 18, 2021 and March 20, 2023, inclusive (the "*Linhares* Class Period"). *Linhares* Complaint, ECF No. 1, at ¶ 1. That same day, Plaintiff Linhares published notice of the expanded class action over *GlobeNewswire*, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than May 8, 2023. *See* Giblin Decl. at Exhibit E (Linhares Notice).

Mr. Diabat is a Class Member who has timely filed this motion within the 60-day period following publication of the March 8, 2023 Notice. *See* Giblin Decl. at Ex. C.

## III.    FACTUAL BACKGROUND[2]

Credit Suisse, together with its subsidiaries, provides various financial services in Switzerland, Europe, the Middle East, Africa, the Americas, and Asia Pacific. ¶ 2. Credit Suisse is a Swiss corporation with principal executive offices located in Zurich, Switzerland. Credit Suisse's ADSs trade on the NYSE under the ticker symbol "CS." ¶ 27.

---

[2] These facts were derived from the Complaint filed in the *Linhares* Action. All "¶ __" references herein are to the *Linhares* Complaint.

On February 18, 2021, the first day of the *Linhares* Class Period,[3] Credit Suisse issued a press release announcing the Company's financial and operating results for the fourth quarter and fiscal year of 2020 (the "FY20 Earnings Release"). ¶ 37. In the FY20 Earnings Release Defendant Gottstein stated, in relevant part, that "[d]espite a challenging environment for societies and economies in 2020, we saw a strong underlying performance across Wealth Management and Investment Banking, while addressing historic issues," and that "[l]ooking forward into 2021 and beyond, we aim to further accelerate growth in Wealth Management and deliver sustainable returns in Investment Banking." *Id.*

Then, on April 22, 2021, Credit Suisse issued press release announcing the Company's financial and operating results for the first quarter of 2021 (the "1Q21 Earnings Release"). In the 1Q21 Earnings Release Defendant Gottstein stated, in relevant part, that Credit Suisse's "results for the first quarter of 2021 have been significantly impacted by a CHF 4.4 bn charge related to a US-based hedge fund." ¶ 38. Defendant Gottstein went on to state that:

---

[3] When confronted with alternative proposed class periods within the context of motions for appointment of lead plaintiff(s), courts in this District (and others) generally apply the longer class period. *See, e.g., Stires v. Eco Sci. Sols., Inc.*, No. 17-cv-3707, 2018 U.S. Dist. LEXIS 25088, at *3 n.2 (D.N.J. Feb. 13, 2018) (reasoning that the "longer period "encompasses more potential class members" and covers more of the time in which Defendants' alleged improper behavior was underway") (quoting *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006)).

6

> Together with the Board of Directors, we have taken significant steps to address this situation….***Among other decisive actions, we have made changes in our senior business and control functions; we have enhanced our risk review across the bank***; we have launched independent investigations into these matters by external advisors, supervised by a special committee of the Board; and we have taken several capital-related actions We will work to ensure Credit Suisse emerges stronger.

*Id.* (emphasis added).

Defendants continued to make similar statements throughout the *Linhares* Class Period regarding the Company's losses associated with the collapse of that US-based hedge fund—Archegos Capital Management—and resultant changes to its internal controls and risk management procedures.

On March 10, 2022, the Company filed its annual report on Form 20-F with the SEC, reporting financial and operating results for the fiscal year ended December 31, 2021 (the "2021 20-F"). ¶ 41. The 2021 20-F stated, in relevant part, that the Company's "***disclosure controls and procedures were effective, in all respects, to ensure that information required to be disclosed in reports filed and submitted under the Exchange Act is recorded, processed, summarized and reported as and when required.***" *Id.* (emphasis in original). The 2021 20-F further stated that, "[b]ased upon its review and evaluation, management, including the Group CEO and CFO, ***has concluded that the Group's internal control over financial reporting is effective as of December 31, 2021***." *Id.* (emphasis in original).

7

After sustaining losses throughout 2022, on December 1, 2022, Credit Suisse's Chairman, Defendant Lehmann, stated in an online interview with the *Financial Times* that customer outflows had not only "completely flattened out," but had, in fact, "partially reversed." ¶ 45. That same day the *Financial Times* published an article entitled "Credit Suisse chair says outflows have reversed since 'social media storm.'" ¶ 46. The following day, on December 2, 2022, in an interview with Bloomberg Television, Defendant Lehmann reiterated his statements and reassured investors that as of November 11, 2022, customer outflows had "basically stopped." ¶ 47. Following Defendant Lehmann's statements, Credit Suisse's ADS price climbed $0.29 per ADS, or 9.36%, to close at $3.38 per ADS on December 2, 2022. ¶ 48.

These and other alleged statements were materially false and/or misleading because Defendants failed to disclose material adverse facts regarding the Company's business, operations, prospects, and compliance policies, and specifically that: (i) contrary to Defendant Lehmann's representations in December 2022, the sharp increase in customer outflows Credit Suisse began experiencing in October 2022 remained ongoing; (ii) accordingly, Credit Suisse had downplayed the impact of the Company's recent series of quarterly losses and risk and compliance failures on liquidity and its ability to retain client funds; (iii) in addition, the Company maintained deficient internal disclosure controls and procedures; (iv) as a

8

result, Credit Suisse had overstated the Company's financial position and/or prospects; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times. ¶ 51.

The truth began to be revealed when, on February 9, 2023, Credit Suisse issued a press release announcing its financial results for 2022 which revealed large customer outflows far exceeding market expectations through year-end 2022. ¶ 52. On this news, Credit Suisse's ADS price fell $0.56 per ADS, or 15.64%, to close at $3.02 per ADS on February 9, 2023. ¶ 53. Then, on February 21, 2023, *Reuters* published an article entitled "Exclusive: Credit Suisse chairman's comments draw scrutiny from financial watchdog -sources." ¶ 54. The article stated, in relevant part, that the Swiss financial regulator, FINMA, was "seeking to establish the extent to which Lehmann, and other Credit Suisse representatives, were aware that clients were still withdrawing funds when he said in media interviews that outflows had stopped…." *Id.* On this news, Credit Suisse's ADS price fell another $0.10 per ADS, or 3.31%, to close at $2.92 per ADS on February 21, 2023. ¶ 55.

Then, on March 9, 2023, the Company issued an *ad hoc* announcement on a Form 6-K stating that it would delay publication of its annual report for 2022 after a call with the SEC on March 8, 2023 regarding the Company's cash flow statements in the years ended December 31, 2020, and 2019, as well as related controls. ¶ 56. On this news, Credit Suisse's ADS price fell another $0.13 per ADS, or 4.48%, to

close at $2.77 per ADS on March 9. 2023. ¶ 57. Then, on March 14, 2023, the Company filed its annual report for 2022 on Form 20-F with the SEC (the "2022 20-F"). ¶ 58. The 2022 20-F stated, in relevant part, that the Company had "**identified material weakness in our internal control over financial reporting as of December 31, 2022 and 2020**…." *Id.* (emphasis in original). The 2022 20-F went on to state that "*[t]he material weaknesses that have been identified relate to the failure to design and maintain an effective risk assessment process to identify and analyze the risk of material misstatements in its financial statements*…." *Id.* (emphasis in original). On this news, Credit Suisse's ADS price fell another $0.03 per ADS, or 1.18%, to close at $2.51 per ADS on March 14, 2023. ¶ 59.

Then on March 15, 2023, *Reuters* published an article entitled "Credit Suisse's biggest backer says can't put up more cash; share down by a fifth," reporting that SNB would not buy any more of the Company's shares on regulatory grounds. ¶ 60. On this news, Credit Suisse's ADS price fell another $0.35 per ADS, or 13.94%, to close at $2.16 per ADS on March 15, 2023. ¶ 61. Finally, on March 20, 2023, before market hours, the Company issued an *ad hoc* announcement on a Form 6-K announcing its merger agreement with UBS. ¶ 62. The announcement stated, in relevant part, that "Credit Suisse and UBS have entered into a merger agreement on Sunday," and that "UBS will be the surviving entity upon closing of the merger transaction." *Id.* On this news, Credit Suisse's ADS price fell another $1.07 per

ADS, or 52.99%, to close at $0.94 per ADS on March 20, 2023. ¶ 63. As a result of

Defendants' wrongful acts and omissions, and the precipitous decline in the market

value of the Company's securities, Mr. Diabat and other Class Members suffered

significant losses and damages.

## IV.   ARGUMENT

### A.    The Court Should Consolidate the Related Actions

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class

asserting substantially the same claim or claims arising under this title has been

filed," courts shall not appoint a lead plaintiff until "after the decision on the motion

to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a),

moreover, "the district court has broad discretion to consolidate actions…."

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, No. 11-

cv-6247, 2012 U.S. Dist. LEXIS 118692, at *5 (D.N.J. June 13, 2012) (Williams,

J.); *see also* Wright & Miller, *Consolidation—Discretion of Court*, 9A FED. PRAC.

& PROC. CIV. § 2383 (3d ed.) ("[D]istrict court is given broad discretion to decide

whether consolidation under Rule 42(a) would be desirable and the district judge's

decision inevitably is highly contextual.").

Courts have recognized that securities class actions are ideally suited for

consolidation pursuant to Fed. R. Civ. P. 42(a) because their unification expedites

pretrial proceedings, reduces case duplication, avoids contacting of the parties and

witnesses for inquiries in multiple proceedings, and minimizes the expenditure of

11

time and money by all persons concerned. *See Patel v. Coinbase Glob., Inc.*, No. 22-cv-4915, 2022 U.S. Dist. LEXIS 223170, at *5 (D.N.J. Dec. 12, 2022). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Id.* Further, even when one of the actions names an "additional individual defendant…and asserts a putative class period that is [] longer than the class period" alleged in the other action(s), "common questions of law and fact predominate over these minor discrepancies…." *Id.* at *5-6; *see also Stires*, 2018 U.S. Dist. LEXIS 25088, at *7-8 ("Despite minor differences, the complaints center on the same set of operative facts during substantially the same time period. Accordingly, the Court finds that the interests of judicial economy and the administration of justice will be best served by consolidation….")

The *Calhoun*, *Turner*, and *Linhares* Actions, all pending before the United States District Court for the District of New Jersey, make substantially similar allegations on behalf of Credit Suisse investors. In light of these legal principles and the numerous commonalities shared by the actions, consolidation is appropriate under Rule 42(a).

12

### B.    Mr. Diabat is the Presumptive "Most Adequate Plaintiff" and the Court Should Appoint Him Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B). It provides that, within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business- oriented publication or wire service informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i); *see generally Takata v. Riot Blockchain, Inc.*, No. 18-cv-2293, 2018 U.S. Dist. LEXIS 189585, at \*6-7 (D.N.J. Nov. 6, 2018).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court must then consider any motion made by class members and appoint as lead plaintiff that movant the Court determines to be most capable of adequately representing the interests of class members. *See generally.* Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

(aa)    has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

13

Mr. Diabat respectfully submits that he should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a lead plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 1.    Mr. Diabat Filed a Timely and Procedurally Complete Motion for Lead Plaintiff

Under the PSLRA, the first plaintiff to file an action must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service and members of the putative class have 60 days from the date of publication to move the court to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)-(B). Here, notice was published on *PR Newswire* on March 8, 2023, and specified that applications for appointment as Lead Plaintiff were to be made no later than May 8, 2023. *See* Giblin Decl. at Ex. C. Publication by a national firm like *PR Newswire* is an adequate means of meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. *See, e.g.*, *In re Party City Sec. Litig.*, 189 F.R.D. 91, 105 & n.10 (D.N.J. 1999) (concluding that publication of notice via *PR*

14

*Newswire* satisfied the PSLRA's notice requirement). Thus, the notice satisfied the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

In light of the fact that the original notice was published on March 8, 2023, the appropriate deadline for application to be lead plaintiff is May 8, 2023. *See* Giblin Decl. at Ex. C; Fed. R. Civ. P. 6. Mr. Diabat has therefore timely filed his motion. Moreover, with that motion, Mr. Diabat has signed and submitted the required Certification in which he certifies his trading history during the *Linhares* Class Period and confirms his willingness and ability to serve as Lead Plaintiff, thereby satisfying the certification requirement set forth in 15 U.S.C. § 78u-4(a)(2)(A). *See* Giblin Decl. at Ex. A. Additionally, Mr. Diabat has executed a Declaration detailing, *inter alia*, his biographical information and professional credentials. *See* Giblin Decl. at Ex. F. Accordingly, Mr. Diabat has filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the statutory requirements.

### 2.    Mr. Diabat Has the Largest Known Financial Interest in the Relief Sought

During the *Linhares* Class Period, as evidenced by the accompanying signed Certification, Mr. Diabat purchased Credit Suisse ADSs in reliance upon Defendants' materially false and misleading statements and omissions and was injured thereby. *See* Giblin Decl. at Ex. A. In addition, Mr. Diabat incurred a substantial loss on his transactions in Credit Suisse ADSs. *See* Giblin Decl. at Ex. B.

To the best of his knowledge, Mr. Diabat thus has the largest financial interest in the relief sought. Therefore, Mr. Diabat satisfies all the PSLRA's prerequisites for appointment as lead plaintiff and should be appointed Lead Plaintiff pursuant to 15 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Mr. Diabat "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As outlined above, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate. That *prima facie* determination should be based on the information the movant has provided in his pleadings and declarations only, and rebuttal evidence introduced by competing movants should specifically not be considered during this second step analysis. Here, Mr. Diabat easily satisfies these minimal, *prima facie* requirements.

### C. Mr. Diabat's Claims Are Typical of the Claims of All the Class Members

Under Federal Rule of Civil Procedure 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See,*

16

*e.g.*, *In re Party City*, 189 F.R.D. at 107 (citing *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See, e.g.*, *In re Celgene Corp. Sec. Litig.*, No. 18-cv-4772, 2020 U.S. Dist. LEXIS 230548, at *13 (D.N.J. Nov. 25, 2020); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).

In this case, the typicality requirement is met because Mr. Diabat's claims are identical, non-competing, and non-conflicting with the claims of the other class members. Mr. Diabat and all the other Class Members: (1) purchased Credit Suisse securities during the *Linhares* Class Period; (2) purchased Credit Suisse securities in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages by purchasing artificially inflated securities and then suffered harm when the truth was revealed and the inflation was removed from the unit price. Mr. Diabat's claims are typical of those of other Class Members since his claims and the claims of other Class Members resulted from the same illegal practices.

**D.    Mr. Diabat Will Adequately Represent the Class**

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of movants to the existence of any conflicts

17

between the interests of the movants, on the one hand, and the members of the Class, on the other hand. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiff and the other class members; and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, Mr. Diabat is an adequate representative of the Class. As evidenced by the injuries suffered by Mr. Diabat, who purchased Credit Suisse securities during the *Linhares* Class Period at prices that were artificially inflated by Defendants' materially false and misleading statements and was harmed when the truth was revealed and the artificial inflation was removed from the price of those securities, his interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between Mr. Diabat's interests and those of the other members of the Class. Furthermore, Mr. Diabat has retained competent and experienced counsel to prosecute these claims. Mr. Diabat's proposed Lead Counsel and Liaison Counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, Mr. Diabat *prima facie* satisfies the commonality, typicality, and adequacy requirements of Rule 23 for the purposes of this motion.

### E.    THE COURT SHOULD APPROVE MR. DIABAT'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), proposed lead plaintiffs shall, subject to court approval, select and retain counsel to represent the class they seek to represent. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless "necessary to protect the interests of the plaintiff class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001)

Here, Mr. Diabat has selected KSF to be Lead Counsel and DeCotiis FitzPatrick to be Liaison Counsel for the Class. As reflected in its firm resumé, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class. *See* Giblin Decl. at Exhibit G (KSF Firm Resumé). With lawyers in Louisiana, New York, Illinois, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *Id.*

KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions. *See* Giblin Decl. at Ex. G, citing *Pearlstein v. BlackBerry Limited, et al.*, No. 13-cv-7060 (S.D.N.Y.) (final approval of $165 million settlement – the fourth largest securities class action

settlement of 2022 – granted after 9 years of litigation on September 29, 2022); *In re Chicago Bridge & Iron Co. N.V. Secs. Litig.*, No. 17-cv-1580 (S.D.N.Y) (final approval of $44 million settlement granted on August 2, 2022); *Farrar v. Workhorse Group, et al.*, 21-cv-02072 (C.D. Cal.) (preliminary approval of $35 million settlement granted on February 14, 2023). KSF also served as special counsel and court-appointed Co-Counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 02-cv-1152 (N.D. Tex.), a case that resulted in a $100 million settlement after two trips to the Supreme Court on class certification issues. As these cases demonstrate, KSF possesses the requisite experience and knowledge litigating complex securities cases.

In addition, DeCotiis FitzPatrick maintains an office in this District and has recent experience serving as Liaison Counsel, with KSF as Lead Counsel, in another securities class action, *Kanefsky, et al. v. Honeywell Int'l. Inc., et al.*, No. 2:18-cv-15536 (D. N.J.) ($10 million recovery). *See generally* Giblin Decl. at Exhibit H (DeCotiis FitzPatrick Resumé).

Thus, the Court may be assured that, in granting this motion, the Class will continue to receive legal representation of the highest caliber.

## V.    CONCLUSION

For all of the foregoing reasons, Ali Diabat respectfully requests that this Court: (1) consolidate the Related Actions; (2) appoint Mr. Diabat to serve as Lead

20

Plaintiff in the Consolidated Action; (3) approve Mr. Diabat's selection of KSF as Lead Counsel and DeCotiis FitzPatrick as Liaison Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: May 8, 2023                    Respectfully submitted,


                                      DECOTIIS, FITZPATRICK, COLE
                                      & GIBLIN, LLP

                                      /s/ Vincent M. Giblin
                                      Vincent M. Giblin
                                      Richard F.X. Regan
                                      61 South Paramus Road, Suite 250
                                      Paramus, NJ 07652
                                      Telephone: (201) 347-2136
                                      Telephone: (201) 907-5276
                                      Fax: (201) 928-0588
                                      Email: vgiblin@decotiislaw.com
                                      Email: rregan@decotiislaw.com

                                      *Local Counsel for Lead Plaintiff Movant
                                      Ali Diabat and Proposed Liaison Counsel
                                      for the Class*


                                      KAHN SWICK & FOTI, LLC

                                      Kim E. Miller (*PHV* forthcoming)
                                      250 Park Avenue, 7th Floor
                                      New York, NY 10177
                                      Telephone: (212) 696-3732
                                      Fax: (504) 455-1498
                                      Email: kim.miller@ksfcounsel.com

                                       -and-

                                      Lewis S. Kahn
                                      1100 Poydras Street, Suite 960
                                      New Orleans, LA 70163

21

Telephone: (504) 455-1400
Fax: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*Ali Diabat and Proposed Lead Counsel*
*for the Class*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 8, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the e-mail addresses on the Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to non-CM/ECF participants.

*/s/ Vincent M. Giblin*
Vincent M. Giblin

22