# EXHIBIT D

**IMPORTANT NOTICE**

**NOT FOR DISTRIBUTION TO ANY U.S. PERSON OR TO ANY PERSON OR ADDRESS IN THE UNITED STATES EXCEPT FOR QUALIFIED INSTITUTIONAL BUYERS.**

**IMPORTANT:** You must read the following before continuing. The following disclaimer applies to the Information Memorandum following this page (the "**Information Memorandum**"), and you are therefore advised to read this carefully before reading, accessing or making any other use of the Information Memorandum. In accessing the Information Memorandum, you agree to be bound by the following terms and conditions, including any modifications to them any time you receive any information from us as a result of such access. You acknowledge that you will not forward this electronic transmission or the Information Memorandum to any other person.

THE INFORMATION MEMORANDUM AND ITS CONTENTS ARE CONFIDENTIAL AND MAY NOT BE FORWARDED OR DISTRIBUTED TO ANY OTHER PERSON AND MAY NOT BE REPRODUCED IN ANY MANNER WHATSOEVER. ANY FORWARDING, DISTRIBUTION OR REPRODUCTION OF THE INFORMATION MEMORANDUM IN WHOLE OR IN PART IS PROHIBITED. FAILURE TO COMPLY WITH THIS DIRECTIVE MAY RESULT IN A VIOLATION OF THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE APPLICABLE LAWS OF OTHER JURISDICTIONS. IF YOU HAVE GAINED ACCESS TO THE INFORMATION MEMORANDUM CONTRARY TO ANY OF THE FOREGOING RESTRICTIONS, YOU ARE NOT AUTHORISED AND WILL NOT BE ABLE TO PURCHASE ANY OF THE NOTES DESCRIBED THEREIN (THE "NOTES").

EXCEPT AS DESCRIBED BELOW, NOTHING IN THIS ELECTRONIC TRANSMISSION CONSTITUTES AN OFFER OF NOTES FOR SALE IN THE UNITED STATES OR ANY JURISDICTION WHERE IT IS UNLAWFUL TO DO SO. THE NOTES HAVE NOT BEEN, AND WILL NOT BE, REGISTERED UNDER THE SECURITIES ACT OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OF THE UNITED STATES OR OTHER JURISDICTION, AND THE NOTES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS (WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT), EXCEPT PURSUANT TO AN EXEMPTION FROM, OR A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND APPLICABLE STATE OR LOCAL SECURITIES LAWS.

THE NOTES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (1) IN ACCORDANCE WITH RULE 144A UNDER THE SECURITIES ACT TO A PERSON THAT THE HOLDER AND ANY PERSON ACTING ON ITS BEHALF REASONABLY BELIEVE IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT (A "QIB") THAT IS ACQUIRING THE NOTES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ONE OR MORE QIBS, (2) IN AN OFFSHORE TRANSACTION TO A NON-U.S. PERSON IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT, (3) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER RULE 144 UNDER THE SECURITIES ACT, IF AVAILABLE, OR (4) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES.

**PRIIPS/PROHIBITION OF SALES TO EEA AND UK RETAIL INVESTORS** — THE NOTES ARE NOT INTENDED TO BE OFFERED, SOLD OR OTHERWISE MADE AVAILABLE TO, AND SHOULD NOT BE OFFERED, SOLD OR OTHERWISE MADE AVAILABLE TO ANY RETAIL INVESTOR IN THE EUROPEAN ECONOMIC AREA OR IN THE UNITED KINGDOM. FOR THESE PURPOSES, "RETAIL INVESTOR" MEANS A PERSON WHO IS ONE (OR MORE) OF: (I) A RETAIL CLIENT AS DEFINED IN POINT (11) OF ARTICLE 4(1) OF DIRECTIVE 2014/65/EU (AS AMENDED, "MIFID II"); OR (II) A CUSTOMER WITHIN THE MEANING OF DIRECTIVE (EU) 2016/97, WHERE THAT CUSTOMER WOULD NOT QUALIFY AS A PROFESSIONAL CLIENT AS DEFINED IN POINT (10) OF ARTICLE 4(1) OF MIFID II. CONSEQUENTLY, NO KEY

INFORMATION DOCUMENT REQUIRED BY REGULATION (EU) NO. 1286/2014 (AS AMENDED, "**PRIIPS**") FOR OFFERING OR SELLING THE NOTES OR OTHERWISE MAKING THEM AVAILABLE TO ANY RETAIL INVESTOR IN THE EUROPEAN ECONOMIC AREA OR IN THE UNITED KINGDOM HAS BEEN PREPARED AND THEREFORE OFFERING OR SELLING THE NOTES OR OTHERWISE MAKING THEM AVAILABLE TO ANY RETAIL INVESTOR IN THE EUROPEAN ECONOMIC AREA OR IN THE UNITED KINGDOM MAY BE UNLAWFUL UNDER PRIIPS.

**Confirmation of your Representation:** You have been sent the Information Memorandum on the basis that you have confirmed to the managers in relation to the offering (or their affiliates) (together, the "**Managers**"), being the senders of the attached, that: (i) you have understood and agree to the terms set out herein, (ii) you are either (a) not a U.S. person (within the meaning of Regulation S under the Securities Act), and are not acting for the account or benefit of any U.S. person, and that you and the electronic mail address that you have given us and to which this electronic transmission has been delivered are not located in the United States, its territories and possessions, or (b) a person that is a QIB, (iii) you consent to delivery by electronic transmission, (iv) you will not transmit the Information Memorandum (or any copy of it or part thereof) or disclose, whether orally or in writing, any of its contents to any other person except with the consent of the relevant Manager, (v) you acknowledge that you will make your own assessment regarding any legal, taxation or other economic considerations with respect to your decision to subscribe for, or purchase any of, the Notes and (vi) if you are a person in the United Kingdom, then you are a person who (x) is an investment professional falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (as amended) (the "**Order**") or (y) is a high net worth entity or other persons to whom the Information Memorandum may lawfully be communicated, falling within Article 49(2)(a) to (d) of the Order (all such persons described in this clause (vi) together being referred to as "**Relevant Persons**").

In the United Kingdom, the Information Memorandum may only be communicated or caused to be communicated to persons in circumstances where Section 21(1) of the United Kingdom Financial Services and Markets Act 2000 (as amended, the "**FSMA**") does not apply and may only be distributed to Relevant Persons and must not be acted on or relied on by persons who are not Relevant Persons. Any investment or investment activity (within the meaning of Section 21 of the FSMA) to which the Information Memorandum relates is available only to Relevant Persons and will be engaged in only with Relevant Persons.

You are reminded that the Information Memorandum has been delivered to you on the basis that you are a person into whose possession the Information Memorandum may be lawfully delivered in accordance with the laws of the jurisdiction in which you are located and you may not, nor are you authorised to, deliver the Information Memorandum to any other person.

The Information Memorandum does not constitute, and may not be used in connection with, an offer or solicitation in any place where offers or solicitations are not permitted by law. If a jurisdiction requires that the offering be made by a licenced broker or dealer and a Manager, or any affiliate of such Manager, is a licenced broker or dealer in that jurisdiction, the offering shall be deemed to be made by such Manager or such affiliate on behalf of Credit Suisse Group AG in such jurisdiction.

The Information Memorandum has been sent to you in an electronic form. You are reminded that documents transmitted via this medium may be altered or changed during the process of electronic transmission and consequently neither Credit Suisse Group AG, nor the Managers nor any person who controls any of them nor any of their respective directors, officers, employees or agents nor any affiliate of any such person accepts any liability or responsibility whatsoever in respect of any difference between the Information Memorandum distributed to you in electronic format and the hard copy version available to you on request from the Managers.

> This Information Memorandum has been approved by SIX Exchange Regulation AG in its capacity as review body pursuant to article 52 of the Swiss Financial Services Act of 15 June 2018 on the date of the stamp appearing on this cover page.



# Credit Suisse Group AG

*(incorporated with limited liability in Switzerland)*

## U.S.$1,500,000,000 4.500 per cent. Perpetual Tier 1 Contingent Write-down Capital Notes

### Issue Price: 100.000 per cent.

The U.S.$1,500,000,000 4.500 per cent. Perpetual Tier 1 Contingent Write-down Capital Notes (the "**Notes**") will be issued by Credit Suisse Group AG (the "**Issuer**" or "**CSG**") on 9 December 2020 (the "**Issue Date**"). Interest on the Notes will accrue from (and including) the Issue Date to (but excluding) the First Reset Date (as defined in "*Part B—Pricing Schedule*" of the "*Terms and Conditions of the Notes* (the "**Conditions**")), at a fixed rate of 4.500 per cent. per annum, and from (and including) the First Reset Date, at the applicable Reset Rate (as defined in Condition 6(a) (*Interest—Rate of Interest*)), each payable, subject as provided herein, semi-annually in arrear. Payments on the Notes will be made without deduction for or on account of taxes of Switzerland to the extent described herein in Condition 10 (*Taxation*). **Payments of interest will be made at the sole discretion of the Issuer and may be subject to mandatory cancellation, as more particularly described in Condition 6(f) (*Interest—Cancellation of Interest; Prohibited Interest*). Any interest not paid as foresaid will not accumulate.**

The Notes are perpetual securities and have no fixed or final redemption date. Unless previously redeemed or purchased and cancelled, and provided that no Write-down Event (as defined in the Conditions) has occurred, the Notes may, subject to the satisfaction of certain conditions described herein and applicable law, be redeemed at the option of the Issuer, at any time during the six-month period from (and including) 3 September in the year prior to each year in which a Reset Date (as defined in Condition 6(a) (*Interest—Rate of Interest*)) falls to (and including) such Reset Date, in whole but not in part, at 100 per cent. of their aggregate principal amount plus accrued but unpaid interest thereon. The Notes are also subject to redemption in whole, but not in part, at the option of the Issuer, upon the occurrence of a Tax Event or upon the occurrence of a Capital Event (each as defined in the Conditions), as more particularly described in Condition 8 (*Redemption, Substitution, Variation and Purchase*). The Notes will constitute direct, unsecured and subordinated obligations of the Issuer and shall rank at all times *pari passu* and without any preference among themselves, as more particularly described in Condition 3 (*Status of the Notes*) and Condition 4 (*Subordination of the Notes*).

**If a Write-down Event occurs, a Write-down (as defined in the Conditions) shall occur on the relevant Write- down Date (as defined in the Conditions), as more particularly described in Condition 7 (*Write-down*). In such circumstances, interest on the Notes shall cease to accrue, the full principal amount of each Note will automatically and permanently be written-down to zero, Holders (as defined in the Conditions) will lose their entire investment in the Notes and all rights of any Holder for payment of any accrued but unpaid interest or any other amounts under or in respect of the Notes will become null and void. See "*Risk Factors—The likelihood of an occurrence of a Write-down is material for the purpose of assessing an investment in the Notes. The Notes may be subject to a Write-down and upon the occurrence of such an event Holders will lose the entire amount of their investment in the Notes*". Each Holder and beneficial owner of a Note agrees, by accepting a direct or beneficial interest in such Note, to be bound by and consents to the application of the Write-down.**

The Notes are expected to be provisionally admitted to trading on the SIX Swiss Exchange from 9 December 2020. The last trading day is expected to be the second trading day prior to the date on which the Notes are fully redeemed in accordance with the Conditions or the Write-down Date, as applicable. Application will be made to SIX Exchange Regulation AG, in its capacity as listing authority for the SIX Swiss Exchange, for definitive admission to trading and listing of the Notes on the SIX Swiss Exchange.

For purposes of application for admission to trading of the Notes on the SIX Swiss Exchange, the Issuer relied on article 51(2) of the Swiss Financial Services Act of 15 June 2018 (the "**FinSA**"). Accordingly, this Information Memorandum was not reviewed or approved by a competent Swiss review body pursuant to article 52 of the FinSA as of its date, and was submitted to SIX Exchange Regulation AG in its capacity as Swiss review body pursuant to article 52 of the FinSA (in such capacity, the "**Swiss Review Body**") only after completion of the offering of the Notes. **This Information Memorandum is the prospectus pursuant to article 35 of the FinSA and article 43(1)(a) of the Swiss Financial Services Ordinance of 6 November 2019 (the "FinSO") only if the stamp with the date of the approval of the Swiss Review Body appears on this cover page. This Information Memorandum will not be updated for any developments that occur after its date. In particular, this Information Memorandum is not required to be updated as of the date of the approval by the Swiss Review Body.**

**PRIIPs/Prohibition of sales to EEA and UK retail investors** — The Notes are not intended to be offered, sold or otherwise made available to and should not be offered, sold or otherwise made available to any retail investor in the European Economic Area (the "EEA") or in the United Kingdom (the "UK"). For these purposes, a "retail investor" means a person who is one (or more) of: (i) a retail client as defined in point (11) of Article 4(1) of Directive 2014/65/EU (as amended, "MiFID II"); or (ii) a customer within the meaning of Directive (EU) 2016/97 (the "Insurance Distribution Directive"), where that customer would not qualify as a professional client as defined in point (10) of Article 4(1) of MiFID II. Consequently, no key information document required by Regulation (EU) No. 1286/2014 (as amended or superseded, "PRIIPs") for offering or selling the Notes or otherwise making them available in the EEA or in the UK has been prepared and therefore offering or selling the Notes or otherwise making them available to any retail investor in the EEA or in the UK may be unlawful under PRIIPs. Prospective investors are referred to the section headed "*Restrictions on marketing and sales to retail investors in the EEA and in the UK*" below for further information. This Information Memorandum is an advertisement and not a prospectus for the purposes of Regulation (EU) 2017/1129.

The Notes have not been, and will not be, registered under the U.S. Securities Act of 1933, as amended (the "**Securities Act**"). The Notes may not be offered or sold or delivered within the United States or to, or for the account or benefit of, U.S. persons (as defined in Regulation S under the Securities Act ("**Regulation S**")), except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act. The Notes are being offered and sold only in global form (A) in the United States to persons reasonably believed to be "qualified institutional buyers" (as defined in Rule 144A under the Securities Act ("**Rule 144A**")) in reliance on Rule 144A, and (B) in "offshore transactions" to non-U.S. persons (as defined in Regulation S) in reliance on Regulation S. Prospective purchasers are hereby notified that sellers of the Notes may be relying on the exemption from the provisions of section 5 of the Securities Act provided by Rule 144A or Regulation S. For a description of these and certain further restrictions on offers, sales and transfers of the Notes and distribution of this Information Memorandum, see "*Notice to Investors*", "*Plan of Distribution*" and "*ERISA Considerations*".

The Notes will be issued, and may only be held and transferred, in minimum denominations of U.S.$200,000 and integral multiples of U.S.$1,000 in excess thereof.

Delivery of the Notes in book-entry form will be made through The Depository Trust Company ("**DTC**"), on or about 9 December 2020. A purchaser may elect to hold interests in the Notes through either DTC (in the United States), or Clearstream Banking S.A. ("**Clearstream, Luxembourg**"), or Euroclear Bank SA/NV, or its successor, as operator of the Euroclear System ("**Euroclear**") (outside the United States), if a purchaser is a direct participant of such systems, or indirectly through organisations which are participants in such systems. Interests held through Clearstream, Luxembourg and Euroclear will be recorded on DTC's books as being held by the U.S. depositary for each of Clearstream, Luxembourg and Euroclear, which U.S. depositaries will in turn hold interests on behalf of their participants' customers' securities accounts.

The Notes are expected upon issue to be rated BB+ by Fitch Ratings Limited ("**Fitch**") and BB- by S&P Global Ratings Europe Limited ("**S&P**"). A rating is not a recommendation to buy, sell or hold securities and may be subject to suspension, modification or withdrawal at any time by the assigning rating agency.

An investment in Notes involves certain risks, including the risk that Holders will lose their entire investment in the Notes. For a discussion of certain of the risks that potential investors should carefully consider before deciding to invest in the Notes, see "*Risk Factors*".

*Sole Book-Running Manager*

# Credit Suisse

*Joint Lead Managers*

| **COMMERZBANK** | **IMI — Intesa Sanpaolo** | **Santander** |
| --- | --- | --- |

| **SOCIETE GENERALE** | **Standard Chartered Bank** |
| --- | --- |

*Senior Co-Managers*

| **BBVA** | **CaixaBank** | **Citizens Capital Markets** | **Mediobanca** |
| --- | --- | --- | --- |

| **Rabo Securities** | **Scotiabank** |
| --- | --- |

*Co-Managers*

| **Banco de Sabadell** | **Citigroup** | **Deutsche Bank Securities** | **HSBC** |
| --- | --- | --- | --- |

| **Morgan Stanley** | **Wells Fargo Securities** |
| --- | --- |

The date of this Information Memorandum is 2 December 2020.

in the EEA or in the UK. For these purposes, "retail investor" means a person who is one (or more) of: (i) a retail client as defined in point (11) of Article 4(1) of MiFID II; or (ii) a customer within the meaning of the Insurance Distribution Directive, where that customer would not qualify as a professional client as defined in point (10) of Article 4(1) of MiFID II. Consequently, no key information document required by PRIIPs for offering or selling the Notes or otherwise making them available in the EEA or in the UK has been prepared and therefore offering or selling the Notes or otherwise making them available to any retail investor in the EEA or in the UK may be unlawful under PRIIPs.

**MiFID II product governance**—A distributor subject to MiFID II is responsible for undertaking its own target market assessment in respect of the Notes and determining appropriate distribution channels.

## SINGAPORE SFA PRODUCT CLASSIFICATION

In connection with Section 309B of the Securities and Futures Act (Chapter 289) of Singapore (the "**SFA**") and the Securities and Futures (Capital Markets Products) Regulations 2018 of Singapore (the "**CMP Regulations 2018**"), the Issuer has determined, and hereby notifies all relevant persons (as defined in Section 309A(1) of the SFA), that the Notes are "prescribed capital markets products" (as defined in the CMP Regulations 2018) and Excluded Investment Products (as defined in MAS Notice SFA 04-N12: Notice on the Sale of Investment Products and MAS Notice FAA-N16: Notice on Recommendations on Investment Products).

## STABILISATION

In connection with the issue of the Notes, Credit Suisse Securities (USA) LLC (the "**Stabilising Manager**") (or any person acting on behalf of the Stabilising Manager) may over-allot the Notes or effect transactions with a view to supporting the market price of the Notes at a level higher than that which might otherwise prevail. However, there is no assurance that the Stabilising Manager (or any person acting on behalf of the Stabilising Manager) will undertake stabilisation action. Any stabilisation action may begin on or after the date on which adequate public disclosure of the terms of the offer of the Notes is made and, if begun, may be ended at any time, but it must end no later than the earlier of 30 days after the issue date of the Notes and 60 days after the date of the allotment of the Notes. Any stabilisation action or over-allotment must be conducted by the Stabilising Manager (or any person acting on behalf of the Stabilising Manager) in accordance with all applicable laws and rules.

**EACH PURCHASER OF THE NOTES MUST COMPLY WITH ALL APPLICABLE LAWS AND REGULATIONS IN FORCE IN ANY JURISDICTION IN WHICH IT PURCHASES, OFFERS OR SELLS THE NOTES OR POSSESSES OR DISTRIBUTES THIS INFORMATION MEMORANDUM AND MUST OBTAIN ANY CONSENT, APPROVAL, OR PERMISSION REQUIRED BY IT FOR THE PURCHASE, OFFER OR SALE BY IT OF THE NOTES UNDER THE LAWS AND REGULATIONS IN FORCE IN ANY JURISDICTION TO WHICH IT IS SUBJECT OR IN WHICH IT MAKES SUCH PURCHASES, OFFERS OR SALES, AND THE ISSUER AND THE MANAGERS SHALL NOT HAVE ANY RESPONSIBILITY THEREFOR.**

The Notes are being offered and sold outside the United States to non-U.S. persons in reliance on Regulation S and within the United States to persons reasonably believed to be QIBs in reliance on Rule 144A. The Notes have not been approved or disapproved by the U.S. Securities and Exchange Commission (the "**SEC**"), any state securities commission in the United States or any other U.S. regulatory authority, nor have any of the foregoing authorities passed upon or endorsed the merits of the offering of the Notes or the accuracy or the adequacy of this Information Memorandum. Any representation to the contrary is a criminal offence under the laws of the United States.

## AVAILABLE INFORMATION

For as long as any of the Notes remain outstanding and are "restricted securities" within the meaning of Rule 144(a)(3) under the Securities Act, the Issuer has agreed that it will, during any period in which it is neither subject to nor in compliance with the reporting requirements of Sections 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), nor exempt from reporting under the Exchange Act pursuant to Rule 12g3-2(b) thereunder, furnish, upon request, to any person in whose name such restricted securities are registered, to any owner of a beneficial interest in such restricted securities, and to any prospective purchaser of

See Condition 7 (*Write-down*) for more information.

**Each Holder and Indirect Holder agrees, by accepting an interest in such Note, to be bound by and consents to the application of the Write-down.**

Taxation . . . . . . . . . . . . . . . . . . . . . The Issuer will pay such Additional Amounts as may be necessary in order that the net payment received by each Holder in respect of the Notes, after withholding for any taxes imposed on the Issuer by tax authorities in Switzerland (or in any political subdivision thereof or therein having power to tax) upon payments made by or on behalf of the Issuer under the Notes will equal the amount that would have been received in the absence of any such withholding taxes, save in certain limited circumstances as more particularly set out in Condition 10 (*Taxation*). For a discussion of the U.S. federal income tax treatment of the Notes, see "*Taxation—United States*".

ERISA . . . . . . . . . . . . . . . . . . . . . Each purchaser of a Note and/or Holder and each transferee thereof will be deemed to have made certain representations regarding certain employee benefit matters. See "*Notice to Investors*" and "*ERISA Considerations*".

Events of Default . . . . . . . . . . . . . . . . It will be an Event of Default if payment is not made for a period of ten days or more in the case of principal due in respect of the Notes or 30 days or more in the case of interest due in respect of the Notes or certain measures are taken under Swiss bankruptcy, insolvency or other similar law with respect to the Issuer as more particularly described in Condition 12 (*Events of Default*). Holders have limited enforcement remedies, as more particularly described in Condition 12 (*Events of Default*).

Enforcement . . . . . . . . . . . . . . . . . . . Upon an Event of Default in respect of the Notes, Holders will have only limited enforcement remedies in the case of enforcing payment of sums due.

Following an Event of Default and non payment of the relevant sums due within a statutory period following the issue of a writ of payment as required by Swiss insolvency laws, Holders may only institute proceedings against CSG in Switzerland (but not elsewhere) to enforce their rights under Swiss insolvency laws.

Issuer Substitution . . . . . . . . . . . . . . . The Issuer may at any time, at the discretion of the Issuer and without any requirement for the further consent of Holders, be substituted as Issuer by another entity, provided certain conditions (including the giving by CSG of a subordinated guarantee) are satisfied, as more particularly described in Condition 13(c) (*Meetings of Holders, Modification and Substitution—Issuer Substitution*).

Use of Proceeds . . . . . . . . . . . . . . . . . The net proceeds from the Notes, amounting to U.S.$1,477,500,000, will be used by the Issuer for its general corporate purposes, which could include investments in its subsidiaries.

Expected Rating . . . . . . . . . . . . . . . . . The Notes are expected upon issue to be rated BB+ by Fitch and BB- by S&P. A security rating is not a

7

| | |
|---|---|
| **Rule 144A** . . . . . . . . . . . . . . . . . . . . . . | Offers and sales in accordance with Rule 144A will be permitted, subject to compliance with all relevant, legal and regulatory requirements of the United States. |
| **Regulation S** . . . . . . . . . . . . . . . . . . . | Offers and sales in accordance with Regulation S will be permitted, subject to compliance with all relevant, legal and regulatory requirements of the United States. |
| **Security Codes** . . . . . . . . . . . . . . . . . . | *Rule 144A Notes*<br><br>ISIN: US225401AS71<br><br>Common Code: 227136383<br><br>CUSIP: 225401AS7<br><br>Swiss Security Number: 58742706<br><br>*Regulation S Notes*<br><br>ISIN: USH3698DDD33<br><br>Common Code: 227110414<br><br>CUSIP: H3698DDD3<br><br>Swiss Security Number: 58742711 |

9