# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILTON LINHARES, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, THOMAS GOTTSTEIN, ULRICH KORNER, DAVID R. MATHERS, and DIXIT JOSHI<br><br>    Defendants. | No. 1:23-CV-02246-KMW-SAK<br><br>Hon. Karen M. Williams, U.S.D.J.<br><br>Hon. Sharon A. King, Mag.<br><br>MOTION DATE: June 5, 2023 |
| BRADEN TURNER, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, ULRICH KORNER, DIXIT JOSHI, THOMAS GOTTSTEIN, and DAVID R. MATHERS<br><br>    Defendants. | No. 1:23-cv-01476-KMW-SAK<br><br>Hon. Karen M. Williams, U.S.D.J.<br><br>Hon. Sharon A. King, Mag.<br><br>MOTION DATE: June 5, 2023 |

*(Additional Case Caption Continued on Following Page)*

| | |
|---|---|
| PATRICK CALHOUN, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, ULRICH KORNER, and DIXIT JOSHI<br><br>          Defendants. | No. 1:23-cv-01297-KMW-SAK<br><br>Hon. Karen M. Williams, U.S.D.J.<br><br>Hon. Sharon A. King, Mag.<br><br>MOTION DATE: June 5, 2023 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ALI DIABAT FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF HIS SELECTION OF COUNSEL AND IN FURTHER OPPOSITION TO <u>THE COMPETING MOTIONS FOR APPOINTMENT</u>

<table>
<tr><td>

**KAHN SWICK & FOTI, LLC**

Kim E. Miller (*PHV* forthcoming)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Email: kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Email: lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant Ali Diabat and Proposed Lead Counsel for the Class*

</td><td>

**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**

Vincent M. Giblin
Richard F.X. Regan
61 South Paramus Road, Suite 250
Paramus, NJ 07652
Telephone: (201) 347-2136
Telephone: (201) 907-5276
Email: vgiblin@decotiislaw.com
Email: rregan@decotiislaw.com

*Local Counsel for Lead Plaintiff Movant Ali Diabat and Proposed Liaison Counsel for the Class*

</td></tr>
</table>

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT ......................................................................................................3

   A. Only One Lead Plaintiff Should Be Appointed...............................................3

   B. Core Capital Should Not Be Appointed Lead Plaintiff...................................5

      1. Core Capital Fails to Cure its Standing Issues ..........................................5

      2. Contractual Waiver and Ongoing Litigation in Switzerland......................9

      3. Material Errors in Core Capital's Certification Undermine its Adequacy
         and its Newly Asserted Losses Are Not Recoverable..............................10

   C. Mr. Resit As Should Not Be Appointed Lead Plaintiff................................12

   D. Professor Diabat Should Be Appointed Lead Plaintiff .................................13

III. CONCLUSION.................................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012) ..................................................................................8

*Andrade v. Am. Apparel, Inc.*,
  No. 10-cv-06352, 2011 U.S. Dist. LEXIS 79795 (C.D. Cal. Mar. 15, 2011) ......16

*Banco Safra S.A.–Cayman Islands Branch v. Samarco Mineração S.A*,
  No. 16-cv-8800, 2019 U.S. Dist. LEXIS 101561 (S.D.N.Y.
  June 18, 2019).................................................................................. 7, 8, 10

*Banco Safra S.A.–Cayman Islands Branch v. Samarco Mineração S.A.*,
  849 F. App'x 289 (2d Cir. 2021) ............................................................. 1, 7, 8, 9

*Cambridge Ret. Sys. v. Mednax, Inc.*,
  No. 18-cv-61572, 2018 U.S. Dist. LEXIS 207064 (S.D. Fla. Dec. 6, 2018) .......13

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................ 2, 14

*Ferreira v. Funko, Inc.*,
  No. 20-cv-02319, 2020 U.S. Dist. LEXIS 106515 (C.D. Cal. June 11, 2020) ....13

*Freudenberg v. E\*Trade Fin. Corp.*,
  No. 07-cv-8538, 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 16, 2008) ..........4

*Guarino v. W. Union Co.*,
  No. 20-cv-5793, 2021 U.S. Dist. LEXIS 144202 (D.N.J. Aug. 2, 2021).............11

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ..................................................................................3

*In re Boeing Co. Aircraft Sec. Litig.*,
  No. 19-cv-2394, 2019 U.S. Dist. LEXIS 198259 (N.D. Ill. Nov. 15, 2019).........4

*In re Cendant Sec. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..............................................................................16

*In re Groupon Secs. Litig.*,
  No. 12-cv-2450, 2012 U.S. Dist. LEXIS 123899 (N.D. Ill. Aug. 28, 2012)........15

*In re McKesson HBOC, Inc. Sec. Litig.*,
  97 F. Supp. 2d 993 (N.D. Cal. 1999)....................................................................5

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017) ...............................................................................7

*Kabak v. Becton, Dickinson & Co.*,
  No. 20-cv-2155, 2020 U.S. Dist. LEXIS 100941 (D.N.J. June 9, 2020) ...............3

*Morrison v. Australia Bank*,
  561 U.S. 247 (2010)....................................................................................4, 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................16

*Plaut v. The Goldman Sachs Grp., Inc.*,
  No. 18-cv-12084, 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y.
  Sept. 19, 2019) ........................................................................................ 12, 14

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019)..............................................................................4

*Tomaszewski v. Trevena, Inc.*,
  383 F. Supp. 3d 409 (E.D. Pa. 2019)................................................................12

**Statutes**

15 U.S.C. § 78u-4(a)(3) ...........................................................................................4

## I.    INTRODUCTION

While all remaining movants now agree consolidation of the Related Actions is appropriate, both Mr. Resit As and Core Capital argue that separate lead plaintiffs should be appointed for ADS and bond purchasers.[1] But there is no need for separate niche representatives; Professor Diabat is well-positioned to represent the class of *all* securities purchasers. Core Capital's arguments that Professor Diabat is unsuited to represent the interests of Credit Suisse bond purchasers because he has rebutted Core Capital's adequacy and typicality–which is central to the statutory appointment process under the PSLRA–fail. Notably, this is not the first time Core Capital's counsel has argued that its foreign client's purchases of bonds issued by a foreign company pursuant to Regulation S are "domestic transactions" because they were allegedly purchased in the U.S. secondary market. The Second Circuit soundly rejected this very same argument made by Core Capital's counsel in *Banco Safra S.A.–Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289 (2d Cir. 2021). Even if Core Capital's argument on domesticity had merit, which it does not, the fact that it is subject to this unique defense rebuts its adequacy and typicality. Indeed, Core Capital spilled nearly 8 pages of ink in its opposition and reply brief on this issue alone, highlighting its vulnerability to this unique standing defense.

---

[1] By agreeing with Core Capital's position that the Court should appoint discrete, co-lead plaintiffs and counsel for ADS and bond purchasers, Mr. Resit As concedes consolidation of all three Related Actions is appropriate. *See* ECF No. 26 at 4-5.

1

Professor Diabat has rebutted any presumption in favor of Core Capital. It remains subject to various unique defenses that would jeopardize both AT1 and non-ATI Bond purchasers if it was appointed to represent all bond purchasers and would jeopardize the entire putative Class if its alternative request to be appointed sole lead plaintiff were granted. Further, Core Capital "inadvertently omitted" voluminous transactions from its prior sworn certification based on its "incorrect understanding of the PSLRA," resulting in additional claimed losses totaling *$(1,322,968)*. These losses are unrecoverable under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). The substantial errors call into question Core Capital's adequacy.

Nor can Mr. Resit As overcome the serious challenges and rebuttal evidence raised by Professor Diabat–including that Mr. Resit As made all of his purchases after the first alleged partial disclosure, and that his close associate, Mr. Halil As, was recently sanctioned for securities violations. Indeed, in his opposition brief, Mr. Resit As's counsel merely reiterates the unsubstantiated assertions from its opening brief, including the false claim that Mr. Resit As "owns" a grain company. Professor Diabat has rebutted any presumption in favor of Mr. Resit As.

Professor Diabat has made a *prima facie* showing that he satisfies Rule 23 and the PSLRA. The only attempt to impugn him (other than Core Capital's erroneous contention that he is inadequate to represent the interests of Credit Suisse bondholders) is Mr. Resit As's mention of a 14-year-old default judgment from

2

Indiana state court with which Professor Diabat was never served, resulting from an alleged credit card bill he swears under oath he never incurred. This challenge fails. Because no movant has rebutted the presumption in favor of Professor Diabat, his motion should be granted in full.

## II.   ARGUMENT

### A.   Only One Lead Plaintiff Should Be Appointed

Contrary to Core Capital's repeated invocation of "the Bond and ADS Investor Classes," (ECF No. 28 at 1), subclassing is not needed here; substantial authority supports the appointment of one lead plaintiff to represent a *unified* class of purchasers of Credit Suisse ADSs, domestic bonds, and all other Credit Suisse securities. "[A]ny requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Kabak v. Becton, Dickinson & Co.*, No. 20-cv-2155, 2020 U.S. Dist. LEXIS 100941, at *9 (D.N.J. June 9, 2020) (citing *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004)). Thus, courts regularly "appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issue where the interests of those purchasers are aligned." *Freudenberg v. E\*Trade Fin. Corp.*, No. 07-cv-8538, 2008 U.S. Dist. LEXIS 62767, at *15-17 (S.D.N.Y. July 16, 2008); *see also In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-2394, 2019 U.S. Dist. LEXIS 198259, at *32 (N.D. Ill. Nov.

15, 2019) (same); ECF No. 27 at 10-12 (citing cases).[2]

Nevertheless, Core Capital argues "separate representation for the Bondholder and ADS Investor Class is warranted," in part, because Professor Diabat has "staked out aggressive and incorrect positions with respect to both the relevant facts and law that would functionally exclude the Bond Investor Class Members…from the Class." ECF No. 28 at 4. In reality, however, Core Capital merely takes issue with the fact that its purchases of AT1 Bonds issued for sale outside the U.S. subjects it to unique standing defenses under *Morrison v. Australia Bank*, 561 U.S. 247 (2010).

Core Capital also claims separate representation is warranted because "bond investors account [] for a significant portion of the overall Class-wide damages." ECF No. 25 at 6. But the statutory framework for appointment of lead plaintiffs does not consider class-wide damages, much less preliminary, unsubstantiated damage estimates for subsets of putative classes. *See generally* 15 U.S.C. § 78u-4(a)(3); *see also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997-98 (N.D. Cal. 1999) (rejecting movant's fluctuating fraud premium theory as it would "require formal damages studies" and "the court believes a more basic approach is required for determination of lead plaintiff"). Further, while Core Capital claims its estimate is based on expert analysis, it has not provided an expert declaration. Finally, Core

---

[2] The only case Core Capital cited from within this Circuit is, *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 89 (D.N.J. 2019), which involved appointment of separate classes of purchasers at the *class certification*, not the lead plaintiff, stage.

Capital's belated provision of "a chart setting forth the U.S. domestic trading volume" (with data from FINRA's TRACE system) of the three Regulation S AT1 Bond issues it purchased, is likewise irrelevant to lead plaintiff appointment under the PSLRA. *See* ECF No. 28 at 12; ECF No. 28-2.

> **B.   Core Capital Should Not Be Appointed Lead Plaintiff**[3]
>> 1.   <u>Core Capital Fails to Cure its Standing Issues</u>[4]

Core Capital submitted a Supplemental Declaration from its director, Christian Quege (the "Supplemental Quege Declaration") providing further details about his purchases of Credit Suisse AT1 Bonds in the secondary market. These additional factual allegations are insufficient to establish that Core Capital's purchases of the AT1 Bonds was "domestic," as required by *Morrison*.[5] Tellingly,

---

[3] Core Capital's statement that "[i]f the Court's preference is to appoint a single Lead Plaintiff," it should be Core Capital (ECF No. 25 at 7 n.4; ECF No. 28 at 3 n.3) directly contradicts its counsel's concession in his May 22, 2023, call with Professor Diabat's counsel that Core Capital was "not seeking to be lead plaintiff 'of the entire case' or 'of the ADSs,'" but that it "had losses in 'bonds only' and wants to be 'lead for the bonds.'" ECF No. 27-3 at ¶ 4.

[4] Core Capital asserts in its Reply that "Core Capital, not any client, is the beneficial owner of the securities listed on its Certification," (ECF No. 28 at 13), but does not provide any supporting evidence to counter the rebuttal evidence Professor Diabat submitted that Core Capital operates as a nominee. *See* ECF No. 27 at 17-20. The significant errors and omissions in the Initial Quege Certification, coupled with its counsel's concession that it does not understand the PSLRA's requirements here, do not inspire confidence in Core Capital's position. Core Capital had every opportunity to submit trade confirmations to support its legal argument and refute the rebuttal evidence. Yet only Professor Diabat submitted trade confirmations confirming the bona fides of his transactions. *See* ECF No. 27-8.

[5] Mr. Quege's amended certification (the "Amended Quege Certification") reveals

Core Capital's counsel, Pomerantz LLP ("Pomerantz") unsuccessfully advanced strikingly similar allegations in *Banco Safra S.A.–Cayman Islands Branch v. Samarco Mineração S.A*, No. 16-cv-8800, 2019 U.S. Dist. LEXIS 101561 (S.D.N.Y. June 18, 2019), *aff'd*, 849 Fed. Appx. 289 (2d Cir. 2021). There, Pomerantz's client alleged it "purchased most of its Samarco Bonds," which were "initially issued…under Regulation S," "in secondary aftermarket transactions from counterparties and/or broker dealers located in the United States." *Banco Safra*, 849 F. App'x at 292. After considering a litany of facts purportedly supportive of domesticity, however, the Second Circuit affirmed the district court's dismissal of the complaint "on the ground that it failed to adequately plead a domestic transaction under the Exchange act as required by *Morrison* and *Absolute Activist*." *Id.*

"The location or residency of the buyer, seller, or broker will not necessarily establish the situs of [a] transaction." *Banco Safra*, 2019 U.S. Dist. LEXIS 101561, at *13 (citing *In re Petrobras Sec. Litig.*, 862 F.3d 250, 262 (2d Cir. 2017)). "Rather, plaintiffs demonstrate the location where irrevocable liability was incurred or legal title transferred by producing evidence 'including, but not limited to, facts

---

that Core Capital transacted in two additional AT1 Bonds during the Class Period which, like the previously disclosed transactions, were issued pursuant to Regulation S, *not* Rule 144A. *See* ECF No. 25-2 at 4-5 (CUSIPs "H3698DBZ6" and "H3698DCV4"); *see also* Second Supplemental Declaration of Vincent M. Giblin ("Second Supp. Giblin Decl.") at Exs. A (H3698DBZ6 Final Term Sheet) & B (H3698DCV4 Prospectus Excerpts). This confirms *all* the AT1 Bonds Core Capital purchased during the Class Period were specifically issued for sale *outside the U.S.*

concerning the formation of the contracts, the placement of purchase orders…or the exchange of money.'" *Id.* (citing *Petrobras*, 862 F.3d at 262). Thus, that Mr. Quege was "physically present" in the U.S. when he "caused Core Capital's Bond Transactions to be executed"; that he "called Core Capital's U.S.-based broker dealer" from the U.S.; that his broker-dealer "accessed price quotes for the Bonds via [a] U.S.-based trading platform" and relayed them to him while he was in the U.S.; and that he emailed the broker-dealer from the U.S. confirming Core Capital wanted to purchase the Bonds at the quoted prices (ECF No. 25-4 at ¶¶ 3-6), are all insufficient purported facts to establish the bond purchases were "domestic." *See Banco Safra*, 2019 U.S. Dist. LEXIS 101561, at *13 ("[T]hat Banco Safra's 'counterparties and/or brokers' were located in the United States does not establish that [the] purchases and sales of [the] Bonds were domestic transactions."); *see also Banco Safra*, 849 F. App'x at 295 ("[P]roviding generic U.S. addresses for the broker-dealers without also listing where the individuals actually involved in negotiating the transactions were located when they negotiated the transactions "does not necessarily demonstrate where a contract was executed."") (quoting *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012)). The fact that Core Capital does not even bother to specifically identify its broker-dealer(s) here speaks volumes.

Next, Core Capital avers its broker-dealer "placed orders for the Bonds through a U.S.-based clearinghouse" which "transferred the Bonds to the Broker-Dealer's U.S.-based bank account," after which time "the Broker-Dealer sold the Bonds to Core Capital" and then "transferred [them]…from its U.S.-based bank account to one of Core Capital's U.S.-based custody accounts, thereby concluding the Bond Transactions." ECF No. 25-4 at ¶ 6. These allegations fall short. *See Banco Safra*, 849 F. App'x at 294 ("Nor does the direction to transfer money using New York bank accounts to purchase the bonds suffice to demonstrate a domestic transaction.") (citation omitted). So, too, that "U.S. dollars were used to purchase each of the Bonds" (ECF No. 25-4 at ¶ 7) is "inadequate to show that either party here incurred liability in the United States to transact in the securities." *Id*.

Finally, Core Capital's general invocation of FINRA's TRACE system as an indicia of domesticity flounders. Core Capital apparently argues that, because "all domestic U.S. transactions in bonds initially offered to foreign investors in Regulation S transactions—such as the AT1 Bonds at issue here—are required to be reported to FINRA's [TRACE system]," and there is a "demonstrably robust U.S. market" for the foreign AT1 Bonds it purchased, its transactions are therefore domestic. ECF No. 28 at 9-10. The court in *Banco Safra* soundly rejected this very same "argument" made by Core Capital's counsel. *See* 2019 U.S. Dist. LEXIS 101561, at *18-19 ("[M]erely reporting a transaction to TRACE does not establish

that the transaction is domestic….TRACE reporting does not determine whether or where irrevocable liability was incurred or where title transferred. The Court has found no case…which holds that reporting to TRACE is sufficient to allege that irrevocable liability was incurred or title transferred in the United States.").

    2.    <u>Contractual Waiver and Ongoing Litigation in Switzerland</u>

Although Core Capital claims to be "puzzl[ed]" that AT1 Bond purchasers might be contractually prohibited from seeking relief from Credit Suisse (ECF No. 28 at 9 n.4), it is surely aware that *all* of Credit' Suisse's AT1 Bonds were fully written down by the Swiss Financial Market Supervisory Authority ("FINMA") as part of Credit Suisse's bailout earlier this year. *See* Second Supp. Giblin Decl. at Ex. C (Mar. 23, 2023 FINMA Press Release). As provided in the AT1 Prospectus, in an Event of Default, bondholders "may only institute proceedings against [Credit Suisse] in Switzerland (but not elsewhere) to enforce their rights under Swiss insolvency laws." *Id*. at Ex. C.[6] While Core Capital acknowledges the AT1 Bonds it purchased "represent[] only a subset of the various debt securities that were traded by" putative Class members during the Class Period (ECF No. 28 at 10), it ignores

---

[6] Relatedly, Core Capital's claims here are susceptible to a defense of *forum non conveniens*, as Switzerland may be a more appropriate forum to resolve any claims relating to written-down bonds. *See*, *e.g.*, *Guarino v. W. Union Co.*, No. 20-cv-5793, 2021 U.S. Dist. LEXIS 144202 (D.N.J. Aug. 2, 2021).

9

the fact that non-AT1 Bonds were *not* written down by FINMA. *See* Second Supp. Giblin Decl. at Ex. C.[7]

3. Material Errors in Core Capital's Certification Undermine its Adequacy and its Newly Asserted Losses Are Not Recoverable

Core Capital states that its initial PSLRA certification "inadvertently omitted certain Class Period transactions in AT1 Bonds and thus understated its investment losses as $9,948,166" because of its "incorrect understanding" of the PSLRA's requirements. ECF No. 25 at 2 n.3. While Core Capital attempts to downplay this error, the omissions are significant. Core Capital now reveals *six* additional accounts in which it purchased and sold three different AT1 Bonds during the Class Period (including additional sales in "Account 2"), while claiming additional losses totaling ***$(1,322,968)***. Further, the Amended Quege Certification now suggests Core Capital may be a "net gainer," or, at the very least, that its asserted losses are substantially offset by its Class Period sales of AT1 Bonds purchased *prior* to the Class Period. Neither Core Capital's excuse for this mistake nor its new loss figure passes muster.[8]

---

[7] Credit Suisse's "Tier 2" bond is the $2.5 billion 6.5% Tier 2 Capital Note due 2023. *See* Second Supp. Giblin Decl. at Ex. D (AT2 Bond Prospectus Excerpts). Moreover, Credit Suisse has at least four outstanding SEC-registered, USD-denominated senior unsecured notes (total par value of $8.5 billion), none of which were written down. *See id.* at Exs. E ($2.5B 3.75% Senior Note due 2025 and $2B 4.875% Senior Note due 2045, Prospectus Excerpts) & F ($2B 4.55% Senior Note due 2026 and $2B 3.8% Senior Note due 2023, Prospectus Excerpts).

[8] Core Capital claims it believed it only had to "set forth Class Period *purchases* of securities *that were held* at the end of the Class Period." ECF No. 25 at 2 n.3

Courts have found that errors in PSLRA certifications can disqualify a movant as lead plaintiff. *See, e.g.*, *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (finding presumptive lead plaintiff's "minor or inadvertent mistakes" nevertheless "speak to a level of carelessness" and "[p]articularly given that [they] were made at the outset of the case, this causes the Court to doubt whether [movant] possesses the necessary adequacy and sophistication to be lead plaintiff."); *Plaut v. The Goldman Sachs Grp., Inc.*, No. 18-cv-12084, 2019 U.S. Dist. LEXIS 160255, at *13-14 (S.D.N.Y. Sept. 19, 2019) (omissions of certain transactions "due to a clerical error" rendered movant inadequate, ***even where losses were initially understated***).[9]

Core Capital's newly disclosed transactions reveal additional Class Period sales of ***8.4 million*** AT1 Bonds, all purchased prior to the Class Period, for total proceeds of ***$9,243,800***. *See* ECF No. 25-3 at 1-2. Instead of properly providing the cost basis of these pre-Class Period purchases, Core Capital simply nets the transactions to "$0." *Id.* But courts have held Class Period profits on pre-Class Period purchases must offset movants' recoverable losses. *See, e.g.*, *Ferreira v. Funko, Inc.*, No. 20-cv-02319, 2020 U.S. Dist. LEXIS 106515, at *18-19 (C.D. Cal.

_____

(emphasis added). But its initial certification (ECF No. 19-3) expressly includes Class Period *sales* of AT1 Bonds.

[9] Core Capital's opposition brief repeatedly misspells Mr. Quege's name. *See* ECF No. 25 at 10 (referring to him three times as "Mr. Queue"). One wonders if Mr. Quege even reviewed the brief.

June 11, 2020) (disqualifying movant for not providing "the cost basis of its pre-Class Period purchases" and "fail[ing] to offset its claimed loss with gains for [] securities purchased before the Class Period and sold during the Class Period"); *Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-cv-61572, 2018 U.S. Dist. LEXIS 207064, at *13 (S.D. Fla. Dec. 6, 2018) ("It wastes the Court's time when proposed lead plaintiffs…simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares or, at minimum, carefully accounting for each of those shares.").

At any rate, Core Capital cannot assert additional losses on those newly revealed transactions because *each and every sale* was consummated *before* the first partial disclosure on February 9, 2023. *See* ECF No. 25-3. The most inclusive *Linhares* Complaint alleges Defendants' fraud was first partially revealed to the market on February 9, 2023. *See Linhares* Compl. at ¶ 52. Courts routinely exclude losses on securities not retained through a first corrective disclosure because "if…the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342; *see, e.g., Plaut*, 2019 U.S. Dist. LEXIS 160255, at *13 ("[U]nder *Dura*, I am inclined to exclude in-and-out transactions prior to the first alleged corrective disclosure….").

### C.    Mr. Resit As Should Not Be Appointed Lead Plaintiff

Mr. Resit As failed to provide the Court with any information about himself,

12

instead relying on his counsel to make representations about him, including his purported "ownership" of a grain company, which Professor Diabat's investigation determined is false. *See* ECF No. 27 at 26-28, 36-37. Nevertheless, Mr. Resit As's counsel again recounts in its opposition that he "owns a grain trading business…." ECF No. 26 at 2. Mr. Resit As's failure to submit a declaration to support this or other basic facts about his background and investment experience supports a finding of inadequacy. Compounding errors and misstatements in his motion, Mr. Resit As also concedes his certified loss chart contains an error. *See* ECF No. 26 at 6 n.3.[10]

### D.    Professor Diabat Should Be Appointed Lead Plaintiff

Professor Diabat has rebutted any presumption in favor of the two movants claiming larger, if shifting, losses. The presumption next falls to Professor Diabat, and the only challenge to his adequacy is Mr. Resit As's claim–without evidentiary support, explanation, or caselaw–that a default judgment in an Indiana state court case was entered against Professor Diabat. *See* ECF No. 26 at 9-10. Unlike Mr. Resit As's counsel, Professor Diabat's counsel took the time and effort to locate the complaint and docket sheet relating to this issue. *See* Second Supp. Giblin Decl., Ex. G (Second Supplemental Declaration of Kim E. Miller) at ¶ 2 & Exs. 1 (*Portfolio Recovery* Docket Sheet) & 2 (*Portfolio Recovery* Complaint and Exhibit). In short, the 3-page complaint filed in 2011 involved a Costco credit card debt of under

---

[10]Professor Diabat also submitted 'Tick-by-Tick' data that calls into question the veracity of Mr. Resit As's transactions. *See* ECF No. 27-7.

$5,000, allegedly incurred and due in 2009. *Id.* at ¶ 3 & Exs. 1 & 2. Professor Diabat

had no knowledge of the case or the default judgment until he received Mr. Resit

As's opposition brief. *See* Second Supp. Giblin Decl., Ex. H (Supplemental Diabat

Declaration) at ¶ 2. In fact, Professor Diabat was not even in the U.S. in 2009 when

the debt was allegedly incurred. *Id.* at ¶ 5. Moreover, he declared the debt is not his.

*Id.* at ¶ 4.[11]

"Among the PSLRA's 'goal[s]…[is] having an engaged lead plaintiff actively

supervise the conduct of the litigation.'" *Andrade v. Am. Apparel, Inc.*, No. 10-cv-

06352, 2011 U.S. Dist. LEXIS 79795, at *37 (C.D. Cal. Mar. 15, 2011) (citing *In re

Cendant Sec. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001)). "Movants who are unable to

perform these functions do 'not satisfy the adequacy requirement,'" and "[f]or this

reason, courts have refused to appoint individuals as lead plaintiffs whose

'participation is so minimal that they virtually have abdicated to their attorneys the

conduct of the case.'" *Id.* (quoting *Cendant*, 264 F.3d at 267 and collecting cases).

It is ironic that Mr. Resit As's counsel claims this alleged default judgment "raises

---

[11] Even if the default judgment were valid, unlike the misconduct committed by Mr. Halil As, it is "not germane to this action and do[es] not call into question [Professor Diabat's] adequacy to serve as lead plaintiff." *In re Groupon Secs. Litig.*, No. 12-cv-2450, 2012 U.S. Dist. LEXIS 123899, at *13 (N.D. Ill. Aug. 28, 2012) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (finding courts generally reject lead plaintiff presumption only where proposed lead plaintiff is suspected of violating laws he is invoking)).

14

concerns about [Professor Diabat's] adequacy to prosecute this action" (ECF No. 26 at 10), as Mr. Resit As has been nearly absent from *this* Action. Aside from submitting a bare-bones PSLRA certification executed before the *Linhares* Action was filed, Mr. Resit As did not provide the Court any information about himself, but instead relied wholly on his counsel, who made significant errors. In sharp contrast, Professor Diabat has submitted two detailed declarations and a certification with information about his background, his investment experience, his trading, and his understanding of his duties to the Class and willingness and ability to perform them.

## III.    CONCLUSION

Professor Diabat respectfully submits that his motion should be granted in full and the competing motions of Core Capital and Mr. Resit As should be denied.

DATED: May 30, 2023                Respectfully submitted,

**DeCotiis, FitzPatrick, Cole & Giblin, LLP**

*/s/ Vincent M. Giblin*
Vincent M. Giblin
Richard F.X. Regan
61 South Paramus Road, Suite 250
Paramus, NJ 07652
Telephone: (201) 347-2136
Telephone: (201) 907-5276
Fax: (201) 928-0588
Email: vgiblin@decotiislaw.com
Email: rregan@decotiislaw.com

*Local Counsel for Lead Plaintiff Movant Ali Diabat and Proposed Liaison Counsel for the Class*

15

**Kahn Swick & Foti, LLC**

Kim E. Miller (*PHV* forthcoming)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Fax: (504) 455-1498
Email: kim.miller@ksfcounsel.com

 -and-

Lewis S. Kahn
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*Ali Diabat and Proposed Lead Counsel*
*for the Class*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 30, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the e-mail addresses on the Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to non-CM/ECF participants.

*/s/ Vincent M. Giblin*
Vincent M. Giblin

16