# EXHIBIT B

**IMPORTANT NOTICE**

**NOT FOR DISTRIBUTION TO ANY U.S. PERSON OR TO ANY PERSON OR ADDRESS IN THE UNITED STATES EXCEPT FOR QUALIFIED INSTITUTIONAL BUYERS.**

**IMPORTANT:**   You must read the following before continuing. The following disclaimer applies to the Information Memorandum following this page (the "**Information Memorandum**"), and you are therefore advised to read this carefully before reading, accessing or making any other use of the Information Memorandum. In accessing the Information Memorandum, you agree to be bound by the following terms and conditions, including any modifications to them any time you receive any information from us as a result of such access. You acknowledge that you will not forward this electronic transmission or the Information Memorandum to any other person.

THE INFORMATION MEMORANDUM AND ITS CONTENTS ARE CONFIDENTIAL AND MAY NOT BE FORWARDED OR DISTRIBUTED TO ANY OTHER PERSON AND MAY NOT BE REPRODUCED IN ANY MANNER WHATSOEVER. ANY FORWARDING, DISTRIBUTION OR REPRODUCTION OF THE INFORMATION MEMORANDUM IN WHOLE OR IN PART IS PROHIBITED. FAILURE TO COMPLY WITH THIS DIRECTIVE MAY RESULT IN A VIOLATION OF THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR THE APPLICABLE LAWS OF OTHER JURISDICTIONS. IF YOU HAVE GAINED ACCESS TO THE INFORMATION MEMORANDUM CONTRARY TO ANY OF THE FOREGOING RESTRICTIONS, YOU ARE NOT AUTHORISED AND WILL NOT BE ABLE TO PURCHASE ANY OF THE SECURITIES DESCRIBED THEREIN (THE "**SECURITIES**").

EXCEPT AS DESCRIBED BELOW, NOTHING IN THIS ELECTRONIC TRANSMISSION CONSTITUTES AN OFFER OF SECURITIES FOR SALE IN THE UNITED STATES OR ANY JURISDICTION WHERE IT IS UNLAWFUL TO DO SO. THE SECURITIES HAVE NOT BEEN, AND WILL NOT BE, REGISTERED UNDER THE SECURITIES ACT OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OF THE UNITED STATES OR OTHER JURISDICTION, AND THE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS (WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT), EXCEPT PURSUANT TO AN EXEMPTION FROM, OR A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND APPLICABLE STATE OR LOCAL SECURITIES LAWS.

THE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (1) IN ACCORDANCE WITH RULE 144A UNDER THE SECURITIES ACT TO A PERSON THAT THE HOLDER AND ANY PERSON ACTING ON ITS BEHALF REASONABLY BELIEVE IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT (A "**QIB**") THAT IS ACQUIRING THE SECURITIES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ONE OR MORE QIBS, (2) IN AN OFFSHORE TRANSACTION TO A NON-U.S. PERSON IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT, (3) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER RULE 144 UNDER THE SECURITIES ACT, IF AVAILABLE, OR (4) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES.

THE SECURITIES ARE NOT INTENDED TO BE OFFERED, SOLD OR OTHERWISE MADE AVAILABLE AND SHOULD NOT BE OFFERED, SOLD OR OTHERWISE MADE AVAILABLE TO RETAIL CLIENTS IN THE EUROPEAN ECONOMIC AREA, AS DEFINED IN THE RULES SET OUT IN THE MARKETS IN FINANCIAL INSTRUMENTS DIRECTIVE 2014/65/EU (AS AMENDED OR REPLACED FROM TIME TO TIME). NO KEY INFORMATION DOCUMENT REQUIRED BY REGULATION (EU) NO. 1286/2014 (AS AMENDED) HAS BEEN PREPARED.

**Confirmation of your Representation:**   You have been sent the Information Memorandum on the basis that you have confirmed to the managers in relation to the offering (or their affiliates) (together, the "**Managers**"), being the senders of the attached, that: (i) you have understood and agree to the terms set out herein, (ii) you are either (a) not a U.S. person (within the meaning of Regulation S under the Securities Act), and are not acting for the account or benefit of any U.S. person, and that you and the electronic mail address that you have given us and to which this e-mail has been delivered are not located in the United States, its territories and possessions, or (b) a person that is a QIB, (iii) you consent to delivery by electronic transmission, (iv) you will not transmit the Information Memorandum (or any copy of it or part thereof) or disclose, whether orally or in writing, any of its contents to any other person except with the consent of the relevant Manager, (v) you acknowledge that you will make your own assessment regarding any legal, taxation or other economic considerations with respect to your decision to subscribe for, or purchase any of, the securities and (vi) if you are a person in the United Kingdom, then you are a person who (x) has professional experience in matters relating to investments falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (as amended) (the "**Order**") or (y) is a high net worth entity or other persons to whom the Information Memorandum may lawfully be communicated, falling within Article 49(2)(a) to (d) of the Order (all such persons together being referred to as "**Relevant Persons**").

The Securities are only available to, and any invitation, offer, or agreement to subscribe, purchase or otherwise acquire the Securities will be engaged in only with Relevant Persons. In the United Kingdom, the Information Memorandum may only be communicated or caused to be communicated to persons in circumstances where Section 21(1) of the Financial Services and Markets Act 2000 does not apply and may only be distributed to Relevant Persons and must not be acted on or relied on by persons who are not Relevant Persons. Any investment or investment activity to which the Information Memorandum relates is available only to Relevant Persons and will be engaged in only with Relevant Persons.

You are reminded that the Information Memorandum has been delivered to you on the basis that you are a person into whose possession the Information Memorandum may be lawfully delivered in accordance with the laws of the jurisdiction in which you are located and you may not, nor are you authorised to, deliver the Information Memorandum to any other person.

The Information Memorandum does not constitute, and may not be used in connection with, an offer or solicitation in any place where offers or solicitations are not permitted by law. If a jurisdiction requires that the offering be made by a licenced broker or dealer and a Manager, or any affiliate of such Manager, is a licenced broker or dealer in that jurisdiction, the offering shall be deemed to be made by such Manager or such affiliate on behalf of Credit Suisse Group AG in such jurisdiction.

The Information Memorandum has been sent to you in an electronic form. You are reminded that documents transmitted via this medium may be altered or changed during the process of electronic transmission and consequently none of Credit Suisse Group AG, the Managers nor any person who controls them nor any director, officer, employee nor agent of it or affiliate of any such person accepts any liability or responsibility whatsoever in respect of any difference between the Information Memorandum distributed to you in electronic format and the hard copy version available to you on request from the Managers.



# Credit Suisse Group AG
*(incorporated with limited liability in Switzerland)*

## U.S.$1,000,000,000 5.100 per cent. Perpetual Tier 1 Contingent Write-down Capital Notes

**Issue Price: 100.000 per cent.**

The U.S.$1,000,000,000 5.100 per cent. Perpetual Tier 1 Contingent Write-down Capital Notes (the "**Notes**") will be issued by Credit Suisse Group AG (the "**Issuer**" or "**CSG**") on 24 January 2020 (the "**Issue Date**"). Interest on the Notes will accrue from (and including) the Issue Date to (but excluding) the First Optional Redemption Date (as defined in "*Terms and Conditions of the Notes—Part B*"), at a fixed rate of 5.100 per cent. per annum, and from (and including) the First Optional Redemption Date, at the applicable Reset Rate (as defined in "*Terms and Conditions of the Notes—Interest—Rate of Interest*"), each payable, subject as provided herein, semi-annually in arrear. Payments on the Notes will be made without deduction for or on account of taxes of Switzerland to the extent described herein under "*Terms and Conditions of the Notes—Taxation*". **Payments of interest will be made at the sole discretion of the Issuer and may be subject to mandatory cancellation, as more particularly described herein under "*Terms and Conditions of the Notes—Interest—Cancellation of Interest; Prohibited Interest*". Any interest not paid as foresaid will not accumulate.**

The Notes are perpetual securities and have no fixed or final redemption date. Unless previously redeemed or purchased and cancelled, and provided that no Write-down Event (as defined in "Terms and Conditions of the Notes" (the "**Conditions**")) has occurred, the Notes may, subject to the satisfaction of certain conditions described herein and applicable law, be redeemed at the option of the Issuer, on the First Optional Redemption Date (as defined in the Conditions) or on any Reset Date (as defined in the Conditions) thereafter, in whole but not in part, at 100 per cent. of their aggregate principal amount plus accrued but unpaid interest thereon. The Notes are also subject to redemption in whole, but not in part, at the option of the Issuer, upon the occurrence of a Tax Event or upon the occurrence of a Capital Event (each as defined in the Conditions), as more particularly described in "Terms and Conditions of the Notes—Redemption, Substitution, Variation and Purchase". The Notes will constitute direct, unsecured and subordinated obligations of the Issuer and shall rank at all times pari passu and without any preference among themselves, as more particularly described herein under "Terms and Conditions of the Notes—Status of the Notes" and "Terms and Conditions of the Notes—Subordination of the Notes".

If a Write-down Event occurs, a Write-down (as defined in the Conditions) shall occur on the relevant Write-down Date (as defined in the Conditions), as more particularly described in "*Terms and Conditions of the Notes—Write-down*". In such circumstances, interest on the Notes shall cease to accrue, the full principal amount of each Note will automatically and permanently be written-down to zero, Holders (as defined in the Conditions) will lose their entire investment in the Notes and all rights of any Holder for payment of any accrued but unpaid interest or any other amounts under or in respect of the Notes will become null and void. See "*Risk Factors—The likelihood of an occurrence of a Write-down is material for the purpose of assessing an investment in the Notes. The Notes may be subject to a Write-down and upon the occurrence of such an event Holders will lose the entire amount of their investment in the Notes*". **Each Holder and beneficial owner of a Note agrees, by accepting a direct or beneficial interest in such Note, to be bound by and consents to the application of the Write-down.**

The Notes are expected to be provisionally admitted to trading on the SIX Swiss Exchange from 24 January 2020. The last trading day is expected to be the second trading day prior to the date on which the Notes are fully redeemed in accordance with the Conditions or the Write-down Date, as applicable. Application will be made to SIX Exchange Regulation AG for listing of the Notes on the SIX Swiss Exchange. In accordance with article 109 of the Swiss Financial Services Ordinance, this Information Memorandum has been prepared in compliance with articles 652a and 1156 of the Swiss Code of Obligations, as such articles were in effect immediately prior to the entry into effect of the Swiss Financial Services Act (the "**FinSA**"), and the Listing Rules of SIX Swiss Exchange in their version dated November 8, 2019 and in force as of January 1, 2020 (the "**SIX Listing Rules**"). Consequently, this Information Memorandum has not been and will not be reviewed or approved by a Swiss review body pursuant to article 51 of the FinSA, and does not comply with the disclosure requirements applicable to a prospectus approved by such a review body under the FinSA.

**The Notes are not intended to be offered, sold or otherwise made available and should not be offered, sold or otherwise made available to retail clients in the European Economic Area (the "EEA"), as defined in the rules set out in the Markets in Financial Instruments Directive 2014/65/EU (as amended or replaced from time to time) ("MiFID II"). No key information document required by Regulation (EU) No. 1286/2014 (as amended, "PRIIPs") has been prepared. Prospective investors are referred to the section headed "Restrictions on marketing and sales to retail investors in the EEA" on page (i) of this Information Memorandum for further information. This Information Memorandum is an advertisement and not a prospectus for the purposes of Regulation (EU) 2017/1129.**

The Notes have not been, and will not be, registered under the U.S. Securities Act of 1933, as amended (the "**Securities Act**"). The Notes may not be offered or sold or delivered within the United States or to, or for the account or benefit of, U.S. persons (as defined in Regulation S under the Securities Act ("**Regulation S**")), except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act. The Notes are being offered and sold only in global form (A) in the United States to persons reasonably believed to be "qualified institutional buyers" (as defined in Rule 144A under the Securities Act ("**Rule 144A**")) in reliance on Rule 144A and (B) in "offshore transactions" to non-U.S. persons (as defined in Regulation S) in reliance on Regulation S. Prospective purchasers are hereby notified that sellers of the Notes may be relying on the exemption from the provisions of section 5 of the Securities Act provided by Rule 144A or Regulation S. For a description of these and certain further restrictions on offers, sales and transfers of the Notes and distribution of this Information Memorandum, see "*Notice to Investors*", "*Plan of Distribution*" and "*ERISA Considerations*".

Delivery of the Notes in book-entry form will be made through The Depository Trust Company ("**DTC**"), on or about 24 January 2020. A purchaser may elect to hold interests in the Notes through either DTC (in the United States), or Clearstream Banking S.A. ("**Clearstream, Luxembourg**"), or Euroclear Bank SA/NV, or its successor, as operator of the Euroclear System ("**Euroclear**") (outside the United States), if a purchaser is a direct participant of such systems, or indirectly through organisations which are participants in such systems. Interests held through Clearstream, Luxembourg and Euroclear will be recorded on DTC's books as being held by the U.S. depositary for each of Clearstream, Luxembourg and Euroclear, which U.S. depositaries will in turn hold interests on behalf of their participants' customers' securities accounts.

The Notes are expected upon issue to be rated BB by Fitch Ratings Limited ("**Fitch**") and BB- by S&P Global Ratings Europe Limited ("**S&P**"). A rating is not a recommendation to buy, sell or hold securities and may be subject to suspension, modification or withdrawal at any time by the assigning rating agency.

**An investment in Notes involves certain risks, including the risk that Holders will lose their entire investment in the Notes. For a discussion of certain of the risks that potential investors should carefully consider before deciding to invest in the Notes, see "*Risk Factors*".**

*Sole Book-Running Manager*

# Credit Suisse

*Joint Lead Managers*

| | | | |
|---|---|---|---|
| **Banca IMI** | **Danske Bank** | **ING** | **Lloyds Securities** |
| **NatWest Markets** | **RBC Capital Markets** | **Santander** | **Scotiabank** |
| **Société Générale Corporate & Investment Banking** | | **TD Securities** | **Wells Fargo Securities** |

*Senior Co-Managers*

| | | | |
|---|---|---|---|
| **ABN AMRO** | **BBVA** | **BMO Capital Markets** | **Capital One Securities** |
| **CIBC Capital Markets** | **Citizens Capital Markets** | **Natixis** | **Nordea** |
| **Rabo Securities** | **Standard Chartered Bank** | **SunTrust Robinson Humphrey** | **UniCredit** |

*Co-Managers*

| | | | | |
|---|---|---|---|---|
| **ANZ Securities** | **Banco de Sabadell** | **Bankia** | **BNY Mellon Capital Markets, LLC** | |
| **CaixaBank** | **Commonwealth Bank of Australia** | **Deutsche Bank Securities** | **HSBC** | **Morgan Stanley** |
| **nabSecurities, LLC** | **Regions Securities LLC** | **SEB** | **Huntington Capital Markets** | |

The date of this Information Memorandum is 16 January 2020.

This Information Memorandum may only be used for the purposes for which it has been published.

The Issuer accepts responsibility (including for the purposes of the SIX Listing Rules section 4 of Scheme E thereunder) for all information contained in this Information Memorandum. The information contained in this Information Memorandum is, to the best of the Issuer's knowledge, correct and no material facts or circumstances have been omitted herefrom.

This Information Memorandum is to be read in conjunction with all documents that are incorporated herein by reference (see "*Documents Incorporated by Reference*"). This Information Memorandum shall be read and construed on the basis that such documents are incorporated and form part of this Information Memorandum.

The managers in relation to the offering (or their affiliates) (together, the "**Managers**") have not verified the information contained herein. Additionally, no representation, warranty or undertaking, express or implied, is made and no responsibility or liability is accepted by the Managers as to the accuracy or completeness of the information contained or incorporated in this Information Memorandum or any other information provided by the Issuer in connection with the Notes.

No person is or has been authorised by the Issuer or the Managers to give any information or to make any representation not contained in or not consistent with this Information Memorandum or any other information supplied in connection with the Notes and, if given or made, such information or representation must not be relied upon as having been authorised by the Issuer or the Managers.

To the fullest extent permitted by law, the Managers accept no responsibility whatsoever for the contents of this Information Memorandum or for any other statement, made or purported to be made by the Managers or on their behalf in connection with the Issuer or the issue and offering of the Notes. The Managers accordingly disclaim all and any liability whether arising in tort or contract or otherwise (save as referred to above) that they might otherwise have in respect of this Information Memorandum or any such statement.

Neither this Information Memorandum nor any other information supplied in connection with the Notes (a) is intended to provide the basis of any credit or other evaluation or (b) should be considered as a recommendation by the Issuer or the Managers that any recipient of this Information Memorandum or any other information supplied in connection with the Notes should purchase any Notes. Each investor contemplating purchasing any Notes should make its own independent investigation of the financial condition and affairs, and its own appraisal of the creditworthiness, of the Issuer. Neither this Information Memorandum nor any other information supplied in connection with the issue of the Notes constitutes an offer or invitation by or on behalf of the Issuer or the Managers to any person to subscribe for or to purchase any Notes.

Neither the delivery of this Information Memorandum nor the offering, sale or delivery of any Notes shall in any circumstances imply that the information contained herein concerning the Issuer is correct at any time subsequent to the date hereof or that any other information supplied in connection with the issue of the Notes is correct as of any time subsequent to the date indicated in the document containing the same. Each Manager expressly does not undertake to review the financial condition or affairs of the Issuer during the life of the Notes or to advise any investor in the Notes of any information coming to its attention.

**RESTRICTIONS ON MARKETING AND SALES TO RETAIL INVESTORS IN THE EEA**

The Notes are complex financial instruments and are not a suitable or appropriate investment for all investors. In some jurisdictions, regulatory authorities have adopted or published laws, regulations or guidance with respect to the offer or sale of securities such as the Notes to retail investors.

In particular, in June 2015, the U.K. Financial Conduct Authority (the "**FCA**") published the Product Intervention (Contingent Convertible Instruments and Mutual Society Shares) Instrument 2015 (the "**PI Instrument**"). In addition, (i) on 1 January 2018, the provisions of PRIIPs became directly applicable in all EEA member states and (ii) MiFID II was required to be implemented in EEA member states by 3 January 2018. Together the PI Instrument, PRIIPs and MiFID II are referred to as the "**Regulations**".

The Regulations set out various obligations in relation to (i) the manufacture and distribution of financial instruments and (ii) the offering, sale and distribution of packaged retail and insurance-based investment products and certain contingent write-down or convertible securities, such as the Notes.

Potential investors in the Notes should inform themselves of, and comply with, any applicable laws, regulations or regulatory guidance with respect to any resale of the Notes (or any beneficial interests therein) including the Regulations.

Certain of the Managers are required to comply with some or all of the Regulations. By purchasing, or making or accepting an offer to purchase, any Notes (or a beneficial interest therein) from the Issuer and/or the Managers, you represent, warrant, agree with and undertake to the Issuer and each of the Managers that:

1. you are not a retail client in the EEA (as defined in MiFID II);

2. whether or not you are subject to the Regulations, you will not

   (A) sell or offer the Notes (or any beneficial interest therein) to retail clients in the EEA (as defined in MiFID II); or

   (B) communicate (including the distribution of this Information Memorandum) or approve an invitation or inducement to participate in, acquire or underwrite the Notes (or any beneficial interests therein) where that invitation or inducement is addressed to or disseminated in such a way that it is likely to be received by a retail client in the EEA (in each case within the meaning of MiFID II).

   In selling or offering the Notes or making or approving communications relating to the Notes you may not rely on the limited exemptions set out in the PI Instrument; and

3. you will at all times comply with all applicable laws, regulations and regulatory guidance (whether inside or outside the EEA) relating to the promotion, offering, distribution and/or sale of the Notes (or any beneficial interests therein), including (without limitation) MiFID II and any other applicable laws, regulations and regulatory guidance relating to determining the appropriateness and/or suitability of an investment in the Notes (or any beneficial interests therein) by investors in any relevant jurisdiction.

You further acknowledge that no key information document (KID) under PRIIPs has been prepared and therefore offering or selling the Notes or otherwise making them available to any retail investor in the EEA may be unlawful under PRIIPs.

**PRIIPs/Prohibition of sales to EEA retail investors**—The Notes are not intended to be offered, sold or otherwise made available to, and should not be offered, sold or otherwise made available to, any retail investor in the EEA. For these purposes, the expression "retail investor" means a person who is one (or more) of: (i) a retail client as defined in point (11) of Article 4(1) of MiFID II; or (ii) a customer within the meaning of Directive (EU) 2016/97, where that customer would not qualify as a professional client as defined in point (10) of Article 4(1) of MiFID II. Consequently, no key information document required by PRIIPs for offering or selling the Notes or otherwise making them available to retail investors in the EEA has been prepared and therefore offering or selling the Notes or otherwise making them available to any retail investor in the EEA may be unlawful under PRIIPs.

**MiFID II product governance**—A distributor subject to MiFID II is responsible for undertaking its own target market assessment in respect of the Notes and determining appropriate distribution channels.

## SINGAPORE SFA PRODUCT CLASSIFICATION

In connection with Section 309B of the Securities and Futures Act (Chapter 289) of Singapore (the "**SFA**") and the Securities and Futures (Capital Markets Products) Regulations 2018 of Singapore (the "**CMP Regulations 2018**"), the Issuer has determined, and hereby notifies all relevant persons (as defined in Section 309A(1) of the SFA), that the Notes are 'prescribed capital markets products' (as defined in the CMP Regulations 2018) and Excluded Investment Products (as defined in MAS Notice SFA 04-N12: Notice on the Sale of Investment Products and MAS Notice FAA-N16: Notice on Recommendations on Investment Products).

## STABILISATION

In connection with the issue of the Notes, Credit Suisse Securities (USA) LLC (the "**Stabilising Manager**") (or any person acting on behalf of the Stabilising Manager) may over-allot the Notes or effect transactions with a view to supporting the market price of the Notes at a level higher than that which might otherwise prevail. However, there is no assurance that the Stabilising Manager (or any person acting on behalf of the Stabilising Manager) will undertake stabilisation action. Any stabilisation action may begin on or after the date on which adequate public disclosure of the terms of the offer of the Notes is made and, if begun, may be ended at any time, but it must end no later than the earlier of 30 days after the issue date of the Notes and 60 days after the date of the allotment of the Notes. Any stabilisation action or over-allotment must be conducted by the Stabilising Manager (or any person acting on behalf of the Stabilising Manager) in accordance with all applicable laws and rules.

**EACH PURCHASER OF THE NOTES MUST COMPLY WITH ALL APPLICABLE LAWS AND REGULATIONS IN FORCE IN ANY JURISDICTION IN WHICH IT PURCHASES, OFFERS OR SELLS THE NOTES OR POSSESSES OR DISTRIBUTES THIS INFORMATION MEMORANDUM AND MUST OBTAIN ANY CONSENT, APPROVAL, OR PERMISSION REQUIRED BY IT FOR THE PURCHASE, OFFER OR SALE BY IT OF THE NOTES UNDER THE LAWS AND REGULATIONS IN FORCE IN ANY JURISDICTION TO WHICH IT IS SUBJECT OR IN WHICH IT MAKES SUCH PURCHASES, OFFERS OR SALES, AND THE ISSUER AND THE MANAGERS SHALL NOT HAVE ANY RESPONSIBILITY THEREFOR.**

The Notes are being offered and sold outside the United States to non-U.S. persons in reliance on Regulation S and within the United States to persons reasonably believed to be QIBs in reliance on Rule 144A. The Notes have not been approved or disapproved by the U.S. Securities and Exchange Commission (the "**SEC**"), any state securities commission in the United States or any other U.S. regulatory authority, nor have any of the foregoing authorities passed upon or endorsed the merits of the offering of the Notes or the accuracy or the adequacy of this Information Memorandum. Any representation to the contrary is a criminal offence under the laws of the United States.

## AVAILABLE INFORMATION

For as long as any of the Notes remain outstanding and are "restricted securities" within the meaning of Rule 144(a)(3) under the Securities Act, the Issuer has agreed that it will, during any period in which it is neither subject to nor in compliance with the reporting requirements of Sections 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), nor exempt from reporting under the Exchange Act pursuant to Rule 12g3-2(b) thereunder, furnish, upon request, to any person in whose name such restricted securities are registered, to any owner of a beneficial interest in such restricted securities, and to any prospective purchaser of such restricted

securities or beneficial interest therein designated by any such person or beneficial owner, the information required to be delivered pursuant to Rule 144A(d)(4) under the Securities Act.

By requesting copies of the documents referred to herein or by making any other requests for additional information relating to the issue of the Notes or to the Issuer, each potential investor agrees to keep confidential the various documents and all written information which from time to time has been or will be disclosed to it, to the extent that such documents or information are not otherwise publicly available, and agrees not to disclose any portion of such information to any person except in connection with the proposed resale of the Notes or as required by law.

**NOTICE TO U.S. INVESTORS**

With respect to the issue and sale of the Notes in the United States, this Information Memorandum is confidential and has been prepared by the Issuer solely for use in connection with the issue of the Notes. In the United States, this Information Memorandum is personal to each person or entity to whom it has been delivered by the Issuer or the Managers or affiliates thereof. Distribution in the United States of this Information Memorandum to any person other than such persons or entities and those persons or entities, if any, retained to advise such persons or entities is unauthorised and any disclosure of any of its contents, without the prior written consent of the Issuer, is prohibited. Each prospective purchaser in the United States, by accepting delivery of this Information Memorandum, agrees to the foregoing and agrees not to reproduce all or any part of this Information Memorandum. This Information Memorandum is not a prospectus for the purposes of Section 12(a)(2) or any other provision of or rule under the Securities Act.

Additionally, each purchaser of any of the Notes will be deemed to have made the representations, warranties and acknowledgements that are intended to restrict the resale or other transfer of such Notes and are described in this Information Memorandum (see "*Notice to Investors*"). The Notes have not been nor will they be registered under the Securities Act, and they are therefore subject to certain restrictions on transfer. If any Notes are transferred pursuant to Rule 144A, prospective investors are hereby notified that the seller of any Notes may be relying upon the exemption from the provisions of Section 5 of the Securities Act provided by Rule 144A. For a description of certain further restrictions on resale or transfer of the Notes, see "*Notice to Investors*" below.

**SERVICE OF PROCESS AND ENFORCEMENT OF CIVIL LIABILITIES**

Any dispute that might arise under the Notes shall fall within the exclusive jurisdiction of the Courts of Zurich, Switzerland. Furthermore, the Issuer is a corporation organised under the laws of Switzerland. Most of the officers and directors named herein reside outside the United States and all or a substantial portion of the assets of the Issuer and of such officers and directors are located outside the United States. As a result, it may not be possible for investors to effect service of process outside Switzerland upon the Issuer or such persons, or to enforce judgments against them obtained in courts outside Switzerland predicated upon civil liabilities of the Issuer or such directors and officers under laws other than Swiss law, including any judgment predicated upon United States federal securities laws.

**WARNING**

This Information Memorandum does not constitute an offer to sell or the solicitation of an offer to buy any Notes in any jurisdiction to any person to whom it is unlawful to make an offer or solicitation in such jurisdiction. The distribution of this Information Memorandum and the offer or sale of the Notes may be restricted by law in certain jurisdictions. Neither the Issuer nor the Managers represent that this Information Memorandum may be lawfully distributed, or that any Notes may be lawfully offered, in compliance with any applicable registration or other requirements in any such

jurisdiction, or pursuant to an exemption available thereunder, or assume any responsibility for facilitating any such distribution or offering. In particular, no action has been taken by the Issuer or the Managers that is intended to permit a public offering of any Notes or distribution of this Information Memorandum in any jurisdiction where action for that purpose is required other than Switzerland. Accordingly, no Notes may be offered or sold, directly or indirectly, and neither this Information Memorandum nor any advertisement or other offering material may be distributed or published in any jurisdiction, except under circumstances that will result in compliance with any applicable laws and regulations. Persons into whose possession this Information Memorandum or any Notes may come must inform themselves about, and observe, any such restrictions on the distribution of this Information Memorandum and the offering and sale of Notes. In particular, there are restrictions on the distribution of this Information Memorandum and the offer or sale of Notes in the United States, the EEA, the United Kingdom, Hong Kong, Japan, Singapore, Canada, Taiwan, Korea and People's Republic of China, see "*Notice to Investors*" and "*Plan of Distribution*".

All references in this document to "**U.S. dollars**", "**USD**" and "**U.S.$**" refer to United States dollars and to "**CHF**" refer to Swiss francs. In addition, all references to "**euro**" and "**EUR**" refer to the currency introduced at the start of the third stage of European Economic and Monetary Union pursuant to the Treaty on the Functioning of the European Union, as amended.

**TABLE OF CONTENTS**

| | Page | | Page |
|---|---|---|---|
| SUMMARY | 1 | USE OF PROCEEDS | 99 |
| RISK FACTORS | 10 | CREDIT SUISSE GROUP AG | 100 |
| FORWARD-LOOKING STATEMENTS | 40 | FINANCIAL INFORMATION OF CSG | 128 |
| DOCUMENTS INCORPORATED BY REFERENCE | 41 | TAXATION | 129 |
| INFORMATION REGARDING THE CET1 RATIO AND SWISS CAPITAL RATIOS | 43 | NOTICE TO INVESTORS | 135 |
| TERMS AND CONDITIONS OF THE NOTES | 63 | PLAN OF DISTRIBUTION | 139 |
| SUMMARY OF PROVISIONS RELATING TO THE NOTES IN GLOBAL FORM AND BOOK-ENTRY CLEARANCE SYSTEMS | 94 | ERISA CONSIDERATIONS | 146 |
| | | GENERAL INFORMATION | 149 |

## SUMMARY

*This summary must be read as an introduction to this Information Memorandum and any decision to invest in the Notes should be based on a consideration of this Information Memorandum as a whole, including the documents incorporated herein by reference.*

*Words and expressions defined in the Conditions shall have the same meanings when used in this summary.*

**Issuer** . . . . . . . . . . . . . . . . . . . . . . .    Credit Suisse Group AG.

Credit Suisse Group AG (together with its consolidated subsidiaries, the "**Group**") is a global financial services company domiciled in Switzerland.

**Notes** . . . . . . . . . . . . . . . . . . . . . . .    U.S.$1,000,000,000 5.100 per cent. Perpetual Tier 1 Contingent Write-down Capital Notes.

**Risk Factors** . . . . . . . . . . . . . . . . . .    There are certain factors that may affect the Issuer's ability to fulfil its obligations under the Notes. Certain of these factors are set out under "*Risk Factors*" below and include liquidity risks, market risks, credit risks, country and currency exchange risks, operational risks, legal and regulatory risks and competition risks, among others. In addition, there are certain factors that are material for the purpose of assessing the risks associated with the Notes. These include the fact that the Notes may not be a suitable investment for all investors, certain risks relating to the structure of the Notes including that they are subject to a Write-down upon the occurrence of a Write-down Event, which will result in Holders' loss of their entire investment in the Notes and certain market risks.

**Sole Book-Running Manager** . . . . . . .    Credit Suisse Securities (USA) LLC.

**Joint Lead Managers** . . . . . . . . . . . .    Banca IMI S.p.A., Danske Bank A/S, ING Financial Markets LLC, Lloyds Securities Inc., NatWest Markets Securities Inc., RBC Capital Markets, LLC, Santander Investment Securities Inc., Scotia Capital (USA) Inc., Société Générale, TD Securities (USA) LLC and Wells Fargo Securities, LLC.

**Co-Managers** . . . . . . . . . . . . . . . . . .    ABN AMRO Securities (USA) LLC, Banco Bilbao Vizcaya Argentaria, SA, BMO Capital Markets Corp., Capital One Securities, Inc., CIBC World Markets Corp., Citizens Capital Markets, Inc., Natixis Securities Americas LLC, Nordea Bank Abp, Rabo Securities USA, Inc., Standard Chartered Bank, SunTrust Robinson Humphrey, Inc., UniCredit Bank AG, ANZ Securities, Inc., Banco de Sabadell, S.A., Bankia, S.A., BNY Mellon Capital Markets, LLC, CaixaBank, S.A., Commonwealth Bank of Australia, Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., Morgan Stanley & Co. LLC, nabSecurities, LLC, Regions Securities LLC, Skandinaviska Enskilda Banken AB (publ) and The Huntington Investment Company.

1

**Principal Paying Agent, Custodian and Transfer Agent** . . . . . . . . . . . . Citibank, N.A., London Branch.

**Swiss Paying Agent and Listing Agent** Credit Suisse AG.

**Calculation Agent** . . . . . . . . . . . . . . Unless the Issuer has elected to redeem the Notes in accordance with Condition 8 and provided that no Write-down Event has occurred, the Issuer will appoint a Calculation Agent for the Notes prior to the Reset Determination Date relating to the First Reset Date.

The Issuer will notify the Holders prior to any such appointment in accordance with the Conditions. The Issuer may appoint one of its affiliates or any other person as Calculation Agent, so long as such affiliate or other person is a leading bank or financial institution that is experienced in the calculations or determinations to be made by the Calculation Agent.

**Replacement Rate Agent** . . . . . . . . . Unless the Issuer has elected to redeem the Notes in accordance with Condition 8 and provided that no Write-down Event has occurred, the Issuer will appoint a Replacement Rate Agent for the Notes on or prior to the first Reset Determination Date on which the Treasury Yield cannot be determined by the Calculation Agent pursuant to the methods described in clause (i) or (ii) of the definition thereof.

The Issuer will notify the Holders prior to any such appointment in accordance with the Conditions. The Issuer may appoint an affiliate of the Issuer or any other person as Replacement Rate Agent, so long as such affiliate or other person is a leading bank or financial institution that is experienced in the calculations or determinations to be made by the Replacement Rate Agent.

**Registrar** . . . . . . . . . . . . . . . . . . . . Citigroup Global Markets Europe AG.

**Currency** . . . . . . . . . . . . . . . . . . . . United States dollars.

**Maturity Date** . . . . . . . . . . . . . . . . The Notes are perpetual securities and have no fixed or final redemption date. Unless previously redeemed or purchased and cancelled, and provided that no Write-down Event has occurred and subject to the satisfaction of certain conditions described herein and applicable law, the Notes may be redeemed at the option of the Issuer on the First Optional Redemption Date or on any Reset Date thereafter, in whole but not in part, at 100 per cent. of their aggregate principal amount plus accrued but unpaid interest thereon.

**Issue Price** . . . . . . . . . . . . . . . . . . . 100.000 per cent.

**Form of Notes** . . . . . . . . . . . . . . . . Registered.

2

The Notes that are sold outside the United States in an "offshore transaction" within the meaning of Regulation S will initially be represented by a Regulation S Global Certificate, without interest coupons, which will be deposited with a Custodian for, and registered in the name of Cede & Co. as nominee for, DTC.

The Notes that are sold in the United States only to persons reasonably believed to be QIBs within the meaning of Rule 144A will initially be represented by one or more Rule 144A Global Certificates, without interest coupons, which will be deposited with a Custodian for, and registered in the name of Cede & Co. as nominee for, DTC.

The provisions governing the exchange of beneficial interests in Notes represented by Global Certificates for beneficial interests in Notes represented by other Global Certificates and definitive Certificates are described in "*Terms and Conditions of the Notes—Amount, Denomination and Form*" and "*Terms and Conditions of the Notes—Transfers of Notes*".

**Denominations** . . . . . . . . . . . . . . . . U.S.$200,000 and integral multiples of U.S.$1,000 in excess thereof.

**Interest and Interest Payment Dates** . The Notes will bear interest at an initial rate of 5.100 per cent. per annum from (and including) the Issue Date to (but excluding) the First Optional Redemption Date, and thereafter at the applicable Reset Rate to be determined by the Calculation Agent, based on the Treasury Yield plus 3.293 per cent., payable, subject as provided herein, semi-annually in arrear on 24 January and 24 July in each year, commencing on 24 July 2020.

**Discretionary Interest Payments** . . . . Payments of interest will be made at the sole discretion of the Issuer and will be subject to mandatory cancellation if CSG does not have sufficient distributable profits, does not satisfy minimum regulatory capital adequacy requirements or the Regulator prohibits such payment, as more particularly described in "*Terms and Conditions of the Notes—Interest— Cancellation of Interest; Prohibited Interest*".

The cancellation or non-payment of interest shall not constitute a default for any purpose. Any interest not paid on any relevant Interest Payment Date shall not accumulate or be payable at any time thereafter, and Holders shall have no right thereto.

**Status of the Notes** . . . . . . . . . . . . . The Notes will constitute direct, unsecured and subordinated obligations of the Issuer and will rank *pari passu* and without any preference among themselves. The rights and claims of Holders are subordinated as described in "*Terms and Conditions of the Notes—Subordination of the Notes*".

<table>
<tr><td></td><td>In the event of an order being made, or an effective resolution being passed, for the liquidation or winding-up of the Issuer, subject to certain exceptions as described herein under "*Terms and Conditions of the Notes—Subordination of the Notes—Subordination*", the claims of Holders against the Issuer in respect of or arising under (including, without limitation, any damages awarded for breach of any obligation under) the Notes shall rank (i) junior to all claims of Priority Creditors, (ii) *pari passu* with Parity Obligations and (iii) senior to the rights and claims of all holders of Junior Capital.

"**Junior Capital**" means (i) all classes of paid-in capital in relation to shares (and participation certificates, if any) of the Issuer and (ii) all other obligations of the Issuer that rank, or are expressed to rank, junior to claims in respect of the Notes and/or any Parity Obligation;

"**Parity Obligations**" means (i) all obligations of the Issuer in respect of CSG Tier 1 Instruments (excluding any such obligations that rank, or are expressed to rank, junior to claims in respect of the Notes) and (ii) any other securities or obligations (including any guarantee, credit support agreement or similar undertaking) of the Issuer that rank, or are expressed to rank, *pari passu* with the obligations of the Issuer under the Notes and/or any other Parity Obligation; and

"**Priority Creditors**" means creditors of the Issuer whose claims are in respect of debt and other obligations (including those in respect of bonds, notes, debentures and guarantees) that are unsubordinated, or that are subordinated (including, but not limited to, CSG Tier 2 Instruments) and that do not, or are not expressly stated to, rank *pari passu* with, or junior to, the obligations of the Issuer under the Notes and/or any Parity Obligation.</td></tr>
<tr><td>**Redemption, Substitution or Variation**</td><td>Unless previously redeemed or purchased and cancelled, and provided that a Write-down Event has not occurred on or prior to the applicable date of notice or date fixed for redemption and subject to certain conditions as described herein under "*Terms and Conditions of the Notes—Redemption, Substitution, Variation and Purchase*", the Notes will be redeemable at the option of the Issuer, in whole but not in part, upon giving not less than ten nor more than 60 days' notice to Holders notifying the date fixed for redemption, in the following circumstances:

(i)    at 100 per cent. of their aggregate principal amount plus accrued but unpaid interest thereon, on the First Optional Redemption Date or on any Reset Date thereafter;

(ii)   at 100 per cent. of their aggregate principal amount plus accrued but unpaid interest thereon, if a Tax Event occurs; or</td></tr>
</table>

4

(iii) at 100 per cent. of their aggregate principal amount plus accrued but unpaid interest thereon, if a Capital Event occurs.

If a Tax Event or a Capital Event has occurred and is continuing, the Issuer may, subject to certain conditions as described herein under "*Terms and Conditions of the Notes—Redemption, Substitution, Variation and Purchase*", at its option and without any requirement for the consent or approval of Holders (unless required by the mandatory provisions of Swiss law), either substitute all (but not some only) of the Notes for, or vary the terms of the Notes so that the Notes remain or, as appropriate, become, Compliant Securities (and provided such Tax Event or, as the case may be, Capital Event, no longer continues following, and no other Tax Event or Capital Event arises as a result of, such substitution or variation), as more particularly described in "*Terms and Conditions of the Notes—Redemption, Substitution, Variation and Purchase*".

A "**Tax Event**" will be deemed to have occurred if in making any payments on the Notes, the Issuer has paid or will or would on the next payment date be required to pay Additional Amounts or has paid, or will or would be required to pay, any additional tax in respect of the Notes, as more fully described under "*Terms and Conditions of the Notes—Redemption, Substitution, Variation and Purchase*".

A "**Capital Event**" will be deemed to have occurred if a change in National Regulations and/or BIS Regulations occurs on or after the Issue Date having the effect that the entire principal amount of Notes ceases to be eligible to be both (i) treated as Additional Tier 1 Capital under BIS Regulations and (ii) counted towards the Going Concern Requirement.

**Write-down** . . . . . . . . . . . . . . . . . . . **Following the occurrence of a Write-down Event, a Write-down will occur and the full principal amount of the Notes will automatically and permanently be written-down to zero on the Write-down Date.**

A Write-down will result in the full principal amount of the Notes being automatically and permanently written-down to zero and all rights of Holders for payment of any accrued but unpaid interest or any other amounts under or in respect of the Notes (including, without limitation, any amounts arising as a result of, or due and payable upon the occurrence of, an Event of Default) becoming null and void, irrespective of whether such amounts became due and payable prior to the occurrence of the Write-down Event, the date of the Write-down Notice or the Write-down Date. As a result, holders will lose their entire investment in the Notes.

A "**Write-down Event**" means either a Contingency Event or a Viability Event.

5

A "**Contingency Event**" will occur if CSG (or any Substitute Issuer) gives Holders a Contingency Event Notice.

CSG (or any Substitute Issuer) is required to give Holders a Contingency Event Notice (within the required notice period) if as at any Reporting Date, the CET1 Ratio contained in the relevant Financial Report is below 7.00 per cent.

Notwithstanding the above, if the Regulator (being, at the Issue Date, the Swiss Financial Market Supervisory Authority FINMA), at the request of CSG, has agreed on or prior to the publication of the relevant Financial Report that a Write-down shall not occur because it is satisfied that actions, circumstances or events have had, or imminently will have, the effect of restoring the CET1 Ratio to a level above 7.00 per cent. that the Regulator and CSG deem, in their absolute discretion, to be adequate at such time, CSG (or any Substitute Issuer) will not be required to give Holders a Contingency Event Notice and no Contingency Event in relation thereto shall be deemed to have occurred.

Subject to the above, CSG (or any Substitute Issuer) is required to give Holders a Contingency Event Notice no later than the fifth Business Day after the date of publication of the relevant Financial Report.

A "**Viability Event**" will occur if prior to a Statutory Loss Absorption Date (if any) either:

(a)    the Regulator has notified CSG that it has determined that a write-down of the Notes, together with the conversion or write-down/off of holders' claims in respect of any and all other Going Concern Capital Instruments, Tier 1 Instruments and Tier 2 Instruments that, pursuant to their terms or by operation of law, are capable of being converted into equity or written down/off at that time is, because customary measures to improve CSG's capital adequacy are at the time inadequate or unfeasible, an essential requirement to prevent CSG from becoming insolvent, bankrupt or unable to pay a material part of its debts as they fall due, or from ceasing to carry on its business; or

(b)    customary measures to improve CSG's capital adequacy being at the time inadequate or unfeasible, CSG has received an irrevocable commitment of extraordinary support from the Public Sector (beyond customary transactions and arrangements in the ordinary course) that has, or imminently will have, the effect of improving CSG's capital adequacy and without which, in the determination of the Regulator, CSG would have become insolvent, bankrupt, unable to pay a material part of its debts as they fall due or unable to carry on its business.

6

Following the occurrence of a Viability Event, CSG (or any Substitute Issuer) is required to give notice to Holders no later than three Business Days after the occurrence thereof.

See "*Terms and Conditions of the Notes—Write-down*" for more information.

**Each Holder and Indirect Holder agrees, by accepting an interest in such Note, to be bound by and consents to the application of the Write-down.**

Taxation . . . . . . . . . . . . . . . . . . . . . . . The Issuer will pay such Additional Amounts as may be necessary in order that the net payment received by each Holder in respect of the Notes, after withholding for any taxes imposed on the Issuer by tax authorities in Switzerland (or in any political subdivision thereof or therein having power to tax) upon payments made by or on behalf of the Issuer under the Notes will equal the amount that would have been received in the absence of any such withholding taxes, save in certain limited circumstances as more particularly set out in "*Terms and Conditions of the Notes—Taxation*". For a discussion of the U.S. federal income tax treatment of the Notes, see "*Taxation—United States*".

ERISA . . . . . . . . . . . . . . . . . . . . . . . Each purchaser of a Note and/or Holder and each transferee thereof will be deemed to have made certain representations regarding certain employee benefit matters. See "*Notice to Investors*" and "*ERISA Considerations*".

Events of Default . . . . . . . . . . . . . . It will be an Event of Default if payment is not made for a period of ten days or more in the case of principal due in respect of the Notes or 30 days or more in the case of interest due in respect of the Notes or certain measures are taken under Swiss bankruptcy, insolvency or other similar law with respect to the Issuer as more particularly described in "*Terms and Conditions of the Notes—Events of Default*". Holders have limited enforcement remedies, as more particularly described in "*Terms and Conditions of the Notes—Events of Default*".

Enforcement . . . . . . . . . . . . . . . . . . Upon an Event of Default in respect of the Notes, Holders will have only limited enforcement remedies in the case of enforcing payment of sums due.

Following an Event of Default and non payment of the relevant sums due within a statutory period following the issue of a writ of payment as required by Swiss insolvency laws, Holders may only institute proceedings against CSG in Switzerland (but not elsewhere) to enforce their rights under Swiss insolvency laws.

7

| | |
|---|---|
| **Issuer Substitution** . . . . . . . . . . . . . | The Issuer may at any time, at the discretion of the Issuer and without any requirement for the further consent of Holders, be substituted as Issuer by another entity, provided certain conditions (including the giving by CSG of a subordinated guarantee) are satisfied, as more particularly described in "*Terms and Conditions of the Notes—Meetings of Holders, Modification and Substitution—Issuer Substitution*". |
| **Use of Proceeds** . . . . . . . . . . . . . . | The net proceeds from the Notes, amounting to U.S.\$985,000,000, will be used by the Issuer for its general corporate purposes, which could include investments in its subsidiaries. |
| **Expected Rating** . . . . . . . . . . . . . . | The Notes are expected upon issue to be rated BB by Fitch and BB- by S&P. A security rating is not a recommendation to buy, sell or hold securities and may be subject to suspension, modification or withdrawal at any time by the assigning rating agency. |
| **Listing and Admission to Trading** . . . | Application will be made to SIX Exchange Regulation AG for listing of the Notes on the SIX Swiss Exchange. The Notes are expected to be provisionally admitted to trading on the SIX Swiss Exchange from 24 January 2020. The last trading day for the Notes is expected to be the second trading day prior to the date on which the Notes are fully redeemed in accordance with the Conditions or the Write-down Date, as applicable. |
| **Clearing Systems** . . . . . . . . . . . . . . | The Notes shall be accepted for clearing through, in the United States, DTC and, outside the United States, the systems operated by Euroclear, Clearstream, Luxembourg, SIX SIS AG or any other clearing system. As the Global Certificates are to be held by, or on behalf of, DTC, Indirect Holders will have to rely on their procedures for transfers of, and payments on, the Notes and communications with the Issuer. |
| **Governing Law/Jurisdiction** . . . . . . . . | Swiss law/City of Zurich, Switzerland. |
| **Transfer Restrictions and Selling Restrictions** . . . . . . . . . . . . . . . . | The Notes are subject to restrictions on their offering, sale, delivery and transfer both generally and specifically in the United States, the EEA, the United Kingdom, Hong Kong, Japan, Singapore, Canada, Taiwan, Korea and People's Republic of China. These restrictions are described under "*Notice to Investors*" and "*Plan of Distribution*". |
| **Rule 144A** . . . . . . . . . . . . . . . . . . | Offers and sales in accordance with Rule 144A will be permitted, subject to compliance with all relevant, legal and regulatory requirements of the United States. |
| **Regulation S** . . . . . . . . . . . . . . . . . | Offers and sales in accordance with Regulation S will be permitted, subject to compliance with all relevant, legal and regulatory requirements of the United States. |

8

**Security Codes** . . . . . . . . . . . . . . . . .   *Rule 144A Notes*
ISIN: US225401AN84
Common Code: 210897267
CUSIP: 225401AN8
Swiss Security Number: 52093578

*Regulation S Notes*
ISIN: USH3698DCV40
Common Code: 210770283
CUSIP: H3698DCV4
Swiss Security Number: 52080154