# EXHIBIT D

**IMPORTANT NOTICE**

**NOT FOR DISTRIBUTION TO ANY U.S. PERSON OR TO ANY PERSON OR ADDRESS IN THE U.S. EXCEPT FOR QUALIFIED INSTITUTIONAL BUYERS.**

**IMPORTANT:** You must read the following before continuing. The following disclaimer applies to the Information Memorandum following this page, and you are therefore advised to read this carefully before reading, accessing or making any other use of the Information Memorandum. In accessing the Information Memorandum, you agree to be bound by the following terms and conditions, including any modifications to them any time you receive any information from us as a result of such access. You acknowledge that you will not forward this electronic transmission or the attached Information Memorandum to any other person.

THE FOLLOWING INFORMATION MEMORANDUM AND ITS CONTENTS ARE CONFIDENTIAL AND MAY NOT BE FORWARDED OR DISTRIBUTED TO ANY OTHER PERSON AND MAY NOT BE REPRODUCED IN ANY MANNER WHATSOEVER. ANY FORWARDING, DISTRIBUTION OR REPRODUCTION OF THIS DOCUMENT IN WHOLE OR IN PART IS PROHIBITED. FAILURE TO COMPLY WITH THIS DIRECTIVE MAY RESULT IN A VIOLATION OF THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**") OR THE APPLICABLE LAWS OF OTHER JURISDICTIONS. IF YOU HAVE GAINED ACCESS TO THIS TRANSMISSION CONTRARY TO ANY OF THE FOREGOING RESTRICTIONS, YOU ARE NOT AUTHORISED AND WILL NOT BE ABLE TO PURCHASE ANY OF THE SECURITIES DESCRIBED THEREIN.

EXCEPT AS DESCRIBED BELOW, NOTHING IN THIS ELECTRONIC TRANSMISSION CONSTITUTES AN OFFER OF SECURITIES FOR SALE IN THE UNITED STATES OR ANY JURISDICTION WHERE IT IS UNLAWFUL TO DO SO. THE SECURITIES HAVE NOT BEEN, AND WILL NOT BE, REGISTERED UNDER THE SECURITIES ACT OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OF THE UNITED STATES OR OTHER JURISDICTION, AND THE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS (WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT), EXCEPT PURSUANT TO AN EXEMPTION FROM, OR A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND APPLICABLE STATE OR LOCAL SECURITIES LAWS.

THE SECURITIES REFERENCED HEREIN MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (1) IN ACCORDANCE WITH RULE 144A UNDER THE SECURITIES ACT TO A PERSON THAT THE HOLDER AND ANY PERSON ACTING ON ITS BEHALF REASONABLY BELIEVE IS A "QUALIFIED INSTITUTIONAL BUYER" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT (A "**QIB**") THAT IS ACQUIRING THE NOTES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF ONE OR MORE QIBS, OR (2) IN AN OFFSHORE TRANSACTION TO A NON-U.S. PERSON IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES.

**Confirmation of your Representation:** You have been sent this Information Memorandum on the basis that you have confirmed to the Managers (as defined herein), being the senders of the attached, that: (i) you have understood and agree to the terms set out herein, (ii) you are either (a) not a U.S. person (within the meaning of Regulation S of the Securities Act), and are not acting for the account or benefit of any U.S. person, and that you and the electronic mail address that you have given us and to which this e-mail has been delivered are not located in the United States, its territories and possessions, or (b) a person that is a QIB, (iii) you consent to delivery by electronic transmission, (iv) you will not transmit the attached Information Memorandum (or any copy of it or part thereof) or disclose, whether orally or in writing, any of its contents to

any other person except with the consent of the relevant Manager, (v) you acknowledge that you will make your own assessment regarding any legal, taxation or other economic considerations with respect to your decision to subscribe for, or purchase any of, the securities and (vi) if you are a person in the United Kingdom, then you are a person who (x) has professional experience in matters relating to investments falling within Article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2005 (as amended) (the "**Order**") or (y) is a high net worth entity falling within Article 49(2)(a) to (d) of the Order (all such persons together being referred to as "**Relevant Persons**"). In the United Kingdom, the Information Memorandum may only be communicated or caused to be communicated to persons in circumstances where Section 21(1) of the Financial Services and Markets Act 2000 does not apply and may only be distributed to Relevant Persons and must not be acted on or relied on by persons who are not Relevant Persons. Any investment or investment activity to which the Information Memorandum relates is available only to Relevant Persons and will be engaged in only with Relevant Persons.

You are reminded that the Information Memorandum has been delivered to you on the basis that you are a person into whose possession the Information Memorandum may be lawfully delivered in accordance with the laws of the jurisdiction in which you are located and you may not, nor are you authorised to, deliver the Information Memorandum to any other person.

The Information Memorandum does not constitute, and may not be used in connection with, an offer or solicitation in any place where offers or solicitations are not permitted by law. If a jurisdiction requires that the offering be made by a licenced broker or dealer and a Manager, or any affiliate of such Manager, is a licenced broker or dealer in that jurisdiction, the offering shall be deemed to be made by such Manager or such affiliate on behalf of Credit Suisse AG in such jurisdiction.

This Information Memorandum has been sent to you in an electronic form. You are reminded that documents transmitted via this medium may be altered or changed during the process of electronic transmission and consequently none of the Issuer, the Managers nor any person who controls them nor any director, officer, employee nor agent of it or affiliate of any such person accepts any liability or responsibility whatsoever in respect of any difference between the Information Memorandum distributed to you in electronic format and the hard copy version available to you on request from the Managers.



# Credit Suisse AG

*(incorporated with limited liability in Switzerland)*

## U.S.$2,500,000,000 6.500 per cent. Tier 2 Capital Notes due 2023

### Issue Price 100 per cent.

The U.S.$2,500,000,000 6.500 per cent. Tier 2 Capital Notes due 2023 (the "Notes") will be issued by Credit Suisse AG (the "Issuer" or "CS") on 8 August 2013 (the "Issue Date"). Interest on the Notes will accrue at a rate of 6.500 per cent. per annum payable semi-annually in arrear. Payments on the Notes will be made without deduction for or on account of taxes of Switzerland to the extent described herein under "*Terms and Conditions of the Notes — Taxation*".

Unless previously redeemed or purchased and cancelled, and provided that no Write-down Event (as defined herein) has occurred, the Notes will mature on 8 August 2023 at their principal amount plus accrued but unpaid interest thereon. The Notes are subject to redemption in whole, but not in part, at the option of the Issuer, upon the occurrence of a Tax Event or upon the occurrence of a Capital Event (each as defined herein), as more particularly described in "*Terms and Conditions of the Notes — Redemption, Substitution, Variation and Purchase*". The Notes will constitute direct, unsecured and subordinated obligations of the Issuer and shall rank at all times *pari passu* and without any preference among themselves, as more particularly described herein under "*Terms and Conditions of the Notes — Status of the Notes*" and " *Terms and Conditions of the Notes — Subordination of the Notes*".

**If a Write-down Event (as defined herein) occurs, a Write-down (as defined herein) shall occur on the relevant Write-down Date (as defined herein), as more particularly described in "*Terms and Conditions of the Notes — Write-down*". In such circumstances, interest on the Notes shall cease to accrue, the full principal amount of each Note will automatically and permanently be written-down to zero, holders will lose their entire investment in the Notes and, except for the payment by the Issuer to the holders of the Notes of any Accrued Interest on the Notes and any Additional Amounts relating thereto, in each case, if and only to the extent accrued and unpaid prior to the date of the relevant Write-down Notice, all rights of any holder of Notes for payment of any amounts under or in respect of the Notes will become null and void. See "*Risk Factors — The likelihood of an occurrence of a write-down of the Notes is material for the purpose of assessing an investment in the Notes.*" Each holder and beneficial owner of a Note agrees, by accepting a direct or beneficial interest in such Note, to be bound by and consents to the application of the Write-down.**

The Notes are expected to be provisionally admitted to trading on the SIX Swiss Exchange AG ("SIX Swiss Exchange") from 7 August 2013. The last trading day will be the third dealing day prior to the date on which the Notes are fully redeemed or the Write-down Date, as applicable, in accordance with the Terms and Conditions of the Notes. Application will be made to the SIX Swiss Exchange for listing of the Notes. This Information Memorandum is an advertisement and not a prospectus for the purposes of EU Directive 2003/71/EU.

The Notes have not been, and will not be, registered under the U.S. Securities Act of 1933, as amended (the "Securities Act"). Notes may not be offered or sold or delivered within the United States or to, or for the account or benefit of, U.S. persons (as defined in Regulation S under the Securities Act ("Regulation S")), except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act. The Notes are being offered and sold only (A) in global form in the United States to "qualified institutional buyers" (as defined in Rule 144A under the Securities Act ("Rule 144A")) in reliance on Rule 144A and (B) in "offshore transactions" to non-U.S. persons (as defined in Regulation S) in reliance on Regulation S. Prospective purchasers are hereby notified that sellers of the Notes may be relying on the exemption from the provisions of section 5 of the Securities Act provided by Rule 144A or Regulation S. For a description of these and certain further restrictions on offers, sales and transfers of the Notes and distribution of this Information Memorandum, see "*Transfer Restrictions and Selling Restrictions*".

The Notes are to be issued in registered form in denominations of U.S.$200,000 and integral multiples of U.S.$1,000 in excess thereof and are represented by Global Certificates (as defined below), without interest coupons. The Notes which are sold in an "offshore transaction" within the meaning of Regulation S ("Regulation S Notes") will initially be represented by a permanent registered global certificate (each a "Regulation S Global Certificate") without interest coupons, which will be deposited with a common depositary on behalf of Euroclear Bank S.A./N.V. ("Euroclear") and Clearstream Banking, *société anonyme* ("Clearstream, Luxembourg"). Notes which are sold in the United States to "qualified institutional buyers" (each, a "QIB") within the meaning of Rule 144A ("Rule 144A Notes") will initially be represented by a permanent registered global certificate (each a "Rule 144A Global Certificate" and, together with the "Regulation S Global Certificate", the "Global Certificates"), without interest coupons, which will be deposited with a custodian (the "Custodian") for, and registered in the name of Cede & Co. as nominee for, The Depository Trust Company ("DTC"). The provisions governing the exchange of interests in Global Certificates for other Global Certificates and definitive Certificates are described in "*Terms and Conditions of the Notes — Amount, Denomination and Interest Basis and Form*" and "*Terms and Conditions of the Notes — Transfers of Notes*".

The Notes are expected upon issue to be rated BBB+ by Fitch Italia S.p.A. ("Fitch") and BBB- by Standard & Poor's Credit Market Services Europe Limited ("Standard & Poor's"). A rating is not a recommendation to buy, sell or hold securities and may be subject to suspension, reduction or withdrawal at any time by the assigning rating agency.

**An investment in Notes involves certain risks, including the risk that holders will lose their entire investment in the Notes. For a discussion of certain of the risks that potential investors should carefully consider before deciding to invest in the Notes, see "*Risk Factors*".**

The date of this Information Memorandum is 6 August 2013.

### *Sole Book-Running Manager*

**Credit Suisse**

### *Joint Lead Managers*

| Barclays | Danske Bank | Santander |
|---|---|---|
| **SOCIETE GENERALE** | | **UniCredit Bank** |

### *Co-Managers*

| ABN AMRO | Banca IMI | Banco Bilbao Vizcaya Argentaria, S.A. | BB Securities |
|---|---|---|---|
| BMO Capital Markets | BNY Mellon Capital Markets, LLC | BofA Merrill Lynch | Capital One Securities |
| CIBC | Citigroup | COMMERZBANK | Commonwealth Bank of Australia |
| Deutsche Bank Securities | Morgan Stanley | nabSecurities, LLC | Rabobank International |
| RBC Capital Markets | Scotiabank | SunTrust Robinson Humphrey | Swedbank AB |
| TD Securities | US Bancorp | Wells Fargo Securities | |

This Information Memorandum may only be used for the purposes for which it has been published.

The information contained in this Information Memorandum is, to the best of the Issuer's knowledge, correct and no material facts or circumstances have been omitted herefrom.

This Information Memorandum is to be read in conjunction with all documents which are incorporated herein by reference (see "*Documents Incorporated by Reference*"). This Information Memorandum shall be read and construed on the basis that such documents are incorporated and form part of this Information Memorandum.

The Managers (as defined herein under "*Transfer Restrictions and Selling Restrictions*") have not independently verified the information contained herein. Accordingly, no representation, warranty or undertaking, express or implied, is made and no responsibility or liability is accepted by the Managers as to the accuracy or completeness of the information contained or incorporated in this Information Memorandum or any other information provided by the Issuer in connection with the Notes.

No person is or has been authorised by the Issuer or the Managers to give any information or to make any representation not contained in or not consistent with this Information Memorandum or any other information supplied in connection with the Notes and, if given or made, such information or representation must not be relied upon as having been authorised by the Issuer or the Managers.

To the fullest extent permitted by law, the Managers accept no responsibility whatsoever for the contents of this Information Memorandum or for any other statement, made or purported to be made by the Managers or on their behalf in connection with the Issuer, CSG or the issue and offering of the Notes. The Managers accordingly disclaim all and any liability whether arising in tort or contract or otherwise (save as referred to above) which they might otherwise have in respect of this Information Memorandum or any such statement.

Neither this Information Memorandum nor any other information supplied in connection with the Notes (a) is intended to provide the basis of any credit or other evaluation or (b) should be considered as a recommendation by the Issuer or the Managers that any recipient of this Information Memorandum or any other information supplied in connection with the Notes should purchase any Notes. Each investor contemplating purchasing any Notes should make its own independent investigation of the financial condition and affairs, and its own appraisal of the creditworthiness, of the Issuer or CSG. Neither this Information Memorandum nor any other information supplied in connection with the issue of the Notes constitutes an offer or invitation by or on behalf of the Issuer or the Managers to any person to subscribe for or to purchase any Notes.

Neither the delivery of this Information Memorandum nor the offering, sale or delivery of any Notes shall in any circumstances imply that the information contained herein concerning the Issuer is correct at any time subsequent to the date hereof or that any other information supplied in connection with the issue of the Notes is correct as of any time subsequent to the date indicated in the document containing the same. Each Manager expressly does not undertake to review the financial condition or affairs of the Issuer or CSG during the life of the Notes or to advise any investor in the Notes of any information coming to its attention.

**Stabilisation**

In connection with the issue of the Notes, Credit Suisse Securities (Europe) Limited (the "**Stabilising Manager**") (or any person acting on behalf of the Stabilising Manager) may over-allot Notes or effect transactions with a view to supporting the market price of the Notes at a level higher than that which might otherwise prevail. However, there is no assurance that the Stabilising Manager (or any person acting on behalf of any Stabilising Manager) will undertake stabilisation action. Any stabilisation action may begin on or after

the date on which adequate public disclosure of the terms of the offer of the Notes is made and, if begun, may be ended at any time, but it must end no later than the earlier of 30 days after the issue date of the Notes and 60 days after the date of the allotment of the Notes. Any stabilisation action or over-allotment must be conducted by the Stabilising Manager (or any person acting on behalf of any Stabilising Manager) in accordance with all applicable laws and rules.

**EACH PURCHASER OF THE NOTES MUST COMPLY WITH ALL APPLICABLE LAWS AND REGULATIONS IN FORCE IN ANY JURISDICTION IN WHICH IT PURCHASES, OFFERS OR SELLS THE NOTES OR POSSESSES OR DISTRIBUTES THIS INFORMATION MEMORANDUM AND MUST OBTAIN ANY CONSENT, APPROVAL, OR PERMISSION REQUIRED BY IT FOR THE PURCHASE, OFFER OR SALE BY IT OF THE NOTES UNDER THE LAWS AND REGULATIONS IN FORCE IN ANY JURISDICTION TO WHICH IT IS SUBJECT OR IN WHICH IT MAKES SUCH PURCHASES, OFFERS OR SALES, AND THE ISSUER AND THE MANAGERS SHALL NOT HAVE ANY RESPONSIBILITY THEREFOR.**

The Notes are being offered and sold outside the United States to non-U.S. persons in reliance on Regulation S and within the United States to QIBs in reliance on Rule 144A. The Notes have not been approved or disapproved by the U.S. Securities and Exchange Commission (the "**SEC**"), any state securities commission in the United States or any other U.S. regulatory authority, nor have any of the foregoing authorities passed upon or endorsed the merits of the offering of the Notes or the accuracy or the adequacy of this Information Memorandum. Any representation to the contrary is a criminal offence under the laws of the United States.

**NOTICE TO NEW HAMPSHIRE RESIDENTS ONLY**

**NEITHER THE FACT THAT A REGISTRATION STATEMENT OR AN APPLICATION FOR A LICENCE HAS BEEN FILED UNDER CHAPTER 421-B OF THE NEW HAMPSHIRE REVISED STATUTES (RSA 421-B) WITH THE STATE OF NEW HAMPSHIRE NOR THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS LICENSED IN THE STATE OF NEW HAMPSHIRE CONSTITUTES A FINDING BY THE SECRETARY OF STATE OF NEW HAMPSHIRE THAT ANY DOCUMENT FILED UNDER RSA 421-B IS TRUE, COMPLETE AND NOT MISLEADING. NEITHER ANY SUCH FACT NOR THE FACT THAT AN EXEMPTION IS AVAILABLE FOR A SECURITY OR A TRANSACTION MEANS THAT THE SECRETARY OF STATE HAS PASSED IN ANY WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED OR GIVEN APPROVAL TO, ANY PERSON, SECURITY OR TRANSACTION. IT IS UNLAWFUL TO MAKE, OR CAUSE TO BE MADE, TO ANY PROSPECTIVE PURCHASER, CUSTOMER OR CLIENT ANY REPRESENTATION INCONSISTENT WITH THE PROVISIONS OF THIS PARAGRAPH.**

**AVAILABLE INFORMATION**

For as long as any of the Notes remain outstanding and are "restricted securities" within the meaning of Rule 144(a)(3) under the Securities Act, the Issuer has agreed that it will, during any period in which it is neither subject to nor in compliance with the reporting requirements of Sections 13 or 15(d) of the U.S. Securities Exchange Act of 1934, as amended (the "**Exchange Act**") nor exempt from reporting under the Exchange Act pursuant to Rule 12g3-2(b) thereunder, furnish, upon request, to any person in whose name such restricted securities are registered, to any owner of a beneficial interest in such restricted securities, and to any prospective purchaser of such restricted securities or beneficial interest therein designated by any such

person or beneficial owner, the information required to be delivered pursuant to Rule 144A(d)(4) under the Securities Act.

By requesting copies of the documents referred to herein or by making any other requests for additional information relating to the issue of the Notes or to the Issuer, each potential investor agrees to keep confidential the various documents and all written information which from time to time has been or will be disclosed to it, to the extent that such documents or information are not otherwise publicly available, and agrees not to disclose any portion of such information to any person except in connection with the proposed resale of the Notes or as required by law.

To ensure compliance with Treasury Department Circular 230, potential investors are hereby notified that: (a) any discussion of federal tax issues in this document is not intended or written to be relied upon, and cannot be relied upon, by holders of the Notes for the purpose of avoiding penalties that may be imposed on them under the Code (as defined herein); (b) such discussion is included herein by the Issuer in connection with the promotion or marketing (within the meaning of Circular 230) by the Issuer of the transactions addressed herein; and (c) holders of the Notes should seek advice based on their particular circumstances from an independent tax advisor.

## Notice to U.S. Investors

With respect to the issue and sale of the Notes in the United States, this Information Memorandum is confidential and has been prepared by the Issuer solely for use in connection with the issue of the Notes. In the United States, this Information Memorandum is personal to each person or entity to whom it has been delivered by the Issuer or the Managers or affiliates thereof. Distribution in the United States of this Information Memorandum to any person other than such persons or entities and those persons or entities, if any, retained to advise such persons or entities is unauthorised and any disclosure of any of its contents, without the prior written consent of the Issuer, is prohibited. Each prospective purchaser in the United States, by accepting delivery of this Information Memorandum, agrees to the foregoing and agrees not to reproduce all or any part of this Information Memorandum. This Information Memorandum is not a prospectus for the purposes of Section 12(a)(2) or any other provision of or rule under the Securities Act.

Additionally, each purchaser of any of the Notes will be deemed to have made the representations, warranties and acknowledgements, which are intended to restrict the resale or other transfer of such Notes and which are described in this Information Memorandum (see "*Transfer Restrictions and Selling Restrictions*"). The Notes have not been nor will they be registered under the Securities Act, and they are therefore subject to certain restrictions on transfer. If any Notes are transferred pursuant to Rule 144A, prospective investors are hereby notified that the seller of any Notes may be relying upon the exemption from the provisions of Section 5 of the Securities Act provided by Rule 144A. For a description of certain further restrictions on resale or transfer of the Notes, see "*Transfer Restrictions and Selling Restrictions*" below.

## SERVICE OF PROCESS AND ENFORCEMENT OF CIVIL LIABILITIES

Any dispute which might arise under the Notes shall fall within the exclusive jurisdiction of the Courts of Zurich, Switzerland. Furthermore, the Issuer is a corporation organised under the laws of Switzerland. Most of the officers and directors named herein reside outside the United States and all or a substantial portion of the assets of the Issuer and of such officers and directors are located outside the United States. As a result, it may not be possible for investors to effect service of process outside Switzerland upon the Issuer or such persons, or to enforce judgments against them obtained in courts outside Switzerland predicated upon civil liabilities of the Issuer or such directors and officers under laws other than Swiss law, including any judgment predicated upon United States federal securities laws.

**WARNING**

This Information Memorandum does not constitute an offer to sell or the solicitation of an offer to buy any Notes in any jurisdiction to any person to whom it is unlawful to make an offer or solicitation in such jurisdiction. The distribution of this Information Memorandum and the offer or sale of the Notes may be restricted by law in certain jurisdictions. Neither the Issuer nor the Managers represent that this Information Memorandum may be lawfully distributed, or that any Notes may be lawfully offered, in compliance with any applicable registration or other requirements in any such jurisdiction, or pursuant to an exemption available thereunder, or assume any responsibility for facilitating any such distribution or offering. In particular, no action has been taken by the Issuer or the Managers which is intended to permit a public offering of any Notes or distribution of this Information Memorandum in any jurisdiction where action for that purpose is required. Accordingly, no Notes may be offered or sold, directly or indirectly, and neither this Information Memorandum nor any advertisement or other offering material may be distributed or published in any jurisdiction, except under circumstances that will result in compliance with any applicable laws and regulations. Persons into whose possession this Information Memorandum or any Notes may come must inform themselves about, and observe, any such restrictions on the distribution of this Information Memorandum and the offering and sale of Notes. In particular, there are restrictions on the distribution of this Information Memorandum and the offer or sale of Notes in the United States, the United Kingdom and Japan, see "*Transfer Restrictions and Selling Restrictions*".

All references in this document to "U.S. dollars", "U.S.D", "U.S.$" and "$" refer to United States dollars and to "francs" or "CHF" refer to Swiss francs. In addition, all references to "euro" refer to the currency introduced at the start of the third stage of European economic and monetary union pursuant to the Treaty on the functioning of the European Union, as amended.

## SUMMARY

*This summary must be read as an introduction to this Information Memorandum and any decision to invest in the Notes should be based on a consideration of this Information Memorandum as a whole, including the documents incorporated herein by reference.*

*Words and expressions defined in "Terms and Conditions of the Notes" shall have the same meanings when used in this summary.*

| | |
|---|---|
| **Issuer** | Credit Suisse AG. |
| | The Issuer is a Swiss bank and a wholly owned subsidiary of Credit Suisse Group AG ("**CSG**", and together with its consolidated subsidiaries, the "**Group**"), a global financial services company domiciled in Switzerland. |
| **Notes** | U.S.$2,500,000,000 6.500 per cent. Tier 2 Capital Notes due 2023. |
| **Risk Factors** | There are certain factors that may affect the Issuer's ability to fulfil its obligations under the Notes. Certain of these factors are set out under "Risk Factors" below and include liquidity risks, market risks, credit risks, cross-border and foreign exchange risks, operational risks, legal and regulatory risks and competition risks, among others. In addition, there are certain factors which are material for the purpose of assessing the risks associated with the Notes. These include the fact that the Notes may not be a suitable investment for all investors, certain risks relating to the structure of the Notes including that they are subject to a Write-down upon the occurrence of a Write-down Event, which will result in holders' loss of their entire investment in the Notes, and certain market risks. |
| **Sole Book-Running Manager** | Credit Suisse Securities (Europe) Limited. |
| **Joint Lead Managers** | Banco Santander, S.A., Barclays Capital Inc., Danske Bank A/S, SG Americas Securities, LLC and UniCredit Bank AG. |
| **Co-Managers** | ABN AMRO Securities (USA) LLC, Banca IMI S.p.A., Banco Bilbao Vizcaya Argentaria, S.A., BB Securities Limited, BMO Capital Markets Corp., BNY Mellon Capital Markets, LLC, Capital One Securities, Inc., CIBC World Markets Corp., Citigroup Global Markets Limited, Commerz Markets LLC, Commonwealth Bank of Australia, Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. (trading as Rabobank International), Deutsche Bank Securities Inc., Merrill Lynch International, Morgan Stanley & Co. LLC, nabSecurities, LLC, RBC Capital Markets, LLC, Scotia Capital (USA) Inc., SunTrust Robinson Humphrey, Inc., Swedbank AB (publ), TD Securities (USA) LLC, U.S. Bancorp Investments, Inc. and Wells Fargo Securities, LLC. |
| **Principal Paying Agent** | Citibank, N.A., London Branch. |
| **Swiss Paying Agent and Swiss Listing Agent** | Credit Suisse AG will perform the functions of the Swiss paying agent and Swiss listing agent. |
| **Registrar and Transfer** | Citigroup Global Markets Deutschland AG. |

| | |
|---|---|
| **Agent** | |
| **Currency** | United States dollars. |
| **Maturity Date** | 8 August 2023. Unless previously redeemed or purchased and cancelled, and provided that no Write-down Event has occurred, the Notes will mature on the Maturity Date. |
| **Issue Price** | 6.500 per cent. |
| **Form of Notes** | Registered. |
| | The Notes which are sold in an "offshore transaction" within the meaning of Regulation S will initially be represented by a Regulation S Global Certificate, without interest coupons, which will be deposited with a common depositary on behalf of Euroclear and Clearstream, Luxembourg. |
| | The Notes which are sold in the United States to QIBs within the meaning of Rule 144A under the Securities Act will initially be represented by a Rule 144A Global Certificate, without interest coupons, which will be deposited with a Custodian for, and registered in the name of Cede & Co. as nominee for, DTC. |
| | The provisions governing the exchange of interests in Global Certificates for other Global Certificates and definitive Certificates are described in "*Terms and Conditions of the Notes — Amount, Denomination and Interest Basis and Form*" and "*Terms and Conditions of the Notes — Transfers of Notes*". |
| **Denominations** | U.S.$200,000 and integral multiples of U.S.$1,000 in excess thereof. |
| **Interest** | The Notes will bear interest at a rate of 6.500 per cent. per annum. |
| **Interest Payment Dates** | Interest will be payable semi-annually in arrear on 8 February and 8 August in each year, commencing on 8 February 2014. |
| **Redemption, Substitution or Variation** | Unless previously redeemed or purchased and cancelled, and provided that a Write-down Event has not occurred on or prior to the applicable date fixed for redemption and subject to certain conditions as described herein under "*Terms and Conditions of the Notes — Redemption, Substitution, Variation and Purchase*", the Notes will be redeemable at the option of the Issuer, in whole but not in part, upon giving not less than 30 days' notice to the Holders notifying the date fixed for redemption, in the following circumstances: |
| | (i)   at their principal amount plus accrued but unpaid interest thereon, if a Tax Event occurs; or |
| | (ii)   at their principal amount plus accrued but unpaid interest thereon, if the event described in paragraph (a) of the definition of Capital Event occurs; or |
| | (iii)   at the Capital Event (b) Redemption Amount plus accrued but unpaid interest thereon, if the event described in paragraph (b) of the definition of Capital Event occurs. |
| | If a Tax Event or a Capital Event has occurred and is continuing, the Issuer may, subject to certain conditions as described herein under "*Terms and Conditions of the Notes — Redemption, Substitution, Variation and* |

*Purchase*", at its option and without any requirement for the consent or approval of the Holders (unless required by the mandatory provisions of Swiss law), either substitute all (but not some only) of the Notes for, or vary the terms of the Notes so that the Notes remain or, as appropriate, become, Compliant Securities (and provided such Tax Event or, as the case may be, Capital Event, no longer continues following, and no other Tax Event or Capital Event arises as a result of, such substitution or variation), as more particularly described in "*Terms and Conditions of the Notes — Redemption, Substitution, Variation and Purchase*".

A Tax Event will be deemed to have occurred if in making any payments on the Notes, the Issuer has paid or will or would on the next payment date be required to pay Additional Amounts or has paid, or will or would be required to pay, any additional tax in respect of the Notes being in issue, as more fully described under "*Terms and Conditions of the Notes — Redemption, Substitution, Variation and Purchase*".

A Capital Event will be deemed to have occurred if:

(a)    a change in National Regulations and/or BIS Regulations occurs on or after the Issue Date having the effect that the Notes cease to be eligible in their entirety to be treated as both (i) Tier 2 Capital under BIS Regulations and (ii) Progressive Component Capital under National Regulations (whether due to the elimination of Progressive Component Capital or otherwise); or

(b)    a change in National Regulations occurs on or after the Issue Date that does not result in a Capital Event under paragraph (a) above, but has the effect that the Minimum Progressive Component Capital Amount is reduced or eliminated, and the Progressive Component Capital Amount as at any Reporting Date falling during the period of 180 days following such change taking effect, less any amount that is included therein as a result of the allocation by CSG of Common Equity Tier 1 Capital to Progressive Component Capital pursuant to and in accordance with the Capital Adequacy Ordinance, exceeds the Minimum Progressive Component Capital Amount.

| **Write-down** | **Following the occurrence of a Contingency Event or a Viability Event, a Write-down will occur and the full principal amount of the Notes will automatically and permanently be written-down to zero on the Write-down Date.** |

A Write-down will result in the full principal amount of the Notes being automatically and permanently written-down to zero and, except as described in the following paragraph, all rights of holders of Notes for payment of any amounts under or in respect of the Notes (including, without limitation, any amounts arising as a result of, or due and payable upon the occurrence of, an Event of Default) becoming null and void, irrespective of whether such amounts became due and payable prior to the occurrence of the Write-down Event, the date of the Write-down Notice or the Write-down Date. As a result, the holders of the Notes will lose their entire investment in the Notes.

A Write-down also requires the Issuer to pay to holders of Notes any Accrued Interest on the Notes and any Additional Amounts relating thereto, in each case, if and only to the extent accrued and unpaid prior to the date of the relevant Write-down Notice. Upon payment of such amounts, if any, against surrender of the Certificate representing the relevant Note(s), such Certificate and Note(s) will be permanently cancelled.

A Write-down Event means either a Contingency Event or a Viability Event.

A Contingency Event will occur if the Issuer or CSG gives the holders of Notes a Contingency Event Notice.

The Issuer or CSG is required to give the holders of Notes a Contingency Event Notice (within the required notice period) if the sum of (x) the CET1 Ratio contained in the relevant Financial Report and (y) the Higher Trigger Capital Ratio is below five per cent.

Notwithstanding the above, if the Regulator, at the request of CSG, has agreed on or prior to the publication of the relevant Financial Report that a Write-down shall not occur because it is satisfied that actions, circumstances or events have had, or imminently will have, the effect of restoring the CET1 Ratio to a level above five per cent. that the Regulator and CSG deem, in their absolute discretion, to be adequate at such time, the Issuer and CSG will not be required to give the holders of the Notes a Contingency Event Notice and no Contingency Event in relation thereto shall be deemed to have occurred.

Subject to the above, the Issuer or CSG is required to give the holders of Notes a Contingency Event Notice no later than five business days after the date of publication of the relevant Financial Report, provided however that if any Higher Trigger Capital Instruments are outstanding on the relevant Reporting Date, the date on which the Issuer or CSG will give the Contingency Event Notice (and, consequently, on which the Contingency Event will occur) will instead be the latest effective date on which all such Higher Trigger Capital Instruments are irrevocably assured to be converted into equity and/or written-down/off (or otherwise operated on to increase the CET1 Amount), whether through an irrevocable notice being given to the holders thereof or otherwise.

A Viability Event will occur if either:

(a) the Regulator has notified CSG that it has determined that a write-down of the Notes, together with the conversion or write-down/off of holders' claims in respect of any and all other Progressive Component Capital Instruments, Buffer Capital Instruments, Tier 1 Instruments and Tier 2 Instruments that, pursuant to their terms or by operation of law, are capable of being converted into equity or written down/off at that time is, because customary measures to improve CSG's capital adequacy are at the time inadequate or unfeasible, an essential requirement to prevent CSG from becoming insolvent, bankrupt or unable to pay a material part of its debts as they fall due, or from ceasing to carry on its business; or

(b) customary measures to improve CSG's capital adequacy being at the time inadequate or unfeasible, CSG has received an irrevocable

|  | commitment of extraordinary support from the Public Sector (beyond customary transactions and arrangements in the ordinary course) that has, or imminently will have, the effect of improving CSG's capital adequacy and without which, in the determination of the Regulator, CSG would have become insolvent, bankrupt, unable to pay a material part of its debts as they fall due or unable to carry on its business.<br><br>Following the occurrence of a Viability Event, the Issuer or CSG is required to give notice to the holders of Notes within three business days after the occurrence thereof.<br><br>See "*Terms and Conditions of the Notes — Write-down*" for more information.<br><br>Each holder and beneficial owner of a Note agrees, by accepting a direct or beneficial interest in such Note, to be bound by and consents to the application of the Write-down. |
| **Taxation** | The Issuer will pay such Additional Amounts as may be necessary in order that the net payment received by each Holder in respect of the Notes, after withholding for any taxes imposed on the Issuer by tax authorities in Switzerland (or in any political subdivision thereof or therein having power to tax) upon payments made by or on behalf of the Issuer under the Notes will equal the amount which would have been received in the absence of any such withholding taxes, save in certain limited circumstances as more particularly set out in "*Terms and Conditions of the Notes — Taxation*".  For a discussion of the U.S. federal income tax treatment of the Notes, see "*Taxation — United States*". |
| **ERISA** | The Notes may be purchased by (i) an "employee benefit plan" as defined in and subject to Title I of the U.S. Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (ii) a plan, account or other arrangement subject to Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "**Code**"), (iii) any plan (such as a governmental plan (as defined in Section 3(32) of ERISA), a non-U.S. plan (as described in Section 4(b)(4) of ERISA) and certain church plans (as defined in Section 3(33) of ERISA and that have made no election under Section 410(d) of the Code)), account or arrangement that, while not subject to Title I of ERISA or Section 4975 of the Code, is subject to substantially similar provisions of any U.S. federal, state or local law, or non-U.S. law ("**Similar Law**") or (iv) any entity whose underlying assets include, or are deemed for the purposes of ERISA, the Code or any Similar Law to include, plan assets of any such employee benefit plan or other plan, account or arrangement, each as described in (i), (ii) or (iii), subject to certain conditions. Each purchaser and/or holder of a Note and each transferee thereof will be deemed to have made certain representations regarding these matters. See "*ERISA Considerations*". |
| **Events of Default** | It will be an Event of Default if payment is not made for a period of ten days or more in the case of principal or thirty days or more in the case of interest due in respect of the Notes or an order is made or a resolution passed for the winding-up, dissolution or liquidation of the Issuer or certain |

| | |
|---|---|
| | measures are taken under Swiss bankruptcy or insolvency law with respect to the Issuer. Holders have limited enforcement remedies, as more particularly described in "*Terms and Conditions of the Notes — Events of Default*". |
| **Issuer Substitution** | Holders will be deemed to have acknowledged, and explicitly consented to, the fact that the Issuer may at any time, at the discretion of the Issuer and without any requirement for the further consent of the Holders, be substituted as Issuer by another entity, provided certain conditions (including the giving by CS of a subordinated guarantee) are satisfied, as more particularly described in "*Terms and Conditions of the Notes — Meetings of Holders, Modification and Substitution — Issuer Substitution*". |
| **Use of Proceeds** | The net proceeds from the Notes, amounting to U.S.$2,462,500,000, will be used by the Issuer for its general corporate purposes, which could include refinancing existing indebtedness and the investment in capital instruments issued by subsidiaries of the Issuer, as the case may be. |
| **Status of the Notes** | The Notes will constitute direct, unsecured and subordinated obligations of the Issuer and will rank *pari passu* and without any preference among themselves. The rights and claims of the Holders are subordinated as described in "*Terms and Conditions of the Notes — Subordination of the Notes*". |
| **Expected Rating** | The Notes are expected upon issue to be rated BBB+ by Fitch and BBB- by Standard & Poor's. A security rating is not a recommendation to buy, sell or hold securities and may be subject to suspension, modification or withdrawal at any time by the assigning rating agency. |
| **Listing and Admission to trading** | Application will be made to the SIX Swiss Exchange for listing of the Notes. The Notes are expected to be provisionally admitted to trading on the SIX Swiss Exchange from 7 August 2013. The last trading day will be the third dealing day prior to the date on which the Notes are fully redeemed or the Write-down Date, as applicable, in accordance with the Terms and Conditions of the Notes. |
| **Clearing Systems** | The Notes shall be accepted for clearing through, in the United States, DTC and, outside the United States, the systems operated by Euroclear, Clearstream Luxembourg and SIX SIS AG. As the Global Certificates are to be held by, or on behalf of, DTC, Euroclear and Clearstream, Luxembourg, Holders will have to rely on their procedures for transfers of, and payments on, the Notes and communications with the Issuer. |
| **Governing Law** | Swiss law. |
| **Jurisdiction** | Upon an Event of Default under the Notes, Holders will have only limited enforcement remedies in the case of enforcing payment of sums due. |
| | Following an Event of Default and non payment of the relevant sums due within a statutory period following the issue of a writ of payment as required by Swiss insolvency laws, the Holders may only institute proceedings against CS in Switzerland (but not elsewhere) to enforce their rights under Swiss insolvency laws. |
| **Transfer Restrictions and** | The Notes are subject to restrictions on their offering, sale, delivery and |

| | |
|---|---|
| **Selling Restrictions** | transfer both generally and specifically in the United States, the United Kingdom and Japan. These restrictions are described under "*Transfer Restrictions and Selling Restrictions*" and "*ERISA Considerations*". |
| **Rule 144A** | Offers and sales in accordance with Rule 144A under the Securities Act will be permitted, subject to compliance with all relevant, legal and regulatory requirements of the United States. |
| **Regulation S** | Offers and sales in accordance with Regulation S under the Securities Act will be permitted, subject to compliance with all relevant, legal and regulatory requirements of the United States. |
| **Security Codes** | *Rule 144A Notes* <br> CUSIP: 22546D AA4 <br> Swiss Security Number: 22034852 <br> ISIN: US22546DAA46 <br> Common code: 096010044 <br> *Regulation S Notes* <br> CUSIP: G2526S AB8 <br> Swiss Security Number: 22034850 <br> ISIN: XS0957135212 <br> Common code: 095713521 |