# EXHIBIT E

Use these links to rapidly review the document
TABLE OF CONTENTS

Table of Contents

Filed Pursuant to Rule 424(b)(3)
Registration Nos. 333-207696 and 333-207696-01

**PROSPECTUS**



## Credit Suisse Group Funding (Guernsey) Limited

## Guaranteed by Credit Suisse Group AG

### Offer to Exchange
**$1,500,000,000 aggregate principal amount of 2.750% Senior Notes due 2020**
**$2,500,000,000 aggregate principal amount of 3.750% Senior Notes due 2025**
**$2,000,000,000 aggregate principal amount of 4.875% Senior Notes due 2045**
**$2,000,000,000 aggregate principal amount of 3.800% Senior Notes due 2022**

**The Exchange Offers will expire at 5:00 p.m.,**
**New York City time, on January 14, 2016, unless extended with respect to the relevant series.**

This is an offer, upon the terms and subject to the conditions set forth in this prospectus and the accompanying letter of transmittal, by Credit Suisse Group Funding (Guernsey) Limited (the "Issuer"), a wholly-owned subsidiary of Credit Suisse Group AG, which is also a co-issuer of the Notes (as defined below) solely for purposes of the U.S. federal securities laws (the "Guarantor"), to exchange (i) up to $1,500,000,000 aggregate principal amount of its outstanding 2.750% Senior Notes due 2020 (CUSIP Nos. 225433AB7 and G25417AB5) (the "Original Notes due 2020") for a like principal amount of its 2.750% Senior Notes due 2020 that have been registered under the Securities Act (CUSIP No. 225433AD3) (the "Exchange Notes due 2020"), (ii) up to $2,500,000,000 aggregate principal amount of its outstanding 3.750% Senior Notes due 2025 (CUSIP Nos. 225433AA9 and G25417AA7) (the "Original Notes due 2025") for a like principal amount of its 3.750% Senior Notes due 2025 that have been registered under the Securities Act (CUSIP No. 225433AC5) (the "Exchange Notes due 2025"), (iii) up to $2,000,000,000 aggregate principal amount of its outstanding 4.875% Senior Notes due 2045 (CUSIP Nos. 225433AE1 and G25417AF6) (the "Original Notes due 2045") for a like principal amount of its 4.875% Senior Notes due 2045 that have been registered under the Securities Act (CUSIP No. 225433AF8) (the "Exchange Notes due 2045"), and (iv) up to $2,000,000,000 aggregate principal amount of its outstanding 3.800% Senior Notes due 2022 (CUSIP Nos. 225433AG6 and G25417AK5) (the "Original Notes due 2022" and, together with the Original Notes due 2020, the Original Notes due 2025 and the Original Notes due 2045, the "Original Notes") for a like principal amount of its 3.800% Senior Notes due 2022 that have been registered under the Securities Act (CUSIP No. 225433AH4) (the "Exchange Notes due 2022" and, together with the Exchange Notes due 2020, the Exchange Notes due 2025 and the Exchange Notes due 2045, the "Exchange Notes"). We refer to these offers as the "Exchange Offers" and each, an "Exchange Offer". When we use the term "Notes" in this prospectus, the term includes the Original Notes and the Exchange Notes unless otherwise indicated or the context otherwise requires. The terms of the Exchange Offers are summarized below and are more fully described in this prospectus.

The terms of each series of Exchange Notes are identical to the terms of the corresponding series of Original Notes, except that the transfer restrictions, registration rights and additional interest provisions applicable to the Original Notes do not apply to the Exchange Notes.

We will accept for exchange any and all Original Notes of each series validly tendered and not validly withdrawn prior to 5:00 p.m., New York City time, on January 14, 2016, unless extended with respect to the relevant Exchange Offer (the "Expiration Date"). You may withdraw tenders of Original Notes of each series at any time prior to the Expiration Date of the relevant Exchange Offer.

We will not receive any cash proceeds from the issuance of the Exchange Notes in the Exchange Offers. The Original Notes surrendered and exchanged for the Exchange Notes will be retired and canceled. Accordingly, the issuance of the Exchange Notes will not result in any increase in our outstanding indebtedness.

The exchange of Original Notes of each series for the corresponding series of Exchange Notes will not be a taxable event for U.S. federal income tax purposes.

Each broker-dealer that receives Exchange Notes for its own account pursuant to the Exchange Offers must acknowledge that it will deliver a prospectus in connection with any resale of such Exchange Notes. The letter of transmittal states that by so acknowledging and by delivering a prospectus, a broker-dealer will not be deemed to admit that it is an "underwriter" within the meaning of the Securities Act. This prospectus, as it may be amended or supplemented from time to time, may be used by a broker-dealer in connection with resales of Exchange Notes received in exchange for Original Notes where such Original Notes were acquired by such broker-dealer as a result of market-making activities or other trading activities. We have agreed that, for up to 180 days after the consummation of the Exchange Offers, we will make this prospectus available to any broker-dealer for use in connection with any such resale. See "Plan of Distribution."

**Consistent with the Original Notes, by its acquisition of the Exchange Notes, each holder of the Exchange Notes (including each beneficial owner) acknowledges, agrees to be bound by, and consents to the exercise of, any Swiss Resolution Power with respect to the Guarantor that results in the write-down and cancellation and/or conversion into equity of the Guarantor of the entire, or a portion of the, principal amount of, and/or accrued interest on, the Exchange Notes, irrespective of whether such amounts have already become due and payable prior to such action. By its acquisition of the Exchange Notes, each such holder (including each beneficial owner) further acknowledges, agrees to be bound by, and consents to the ordering of, any Restructuring Protective Measures that result in the deferment of payment of principal and/or interest under the Exchange Notes. By its acquisition of the Exchange Notes, each holder of Exchange Notes (including each beneficial owner) further acknowledges and agrees that its rights are subject to, and, if necessary, will be altered without such holder's consent, including by means of an amendment or modification to the terms of the Indentures, as defined herein, or of the Exchange Notes, so as to give effect to any such exercise of any Swiss Resolution Power or any such ordering of Restructuring Protective Measures. See "Description of Exchange Notes—Agreement with Respect to the Exercise of Swiss Resolution Power and the Ordering of Restructuring Protective Measures" for more information, including the definitions of Swiss Resolution Power, Swiss Resolution Authority, Restructuring Protective Measures and Restructuring Proceedings.**

The Issuer will, without the consent of the holders, automatically substitute the Guarantor for itself for all purposes under the Exchange Notes upon the occurrence of a Restructuring Event, which we refer to as a "Restructuring Issuer Substitution". Upon a Restructuring Issuer Substitution, the Issuer shall be released from its obligations under the Exchange Notes and the Guarantor shall succeed to, and be substituted for, and may exercise every right and power of, the Issuer under the Exchange Notes with the same effect as if the Guarantor had been named as issuer under the Indentures and the Exchange Notes. Upon a Completion Event, under certain circumstances described herein, the Exchange Notes will be exchanged for a like principal amount of new Exchange Notes issued by the Issuer and guaranteed by the Guarantor on a one-for-one basis and any accrued and unpaid interest on the Exchange Notes up to (and including) the date immediately prior to the date of such exchange will be paid in cash by the Guarantor to the Trustee, as herein defined, on behalf of the holders. See "Description of Exchange Notes—Issuer Substitution" and "Description of Exchange Notes—Exchange Following a Completion Event" for more information, including the definitions of Restructuring Event and Completion Event.

Like the Original Notes, the Exchange Notes are expected to be provisionally admitted to trading on the SIX Swiss Exchange AG (the "SIX Swiss Exchange") from January 19, 2016. The last trading day for each series of Exchange Notes is expected to be the second trading day prior to the date on which such series of Exchange Notes is fully redeemed, in accordance with the terms of the relevant Indenture. Application will be made to the SIX Swiss Exchange for listing of the Exchange Notes.

**See "Risk Factors" beginning on page 19 of this prospectus.**

The Exchange Notes are not deposit liabilities and are not insured by the Federal Deposit Insurance Corporation or any other governmental agency of the United States, Switzerland, the Bailiwick of Guernsey or any other jurisdiction. The Exchange Notes do not have the benefit of any agency or governmental guarantee.

Neither the Securities and Exchange Commission (the "SEC"), nor any state securities commission has approved or disapproved of these securities or passed upon the accuracy or adequacy of this prospectus. Any representation to the contrary is a criminal offense.

This prospectus is an advertisement and not a prospectus for the purposes of EU Directive 2003/71/EU (as amended).

You may elect to hold interests in the Exchange Notes through either The Depository Trust Company ("DTC") (in the United States) or Clearstream Banking, société anonyme, which we refer to as "Clearstream, Luxembourg," or Euroclear Bank, S.A./N.V., or its successor, as operator of the Euroclear System, which we refer to as "Euroclear" (outside of the United States), if you are participants of such systems, or indirectly through organizations which are participants in such systems. Interests held through Clearstream, Luxembourg and Euroclear will be recorded on DTC's books as being held by the U.S. depositary for each of Clearstream, Luxembourg and Euroclear, which U.S. depositaries will in turn hold interests on behalf of their participants' customers' securities accounts.

The date of this prospectus is December 15, 2015

Case 1:23-cv-05874-GM-SLC Document 11-6 Filed 05/30/23 Page 3 of 26

You may elect to hold interests in the Exchange Notes through either The Depository Trust Company ("DTC") (in the United States) or Clearstream Banking, société anonyme, which we refer to as "Clearstream, Luxembourg," or Euroclear Bank, S.A./N.V., or its successor, as operator of the Euroclear System, which we refer to as "Euroclear" (outside of the United States), if you are participants of such systems, or indirectly through organizations which are participants in such systems. Interests held through Clearstream, Luxembourg and Euroclear will be recorded on DTC's books as being held by the U.S. depositary for each of Clearstream, Luxembourg and Euroclear, which U.S. depositaries will in turn hold interests on behalf of their participants' customers' securities accounts.

**TABLE OF CONTENTS**

| | |
|---|---|
| FORWARD-LOOKING STATEMENTS | ii |
| WHERE YOU CAN FIND MORE INFORMATION; DOCUMENTS INCORPORATED BY REFERENCE | iv |
| SUMMARY OF THE EXCHANGE OFFERS | 1 |
| SUMMARY OF THE TERMS OF THE EXCHANGE NOTES | 9 |
| RISK FACTORS | 19 |
| USE OF PROCEEDS | 33 |
| RATIO OF EARNINGS TO FIXED CHARGES | 34 |
| THE EXCHANGE OFFERS | 35 |
| DESCRIPTION OF THE EXCHANGE NOTES | 45 |
| TAXATION | 65 |
| CERTAIN ERISA CONSIDERATIONS | 75 |
| PLAN OF DISTRIBUTION | 78 |
| LEGAL MATTERS | 79 |
| INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM | 80 |

In this prospectus, unless the context otherwise requires, the terms "we," "our," "us," "Credit Suisse Group" and "Group" refer to Credit Suisse Group AG and its consolidated subsidiaries, including the Issuer and Credit Suisse Group AG's wholly-owned Swiss bank subsidiary, Credit Suisse AG, which we refer to as "Credit Suisse".

THE ISSUER AND THE GUARANTOR ACCEPT RESPONSIBILITY FOR THE INFORMATION CONTAINED AND INCORPORATED BY REFERENCE IN THIS PROSPECTUS. AT THE DATE OF THIS PROSPECTUS, THE ISSUER AND THE GUARANTOR HAVE NOT AUTHORIZED ANY OTHER PERSON TO PROVIDE YOU WITH DIFFERENT INFORMATION, AND THE ISSUER AND THE GUARANTOR TAKE NO RESPONSIBILITY FOR ANY OTHER INFORMATION OTHERS MAY GIVE YOU. THE ISSUER AND THE GUARANTOR ARE NOT MAKING AN OFFER OF THESE SECURITIES IN ANY JURISDICTION WHERE THE OFFER IS NOT PERMITTED. YOU SHOULD NOT ASSUME THAT THE INFORMATION INCLUDED OR INCORPORATED BY REFERENCE IN THIS PROSPECTUS IS ACCURATE AS OF ANY DATE OTHER THAN THE DATE OF THE DOCUMENT CONTAINING THE INFORMATION.

This prospectus incorporates important business and financial information about us that is not included in or delivered with the prospectus, which is available without charge upon written or oral request to:

Credit Suisse Group AG
Paradeplatz 8
CH 8001 Zurich, Switzerland
Attention: Investor Relations
+41 44 212 1616

Internet: *https://www.credit-suisse.com/investors*

We are not incorporating the contents of the website into this prospectus.

**In order to obtain timely delivery of such materials, you must request information from us no later than five Business Days prior to the Expiration Date of the relevant Exchange Offer.**

i

## FORWARD-LOOKING STATEMENTS

This prospectus contains or incorporates by reference statements that constitute forward-looking statements. In addition, in the future we, and others on our behalf, may make statements that constitute forward-looking statements. Such forward-looking statements may include, without limitation, statements relating to the following:

- our plans, objectives or goals;

- our future economic performance or prospects;

- the potential effect on our future performance of certain contingencies; and

- assumptions underlying any such statements.

Words such as "believes," "anticipates," "expects," "intends" and "plans" and similar expressions are intended to identify forward-looking statements but are not the exclusive means of identifying such statements. We do not intend to update these forward-looking statements except as may be required by applicable securities laws.

By their very nature, forward-looking statements involve inherent risks and uncertainties, both general and specific, and risks exist that predictions, forecasts, projections and other outcomes described or implied in forward-looking statements will not be achieved. We caution you that a number of important factors could cause results to differ materially from the plans, objectives, expectations, estimates and intentions expressed in such forward-looking statements. These factors include:

- the ability to maintain sufficient liquidity and access capital markets;

- market volatility and interest rate fluctuations and developments affecting interest rate levels;

- the strength of the global economy in general and the strength of the economies of the countries in which we conduct our operations, in particular the risk of continued slow economic recovery or downturn in the US or other developed countries in 2015 and beyond;

- the direct and indirect impacts of deterioration or slow recovery in residential and commercial real estate markets;

- adverse rating actions by credit rating agencies in respect of us, sovereign issuers, structured credit products or other credit-related exposures;

- the ability to achieve our strategic objectives, including improved performance, reduced risks, lower costs and more efficient use of capital;

- the ability of counterparties to meet their obligations to us;

- the effects of, and changes in, fiscal, monetary, exchange rate, trade and tax policies, as well as currency fluctuations;

- political and social developments, including war, civil unrest or terrorist activity;

- the possibility of foreign exchange controls, expropriation, nationalization or confiscation of assets in countries in which we conduct our operations;

- operational factors such as systems failure, human error, or the failure to implement procedures properly;

- actions taken by regulators with respect to our business and practices and possible resulting changes to our business organization, practices and policies in countries in which we conduct our operations;

ii

- the effects of changes in laws, regulations or accounting policies or practices in countries in which we conduct our operations;

- competition or changes in our competitive position in geographic and business areas in which we conduct our operations;

- the ability to retain and recruit qualified personnel;

- the ability to maintain our reputation and promote our brand;

- the ability to increase market share and control expenses;

- technological changes;

- the timely development and acceptance of our new products and services and the perceived overall value of these products and services by users;

- acquisitions, including the ability to integrate acquired businesses successfully, and divestitures, including the ability to sell non-core assets;

- the adverse resolution of litigation, regulatory proceedings, and other contingencies;

- the ability to achieve our cost efficiency goals and cost targets; and

- our success at managing the risks involved in the foregoing.

We caution you that the foregoing list of important factors is not exclusive. When evaluating forward-looking statements, you should carefully consider the foregoing factors and other uncertainties and events, as well as the risk factors and other information set forth from time to time in the Guarantor's filings with the SEC, including the Guarantor's Annual Report on Form 20-F for the year ended December 31, 2014, and subsequent annual reports on Form 20-F filed by the Guarantor with the SEC; the Guarantor's reports on Form 6-K filed with the SEC; and the risk factors contained in this prospectus relating to the Issuer, Guarantor and Exchange Notes.

iii

**WHERE YOU CAN FIND MORE INFORMATION;**
**DOCUMENTS INCORPORATED BY REFERENCE**

The Guarantor files periodic reports and other information with the SEC. You may read and copy any document the Guarantor files at the SEC's public reference room at 100 F Street, N.E., Washington, D.C. 20549. Please call the SEC at 1-800-SEC-0330 for further information on the operation of the public reference room. In addition, the SEC maintains an Internet site at *http://www.sec.gov* that contains information regarding issuers that file electronically with the SEC. Reports and other information concerning the business of the Guarantor may also be inspected at the offices of the New York Stock Exchange at 11 Wall Street, New York, New York 10005.

The SEC allows the Guarantor to "incorporate by reference" the information it files with the SEC, which means that the Guarantor can disclose important information to you by referring you to those documents. The information incorporated by reference is an important part of this prospectus, and information that the Guarantor files later with the SEC and which is incorporated by reference will automatically update and supersede this information.

The Guarantor filed its annual report on Form 20-F for the fiscal year ended December 31, 2014, which we refer to as the "Annual Report 2014" with the SEC on March 20, 2015. The Guarantor is incorporating the Annual Report 2014 into this prospectus. The Guarantor further incorporates by reference its current reports on Form 6-K dated:

- February 12, 2015 (containing the Media Release entitled "Proposal of distribution to shareholders for financial year 2014 of CHF 0.70 per share, consistent with prior year"),

- February 12, 2015 (containing the Credit Suisse Earnings Release 4Q14),

- February 27, 2015 (containing the Media Release entitled "Credit Suisse announces increased mortgage-related litigation provisions"),

- February 27, 2015 (containing the Revised Credit Suisse Earnings Release 4Q14),

- March 10, 2015,

- March 20, 2015,

- April 21, 2015,

- April 24, 2015,

- April 30, 2015,

- May 19, 2015,

- July 23, 2015,

- July 31, 2015,

- October 8, 2015,

- October 21, 2015 (containing the Credit Suisse Earnings Release 3Q15),

- October 21, 2015 (containing the Media Release entitled "Credit Suisse to grow profits and capital generation . . ."),

- October 22, 2015,

- October 30, 2015,

- November 19, 2015,

- November 23, 2015 and

- December 3, 2015;

iv

in each case, only to the extent that such report expressly states that such report, or portions thereof, are incorporated by reference into the registration statement of the Guarantor filed on Form F-3 (file no. 333-202913).

In addition, the Guarantor incorporates by reference all annual reports on Form 20-F and, only to the extent designated therein, any of the Guarantor's reports on Form 6-K filed with, but not furnished to, the SEC under Section 13(a), 13(c) or 15(d) of the Exchange Act, prior to the date the Exchange Offers are consummated.

You may request a copy of any document that is incorporated by reference into this prospectus and that is not included in or delivered with the prospectus, at no cost, by writing or telephoning the Guarantor at its principal executive offices at the following address:

Credit Suisse Group AG
Paradeplatz 8
CH 8001 Zurich, Switzerland
Attention: Investor Relations
+41 44 212 1616
Internet: *https://www.credit-suisse.com/investors*

We are not incorporating the contents of the website into this prospectus.

**In order to obtain timely delivery of such materials, you must request information from us no later than five Business Days prior to the Expiration Date of the relevant Exchange Offer.**

v

**Prospectus Summary**

*This summary highlights selected information from this prospectus and the documents incorporated by reference and does not contain all of the information that may be important to you. You should carefully read this entire prospectus and the documents incorporated by reference, including the risk factors and financial statements.*

**Credit Suisse Group Funding (Guernsey) Limited**

The Issuer (registration number 58814) is a Guernsey incorporated non-cellular company limited by shares. The Issuer was incorporated on August 4, 2014 in Guernsey and will continue in existence until it is removed from the Register of Companies in accordance with Guernsey law. The Issuer may give notice to any registered holder of its shares personally or by sending it by post in a pre-paid envelope addressed to the registered holder at his registered address or by electronic means. The registered office of the Issuer is located at Helvetia Court, South Esplanade, St. Peter Port, Guernsey, GY1 3WF. The telephone number is +44 1481 719088.

The Issuer is wholly-owned by the Guarantor. The Issuer exists for the purpose of issuing Notes, fully and unconditionally guaranteed, on a senior basis, by the Guarantor, as to payment of principal, premium, if any, interest and any other amounts due. The Guarantor is also a co-issuer of the Notes solely for purposes of the U.S. federal securities laws.

*Auditors*

The Issuer's independent auditor is KPMG LLP, 15 Canada Square, London, E14 5GL, United Kingdom.

The Issuer was incorporated on August 4, 2014 and has not yet prepared any accounts. The Issuer's accounting reference date is December 31 and its first accounts are expected to be prepared in accordance with International Financing Reporting Standards as issued by the International Accounting Standards Board and applicable law.

The Issuer does not have an audit committee. As a subsidiary of the Guarantor, the Issuer complies with the Guarantor's overall corporate governance regime.

**Credit Suisse Group AG**

The Guarantor was incorporated under Swiss law as a corporation (Aktiengesellschaft) with unlimited duration under the name "CS Holding" on March 3, 1982 in Zurich, Switzerland, and was registered with the Commercial Registrar of the Canton of Zurich under the number CH-020.3.906.075-9 and is now registered under the number CHE-105.884.494. As of May 6, 2008, the Guarantor changed its name to "Credit Suisse Group AG." Its registered and principal executive office is located at Paradeplatz 8, CH8001, Zurich, Switzerland and its telephone number is +41 44 212 1616.

The history of the Guarantor and its subsidiaries dates back to the formation of Schweizerische Kreditanstalt, founded in 1856. The first branch opened in Basel in 1905 and the first branch outside of Switzerland opened in New York in 1940. In 1978, a co-operation with First Boston, Inc. began and, in 1990, the Guarantor acquired a controlling stake. The Guarantor purchased a controlling stake in Bank Leu in 1990, Schweizerische Volksbank in 1993, Neue Aargauer Bank in 1994 and Winterthur in 1997. In addition, the Guarantor acquired Donaldson, Lufkin & Jenrette Inc. in 2000. In 2006, the Guarantor sold Winterthur, allowing it to focus on its banking operations. On May 13, 2005, the two Swiss bank legal entities Credit Suisse and Credit Suisse First Boston merged. The merged bank, Credit Suisse, is a Swiss bank and joint stock corporation established under Swiss law and is a wholly-owned subsidiary of

the Guarantor. The Guarantor is a global financial services company domiciled in Switzerland. Credit Suisse is a wholly-owned subsidiary of the Guarantor and its business is substantially the same as that of the Guarantor.

**Strategy**

In October 2015, we announced a comprehensive package of measures setting our new strategic direction, structure and organization. See "*I—Credit Suisse Results—Credit Suisse*" in the Guarantor's 3Q15 Financial Report on Form 6-K for the quarter ended September 30, 2015 for further information.

Our strategy is now focused on three fundamental objectives:

- To expand profitably our position in our home market by growing a Swiss Universal Bank division that aims to become the bank of choice for Swiss private, corporate and institutional clients. The development of an efficient, integrated banking platform combined with a planned initial public offering ("**IPO**") by the end of 2017, market conditions permitting and currently estimated to be between 20% and 30% of the legal entity Credit Suisse (Schweiz) AG, is expected to offer us an opportunity to participate in domestic consolidation opportunities. Any such IPO would be subject to, among other things, all necessary approvals and would be intended to generate/raise additional capital for Credit Suisse AG or Credit Suisse (Schweiz) AG.

- To scale up our private banking and wealth management franchise in the attractive markets of Asia, Eastern Europe, the Middle East, Latin America and Africa. We aim to accelerate our growth in Asia Pacific by allocating more capital to serve the wealthy entrepreneurs of this region via a dedicated, integrated Asia Pacific division. In other emerging markets, a newly established International Wealth Management division is designed to replicate the successful "Bank for Entrepreneurs" Asia Pacific model.

- To right-size the Investment Banking division by focusing on its superior capabilities that best support wealth management client needs. This is expected to result in higher profitability with lower capital usage and lower volatility in earnings. The measures include a program to lower the capital allocated to investment banking activities, particularly through a significant reduction of risk-weighted assets and leverage exposures in our macro and prime services businesses.

**Organizational structure**

To support the execution of our new strategy, we are simplifying our organization, which has historically been a matrix of two business divisions, each with co-heads, and four regions. We are restructuring and creating three new, regionally focused divisions: Swiss Universal Bank, Asia Pacific and International Wealth Management serving Western Europe, Central and Eastern Europe, Latin America and Africa.

Two other divisions—Global Markets as well as Investment Banking and Capital Markets—will sit alongside these regional businesses. These operating businesses will be supported by a number of focused functions at the Group Executive Board level, including a newly established position of Chief Operating Officer, tasked with driving the transformation of Credit Suisse into a more decentralized organization, and a new position of Chief Compliance and Regulatory Affairs Officer, who will coordinate our strategic and increasingly important relationships with regulators across the world.

In addition, we will form a Strategic Resolution Unit ("**SRU**") that will oversee the effective wind-down of the bank's portfolios that do not fit our strategic direction, including those in the current non-strategic units.

Reflecting the new management structure, beginning in the fourth quarter of 2015, our financial reporting will be presented as six reporting segments, including the new SRU. A simplified Corporate Center will be presented inclusive of overall costs of shared services, providing transparency of the pre-and post-allocated view of these costs.

All references to the Guarantor in the description of the business set out above are describing the consolidated businesses carried on by the Guarantor and its subsidiaries.

3

**Background**

On March 26, 2015, the Issuer issued $1,500,000,000 aggregate principal amount of Original Notes due 2020 pursuant to an indenture entered into on March 26, 2015 (the "2020 Indenture") and $2,500,000,000 aggregate principal amount of Original Notes due 2025 pursuant to an indenture entered into on March 26, 2015 (the "2025 Indenture"). On May 21, 2015, the Issuer issued $2,000,000,000 aggregate principal amount of Original Notes due 2045 pursuant to an indenture entered into on May 21, 2015 (the "2045 Indenture"). On September 15, 2015, the Issuer issued $2,000,000,000 aggregate principal amount of Original Notes due 2022 pursuant to an indenture entered into on September 15, 2015 (the "2022 Indenture" and, together with the 2020 Indenture, the 2025 Indenture and the 2045 Indenture, the "Indentures" and each individually, an "Indenture"). In connection with those issuances, the Issuer and the Guarantor entered into a registration rights agreement with respect to each series of Original Notes, dated as of March 23, 2015, March 23, 2015, May 18, 2015 and September 10, 2015, respectively (the "Registration Rights Agreements"), in which the Issuer and the Guarantor agreed, among other things, to complete an exchange offer for each series of Original Notes. Below is a summary of the Exchange Offers.

**The Exchange Offers**

The Issuer is offering to exchange up to $1,500,000,000 aggregate principal amount of the outstanding Original Notes due 2020 for a like principal amount of the Exchange Notes due 2020, up to $2,500,000,000 aggregate principal amount of the outstanding Original Notes due 2025 for a like principal amount of the Exchange Notes due 2025, up to $2,000,000,000 aggregate principal amount of the outstanding Original Notes due 2045 for a like principal amount of the Exchange Notes due 2045 and up to $2,000,000,000 aggregate principal amount of the outstanding Original Notes due 2022 for a like principal amount of the Exchange Notes due 2022. You may tender Original Notes of any series only in denominations of $250,000 and any integral multiple of $1,000 in excess thereof. The Issuer will issue each series of Exchange Notes promptly after the Expiration Date of the applicable Exchange Offer. In order to be exchanged, an Original Note must be validly tendered, not validly withdrawn and accepted. Subject to the satisfaction or waiver of the conditions of the Exchange Offers, all Original Notes that are validly tendered and not validly withdrawn will be exchanged. As of the date of this prospectus, $1,500,000,000 aggregate principal amount of Original Notes due 2020 is outstanding, $2,500,000,000 aggregate principal amount of Original Notes due 2025 is outstanding, $2,000,000,000 aggregate principal amount of Original Notes due 2045 is outstanding and $2,000,000,000 aggregate principal amount of Original Notes due 2022 is outstanding. If all outstanding Original Notes are tendered for exchange, there will be $1,500,000,000 aggregate principal amount of Exchange Notes due 2020, $2,500,000,000 aggregate principal amount of Exchange Notes due 2025, $2,000,000,000 aggregate principal amount of Exchange Notes due 2045 and $2,000,000,000 aggregate principal amount of Exchange Notes due 2022 outstanding after these Exchange Offers.

| | |
|---|---|
| **Purpose of the Exchange Offers** | The purpose of the Exchange Offers is to satisfy the obligations of the Issuer and Guarantor under the Registration Rights Agreements. |
| **Expiration Date; Tenders** | The Exchange Offers will expire at 5:00 p.m., New York City time, on January 14, 2016, unless we extend the period of time during which the relevant Exchange Offer is open. In the event of any material change in any of the Exchange Offers, we will extend the period of time during which the relevant Exchange Offer is open, if necessary, so that the relevant Expiration Date is at least five Business Days following the date of notice of the material change. By signing or agreeing to be bound by the letter of transmittal, you will represent, among other things, that: |

- you are not an affiliate of ours;

- you are acquiring the Exchange Notes in the ordinary course of your business;

- you are not participating, do not intend to participate, and have no arrangement or understanding with anyone to participate, in the distribution (within the meaning of the Securities Act) of the Exchange Notes; and

- if you are a broker-dealer that will receive Exchange Notes for its own account in exchange for Original Notes that were acquired as a result of market-making activities or other trading activities, you will deliver a prospectus (or to the extent permitted by law, make available a prospectus to purchasers) in connection with any resale of such Exchange Notes. For further information regarding resales of the Exchange Notes by broker-dealers, see the discussion under the caption "Plan of Distribution."

| | |
|---|---|
| **Accrued Interest on the Exchange Notes and Original Notes** | The Exchange Notes will bear interest from (and including) the most recent date on which interest on the applicable series of Original Notes has been paid or, if no interest has been paid on the applicable series of Original Notes, from (and including) the issue date of the applicable series of Original Notes. If your Original Notes are accepted for exchange, you will receive interest on the corresponding Exchange Notes and not on such Original Notes, provided that you will receive interest on the Original Notes and not the Exchange Notes if and to the extent the record date for such interest payment occurs prior to completion of the relevant Exchange Offer. Any Original Notes not tendered will remain outstanding and continue to accrue interest according to their terms. |

5

| | |
|---|---|
| **Conditions to the Exchange Offers** | Our obligation to accept Original Notes tendered in the Exchange Offers is subject to the satisfaction of certain customary conditions, including that we will not be obligated to consummate the Exchange Offers upon the occurrence of an event or events or the likely occurrence of an event or events that would or might reasonably be expected to prohibit, restrict or delay the consummation of the Exchange Offers or materially impair the contemplated benefits of the Exchange Offers. No Exchange Offer is conditioned upon any minimum amount of Original Notes being tendered or on the consummation of any other Exchange Offer. Subject to applicable law, we may waive any of these conditions in our sole discretion. |
| | See "The Exchange Offers—Conditions to the Exchange Offers." |
| **Procedures for Tendering Original Notes** | A tendering holder must, at or prior to the applicable Expiration Date: |
| | • transmit a properly completed and duly executed letter of transmittal, including all other documents required by the letter of transmittal, to the Exchange Agent at the address listed in this prospectus; or |
| | • if Original Notes are tendered in accordance with the book-entry procedures described in this prospectus, the tendering holder must transmit an agent's message, as defined below, to the Exchange Agent at the address listed in this prospectus. |
| | See "The Exchange Offers—Procedures for Tendering." |
| **Special Procedures for Beneficial Owner** | If you are a beneficial owner of Original Notes that are registered in the name of your broker, dealer, commercial bank, trust company or other nominee, and you wish to tender your Original Notes in the relevant Exchange Offer, you should promptly instruct the registered holder to tender on your behalf. See "The Exchange Offers—Procedures for Tendering." |
| **Withdrawal Rights** | Tenders may be withdrawn at any time before 5:00 p.m., New York City time, on the applicable Expiration Date. See "The Exchange Offers—Withdrawal Rights." |
| **Acceptance of Original Notes and Delivery of Exchange Notes** | Subject to the conditions stated in the section "The Exchange Offers—Conditions to the Exchange Offers" of this prospectus, we will accept for exchange any and all Original Notes of each series that are properly tendered in the relevant Exchange Offer and not validly withdrawn before 5:00 p.m., New York City time, on the applicable Expiration Date. The corresponding Exchange Notes will be delivered promptly after the applicable Expiration Date. See "The Exchange Offers—Terms of the Exchange Offers." |

| | |
|---|---|
| **Absence of Dissenters' Rights of Appraisal** | You do not have dissenters' rights of appraisal with respect to the Exchange Offers. See "The Exchange Offers—Absence of Dissenters' Rights of Appraisal." |
| **Material U.S. Federal Tax Consequences** | Your exchange of Original Notes for Exchange Notes pursuant to any of the Exchange Offers will not be a taxable event for U.S. federal income tax purposes. See "Taxation." |
| **Exchange Agent** | U.S. Bank National Association is serving as exchange agent (the "Exchange Agent") in connection with the Exchange Offers. See "The Exchange Offers—Exchange Agent." |
| **Use of Proceeds** | We will not receive any cash proceeds from the issuance of the Exchange Notes in the Exchange Offers. The Original Notes surrendered and exchanged for the Exchange Notes will be retired and canceled. |
| **Resales** | Based on existing interpretations of the Securities Act by the SEC staff set forth in several no-action letters to third parties, and subject to the immediately following sentence, we believe Exchange Notes issued under these Exchange Offers in exchange for Original Notes may be offered for resale, resold and otherwise transferred by the holders thereof (other than holders that are broker-dealers) without further compliance with the registration and prospectus delivery provisions of the Securities Act. However, any holder of Original Notes that (i) is an affiliate of ours, (ii) participates, intends to participate or has an arrangement or understanding with any person to participate in the Exchange Offers for the purpose of distributing any of the Exchange Notes, or (iii) any broker-dealer that purchased any of the Original Notes from us for resale pursuant to Rule 144A or any other available exemption under the Securities Act, in each case (x) will not be able to rely on the interpretations of the SEC staff set forth in the above mentioned no-action letters, (y) will not be entitled to tender its Original Notes in the Exchange Offers and (z) must comply with the registration and prospectus delivery requirements of the Securities Act in connection with any sale or transfer of the Original Notes unless such sale or transfer is made pursuant to an exemption from such requirements.<br><br>Any broker-dealer that will receive Exchange Notes for its own account in exchange for Original Notes that were acquired as a result of market-making activities or other trading activities must deliver a prospectus (or to the extent permitted by law, make available a prospectus to purchasers) in connection with any resale of such Exchange Notes. |

| | |
|---|---|
| **Consequences Of Not Exchanging Original Notes** | If we complete the Exchange Offers and you do not exchange your Original Notes in the Exchange Offers, your Original Notes will continue to be subject to the existing restrictions on transfer described in the legend on your Original Notes. Although your Original Notes will continue to accrue interest, they will generally retain no rights under the Registration Rights Agreements. We currently do not intend to register any series of Original Notes under the Securities Act. Under limited circumstances, holders of the Original Notes, including holders that are not permitted to participate in the Exchange Offers or that may not freely sell Exchange Notes received in the Exchange Offers, may require us to file, and to cause to become effective, a shelf registration statement covering resales of Original Notes by these holders. For more information regarding the consequences of not tendering your Original Notes and our obligations to file a shelf registration statement, see "The Exchange Offers—Consequences of Exchanging or Failing to Exchange the Original Notes" and "The Exchange Offers—Registration Rights." |
| **Affiliate Information** | Credit Suisse Securities (USA) LLC, one of the initial purchasers of the Original Notes, is an affiliate of the Issuer and the Guarantor. |
| **Authorization** | The issue of the Exchange Notes due 2020, the Exchange Notes due 2025 and the related Guarantees was duly authorized by the board of directors of the Issuer on August 29, 2014, March 24, 2015 and April 17, 2015, and the Chief Financial Officer of the Guarantor on March 23, 2015. |
| | The issue of the Exchange Notes due 2045 and the related Guarantee was duly authorized by the board of directors of the Issuer on August 29, 2014, and May 7, 2015, and the Chief Financial Officer of the Guarantor on May 19, 2015. |
| | The issue of the Exchange Notes due 2022 and the related Guarantee was duly authorized by the board of directors of the Issuer on August 29, 2014, and May 7, 2015, and the Treasurer of the Guarantor on September 10, 2015. |
| **Risk Factors** | For a discussion of significant factors you should consider carefully before deciding to participate in the Exchange Offers, see "Risk Factors—Risks relating to the Exchange Offers" below. |

8

**Summary of the Terms of the Exchange Notes**

| | |
|---|---|
| **Issuer** | Credit Suisse Group Funding (Guernsey) Limited. |
| **Guarantor** | Credit Suisse Group A.G. |
| **Exchange Notes** | Up to $1,500,000,000 aggregate principal amount of 2.750% Senior Notes due 2020. |
| | Up to $2,500,000,000 aggregate principal amount of 3.750% Senior Notes due 2025. |
| | Up to $2,000,000,000 aggregate principal amount of 4.875% Senior Notes due 2045. |
| | Up to $2,000,000,000 aggregate principal amount of 3.800% Senior Notes due 2022. |
| | The terms of each series of Exchange Notes are identical to the terms of the corresponding series of Original Notes, except that the transfer restrictions, registration rights and additional interest provisions applicable to the Original Notes do not apply to the Exchange Notes. |
| **Maturity Dates** | Exchange Notes due 2020: March 26, 2020. |
| | Exchange Notes due 2025: March 26, 2025. |
| | Exchange Notes due 2045: May 15, 2045. |
| | Exchange Notes due 2022: September 15, 2022. |
| **Interest Rates, Interest Payment Dates** | Exchange Notes due 2020: 2.750% per annum, payable on March 26 and September 26 in each year. |
| | Exchange Notes due 2025: 3.750% per annum, payable on March 26 and September 26 in each year. |
| | Exchange Notes due 2045: 4.875% per annum, payable on May 15 and November 15 in each year. |
| | Exchange Notes due 2022: 3.800% per annum, payable on March 15 and September 15 in each year. |
| | The Exchange Notes will bear interest from (and including) the most recent date on which interest on the applicable series of Original Notes has been paid or, if no interest has been paid, from (and including) the issue date of the applicable series of Original Notes, to (but excluding) the applicable final Maturity Date. |
| **Form and Denomination** | The Exchange Notes will be issued in fully registered form and in denominations of $250,000 and integral multiples of $1,000 in excess thereof. |
| **Ranking** | The Exchange Notes will constitute direct, unsecured and senior obligations of the Issuer and will rank *pari passu* with all other unsecured and unsubordinated obligations of the Issuer and without any preference among themselves. |

| | |
|---|---|
| **Guarantee** | The Exchange Notes are fully and unconditionally guaranteed by the Guarantor on an unsubordinated basis, except that such Guarantees will cease to exist upon the occurrence of any Issuer Substitution (as defined below) pursuant to which the Guarantor will be substituted for the Issuer for all purposes under the Exchange Notes. If, for any reason, the Issuer does not make any required payment of principal, premium, if any, of, and interest, if any, on the Exchange Notes when due, whether on the normal due date, on acceleration, redemption or otherwise, the Guarantor will cause the payment to be made to, or to the order of, the Trustee. The holders of the Exchange Notes are entitled to payment under the Guarantees by the Guarantor without taking any action whatsoever against the Issuer. |
| | The Guarantees will rank *pari passu* with all other unsecured and unsubordinated obligations of the Guarantor. |
| **Acknowledgement of Swiss Resolution Power and Restructuring Protective Measures** | By its acquisition of the Exchange Notes, each holder of the Exchange Notes (including each beneficial owner) acknowledges, agrees to be bound by, and consents to the exercise of, any Swiss Resolution Power (as defined below) with respect to the Guarantor that results in the write-down and cancellation and/or conversion into equity of the Guarantor of the entire, or a portion of the, principal amount of, and/or accrued interest on, the Exchange Notes, irrespective of whether such amounts have already become due and payable prior to such action. By its acquisition of the Exchange Notes, each such holder (including each beneficial owner) further acknowledges, agrees to be bound by, and consents to the ordering of, any Restructuring Protective Measures (as defined below) that result in the deferment of payment of principal and/or interest under the Exchange Notes. By its acquisition of the Exchange Notes, each holder (including each beneficial owner) further acknowledges and agrees that its rights are subject to, and, if necessary, will be altered without such holder's consent, including by means of an amendment or modification to the terms of the Indentures or of the Exchange Notes, so as to give effect to any such exercise of Swiss Resolution Power or any such ordering of Restructuring Protective Measures. For the avoidance of doubt, this acknowledgement and consent does not qualify as a waiver of the rights, procedural or otherwise, existing for creditors generally, and the holders of the Exchange Notes specifically, under the applicable banking regulation pursuant to which any Swiss Resolution Power is exercised. See "Description of Exchange Notes —Agreement with Respect to the Exercise of Swiss Resolution Power and the Ordering of Restructuring Protective Measures" for more information. |

"Protective Measures" means any protective measures that the Swiss Resolution Authority may order pursuant to any statutory power set forth in article 26 of the Swiss Federal Act of November 8, 1934, on Banks and Savings Banks, as may be amended from time to time (referred to herein as the "Swiss Banking Act"), or in any successor Swiss law or regulation or analogous Swiss law or regulation applicable to bank holding companies in Switzerland such as the Guarantor, including, (a) giving instructions to the governing bodies of the respective entity, (b) appointing an investigator, (c) stripping governing bodies of their power to legally represent the respective entity or remove them from office, (d) removing the regulatory or company-law audit firm from office, (e) limiting the respective entity's business activities, (f) forbidding the respective entity to make or accept payments or undertake security trades, (g) closing down the respective entity, or (h) except for mortgage-secured receivables of central mortgage bond institutions, ordering a moratorium or deferral of payments.

"Non-Restructuring Protective Measures" means any Protective Measures ordered by the Swiss Resolution Authority with respect to the Guarantor that are ordered outside of and independently of any Guarantor Restructuring Proceedings.

"Restructuring Protective Measures" means any Protective Measures ordered by the Swiss Resolution Authority with respect to the Guarantor that are ordered or confirmed upon the opening of or during any Guarantor Restructuring Proceedings.

"Restructuring Proceedings" means restructuring proceedings within the meaning of article 28 et seq. of the Swiss Banking Act, and article 40 et seq. of the Ordinance of August 30, 2012 of the Swiss Financial Market Supervisory Authority FINMA (together with any successor thereto referred to herein as "FINMA") on the Insolvency of Banks and Securities Dealers, as may be amended from time to time (referred to herein as the "Swiss Banking Insolvency Ordinance"), or any successor Swiss law or regulation or analogous Swiss law or regulation applicable to banks or bank holding companies in Switzerland such as the Guarantor.

"Swiss Resolution Authority" means FINMA or any other authority in Switzerland that is competent under Swiss law to exercise a Swiss Resolution Power or to order Protective Measures at the relevant time.

11

|  | "Swiss Resolution Power" means any statutory power of the Swiss Resolution Authority that it may exercise during Restructuring Proceedings as set forth in article 28 et seq. of the Swiss Banking Act and article 40 et seq. of the Swiss Banking Insolvency Ordinance, or in any successor Swiss law or regulation or analogous Swiss law or regulation applicable to bank holding companies in Switzerland such as the Guarantor, including, without limitation, the power to (a) transfer the assets of the entity subject to such Restructuring Proceedings, or portions thereof, together with such entity's debt and other liabilities, or portions thereof, and contracts, to another entity, (b) stay (for a maximum of 48 hours) the termination of, and the exercise of rights to terminate relating to, financial contracts to which the entity subject to such Restructuring Proceedings is a party, (c) convert the debt of the entity subject to such Restructuring Proceedings into equity of the Guarantor, and/or (d) partially or fully write-down the obligations of the entity subject to such Restructuring Proceedings. |
|---|---|
| **Waiver of Set-Off** | By its acquisition of the Exchange Notes, each holder of the Exchange Notes (including each beneficial owner) will be deemed to have waived any right of set-off, compensation or retention, or in respect of such other netting arrangement in respect of any amount with respect to the Exchange Notes or the applicable Indenture that they might otherwise have against the Issuer or the Guarantor, whether before or during any respective Restructuring Proceedings or any winding up of the Issuer or the Guarantor. |
| **Issuer Substitution** | The Issuer may, without consent of the holders or the Trustee, substitute the Guarantor for itself for all purposes under the Exchange Notes of any series and the applicable Indenture at any time, provided that at such time interest on the Exchange Notes of such series may be paid without the deduction by the Guarantor of Swiss withholding tax (such substitution referred to herein as a "Voluntary Issuer Substitution"). |

12

Whether or not interest on the Exchange Notes may be paid without the deduction by the Guarantor of Swiss withholding tax, and provided that a Voluntary Issuer Substitution has not previously occurred, the Issuer will, without the consent of the holders or the Trustee (which consent the holders shall be deemed to have given by their acquisition of the Exchange Notes), automatically and by operation of the terms of the applicable Indenture, substitute the Guarantor for itself for all purposes under the Exchange Notes and the applicable Indenture upon the occurrence of a Restructuring Event (such substitution referred to herein as a "Restructuring Issuer Substitution"). Upon any Issuer Substitution, the Issuer shall be released from its obligations under the relevant series of Exchange Notes and the applicable Indenture, and the Guarantor shall succeed to, and be substituted for, and may exercise every right and power of, the Issuer under the relevant series of Exchange Notes and the applicable Indenture with the same effect as if the Guarantor had been named as issuer under the Exchange Notes and the applicable Indenture and the relevant Guarantee shall cease to exist. See "Description of Exchange Notes—Issuer Substitution" for more information.

"Restructuring Event" refers to a Bank Restructuring Event or a Guarantor Restructuring Event, as applicable. A "Guarantor Restructuring Event" shall be deemed to have occurred upon the opening of Restructuring Proceedings by the Swiss Resolution Authority with respect to the Guarantor, referred to herein as "Guarantor Restructuring Proceedings." A "Bank Restructuring Event" shall be deemed to have occurred upon the opening of Restructuring Proceedings by the Swiss Resolution Authority with respect to Credit Suisse, referred to herein as "Bank Restructuring Proceedings."

13

| | |
|---|---|
| **Exchange Following a Completion Event** | Upon a Completion Event (as defined below), if and to the extent that (a) the Exchange Notes of any series have not been fully written-down and/or converted into equity of the Guarantor and (b) the Guarantor is or would be required to deduct Swiss withholding tax from interest payments on the Exchange Notes under Swiss laws in effect at such time, then the Guarantor will exchange the Exchange Notes of such series for a like principal amount of New Notes (as defined below) on a one-for-one basis by (i) redeeming the Exchange Notes of the relevant series by delivering New Notes in lieu of cash to the Trustee on behalf of the holders and (ii) paying to the Trustee on behalf of the holders in cash any accrued and unpaid interest on the Exchange Notes of the relevant series up to (and including) the date immediately prior to the date of such exchange (for the avoidance of doubt, to the extent that such interest has not been written-down and cancelled or converted into equity of the Guarantor in connection with the relevant Guarantor Restructuring Proceedings) in each case on the date specified therefor in the Completion Event Notice (as defined below), which we refer to as a "Post-Restructuring Exchange." Receipt by the Trustee of the New Notes in exchange for the outstanding Exchange Notes of the relevant series and the required cash payment, if any, by the Guarantor will constitute good and complete discharge of the Guarantor's obligations in respect of the Exchange Notes of the relevant series. Notwithstanding the foregoing, if at the time of the Completion Event, the Guarantor is not and will not be required to deduct Swiss withholding tax from interest payments on the Exchange Notes under Swiss laws in effect at such time, the Guarantor may, but will not be required to, exchange the Exchange Notes pursuant to a Post-Restructuring Exchange.<br><br>A "Completion Event" means, following a Restructuring Event, the publication of the notice by the Swiss Resolution Authority that the Guarantor Restructuring Proceedings have been completed; provided, however, that if the Restructuring Event occurred as a result of Bank Restructuring Proceedings only, and no Guarantor Restructuring Event has since occurred, then Completion Event means the publication of the notice by the Swiss Resolution Authority that the Bank Restructuring Proceedings have been completed (the Issuer agreeing to provide a copy of any notice referred to in this definition directly to DTC (as defined below) with an informational copy to the Trustee). |

14

"New Notes" means, with respect to each series of Exchange Notes, notes (a) to be issued by the Issuer, with the benefit of a guarantee issued by the Guarantor, (b) otherwise having the same terms as the relevant series of Exchange Notes (including, without limitation, the same denomination per Exchange Note) at the time of the Post-Restructuring Exchange, and (c) having an aggregate principal amount equal to the aggregate principal amount of the Exchange Notes of such series outstanding on the date of the Post-Restructuring Exchange. Such notes will be issued pursuant to a new indenture.

"Completion Event Notice" means, upon the occurrence of a Completion Event with respect to which a Post-Restructuring Exchange is required or has been elected by the Guarantor, the notice that the Guarantor will give to the holders through DTC or other clearing system (with a copy to the Trustee for information purposes) no more than 30 days after the occurrence of such event, which notice will state that a Completion Event has occurred and specify the date on which a Post-Restructuring Exchange will take place, which date will be not less than 60 nor more than 90 Business Days after the date of the Completion Event Notice.

**Tax Redemption**

Subject to the prior approval of FINMA, if then required under Swiss laws and regulations applicable to the Guarantor from time to time, the Issuer may at its option redeem the Exchange Notes of any series, in whole but not in part, at any time on giving not less than 30 nor more than 60 days' notice, at the principal amount of the Exchange Notes being redeemed, together with accrued interest to the date of redemption, if it or the Guarantor has or will become obligated to pay Additional Amounts in respect of the Exchange Notes of such series as described herein under "Description of Exchange Notes—Tax Redemption."

**Events of Default**

With respect to any series of Exchange Notes, it will be an Event of Default if:

(i)     payment of the principal or any premium on any Exchange Note of such series is not made when due and payable;

(ii)    payment of the interest on any Exchange Note of such series is not made for 30 Business Days after such interest becomes due and payable;

(iii)   any other covenant in the applicable Indenture is not performed for 60 Business Days after written notice from the Trustee or from the holders of 25% in principal amount of the outstanding Exchange Notes of such series; or

(iv)    certain events of bankruptcy, insolvency or insolvent reorganization are taken with respect to the Issuer or the Guarantor;

15

provided, however, that neither (i) a Guarantor Restructuring Event, nor (ii) the exercise of any Swiss Resolution Power with respect to the Guarantor that requires or results in any write-down and cancellation and/or conversion into equity of the Guarantor of the entire, or a portion of, the principal amount of, and/or accrued interest on, the Exchange Notes, nor (iii) the ordering of any Restructuring Protective Measures that require or result in the deferment of payment of principal and/or interest under the Exchange Notes, nor (iv) any consequences resulting from any of the foregoing, will be a Default or an Event of Default. A "Default" is any event which is, or after notice or the passage of time or both would be, an Event of Default. For the avoidance of doubt, any consequences resulting from any Non-Restructuring Protective Measures that would otherwise constitute a Default or an Event of Default will constitute a Default or an Event of Default, as applicable. See "Description of Exchange Notes—Events of Default."

| | |
|---|---|
| **Listing and Admission to Trading** | Application will be made to the SIX Swiss Exchange for listing of each series of the Exchange Notes. The Exchange Notes are expected to be provisionally admitted to trading on the SIX Swiss Exchange from January 19, 2016. The last trading day for each series of Exchange Notes is expected to be the second trading day prior to the date on which the Exchange Notes of such series are fully redeemed in accordance with the applicable Indenture. |
| **Book-Entry Issuance, Settlement and Clearance** | Each series of Exchange Notes will be represented by one or more fully registered global notes (the "Global Notes"). The Global Notes will be registered under the name of Cede & Co., as nominee for DTC. You may elect to hold interests in the Exchange Notes through either DTC (in the United States), or Clearstream Banking, société anonyme, which we refer to as "Clearstream, Luxembourg," or Euroclear Bank, S.A./N.V., or its successor, as operator of the Euroclear System, which we refer to as "Euroclear" (outside of the United States), if you are participants of such systems, or indirectly through organizations which are participants in such systems. Interests held through Clearstream, Luxembourg and Euroclear will be recorded on DTC's books as being held by the U.S. depositary for each of Clearstream, Luxembourg and Euroclear, which U.S. depositaries will in turn hold interests on behalf of their participants' customers' securities accounts. |

16

| | |
|---|---|
| **ERISA** | The Exchange Notes may be acquired by (i) an "employee benefit plan" as defined in and subject to Title I of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (ii) a plan, account or other arrangement subject to Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), (iii) any plan (such as a governmental plan (as defined in Section 3(32) of ERISA), a non-U.S. plan (as described in Section 4(b)(4) of ERISA) and certain church plans (as defined in Section 3(33) of ERISA and that have made no election under Section 410(d) of the Code)), account or arrangement that, while not subject to Title I of ERISA or Section 4975 of the Code, is subject to substantially similar provisions of any U.S. federal, state or local law, or non-U.S. law ("Similar Law") or (iv) any entity whose underlying assets include, or are deemed for the purposes of ERISA, the Code or any Similar Law to include, plan assets of any such employee benefit plan or other plan, account or arrangement, each as described in (i), (ii) or (iii), subject to certain conditions. Each investor in an Exchange Note will be deemed to have made certain representations regarding these matters. Prospective investors must carefully consider the restrictions set forth in "Certain ERISA Considerations." |
| **Taxation** | All payments of principal and interest in respect of the Exchange Notes will be made by the Issuer, failing which by the Guarantor, without withholding or deduction for or on account of taxes imposed by Guernsey or Switzerland, unless such withholding or deduction is required by law. In the event that any such deduction or withholding is imposed by Guernsey or Switzerland, the Issuer, failing which, the Guarantor, will, save in certain limited circumstances as described herein under "Description of Exchange Notes—Payment of Additional Amounts," be required to pay Additional Amounts to cover the amounts so deducted or withheld. Also see "Description of Exchange Notes—Tax Redemption." |
| | For a discussion of the U.S. federal income taxation of the Exchange Notes, see "Taxation—United States Taxation." |
| **Risk Factors** | There are certain factors that may affect the Issuer's and the Guarantor's ability to fulfill their respective obligations under the Exchange Notes. For a discussion of significant factors you should consider carefully before deciding to participate in the Exchange Offers, see "Risk Factors—Risks relating to the Exchange Notes" below. |
| **Governing Law** | The Exchange Notes, the Indentures and the Guarantees will be governed by New York law. |

17

| | |
|---|---|
| **Jurisdiction** | Any suit, action or proceeding against the Issuer or the Guarantor arising out of or based upon the Exchange Notes, the Guarantees or the Indentures may be instituted in any state or federal court in the borough of Manhattan, The City of New York. |
| **Trustee, Principal Paying Agent, Registrar and Transfer Agent** | U.S. Bank National Association. |
| **Swiss Paying Agent and Swiss Listing Agent** | Credit Suisse. |
| **Currency** | United States dollars. |
| **Swiss Security Numbers** | Exchange Notes due 2020: 30190766.<br><br>Exchange Notes due 2025: 30190767.<br><br>Exchange Notes due 2045: 30190768.<br><br>Exchange Notes due 2022: 30190769. |