**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALI DIABAT, Individually and On Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>   v.<br><br>CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, ULRICH KÖRNER, DIXIT JOSHI, THOMAS GOTTSTEIN, DAVID R. MATHERS, ANTÓNIO HORTA-OSÓRIO, and PRICEWATERHOUSECOOPERS AG,<br><br>                  Defendants. | No. 1:23-cv-5874-CM-SLC |

**DEFENDANT PRICEWATERHOUSECOOPERS AG'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Michael G. Bongiorno
Andrew Rhys Davies
Brad E. Konstandt
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8880
michael.bongiorno@wilmerhale.com
andrew.davies@wilmerhale.com
brad.konstandt@wilmerhale.com

*Counsel for PricewaterhouseCoopers AG*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................ 4

      A.     Challenged Statements by PwC CH .................................................................. 4

            1.     Interim Reports (Q1, Q2 and Q3 2021 and Q1, Q2 and Q3 2022)............. 5

            2.     2021 and 2022 Annual Reports.................................................................. 5

      B.     Allegations of PwC CH's Putative Scienter ..................................................... 7

LEGAL STANDARD......................................................................................................... 8

ARGUMENT .................................................................................................................. 11

I.      PLAINTIFF FAILS TO ALLEGE SCIENTER THROUGH MOTIVE AND
OPPORTUNITY ................................................................................................... 11

II.     PLAINTIFF FAILS TO ALLEGE SCIENTER THROUGH CONSCIOUS
MISBEHAVIOR OR RECKLESSNESS ................................................................. 13

      A.     Plaintiff Cannot Plead Scienter-By-Hindsight Based on Later Disclosures......... 13

      B.     Plaintiff's Allegations Purporting to Demonstrate Conscious Misbehavior
or Recklessness Do No Such Thing........................................................................ 16

            1.     Plaintiff's Only "Red Flag" Allegation Involves a Different
Auditing Firm and Does Not Establish That PwC CH Acted with
Scienter ................................................................................................... 16

            2.     Credit Suisse's Receipt of SEC Comment Letters Does Not Create
a Strong Inference That PwC CH's Challenged Statements Were
Knowingly False or Reckless................................................................... 19

            3.     Plaintiff's Allegations Regarding Alleged Violations of a PCAOB
Auditing Standard Cannot Establish Scienter........................................... 22

            4.     Plaintiff Cannot Plead Scienter Through Vague Allusions to Credit
Suisse Misconduct Unrelated to the Challenged Statements..................... 24

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Athale v. SinoTech Energy Ltd.*,
2014 WL 687218 (S.D.N.Y. Feb. 21, 2014)........................................................11, 19, 23

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).........................................................................................4

*Chapman v. Mueller Water Products, Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020).........................................................................15

*Dobina v. Weatherford International Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)....................................................................11, 15

*In re Advanced Battery Technologies, Inc.*,
2013 WL 3784134 (S.D.N.Y. July 18, 2013) ...................................................10, 16, 18, 23

*In re Advanced Battery Technologies, Inc.*,
781 F.3d 638 (2d Cir. 2015)..................................................1, 9, 10, 14, 16, 25

*In re Advanced Battery Technologies Inc. Securities Litigation*,
2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012)..................................................10, 17, 18, 20

*In re Citigroup Securities Litigation*,
2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ............................................................20, 25

*In re DNTW Chartered Accountants Securities Litigation*,
172 F. Supp. 3d 675 (S.D.N.Y. 2016),
*aff'd*, 666 F. App'x 78 (2d Cir. 2016)............................................9, 10, 14, 16, 17

*In re J.P. Jeanneret Associates, Inc.*,
769 F. Supp. 2d 340 (S.D.N.Y. 2011)....................................................................13, 22

*In re Keyspan Corp. Securities Litigation*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) .........................................................................14

*In re Longtop Financial Technologies Ltd. Securities Litigation*,
910 F. Supp. 2d 561 (S.D.N.Y. 2012)........................................................................9, 17

*In re Manulife Financial Corp. Securities Litigation*,
276 F.R.D. 87 (S.D.N.Y. 2011) ...................................................................................20

*In re Novo Nordisk Securities Litigation*,
530 F. Supp. 3d 495 (D.N.J. 2021) ..............................................................................12

ii

*In re Petrobras Securities Litigation*,
2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016)........................................................................12, 24

*In re Tower Group International, Ltd. Securities Litigation*,
2015 WL 5813393 (S.D.N.Y. Sept. 18, 2015)........................................................................10, 25

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .............................................................................14

*Iowa Public Employee's Retirement Systems v. Deloitte & Touche LLP*,
919 F. Supp. 2d 321 (S.D.N.Y. 2013)................................................................11, 13, 22, 23

*Lachman v. Revlon, Inc.*,
487 F. Supp. 3d 111 (E.D.N.Y. 2020) .......................................................................................15

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco Inc.*,
2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) ...........................................................................14

*Rotunno v. Wood*,
2022 WL 14997930 (2d Cir. Oct. 27, 2022)...............................................................................12

*Saltz v. First Frontier, L.P.*,
485 F. App'x 461 (2d Cir. 2012) ...............................................................................................17

*Saltz v. First Frontier, LP,*
782 F. Supp. 2d 61 (S.D.N.Y. 2010)..........................................................................................20

*Sanofi Securities Litigation v. Meeker*,
87 F. Supp. 3d 510 (S.D.N.Y. Jan. 28, 2015) ...........................................................................22

*South Cherry Street, LLC v. Hennessee Group*,
573 F.3d 98 (2d Cir. 2009)...........................................................................................................9

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)..............................................................8, 10, 17, 20

*Stephenson v. Citco Group Ltd.*,
700 F. Supp. 2d 599 (S.D.N.Y., 2010)................................................................................11, 18

*Stephenson v. PricewaterhouseCoopers, LLP*,
768 F. Supp. 2d 562 (S.D.N.Y. 2011).........................................................................................17

*Stevelman v. Alias Research, Inc.*,
174 F.3d 79 (2d Cir. 1999)..........................................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................................9, 20

*Venkataraman v. Kandi Technology Group, Inc.*,
    2021 WL 4952260 (S.D.N.Y. Oct. 25, 2021)...................................................................14

## STATUTES, RULES, AND REGULATIONS

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2)...................................9

## OTHER AUTHORITIES

PCAOB Auditing Standard 3101.11.............................................................................................24

PCAOB Release No. 2015-002 (Mar. 31, 2015) .........................................................................22

**PRELIMINARY STATEMENT**

This is a securities fraud class action against Credit Suisse Group AG ("Credit Suisse") based on Credit Suisse's alleged misstatements regarding its risk management and governance practices (and other matters) in the years leading up to its acquisition by UBS Group AG ("UBS"). Although nothing new has come to light in the six months since Plaintiff commenced this action, the Consolidated Amended Class Action Complaint ("CAC") asserts for the first time that PricewaterhouseCoopers AG ("PwC CH")—appointed as Credit Suisse's independent auditor in April 2020—"participat[ed] in the fraud" by making material misstatements in its interim and annual reports that accompanied Credit Suisse's quarterly and year-end financial statements.

Plaintiff makes no effort to tether PwC CH's alleged misstatements to the event that precipitated this action: UBS's acquisition of Credit Suisse following significant outflows of Credit Suisse customer funds. That is because no such connection exists, and injecting PwC CH into this case reflects nothing more than Plaintiff's misguided effort to add another defendant with deep pockets.

It is therefore no surprise that the handful of perfunctory allegations directed to PwC CH within the 214-page CAC do not come close to satisfying this Circuit's stringent standard for pleading auditor scienter—namely, that PwC CH engaged in conduct so reckless that it "approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) ("*Advanced Battery III*"). In fact, Plaintiff's futile attempts to plead scienter betray the meritless nature of his claim against PwC CH.

1

The CAC first brazenly suggests that PwC CH was motivated to commit fraud simply because Credit Suisse paid it fees for auditing services. That contention is absurd on its face and fails as a matter of law under long-standing precedent.

Plaintiff's effort to plead scienter through conscious misbehavior or recklessness also is woefully deficient. The CAC does not allege a single *fact* about PwC CH's annual audits or interim reviews relevant to evaluating whether PwC CH acted with the requisite scienter. The CAC does not cite the account of any witness who can speak to PwC CH's conduct or mental state, refer to any internal PwC CH document, describe any meeting, conversation, or other interaction between Credit Suisse and PwC CH, or identify even one PwC CH professional allegedly involved. And the allegations in the CAC based on "confidential witnesses" do not relate in any way to PwC CH or its work for Credit Suisse.

With no motive and no facts about PwC CH's conduct, Plaintiff defaults to conclusions, speculation, and hindsight, including a hodgepodge of "scienter" assertions that fail to plead a strong inference that PwC CH acted with the requisite mental state:

*First*, Plaintiff contends that because Credit Suisse identified errors in its financial statements, and Credit Suisse and PwC CH later disclosed that Credit Suisse had material weaknesses in its internal controls over financial reporting, PwC CH *must have known* prior statements were false. Of course, courts in this Circuit routinely reject "fraud by hindsight" as a means to plead auditor liability under Section 10(b).

*Second*, Plaintiff alleges the existence of a single "red flag" that PwC CH allegedly ignored, but the putative "red flag" concerns nebulous information that Credit Suisse's *predecessor* auditor allegedly identified through internal reviews, and there is no allegation that

2

the predecessor auditor ever shared that information with PwC CH (or that PwC CH otherwise was aware of it).

*Third*, Plaintiff points to comment letters that the Securities and Exchange Commission ("SEC") sent to Credit Suisse and implies—without pleading anything about the actual *content* of the letters—that those letters should have alerted PwC CH that statements in its reports were false.  Such conclusory assertions cannot plead scienter, and in any event, the publicly available letters contravene the inference that Plaintiff seeks (and at most reflect non-actionable disagreements about interpretations of auditing and accounting standards).

*Fourth*, Plaintiff baldly asserts that PwC CH violated a single auditing standard, but his speculative allegations do not provide a factual basis for concluding that a violation occurred, much less that any such violation (even if pled) would rise above mere negligence.

And *finally*, Plaintiff vaguely cites Credit Suisse's alleged "history" of misconduct without even attempting to connect it to PwC CH's reviews, audits, or challenged statements.

At bottom, this case is nothing like those extreme instances in which an auditor can plausibly be alleged to have knowingly participated in or recklessly disregarded its audit client's financial fraud (for example, Enron's blatant manipulation of its financial statements or WorldCom's reporting massive amounts of fictitious revenue).  Plaintiff's allegations against Credit Suisse are premised on poor management, not financial fraud.  The allegations against PwC CH at most show that it identified certain technical accounting items that did not materially affect Credit Suisse's financial statements, had nothing to do with Credit Suisse's deterioration as a going concern, and when revealed, barely affected Credit Suisse's stock price.

Taken together or individually, Plaintiff's allegations fall well short of pleading that PwC CH acted with scienter.  The Court should dismiss the claim against PwC CH with prejudice.

**BACKGROUND**[1]

Plaintiff devotes the vast majority of the CAC to allegations against Credit Suisse and the Individual Defendants—not PwC CH.  Plaintiff alleges that Credit Suisse and the Individual Defendants violated Sections 10(b) and 20(a) of the Exchange Act of 1934 by making a series of alleged misstatements on topics including, among others: (i) Credit Suisse's "risk management and/or control governance procedures and/or policies"; (ii) outflows of customer funds and Credit Suisse's "liquidity pool and its liquidity and funding profile, policy, and/or risk parameters"; and (iii) Credit Suisse's internal controls over financial reporting ("ICFR").  *See, e.g.*, CAC ¶¶ 55, 82, 163.

The CAC does not identify any connection between the mosaic of Credit Suisse and the Individual Defendants' challenged statements (or their alleged underlying conduct) and PwC CH.  Instead, Plaintiff's Section 10(b) claim against PwC CH focuses on a narrow set of statements by PwC CH concerning Credit Suisse's ICFR, financial statements, and compliance with generally accepted accounting principles ("GAAP"), as well as PwC CH's compliance with Public Company Accounting Oversight Board ("PCAOB") auditing standards.  CAC ¶¶ 320-43.

A.      **Challenged Statements by PwC CH**

Credit Suisse shareholders appointed PwC CH to succeed KPMG AG as Credit Suisse's independent auditor on April 30, 2020.  CAC ¶ 19.  PwC CH served as Credit Suisse's auditor throughout the alleged class period.  *Id.*  Plaintiff challenges certain statements in PwC CH "reports" that accompanied (i) Credit Suisse's interim reports on Form 6-K for the first three quarters of 2021 and 2022, and (ii) annual reports on Form 20-F for fiscal years 2021 and 2022.

---

[1]      For purposes of this motion only, PwC CH accepts, without conceding, the truth of well-pleaded factual allegations in the CAC.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

### 1.    Interim Reports (Q1, Q2 and Q3 2021 and Q1, Q2 and Q3 2022)

Credit Suisse filed interim reports for the first, second, and third quarters of 2021 between May 6 and November 4, 2021.  CAC ¶¶ 325-30.  Each interim report included a "Report of Independent Registered Public Accounting Firm" that PwC CH prepared, which (among other things): (i) state that PwC CH was "not aware of any material modifications that should be made to the accompanying interim financial statements for them to be in conformity with" GAAP; (ii) offer PwC CH's opinion that Credit Suisse's "consolidated balance sheet as of December 31, 2020 [was] fairly stated, in all material respects"; and (iii) state that PwC CH conducted its interim reviews (and the preceding audit) "in accordance with" PCAOB standards.  *Id.* ¶¶ 24, 325, 327, 329.

Credit Suisse filed interim reports for the first, second, and third quarters of 2022 between May 5 and November 2, 2022.  CAC ¶¶ 334, 336, 338.  Each interim report included a "Report of Independent Registered Public Accounting Firm," that PwC CH prepared, which contain the same challenged statements as the 2021 interim reports.  *Id.* ¶¶ 24, 334-397.

### 2.    2021 and 2022 Annual Reports

Credit Suisse filed its annual report for the 2021 fiscal year on March 10, 2022.  CAC ¶ 331.  Credit Suisse disclosed that it had "'identified accounting issues' that required it to revise (not restate) its financial statements for the years ending December 31, 2020 and December 31, 2019."  *Id.* ¶ 25.  These "accounting issues" concerned: (i) the "'netting treatment relating to the presentation of a limited population of certain securities lending and borrowing activities' resulting in the 'balance sheet and cash flow positions for both assets and liabilities relating to these activities [being] understated'"; and (ii) the presentation in the "consolidated statements of cash flows" of "share-based compensation expenses," "non-cash exchange rate movements related to certain operating, investing, and financing activities," and "certain cash flow hedges."

5

*Id.* The 2021 annual report states that "these issues were 'not material individually or in aggregate.'" *Id.*

PwC CH prepared a "Report of Independent Registered Public Accounting Firm" that was attached to Credit Suisse's 2021 annual report. CAC ¶¶ 24, 331. PwC CH's report states (as relevant here) that (i) PwC CH had audited Credit Suisse's financials for that year "in accordance with PCAOB standards"; (ii) Credit Suisse's financial statements "present[ed] fairly, in all material respects, the financial position of [Credit Suisse] as of December 31, 2021 and 2020"; and (iii) Credit Suisse "maintained, in all material respects, effective internal control over financial reporting as of December 31, 2021." *Id.*

On March 14, 2023, Credit Suisse filed its 2022 annual report, which disclosed that Credit Suisse had "identified certain material weaknesses in [ICFR] as of December 31, 2021 and, consequently December 31, 2022." CAC ¶ 340; *see id.* ¶¶ 296, 358. Notwithstanding those material weaknesses, Credit Suisse confirmed that its consolidated financial statements in the annual report "fairly present[ed], in all material respects, [its] consolidated financial condition as of December 31, 2022 and 2021, and [its] consolidated results of operations and cash flows for the years ended December 31, 2022, 2021 and 2020, in conformity with US GAAP." CAC ¶ 340; *see id.* ¶¶ 296, 358.

PwC CH's "Report of Independent Registered Public Accounting Firm," filed together with Credit Suisse's 2022 annual report, provides PwC CH's opinion that Credit Suisse "did not maintain, in all material respects, effective" ICFR "as of December 31, 2022," and that ICFR also "was not effective" as of December 31, 2021. CAC ¶ 341. PwC CH's report then specifies the nature of the material weaknesses. *Id.* Notwithstanding the material weakness in Credit

6

Suisse's internal controls, PwC CH opined that Credit Suisse's "consolidated financial statements . . . present fairly, in all material respects, [its] financial position." *Id.*

### B.    Allegations of PwC CH's Putative Scienter

The crux of Plaintiff's claim against PwC CH, and the starting point for the allegations of scienter, are Credit Suisse's disclosures in the 2021 and 2022 annual reports. Without alleging a single fact contemporaneous with the relevant audits and reviews, Plaintiff summarily asserts that PwC CH's statements were knowingly false or reckless when made because Credit Suisse *later* disclosed (i) certain accounting issues "that required a revision of Credit Suisse's consolidated financial statements" (2021 annual report); and (ii) that it "had a material weakness" in ICFR (2022 annual report). *See, e.g.*, CAC ¶ 324 ("The fact that the existence of accounting issues in Credit Suisse's 2020 financial statements was not revealed until March 2022, and the existence of a material weakness in internal controls over financial reporting related to these issues was not revealed until March 2023, indicates that PwC neither obtained reasonable assurance about whether material weaknesses existed during its 2020 audit nor in its 2021 interim Quarterly Reports."); *see also id.* ¶¶ 326, 328, 330, 332, 335, 337, 339.

Based entirely on hindsight, Plaintiff alleges that PwC CH *must have known* the challenged statements were false at the time. Plaintiff posits that PwC CH agreed to "participate" in Credit Suisse's alleged fraud to earn audit fees (CAC ¶¶ 8, 445), a generic and irrational motivation that courts in this Circuit regularly hold to be deficient. The CAC does not allege that PwC CH's fees were out of line with those paid to auditors of other large banks.

Notably, Plaintiff does not (and could not) allege that the disclosed internal control deficiencies—which relate solely to financial reporting and pertain to a single prior statement by PwC CH (CAC ¶ 341)—had any connection to the putative fraud by Credit Suisse. The CAC contains no allegations attempting to link the control deficiencies to (i) the separate risk

7

management and governance issues that Plaintiff alleges contributed to the "variety of high-profile scandals" in which Credit Suisse was supposedly involved before the class period, (ii) any of Credit Suisse's alleged conduct during the class period, or (iii) the significant outflows of Credit Suisse customer funds that led to its acquisition by UBS. *See* CAC ¶ 4. It is therefore little surprise that, on the day that Credit Suisse disclosed that it had material weaknesses in ICFR, the price of its American Depository Shares ("ADSs") barely reacted, declining by just $0.03 (or 1.18%). *Id.* ¶¶ 359, 361. Within the 29 paragraphs of the CAC dedicated to loss causation (¶¶ 344-72), this is the only decline in ADS price which Plaintiff attempts to connect to PwC CH's allegedly fraudulent conduct.

Plaintiff implicitly recognizes that later disclosures do not establish earlier knowledge or recklessness by tacking on to the end of the CAC a short section titled "Scienter for PwC." *See* CAC at pp. 201-04. Over the course of nine paragraphs (¶¶ 440-48), Plaintiff advances a mishmash of allegations purporting to plead scienter, all of which fail individually and in aggregate. *See infra* Sections I and II.B. For the reasons detailed below, Plaintiff fails to plead, as he must, facts showing "motive and opportunity" (CAC ¶¶ 445-48) or constituting "strong circumstantial evidence of conscious misbehavior or recklessness" (CAC ¶¶ 440-44).

## LEGAL STANDARD

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must plead that the defendant: (i) made a misstatement or omission of material fact; (ii) with scienter; (iii) in connection with the purchase or sale of securities; (iv) upon which the plaintiff relied; and (v) that the plaintiff's reliance was the proximate cause of its economic loss. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 425 (S.D.N.Y. 2014). The element of scienter is subject to the heightened pleading requirements of the Private

Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(2), which requires that a complaint alleging securities fraud "state with particularity facts giving rise to a strong inference" that the defendant acted with a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 321 (2007) (citations omitted).

Pleading scienter in a securities fraud action requires that the plaintiff allege facts either: (i) showing that the defendant had both motive and opportunity to commit the fraud; or (ii) constituting strong circumstantial evidence of conscious misbehavior or recklessness. *In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 684 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 78 (2d Cir. 2016). Where a plaintiff seeks to plead scienter on a theory of conscious misbehavior or recklessness, "the strength of the circumstantial allegations must be correspondingly greater." *Advanced Battery III*, 781 F.3d at 644; *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 574 (S.D.N.Y. 2012). To state a claim based on conscious misbehavior or recklessness, a plaintiff must allege that the defendant acted with a "a state of mind approximating actual intent, and not merely a heightened form of negligence." *S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis and citation omitted).

For securities fraud claims asserted against an *auditor*, the Second Circuit has emphasized that the requisite recklessness "must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care." *Advanced Battery III*, 781 F.3d at 644 (citation omitted). Such recklessness "must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Id.* (citation omitted); *see In re DNTW*, 172 F. Supp. 3d at 685 (plaintiff must allege "'deliberate illegal behavior' by the auditor").

9

This Court has recognized that the pleading requirements for auditor scienter are "demanding." *In re Advanced Battery Techs*. *Inc. Sec. Litig.*, 2012 WL 3758085, at *15 (S.D.N.Y. Aug. 29, 2012) ("*Advanced Battery I*") (McMahon, J.); *see In re DNTW*, 172 F. Supp. 3d at 684 (the standard for pleading auditor scienter is "particularly stringent"). Indeed, courts in this Circuit frequently hold that, to state a claim, the plaintiff must allege facts showing that the audit was "so deficient as to amount to *no audit at all*." *Advanced Battery III*, 781 F.3d at 644 (emphasis added); *see In re Advanced Battery Techs., Inc.*, 2013 WL 3784134, at *6 (S.D.N.Y. July 18, 2013) ("*Advanced Battery II*") (McMahon, J.) (referring to the "no audit at all" threshold for pleading a claim); *In re DNTW*, 172 F. Supp. 3d at 685 (same). Other formulations of the standard similarly emphasize the extreme level of audit failure necessary to plead a claim. *See In re Tower Grp. Int'l, Ltd. Sec. Litig.*, 2015 WL 5813393, at *5 (S.D.N.Y. Sept. 18, 2015) (auditor's conduct must reflect an "egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts").

Consequently, allegations of negligence, a "shoddy audit," GAAP violations, accounting irregularities, or even a lack of due diligence fail to state a securities fraud claim against an auditor absent "evidence of corresponding fraudulent intent." *Advanced Battery III*, 781 F.3d at 644; *see Advanced Battery II*, 2013 WL 3784134, at *6; *Special Situations*, 33 F. Supp. 3d at 427.

## ARGUMENT

### I. PLAINTIFF FAILS TO ALLEGE SCIENTER THROUGH MOTIVE AND OPPORTUNITY

Plaintiff attempts to plead scienter through motive and opportunity by emphasizing the amount of fees that Credit Suisse paid PwC CH for three years of auditing services and by vague references to public reports having nothing to do with PwC CH. *See* CAC ¶¶ 8 & 448 (alleging that PwC CH had "significant financial motive to bless Credit Suisse's financial reports and representations about its financial controls" because Credit Suisse paid PwC CH $231 million for its work on the 2020, 2021, and 2022 audits); *id.* ¶¶ 446-47. Both sets of allegations fail.

Under well-established case law, the receipt of professional fees alone cannot support a strong inference of scienter against an auditor. This Court has held repeatedly that the "mere receipt of compensation and the maintenance of a profitable professional business relationship for auditing services does not constitute a sufficient motive for purposes of pleading scienter." *Athale v. SinoTech Energy Ltd.*, 2014 WL 687218, at \*5 (S.D.N.Y. Feb. 21, 2014) (citation omitted); *see also, e.g., Iowa Pub. Emps. Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 333 (S.D.N.Y. 2013) ("*Iowa I*") (same). To hold otherwise "would effectively abolish the requirement of pleading facts which support a strong inference of scienter against professional defendants." *Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599, 621 (S.D.N.Y. 2010) (citation omitted). As one court noted, "[i]t would defy common sense to hold that the motive element . . . would be satisfied merely by alleging the receipt of normal compensation for professional services rendered." *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 253 (S.D.N.Y. 2012). Notably, there is no allegation that PwC CH's fees were excessive compared to auditors of other large financial institutions (which they were not).

The other "motive and opportunity" allegations against PwC CH are entirely irrelevant. Plaintiff refers to (i) the claim of a whistleblower at PwC US (a separate entity) who alleged in 2016 that there were "deeply concerning problems with the culture of auditing at PwC" (CAC ¶ 446); and (ii) an SEC announcement in March 2022 that it was probing conflicts-of-interest at various accounting firms, including KPMG and PwC (*id.* ¶ 447). Neither of these allegations relates in any way to PwC CH—the Swiss member firm of a global network[2]—or to the audits of Credit Suisse.

That is no surprise. As reflected in the CAC and the article cited therein (¶ 446), the "whistleblower" worked exclusively on audits of Silicon Valley companies as an employee of PwC US; he had no role in or knowledge of PwC CH's audits of Credit Suisse.[3] The referenced SEC probe focused on whether accounting firms undermined their ability to conduct independent audits by offering other consulting or non-audit services to clients (¶ 447), but the CAC does not allege that PwC CH provided any such services to Credit Suisse or that the SEC probe addressed PwC CH's audits of Credit Suisse. *Cf. Rotunno v. Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022) ("The complaint's references to an unrelated SEC investigation . . . do not add to the plausibility of the scienter allegations.").[4]

---

[2]     The PwC entities are separate firms. *See, e.g.*, *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495 (D.N.J. 2021) (holding that PwC US and PwC Denmark are separate legal entities).

[3]     Contrary to Plaintiff's allegation (¶ 446), the article cited in the CAC states that the whistleblower filed his claim in November 2016, not 2018. The CAC ignores the fact that the whistleblower's claims arose more than *three years* before Credit Suisse appointed PwC CH as auditor. *Cf. In re Petrobras Secs. Litig.*, 2016 WL 1533553, at *2 (S.D.N.Y. Feb. 19, 2016) (dismissing 10(b) claim where alleged red flags predated PwC engagement by audited company).

[4]     Numerous press outlets reported on the probe, but the SEC did not issue a formal announcement. *See* David Michaels, *Big Four Accounting Firms Come Under Regulator's Scrutiny*, Wall. St. J. (March 15, 2022), attached as Exhibit A to the Declaration of Brad E. Konstandt, dated November 10, 2023 ("Konstandt Decl.). The Court may consider the article on this motion because it is incorporated into the CAC and Plaintiff relied on it. *See infra* n.6.

II.    **PLAINTIFF FAILS TO ALLEGE SCIENTER THROUGH CONSCIOUS MISBEHAVIOR OR RECKLESSNESS**

The allegations in the CAC directed to conscious misbehavior or recklessness fare no better. To plead scienter against an auditor through this approach, "the strength of the circumstantial allegations must be correspondingly greater." *Supra* p. 9. Plaintiff offers no facts to meet that high threshold. Instead, the CAC relies primarily on hindsight (Section II.A), coupled with a handful of superficial allegations that are plainly deficient, unrelated to PwC CH's audits and reviews, or just wrong (Section II.B).

A.    **Plaintiff Cannot Plead Scienter-By-Hindsight Based on Later Disclosures**

The bulk of Plaintiff's allegations against PwC CH focus on (i) Credit Suisse's disclosure in its 2021 annual report that it had "'identified accounting issues' that required it to revise (not restate) its financial statements for the years ending December 31, 2020 and December 31, 2019"; and (ii) Credit Suisse's and PwC CH's disclosures in the 2022 annual report and accompanying audit opinion that they had identified material weaknesses in ICFR as of December 31, 2021 and December 31, 2022. *See* CAC ¶¶ 324, 326, 328, 330, 332, 335, 337, 339, 341; *supra* pp. 5-7. Reasoning by hindsight, Plaintiff asserts that these *later* disclosures show PwC CH should have known that its prior statements (regarding Credit Suisse's financial statements and PwC CH's audits and reviews) were knowingly false or reckless *when made*. *See id.* This theory of scienter fails as a matter of law.

Unadorned allegations that an auditor "should have known" its statements were false at the time because of later disclosures amount to nothing more than "fraud by hindsight," a concept that courts in this Circuit regularly reject. *See, e.g.*, *Iowa I*, 919 F. Supp. 2d at 334 ("A crucial limitation to [pleading] recklessness-based scienter is the insufficiency of allegations of 'fraud by hindsight.'"); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 377 (S.D.N.Y.

13

2011) (McMahon, J.) (rejecting "classic example" of fraud by hindsight claim against auditor); *Special Situations*, 33 F. Supp. 2d at 429. Claims of fraud against an auditor "may not rest on a *post hoc ergo propter hoc* approach to the complex issue of scienter." *In re DNTW*, 172 F. Supp. 3d at 685; *cf. In re Keyspan Corp. Secs. Litig.*, 383 F. Supp. 2d 358, 386 (E.D.N.Y. 2003) ("[T]he complaint does nothing more than allege that because defendants ultimately disclosed negative information about [the company], they must have been aware of this information earlier."). Put differently, later revisions, standing alone, do not establish that an auditor's *past* conduct was so unreasonable that it amounted to an extreme departure from the standards of ordinary care approximating an actual intent to aid in fraud, or that there was in effect "no audit at all." *See Advanced Battery III*, 781 F.3d at 644; c*f. Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (rejecting argument that company's "subsequent revelation of its accounting policy change and retroactive announcement of lowered earnings should be probative of conscious misbehavior or recklessness"; "mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud").

Indeed, even a later *restatement* of a company's financial statements does not create an inference of scienter with respect to the prior financials. *See Venkataraman v. Kandi Tech. Grp., Inc.*, 2021 WL 4952260, at *4 (S.D.N.Y. Oct. 25, 2021) ("[T]he restatement alone does not support an inference of scienter because, the fact that there were errors in the financial reports does not mean that the errors were made intentionally or recklessly."). As one court explained, "[a] restatement is simply a correction, after the fact, of an accounting or other error in financial results. The fact of an error, even a large error, does not suggest knowledge or intent to misstate when the financial results were originally published . . . ." *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014); *see Plumbers & Pipefitters Local*

14

*Union No. 719 Pension Trust Fund v. Conseco Inc.*, 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) ("[I]t should be noted that the fact that the company was required, in 2008, to restate several prior periods' financial results does not indicate that the defendants had previously made false statements with scienter."). *A fortiori*, acknowledging errors that (such as those here) *do not*, because of their immateriality, require restatement, but rather merely revision, cannot support scienter. *See Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 414 (S.D.N.Y. 2020) (finding no scienter where there was no restatement).

For the same reasons, the disclosure that material weaknesses in internal controls had previously existed does not establish a strong inference of scienter without *other* particularized facts suggesting that PwC CH acted with the requisite level of recklessness. *See Dobina*, 909 F. Supp. 2d at 254 ("[O]ur Circuit has said that the failure of a non-fiduciary accounting firm to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability."); *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 138 (E.D.N.Y. 2020) (rejecting claim that "defendants exhibited scienter because it was their job to monitor [company's] internal controls and a material weakness in those controls was ultimately disclosed"; plaintiffs failed to allege "specific facts to suggest that . . . defendants were actually aware of any weakness in [the company's] internal controls at the time of the challenged statements"). Plaintiff pleads no such facts here: He identifies no pertinent documents concerning the audits or reviews, meetings or interactions between PwC CH and Credit Suisse (or among PwC CH), or even a single PwC CH professional involved in the audits. Indeed, he alleges *no* contemporaneous facts at all about the PwC CH audits or reviews.

At worst, the later disclosures on which Plaintiff fixates suggest nothing more than mistakes, and do not come close to pleading that PwC CH's audits were so deficient as to

15

amount to "no audits at all." *Advanced Battery I*, 2012 WL 3758058, at *22 (plaintiff must plead facts giving rise to strong inference that audits were so shoddy as to be mere "pretend audits"); *In re DNTW*, 172 F. Supp. 3d at 689 (same). Many of Plaintiff's rhetorical allegations—asserting there was a "need to take special care" or "exercise particular caution" (CAC ¶¶ 442, 444)—are tantamount to alleging that PwC CH could or should have done more. But claims that an auditor should have performed a "better audit" sound in negligence and do not suffice to establish the type of recklessness necessary to plead a fraud claim. *See Advanced Battery II*, 2013 WL 3784134, at *9 ("Negligence alone . . . does not suffice to plead auditor scienter.").

### B. Plaintiff's Allegations Purporting to Demonstrate Conscious Misbehavior or Recklessness Do No Such Thing

Unable to plead scienter through hindsight, Plaintiff pivots to a jumble of allegations that supposedly show that PwC CH acted with the requisite recklessness. None of those allegations comes close to meeting this Circuit's "demanding" standard for pleading auditor scienter.

### 1. Plaintiff's Only "Red Flag" Allegation Involves a Different Auditing Firm and Does Not Establish That PwC CH Acted with Scienter

The CAC alleges only a single "red flag" that PwC CH allegedly ignored, and it arises from a "scandal" related to the leak of stolen PCAOB inspection information *to KPMG*, not PwC CH or any other PwC entity. CAC ¶¶ 23, 442. Citing court filings in criminal proceedings related to this "scandal," Plaintiff alleges that (i) KPMG had unspecified concerns about unspecified "cash flow" issues at Credit Suisse that KPMG identified at some unspecified time before 2016 through "investigations," and so (ii) KPMG performed a series of "stealth reviews" of its 2016 audit of Credit Suisse to ensure that it would be "clean" if subject to a PCAOB

16

inspection. *Id.* ¶ 23.[5]  Plaintiff further alleges that the existence of those "stealth reviews" suggests that KPMG did not take sufficient care during audit years when KPMG did not expect a PCAOB inspection. *Id.*  Based on these facts alone, Plaintiff makes an extraordinary leap, claiming that PwC CH "inherited several known issues" when it "took on the mantle of Credit Suisse's auditor." *Id.*

A "red flag" is something that "would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *In re DNTW*, 172 F. Supp. 3d at 685 (citation omitted); *see also Longtop*, 910 F. Supp. 2d at 577.  Of course, "an unseen red flag cannot be heeded." *Advanced Battery I*, 2012 WL 3758085, at *16; *see also Special Situations*, 33 F. Supp. 3d at 429 (same); *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 573 (S.D.N.Y. 2011) (same).  For this reason, Plaintiff must allege that *PwC CH* was actually aware of the alleged "red flag." *See Saltz v. First Frontier, L.P.*, 485 F. App'x 461, 465 (2d Cir. 2012) (holding that supposed red flags are insufficient to plead "the required strong inference" of scienter when plaintiff fails to make any allegation "supporting the conclusion that [the defendant] was aware of them"); *Stephenson*, 768 F. Supp. 2d at 573 ("[C]ourts in this Circuit have consistently dismissed fraud claims against auditors . . . that have not sufficiently alleged that an auditor knew of red flags") (collecting cases).

Here, there is *no* allegation that KPMG shared with PwC CH its supposed concerns regarding the cash flow issues that KPMG purportedly identified through investigations before 2016, the existence of the "stealth reviews" in 2017, or the findings (if any) from those "stealth reviews."  The best that Plaintiff can do is insinuate that PwC CH "inherited" those issues—

---

[5]      The CAC erroneously suggests that the "scandal" involved KPMG *AG*, the Swiss firm that previously audited Credit Suisse.  The regulatory announcements (CAC ¶ 23) make clear that the "scandal" related solely to employees of the KPMG network's U.S. firm, KPMG *LLP*.

whatever that means—when Credit Suisse appointed PwC CH as its auditor several years later (CAC ¶¶ 23, 442), a far cry from actual knowledge (which, in any event, Plaintiff would need to plead with specificity under the PSLRA).

This Court's opinion in *Advanced Battery I* is instructive.  In that case, the plaintiffs argued that the auditor ignored a red flag based on a "huge discrepancy" between the audited company's reported results in China and the U.S.  2012 WL 3758085, at *17.  The Court held that this discrepancy did not support a strong inference of scienter because the complaint "omit[ted] a critical premise": that the auditor was "actually aware of" the Chinese filings and the resulting discrepancies.  *Id.*  The plaintiff did not plead that the auditor reviewed the Chinese filings "at all," and the Court deemed insufficient allegations that the auditor "should have reviewed them or would have reviewed them."  *Id*. (internal quotation marks omitted).  *See also Advanced Battery II*, 2013 WL 3784134, at *8 (rejecting allegations that the auditor "must have" reviewed the Chinese filings and holding that mere access to information is insufficient to support a strong inference of auditor scienter).

So too here.  The CAC refers to concerns about cash flows harbored internally by KPMG but does not allege that KPMG shared *any* information about those concerns or its later "stealth reviews" with PwC CH.  *See* CAC ¶¶ 23, 442.  Indeed, it is implausible that KPMG would share that information—supposedly derived in part from criminal theft—with a primary competitor.  Without such allegations, Plaintiff has not pled a "red flag" supporting a strong inference of scienter.  *See, e.g.*, *Stephenson*, 700 F. Supp. 2d at 624 ("Without an allegation that PwC had knowledge of the red flags, the Complaint does not adequately allege scienter.").

To the extent that Plaintiff claims that PwC CH should have been aware of suspicious information based on court filings in the KPMG action (CAC ¶ 23), that argument also fails.

18

Plaintiff does not allege that PwC CH was actually aware of such court filings or had any reason to monitor filings in that matter. The referenced action was a criminal case pertaining to the leaking of confidential information to KPMG and involved KPMG's audit clients. Credit Suisse was not a focus of the charges and was not mentioned in the indictments or any of the agency statements and orders. Plaintiff nowhere suggests (nor could he) that PwC CH has a duty to review such information. *See Athale*, 2014 WL 687218, at *8 (for undiscovered red flags to be probative of auditor scienter, plaintiff must plead with particularity "facts showing that the auditor had access to the information constituting the red flags *and* that the auditor had a duty to review or check that information" (emphasis in original)).

### 2. Credit Suisse's Receipt of SEC Comment Letters Does Not Create a Strong Inference That PwC CH's Challenged Statements Were Knowingly False or Reckless

Plaintiff next attempts to plead scienter by reference to Credit Suisse's receipt of SEC comment letters beginning in July 2022—15 months into the putative class period—which related (in part) to the revision of 2019 and 2020 financial statements announced in the 2021 annual report. CAC ¶¶ 320-21, 440. In sum and substance, the CAC alleges that the letters should have alerted PwC CH that statements in its interim reports accompanying Credit Suisse's quarterly filings on July 29 and November 2, 2022 were false because the comment letters allegedly revealed that: (i) Credit Suisse's balance sheet for the 2021 fiscal year was not "fairly stated, in all material respects"; and (ii) PwC CH's annual audits and quarterly reviews were not conducted "in accordance" with PCAOB standards. *Id.* These allegations do not plead scienter.

*First*, the CAC cannot establish a strong inference of scienter through bare references to comment letters that it does not bother to describe. Plaintiff fails to plead anything about what the SEC comment letters said, much less why those letters would have undermined PwC CH's statements in the two challenged interim reports. *See* CAC ¶¶ 320-21, 440. Instead, Plaintiff

19

simply points to the existence of the comment letter process during this period and asks the Court to infer that PwC CH should have known *something* that called its statements into question. *Id.* This conclusory assertion is insufficient to establish scienter because it fails to plead the requisite *facts* showing that PwC CH had any reason to doubt the accuracy of its statements at the time— let alone that it acted with a state of mind approximating actual intent. *See Tellabs*, 551 U.S. at 313 (the PSLRA requires plaintiff to state with particularity the facts evidencing the defendant's intent); *Advanced Battery I*, 2012 WL 3758085, at *7 (there must be an "ample factual basis" to plead scienter, as fraud claims may not rest on "speculation and conclusory allegations"). The mere existence of comment letters says nothing, in and of itself, about scienter. *See In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *22 (S.D.N.Y. Mar. 24, 2023) (regulators' communication of concerns to defendants did not support inference of scienter absent allegation that regulators communicated specific information inconsistent with defendants' statements); *cf. In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 102 (S.D.N.Y. 2011) ("Securities regulators are obligated to examine the behavior of public corporations, and the fact that a regulator is fulfilling this role cannot be sufficient to allege scienter.").

*Second*, if the Court wishes to review the referenced comment letters (which are publicly available), they belie the inference that Plaintiff seeks. *See* Letters to Credit Suisse AG from SEC Division of Corporate Finance, dated July 15 and October 20, 2022, attached as Exhibits B and C to the Konstandt Decl.[6] Rather than informing Credit Suisse (and PwC CH) that

---

[6] On a motion to dismiss, a court may consider documents incorporated into the complaint by reference, documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit, and documents of which judicial notice may be taken. *See Special Situations*, 33 F. Supp at 412 n.2; *Saltz v. First Frontier, LP,* 782 F. Supp. 2d 61, 70 (S.D.N.Y. 2010). Here, the SEC comment letters are directly referenced in the CAC (¶ 320), are clearly documents on which Plaintiff relied in bringing suit (*id.* ¶¶ 320-21, 440), and are SEC filings of which this Court may take judicial notice. *See Special Situations*, 33 F. Supp at 412 n.2.

something was amiss with Credit Suisse's balance sheet or PwC CH's audits and reviews (the subjects of the challenged statements), the letters request additional information about, among other things, the revisions disclosed in the 2021 annual report, their causes, and their potential impact. *Id.* The CAC explicitly acknowledges this fact: "In July 2022, the SEC initiated comment letter correspondence with Defendant Mathers *requesting more information about* the Company's 'revision' of its financial statements for the years ending December 31, 2020, and December 31, 2019, as reflected in the 2021 Annual Report." CAC ¶ 320 (emphasis added).

Indeed, at the time PwC CH made the relevant challenged statements (in July and November 2022), the dialogue between the SEC and Credit Suisse was just beginning to unfold. As of November 2, 2022, Credit Suisse had received only two comment letters (out of four total) and had responded to one. The first letter asked for additional information regarding three distinct topics, while the second focused on the revisions disclosed in the 2021 annual report. *See* Exhibits B and C. In other words, as of November 2022, PwC CH knew only that the SEC was interested in learning more about Credit Suisse's revisions. The letters do not articulate a regulatory position with respect to the revisions, Credit Suisse's balance sheet, or any other matter—and certainly do not question PwC CH's opinion that Credit Suisse's balance sheet was "fairly stated, in all material respects" or suggest that there was anything amiss with PwC CH's audits or reviews of Credit Suisse's financial statements.

Furthermore, even if the SEC comment letters are somehow construed as affirmatively disagreeing with Credit Suisse's (and PwC CH's) view that Credit Suisse's balance sheet was "fairly stated, in all material respects"—a proposition that the two comment letters in no way support—this still would not be a basis for inferring that PwC CH acted with the requisite mental state when it filed the two interim reports contemporaneous with the comment letters.

21

Disagreements between regulators and regulated parties about matters of professional judgment do not, by themselves, suffice to plead scienter. *See Sanofi Sec. Litig. v. Meeker*, 87 F. Supp. 3d 510, 545-46 (S.D.N.Y. Jan. 28, 2015). The need to allege more than mere disagreements is particularly pronounced when the issue involves the application and interpretation of complex accounting principles. Without more, reasonable disagreements regarding matters of judgment do not equate to the sort of highly reckless conduct that Plaintiff must plead. *See, e.g.*, *Iowa I*, 919 F. Supp. 2d at 333 (to plead scienter through recklessness, an auditor's behavior must "reflect accounting judgments that no reasonable accountant would have made . . . if confronted with the same facts" (internal quotation marks omitted)).

### 3.    Plaintiff's Allegations Regarding Alleged Violations of a PCAOB Auditing Standard Cannot Establish Scienter

The CAC includes a single paragraph alleging that PwC CH violated Auditing Standard No. 5 ("AS No. 5") by failing to evaluate Credit Suisse's internal controls "us[ing] the same control framework" as Credit Suisse management. CAC ¶ 441. According to Plaintiff, because Credit Suisse discovered the weaknesses in ICFR before PwC CH did, PwC CH must have recklessly used a different methodology. *Id.* This claim misses the mark for several reasons.[7]

As an initial matter, Plaintiff's reliance on the purported violation of an auditing standard is misplaced because allegations of such a violation, standing alone, are insufficient to plead scienter. *See Athale*, 2014 WL 687218, at *10; *In re J.P. Jeanneret*, 769 F. Supp. 2d at 377. Violations of audit standards "*must* be coupled with evidence of corresponding fraudulent intent in order to state a securities fraud claim." *Athale*, 2014 WL 687218, at *10 (emphasis added);

---

[7]    Plaintiff even gets the relevant auditing standard wrong:  AS No. 5 has not applied since the PCAOB reorganized its auditing standards effective December 31, 2016. *See* PCAOB Release No. 2015-002 (Mar. 31, 2015).

*see Advanced Battery II*, 2013 WL 3784134, at *6-7, *9 (allegations that auditor "violated professional standards" standing alone at most supported inference of negligence "and thus necessarily d[id] not rise to the level of recklessness").  The CAC contains no such allegations.

Moreover, Plaintiff supplies no facts whatsoever as to the "control framework" or "methodology" either Credit Suisse or PwC CH used; or when; or how if at all they differed; or how any of that could be connected to discovering material weaknesses in IFCR—*i.e.*, the basic obligation of pleading "facts specifying the manner in which the standard was violated."  *Athale*, 2014 WL 687218, at *11; *cf. Iowa I*, 919 F. Supp. 2d at 326 (noting that rigorous pleading standard under PSLRA "limits the extent to which outside auditors—only indirectly involved with any wrongdoing—may be held accountable for investors' losses").  Plaintiff's allegation is pure speculation and hindsight.[8]  Indeed, Plaintiff does not plead facts suggesting that Credit Suisse actually identified the material weaknesses before PwC CH.  In totality, the CAC offers an illogical syllogism to (at best) suggest PwC CH *may* have violated a single auditing standard at some unspecified time and in some unspecified way.[9]

---

[8]    In fact, the public filings that Plaintiff purports to challenge belie his assertion that Credit Suisse and PwC CH used different control frameworks to evaluate Credit Suisse's control environment.  *Compare*, *e.g.*, Konstandt Declaration Exhibit D (2022 Form 20-F) at 257 ("Management has made an evaluation of [Credit Suisse's] internal control over financial reporting . . . using the criteria issued by the Committee of sponsoring Organizations of the Treadway Commission . . . in 'Internal Control – Integrated Framework (20120).'"), *with id.* at 258 ("We … have audited [Credit Suisse's] internal control over financial reporting . . . based on criteria established in Internal Control – Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission.").  The Court may consider these public filings on a motion to dismiss.  *See supra* n. 6.

[9]    Similarly unavailing is Plaintiff's assertion that PwC "fail[ed] to give particular attention" to the "cash flow issues" that led to the revision of prior years' financial statements in fiscal year 2021, and the material weaknesses disclosed in fiscal year 2022, because PwC CH did not identify those items as "Critical Audit Matters" in its audit opinions.  CAC ¶¶ 333, 343.  A "Critical Audit Matter" is one that, in the auditor's judgment, involves "especially challenging,

### 4.    Plaintiff Cannot Plead Scienter Through Vague Allusions to Credit Suisse Misconduct Unrelated to the Challenged Statements

Near the end of the "scienter" averments, Plaintiff vaguely alleges that PwC CH was "on notice" that it needed to exercise caution and to carefully scrutinize Credit Suisse's financial statements and representations because of Credit Suisse's "history of criminal and civil proceedings and fines and penalties arising out of its risk management and control governance failures." CAC ¶ 444. But the CAC makes no attempt to connect Credit Suisse's (alleged) prior misconduct or the cited "failures" to the limited subject matter of PwC CH's challenged statements, which concern only financial reporting. In fact, other allegations in the CAC underscore that no such connection exists. *See* CAC ¶ 420 (citing fines and penalties that Credit Suisse paid for, *inter alia*, "mis-selling of mortgage securities," "marketing dark pools and other high-speed electronic equities trading services," and "helping U.S. clients evade taxes").

These types of vague allegations, devoid of any factual content, do not pass muster under the PSLRA because generalized references to the audited company's prior conduct, unrelated to the audits at issue, do not plead a strong inference of scienter. *See In re Petrobras*, 2016 WL 1533553, at *2 (scienter not pled where "negative events," including reports of audited company's alleged malfeasance and related investigations, were not connected to PwC audits or predated PwC's relationship with audited company).

*    *    *    *    *

---

subjective, or complex auditor judgment." Auditing Standard 3101.11. An auditor's determination that a matter does not satisfy that standard says nothing about how much "attention" the auditor gave to that issue. Moreover, Plaintiff's own allegations demonstrate the illogic of his claim with respect to PwC CH's 2022 audit opinion, as he admits that the material weaknesses (and their connection to the 2021 "cash flow issues") were identified and prominently disclosed in the very same filing. *See* CAC ¶ 358 (disclosing that one of the material weaknesses "resulted in the revisions contained in our previously issued consolidated financial statements . . . as disclosed in the 2021 Annual Report").

24

In sum, the CAC fails to allege a single red flag of fraud that PwC CH failed to heed, nor any other facts that might plead a strong inference of scienter. None of the allegations in the "Scienter for PwC" section suggests recklessness by PwC CH that would "approximate an actual intent to aid in the fraud" supposedly perpetrated by Credit Suisse. *Advanced Battery III*, 781 F.3d at 644. And where *each* of those allegations is deficient (and meritless), Plaintiff cannot salvage his claim against PwC CH by asking this Court to review his pleading "holistically" or in aggregate—"zero plus zero cannot equal one." *In re Citigroup.*, 2023 WL 2632258, at *22 (plaintiffs cannot "combine inadequate allegations of motive with inadequate allegations of recklessness . . . to demonstrate scienter" (citation omitted)); *cf. In re Tower Grp.*, 2015 WL 5813393, at *7 (dismissing fraud claim against PwC for failure to plead facts supporting scienter even when scienter allegations were "[t]aken as a whole" and "[v]iewed holistically").

## CONCLUSION

For the foregoing reasons, PwC CH respectfully requests that this Court dismiss the claims against PwC CH with prejudice.

Date: November 10, 2023

*/s/ Michael G. Bongiorno*
Michael G. Bongiorno
Andrew Rhys Davies
Brad E. Konstandt
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
Telephone: (212) 937-7220
Facsimile: (212) 230-8888
michael.bongiorno@wilmerhale.com
andrew.davies@wilmerhale.com
brad.konstandt@wilmerhale.com

*Counsel for PricewaterhouseCoopers AG*

25