**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALI DIABAT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CREDIT SUISSE GROUP AG, AXEL P. LEHMANN, ULRICH KÖRNER, DIXIT JOSHI, THOMAS GOTTSTEIN, DAVID R. MATHERS, ANTÓNIO HORTA-OSÓRIO, and PRICEWATERHOUSECOOPERS AG, <br><br> Defendants. | No. 1:23-cv-5874-CM-SLC |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT PRICEWATERHOUSECOOPERS AG'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Michael G. Bongiorno
Andrew Rhys Davies
Brad E. Konstandt
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8880
michael.bongiorno@wilmerhale.com
andrew.davies@wilmerhale.com
brad.konstandt@wilmerhale.com

*Counsel for PricewaterhouseCoopers AG*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

I.     PLAINTIFF'S ALLEGATIONS DO NOT MEET THE LEGAL STANDARD
FOR PLEADING AUDITOR SCIENTER THROUGH RED FLAGS ............................ 2

II.    PLAINTIFF FAILS TO ALLEGE SCIENTER THROUGH RED FLAGS ...................... 3

     A.    The Only "Red Flag" That the CAC Alleges Does Not Plead Scienter ................. 4

     B.    Other Purported "Red Flags" Do Not Plead PwC CH's Scienter ........................... 5

          1.    The SEC Comment Letters ............................................................................ 5

          2.    Credit Suisse's "History of Past Scandals" .................................................. 7

          3.    Alleged Violations of Auditing Standard No. 5 ("AS No. 5") ................... 7

          4.    Allegations Against Credit Suisse Do Not Constitute "Red Flags"
Against PwC CH ........................................................................................... 8

III.    THE CLAIM AGAINST PWC CH IS CLASSIC FRAUD-BY-HINDSIGHT ................ 10

IV.    THE COURT SHOULD DENY THE REQUEST FOR LEAVE TO AMEND ............. 10

CONCLUSION ................................................................................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Central Laborers' Pension Fund v. SIRVA, Inc.*,
2006 WL 2787520 (N.D. Ill. Sept. 22, 2006) ...................................................................9

*Cosby v. KPMG, LLP*,
2018 U.S. Dist. LEXIS 130244 (E.D. Tenn. Aug. 2, 2018) ..............................................6

*Dobina v. Weatherford International Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)...............................................................................8

*Fadem v. Ford Motor Co.*,
352 F. Supp. 2d 501 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005).........................5

*In re Advanced Battery Technologies, Inc.*,
2013 WL 3784134 (S.D.N.Y. July 18, 2013) ...................................................................3

*In re Advanced Battery Technologies, Inc.*,
781 F.3d 638 (2d Cir. 2015)..............................................................................................7

*In re Advanced Battery Technologies Inc. Securities Litigation*,
2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012)...........................................................2, 6, 9

*In re American Business Financial Services Noteholders Litigation*,
2008 U.S. Dist. LEXIS 61450 (E.D. Pa. Aug. 11, 2008)...................................................6

*In re Bear Stearns Cos. Securities Derivative & ERISA Litigation*,
763 F. Supp. 2d 423, 513 (S.D.N.Y. 2011)........................................................................6

*In re DNTW Chartered Accountants Securities Litigation*,
172 F. Supp. 3d 675 (S.D.N.Y. 2016)............................................................................7, 8

*In re Longtop Securities Litigation*,
910 F. Supp. 2d 561 (S.D.N.Y. 2012).............................................................................10

*In re Longwei Petroleum Investment Holding Ltd. Securities Litigation*,
2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ......................................................................3

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)..................................................................................2

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014)............................................................................................10

*Zhou v. NextCure, Inc.*,
2023 WL 4493541 (S.D.N.Y. July 12, 2023) ....................................................................5

**PRELIMINARY STATEMENT**

Plaintiff's opposition brief ("Opposition" or "Opp.") does not solve any of his fundamental problems: the standard for pleading auditor scienter is "demanding"; the alleged conduct involves questions of accounting unrelated to the issues that precipitated the acquisition of Credit Suisse AG ("Credit Suisse"); and there are simply no contemporaneous facts to suggest a claim of fraud. Indeed, the Opposition confirms that the Consolidated Amended Class Action Complaint ("CAC") fails to plead that PricewaterhouseCoopers AG ("PwC CH") acted with scienter. Plaintiff essentially abandons the argument that he has pleaded scienter through motive and opportunity, even though those allegations constitute half of the CAC's "Scienter for PwC" section. Opp. 7. Plaintiff does not dispute that the CAC lacks a *single* fact about PwC CH's conduct, asserting instead that he is not required to identify "all" pertinent facts at the pleading stage (Opp. 2, 9), a strawman argument for a standard that PwC CH never suggested in its opening brief ("Opening Br."). And Plaintiff doubles down on the claim that Credit Suisse's disclosure of material weaknesses in its internal controls over financial reporting ("ICFR") "cratered" the stock price and caused its collapse (Opp. 1, 3, 22), even though he actually alleges that this disclosure led to a mere *1.18 percent* decline. Opp. 1, 3 (citing CAC ¶ 359).

The bulk of Plaintiff's brief is devoted belatedly to rewriting the CAC to augment—or simply to invent—putative "red flags" that are not actually pleaded against PwC CH. The CAC on its face alleges exactly one "red flag" against PwC CH (¶ 440) based on ambiguous information identified by another audit firm covering a period during which PwC CH was not the auditor and about which Plaintiff does not allege PwC CH was ever aware. Section II.A. Other "red flags" cited in the Opposition are pleaded against Credit Suisse but not PwC CH, are not identified as red flags in the CAC, or are based on allegations not found within the CAC at all.

1

Section II.B.  In any event, these "red flags" are unrelated to PwC CH's statements or audits and fail to support a claim that PwC CH ignored signs of fraud.

Absent any allegations of contemporaneous facts relevant to PwC CH's scienter, Plaintiff's claim is classic fraud-by-hindsight (Section III).  Nothing in the Opposition changes that, regardless of how many new "red flag" theories Plaintiff contrives.  The allegations against PwC CH pertain to technical accounting judgments that required no restatement, and Plaintiff's strained efforts to connect those matters to Credit Suisse's ultimate sale to UBS are baseless.

## I.    PLAINTIFF'S ALLEGATIONS DO NOT MEET THE LEGAL STANDARD FOR PLEADING AUDITOR SCIENTER THROUGH RED FLAGS

Plaintiff all but abandons the allegations in the CAC seeking to plead scienter through motive and opportunity.  Opp. 7.  He does not dispute the "demanding" standard in this Circuit for pleading auditor scienter, including through putative red flags (Opening Br. 9-10), attacking instead the indisputable axiom that the auditor must *actually be aware* of those red flags (Opp. 9-11).  *See* Opening Br. 17-18; *In re Advanced Battery Techs. Inc. Sec. Litig.*, 2012 WL 3758085, at *16-17 (S.D.N.Y. Aug. 29, 2012) ("*Advanced Battery I*") ("In order for a red flag to support a strong inference of scienter, the auditor must have actually been aware of its existence"; a red flag is a sign "consciously disregarded" by the auditor; "an unseen red flag cannot be heeded").

That there are cases where a plaintiff pleaded scienter by pointing to egregious facts establishing that an auditor "must have" reviewed information that constituted a red flag is not to the contrary (Opp. 9-11); those cases show only that a court can, in limited circumstances, infer actual awareness even though it is not alleged directly.  *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 427 (S.D.N.Y. 2014) ("A plaintiff must allege that the auditor had actual awareness of the red flags, either because they are alleged to have had actual knowledge or because the red flags were so obvious that the auditor must have

2

been aware of them." (quotation marks omitted)).  None of those cases remotely suggests that it is enough that the auditor "could have" or "should have" been aware of the red flag.  *See In re Advanced Battery Techs., Inc.*, 2013 WL 3784134, at \*8 (S.D.N.Y. July 18, 2013) ("*Advanced Battery II*") ("'Should have' does not mean 'must have' . . . . '[S]hould have' does not mean 'necessarily did'").  A plaintiff cannot baldly proclaim that the auditor "must have" reviewed information constituting a red flag without supporting facts, *id.*, and the CAC alleges no such facts.[1]

Plaintiff further asserts that there is no requirement for him to identify at the pleading stage "all" pertinent documents or interactions between PwC CH and Credit Suisse related to the audits and reviews.  Opp. 2, 9.  But PwC CH neither advanced that argument in its opening brief nor suggested that such a standard exists.  What PwC CH argued, and what remains unrebutted, is that the CAC does not allege a *single* contemporaneous fact about PwC CH's annual audits or interim reviews.  *See* Opening Br. 2, 7, 15.  This underscores that Plaintiff pleads only fraud-by-hindsight from later disclosures (*infra* p. 10), a fundamental pleading deficiency that he cannot circumvent by sleight-of-hand substitution of the word "all" for "any."

## II.   PLAINTIFF FAILS TO ALLEGE SCIENTER THROUGH RED FLAGS

None of the purported "red flags" cited in the Opposition, whether pleaded in the CAC or not, alleges a strong inference of scienter.  There are no facts suggesting that PwC CH was or must have been aware of fraud at Credit Suisse affecting its financial statements or internal controls, or that PwC CH otherwise engaged in egregiously reckless conduct.

---

[1]      *Longwei* is consistent with this standard.  *See* Opp. 10.  There, the court noted that "where the red flags would be *clearly evident* to any auditor performing its duties it is reasonable to infer that the auditor *must have noticed the red flags* but deliberately chose to disregard them." 2014 WL 285103, at \* 6 (S.D.N.Y. Jan. 27, 2014) (emphasis added) (quotation marks omitted).

3

### A.   The Only "Red Flag" That the CAC Alleges Does Not Plead Scienter

In its opening brief, PwC CH explained that the only red flag that the CAC alleges pertains to unspecified cash flow "issues" that Credit Suisse's predecessor auditor (KPMG) supposedly identified through its internal investigations and "stealth reviews," and that there is no allegation that KPMG ever shared those unspecified "issues" with PwC CH. *See* Opening Br. 2-3, 16-19. Plaintiff does not dispute any of PwC CH's arguments and implicitly concedes that it is implausible that KPMG would share such information with PwC CH. *See* Opp. 3-4 and 19. Plaintiff argues instead that (i) documents filed publicly in the criminal case *against KPMG's US firm* showed that "Credit Suisse's past audits evidenced issues related to cash flows"; and (ii) PwC CH was obligated to review Credit Suisse's past audits and therefore should have "come across" the same cash flow issues that KPMG identified. *Id.*

For the reasons set forth in PwC CH's opening brief (at 17-19), there is no merit to the claim that PwC CH was aware of or had a duty to review court filings in a case pertaining solely to KPMG. Plaintiff offers no argument to the contrary other than to note that the filings are "public record" (Opp. 4), which does not suffice as a matter of law. *See* Opening Br. 18 (mere access to information insufficient to plead scienter); *supra* p. 3 (no allegation that PwC CH "must have" been aware of such court filings). Nor does Plaintiff explain why PwC CH would be expected to examine the docket of a criminal case against KPMG's U.S. firm (Opening Br. 17 n.5) to infer what KPMG's Swiss firm may have covertly known about Credit Suisse.

Plaintiff's other argument is contradicted by his own pleading. Opp. 19. The CAC alleges that KPMG's U.S. office identified the unspecified cash flow "issues" only after it undertook internal investigations and "stealth reviews" prompted by the theft of confidential information. CAC ¶¶ 23, 442. That is quite different from alleging that the supposed cash flow "issues" were identified by KPMG's Swiss firm during the ordinary course of its audits, such

4

that they could conceivably fall within the scope of material PwC CH might "come across" during the auditor transition process—let alone material that PwC CH necessarily "must have" reviewed. *See* Opening Br. 17-18 & n.5. Moreover, while the Opposition continues to refer to nebulous cash flow "issues" that KPMG identified before 2016, it does not (and cannot) point to allegations in the CAC showing that those cash flow issues are the same as, similar to, or even *related* to the discrete cash flow issues disclosed in Credit Suisse's 2021 annual report several years later. *See* Opening Br. 5-6.

### B. Other Purported "Red Flags" Do Not Plead PwC CH's Scienter

Plaintiff spends the balance of his brief attempting to re-write the CAC by (i) recharacterizing as "red flags" allegations that he did not identify as such in the CAC, and (ii) converting allegations asserted only against Credit Suisse into "red flags" against PwC CH. Plaintiff's gambit to amend the CAC through his Opposition—including the invocation of auditing standards found nowhere in the CAC (*e.g.*, Opp. 14, 16, 19)—violates the "long-standing" principle that "parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005); *see Zhou v. NextCure, Inc.*, 2023 WL 4493541, at *9 (S.D.N.Y. July 12, 2023). Regardless, each of these belatedly asserted "red flags" fails to plead scienter.

### 1. The SEC Comment Letters

For the reasons detailed in PwC CH's opening brief, Plaintiff cannot establish a strong inference of scienter based on SEC comment letters to Credit Suisse for which he fails to plead *anything* about the actual content. Opening Br. 19-20. In response, Plaintiff cites to a new declaration (by another party) attaching the letters and to a quotation from one letter found nowhere in the CAC. *See* Opp. 6 & 17 (Matuschak Declaration filed by Credit Suisse).

Even if the Court considers these new allegations, they do not come close to pleading

scienter.  The Opposition quotes a single sentence from the July 15, 2022 letter:

> In light of your accounting issues and resulting revisions, as well as the various changes that have taken place during 2021 with regards to processes, procedures, organizational and business structure, and senior management, please provide us with your analysis supporting your conclusion that there were no material changes to ICFR.  (Opp. 6 & 17.)

Plaintiff now characterizes this statement as "pointing to a number of red flags" (Opp. 6), but that assertion is false on its face and belied by Plaintiff's (correct) description of the letter in the CAC as a *request for information*.  CAC ¶ 320; *see* Opening Br. 21.  The letter simply does not contain anything that would call into question either of PwC CH's subsequent statements, much less suggest that fraud was afoot.  Opening Br. 20-21; *see Advanced Battery I*, 2012 WL 3758085, at *18 ("Merely labeling allegations as red flags . . . is insufficient to make those allegations relevant to a defendant's scienter." (citation omitted)).[2]

Plaintiff's cases are inapposite.  Opp. 17.  In *Bear Stearns*, the red flag was not a standalone SEC comment letter, as Plaintiff suggests, but a series of letters "alerting the Company every year to the deficiencies in its [valuation] model" (among other explicit concerns about exposure to mortgage securities).  763 F. Supp. 2d 423, 513 (S.D.N.Y. 2011).  In *Cosby*, the SEC sent two comment letters questioning the valuation of specific assets, which the court mentioned in passing as one of a host of red flags.  2018 U.S. Dist. LEXIS 130244, at *4, 13-15 (E.D. Tenn. Aug. 2, 2018).  And in *Noteholders*, the red flags were "strong comment letters" concerning not only questions about the audited company's financials, but also additional state and federal proceedings.  2008 U.S. Dist. LEXIS 61450, at *10 (E.D. Pa. Aug. 11, 2008).

---

[2]    The comment letter process began in July 2022 and therefore cannot be a "red flag" for any of PwC CH's prior statements.  The only challenged statements dated after July 2022 are the interim reports accompanying Credit Suisse's quarterly filings on July 29 and November 2, 2022.  *See* Opening Br. 4-6, 19.  Plaintiff quotes from letters in March 2023 (Opp. 6-7, 16-17), but those are four months *after* the last challenged statement by PwC CH on November 2, 2022.

### 2.    Credit Suisse's "History of Past Scandals"

The Opposition devotes two sentences to defending Plaintiff's vague claim that Credit Suisse's history of "proceedings and fines" put PwC CH on notice to exercise caution, which Plaintiff now refers to as a "red flag."  Opp. 13.  Plaintiff does not, however, attempt to connect those unspecified events to the relevant audits and reviews or to PwC CH's challenged statements.  *See* Opening Br. 24.  Instead, Plaintiff concludes only that Credit Suisse's history should have alerted PwC CH to "take extra care" in its audits, an archetypal allegation that sounds in negligence, not fraud.  *See, e.g.*, *In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 689 (S.D.N.Y. 2016) (to plead scienter, "a plaintiff must proffer facts suggesting far more than simply an audit that could have been better").

### 3.    Alleged Violations of Auditing Standard No. 5 ("AS No. 5")

Plaintiff does not respond to PwC CH's arguments (Opening Br. 22-23) highlighting the pleading deficiencies in the single averment within the CAC claiming that PwC CH violated a single auditing standard (AS No. 5).  *See* Opp. 18-19.  That averment is speculative, without any factual detail, and is not coupled with evidence of fraudulent intent.  Nor does Plaintiff point to any facts in the CAC supporting a violation of AS No. 5, much less to suggest such violation was intentional or reckless.  Instead, Plaintiff parrots the standard and observes that it continues to apply (Opp. 19), neither of which PwC CH contested.  *See* Opening Br. 22 n.7 (noting that Plaintiff initially identified the wrong standard, which he concedes).[3]

---

[3]    Plaintiff's citation to *In re Complete Management* is unavailing.  Opp. 18.  That 2001 decision does not reflect the current state of the law in this Circuit, which requires that alleged violations of auditing standards must be coupled with evidence of fraudulent intent.  *See* Opening Br. 22-23; *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015).

**4.      Allegations Against Credit Suisse Do Not Constitute "Red Flags" Against PwC CH**

Finally, Plaintiff attempts to mask the CAC's deficiencies by repackaging allegations against Credit Suisse as "red flags" against PwC CH, claiming that those facts should have alerted PwC CH to problems with Credit Suisse's ICFR.  *Compare, e.g.*, CAC ¶¶ 413-27 ("red flags" purportedly demonstrating Credit Suisse defendants' scienter), *with* ¶¶ 440-48 ("Scienter for PwC").  Specifically, Plaintiff contends that PwC CH overlooked (i) "two high-profile scandals" involving Archegos and the Greensill Funds that "pointed to significant issues with the Bank's risk management procedures" (Opp. 12-13); (ii) the so-called "Suisse Secrets Leak," which allegedly revealed that Credit Suisse "opened or maintained bank accounts for a panoramic array of high-risk clients" (Opp. 15-16); (iii) "multiple" changes in Credit Suisse management (Opp. 17-18); and (iv) outflows of customer funds in October 2022 (Opp. 18).  None of these alleged "red flags" comes close to meeting the mark.

To begin, the four new "red flags" have nothing to do with the accuracy of Credit Suisse's financial statements, ICFR, or even its financial reporting more generally.  *See In re DNTW*, 172 F. Supp. 3d at 687-88 (red flags not related to "actual [alleged] fraud" did not support strong inference of scienter); *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 255 (S.D.N.Y. 2012) (allegation did not amount to "red flag" where it "sa[id] substantially nothing about what [auditor] would have known" regarding "particular aspect" of allegedly misstated tax amounts).[4]  For example, Plaintiff contends that the Archegos and Greensill "scandals" were "a flashing red warning sign that there were serious issues with Credit Suisse's risk management

---

[4]      Indeed, the CAC does not identify a single material misstatement of the amounts presented in Credit Suisse's financial statements—*i.e.*, the aspect of the financial statements that PwC CH audited.  All Plaintiff offers is the summary assertion that "there was nothing 'little'" about the financial statement revisions disclosed in Credit Suisse's 2021 Form 20-F.  Opp. 5.

and corporate governance" (Opp. 13) and brought to light issues (such as understaffing) that affected Credit Suisse's "Prime Services and Credit Risk Management departments" (Opp. 14). But Plaintiff does not allege any facts suggesting that these issues related in any way to Credit Suisse's ICFR or separate accounting function.[5]

The three other new "red flags" are similarly disconnected from PwC CH's audits and challenged statements. Plaintiff claims that, had PwC CH considered that Credit Suisse "was catering to some of the world's most high-risk clientele," it "would have known where Credit Suisse's money was coming from." Opp. 16. But this ignores that PwC CH's challenged statements had nothing to do with "where Credit Suisse's money was coming from."[6] Plaintiff also does not point to any facts suggesting that turnover in Credit Suisse management had any effect on, or was the result of problems with, ICFR or financial reporting more generally. In any event, this Court has rejected the notion that "turnover at the CFO position is . . . necessarily indicative of fraudulent accounting." *Advanced Battery I*, 2012 WL 3758085, at *18. And customer fund outflows in October 2022 are irrelevant to Plaintiff's claim against PwC CH absent any allegation that Credit Suisse incorrectly reported the amounts of the outflows (much less that PwC CH was aware of and overlooked any such inaccurate accounting).

Furthermore, the Opposition itself underscores that Plaintiff's new "red flags" at most suggest non-actionable negligence: that "extra" or "special care needed to be taken" (Opp. 13), that "adequate[]" or "thorough" review would have revealed unspecified problems (Opp. 16), or

---

[5]     *Cent. Laborers' Pension Fund v. SIRVA, Inc.*, 2006 WL 2787520 (N.D. Ill. Sept. 22, 2006) does not help Plaintiff because, as the Opposition makes clear, the alleged understaffing in that case resulted in a "lack of properly trained personnel responsible for *ensuring accurate financial reporting*." *Id.* at *26 (emphasis added). Plaintiff offers no such allegations here.

[6]     For this reason, the cited cases are inapposite. Opp. 15-16. Plaintiff's own parentheticals demonstrate that, unlike reports concerning the so-called "Suisse Secrets Leak," the articles in the cited cases pertained specifically to alleged misconduct affecting financial reporting. *See id.*

that PwC CH should have "exercise[d] increased caution" (Opp. 18). *See In re Longtop Sec. Litig.*, 910 F. Supp. 2d 561, 575 (S.D.N.Y. 2012). These allegations do not plead fraud.

### III.    THE CLAIM AGAINST PWC CH IS CLASSIC FRAUD-BY-HINDSIGHT

At the end of his brief (Opp. 20-22), Plaintiff attempts to refute that the claim against PwC CH is fraud-by-hindsight. *See* Opening Br. 13-16. Despite his rhetoric, Plaintiff does not cite any contemporaneous facts suggesting that PwC CH knew or should have known that its statements were false or misleading *when made*. Plaintiff refers to the disclosures in Credit Suisse's 2022 annual report that the material weaknesses in ICFR existed previously (Opp. 20), but there are no allegations that PwC CH was *aware* of those weaknesses when it made any challenged statement. Implicitly conceding this, Plaintiff cites to a grab bag of cases for the uncontroversial proposition that later events can in certain circumstances inform the inquiry into prior knowledge. Opp. 20-21. But notably absent from this section is reference to any facts that would provide such circumstantial evidence with respect to PwC CH, other than the deficient "red flags." Finally, Plaintiff refers to the "magnitude" of the failure to disclose the material weakness in ICFR (Opp. 22), an assertion that the CAC itself negates. *See* CAC ¶ 359 (alleging that disclosure of the weakness led to a 1.18 percent decline in Credit Suisse's stock price).

### IV.    THE COURT SHOULD DENY THE REQUEST FOR LEAVE TO AMEND

There is no basis for the Court to grant leave to amend. Plaintiff had six months to draft the CAC and he does not explain how further amendment might somehow cure the fundamental deficiencies in the claim against PwC CH. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). The futility of amendment is highlighted by the new allegations added in the Opposition, which fail to plead scienter even if the Court considers them.

### CONCLUSION

The Court should dismiss the claim against PwC CH with prejudice.

10

Date: December 7, 2023

*/s/ Michael G. Bongiorno*

Michael G. Bongiorno
Andrew Rhys Davies
Brad E. Konstandt
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007 USA
Telephone: (212) 937-7220
Facsimile: (212) 230-8888
michael.bongiorno@wilmerhale.com
andrew.davies@wilmerhale.com
brad.konstandt@wilmerhale.com

*Counsel for PricewaterhouseCoopers AG*

11