UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ALI DIABAT, individually and on behalf of all others
similarly situated,

                Plaintiff,

vs.

                23 Civ. 5874 (CM)
                23 Civ. 6023 (CM)
                23 Civ. 6039 (CM)

CREDIT SUISSE GROUP AG, et al.,

                Defendants.

------------------------------------------------------------x

## DECISION AND ORDER DENYING MOTION TO REPLACE LEAD PLAINTIFF

McMahon, J.:

Mehmet Resit As, a proposed lead plaintiff whose application to serve in that capacity was denied, has moved to vacate the court's September 7, 2023 order appointing Ali Diabat lead plaintiff, and to appoint As lead plaintiff instead. (*See* Dkt. # 113 ("As Motion")) The motion is DENIED.

### BACKGROUND

This case was originally brought by a purported class of investors alleging that Credit Suisse and its affiliates committed securities fraud in the lead up to the bank's March 2023 collapse. The court assumes familiarity with the facts of the case, which are discussed at length in its comprehensive September 19, 2024 order, which granted in part and denied in part Defendants' motions to dismiss. *See Diabat v. Credit Suisse Grp. AG*, No. 23-cv-5874, 2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024).

Plaintiff As made a previous unsuccessful bid to serve as lead plaintiff in May 2023 (*see* Motion to Consolidate Cases and Appoint Lead Plaintiff, *Calhoun v. Credit Suisse*, No. 1:23-cv-06023 (S.D.N.Y. May 8, 2023), ECF No. 18), which was rejected at the court's September 7, 2023 Lead Plaintiff Hearing in favor of the application of Plaintiff Diabat (*see* Transcript of Sept. 7, 2023 Hearing at 15-16, Dkt. # 58). Although As was the next largest purported shareholder after Plaintiff Core Capital – which was denied lead plaintiff status because of the likelihood that its AT1 bonds were nearly worthless by the end of the class period – the court found "the fact that Mr. As bought his shares after the [February 9, 2023] partial corrective disclosure" meant that he "may not be able to assert reliance under a fraud-on-the-market theory . . . and that arguable possibility is, in the opinion of this Court, highly problematic because it would defeat typicality." (*Id*. at 15) The court chose Diabat as lead plaintiff instead. (*Id*. at 16-17)

Last month, the court granted in significant part motions to dismiss brought by Defendants. *See Diabat*, 2024 WL 4252502. As originally pleaded, the proposed class period extended from April 6, 2021 until March 20, 2023; after the decision on the motions to dismiss, that period was shortened significantly, since the court concluded that no actionable misstatement or omission occurred prior to October 27, 2022.

Two weeks after the decision, As filed a motion asserting that he should be appointed lead plaintiff, and that the court's September 7, 2023 order appointing Diabat lead plaintiff should be vacated. He contended that Diabat lacks standing to bring any claim, having alleged no purchases or losses during the period from October 27, 2022 to March 14, 2023 – which As contends is the new class period in light of the court's decision on the motions to dismiss. (As Motion at 2; 4)

As the reader is unlikely to recall these details: Diabat alleged that he made six purchases of Credit Suisse securities between May 5, 2021 and March 17, 2023, resulting in $2.9 million in

2

losses over the original class period. (*See* Exhibit B, Motion to Appoint Lead Plaintiff, Dkt. # 7-5) Two of those purchases – on March 16, 2023 and March 17, 2023 – occurred after the now earliest actionable misstatement or omission on October 27, 2022 and represent approximately $217,496 in losses. (*Id.*) By contrast, As alleged just under $6 million in losses between February 9, 2023 and March 17, 2023, all of which occurred after the now earliest actionable misstatement or omission on October 27, 2022. (*See* Exhibits 2-3, Motion to Consolidate Cases and Appoint Lead Plaintiff, *Calhoun v. Credit Suisse*, No. 1:23-cv-06023 (S.D.N.Y. May 8, 2023), ECF No. 18-5; 18-6)

## DISCUSSION

### I. Diabat Retains Standing to Lead the Class

Although it is "part of a lead plaintiff's responsibility to propose [its] own withdrawal and substitution should it be discovered that [it] may no longer adequately represent the interests of the purported plaintiff class . . . . a member of the purported class will be allowed to endeavor to protect its own interests and the interests of its fellow class members by similarly moving the court to have a lead plaintiff removed upon good cause shown." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 134 (S.D.N.Y. Feb. 26, 2007). This is underscored by courts' "continuing duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members." *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. Apr. 1, 2009) (internal citations omitted). While "lead plaintiffs, appointed pursuant to the PSLRA, need not satisfy all elements of standing with respect to the entire lawsuit, the selection of lead plaintiffs does not remove the basic requirement that at least one named plaintiff must have standing to pursue each claim alleged." *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. Dec. 2, 2004); *see also In re IMAX Sec. Litig.*, 272 F.R.D. 138, 152 (S.D.N.Y. Dec. 20, 2010). Plaintiff As

is therefore correct that if "there is no longer a live controversy between Lead Plaintiff and [defendants] . . . Lead Plaintiff must be dismissed from this action." *In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672, 2021 WL 930478, at *6 (S.D.N.Y. Mar. 11, 2021).

That is, however, the only point on which he is correct.

The originally pleaded proposed class period ended on March 20, 2023 – when the stock price dropped dramatically following the March 19 weekend announcement that Credit Suisse would be merging with UBS at the behest of the Swiss Federal Department of Finance, the Swiss National Bank, and the Swiss Financial Market Supervisory Authority. As argues that the effect of this court's decision on certain aspects of the motions to dismiss was to move the end of the class period up six days, to March 14, 2023. Specifically, As argues that the class period must be shorter because I held that no disclosure after the publication of Credit Suisse's 2022 Annual Report (which occurred on March 14) was adequately alleged to be corrective for the reasons alleged in Amended Complaint. (As Motion at 4) Since Diabat did not claim to have purchased or sold any Credit Suisse securities between March 1, 2022 and March 16, 2023, As contends that Diabat did not make a qualifying transaction during the new class period.

"The boundaries of [a purported securities fraud class period] run from when the first misrepresentation was made allegedly distorting the market price to when the truth was revealed curing the price of any fraud-induced inflation." *In re Grupo Televisa Sec. Litig.*, No. 18-cv-1979, 2022 WL 2829253, at *1 (S.D.N.Y. July 20, 2022) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014)). It cannot be concluded as a matter of law that March 14, 2023 publication of Credit Suisse's 2022 Annual Report "cured the market" – i.e., marked the point "when the full truth has been disclosed to the market and the natural market forces have had a reasonable period of time to receive, digest and reflect the bad news in the market price of the

4

security." *In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 583 (S.D.N.Y. Mar. 6, 2008) (internal citations omitted). This follows from my finding that the 2022 Annual Report was itself materially false and/or misleading because (i) "it paints too rosy a picture of Credit Suisse's financial condition just days before it would enter into a merger designed to stave off its collapse," and (ii) "the disclosure of any merger discussions that were then under way was necessary to render statements that were made about the Company's financial posture not misleading." *Diabat*, 2024 WL 4252502, at *127.

When discussing loss causation in the decision on the motions to dismiss, I held that Diabat had sufficiently alleged that the March 14 public filing of the 2022 Annual Report constituted a corrective disclosure and a materialization of a concealed risk. *See id.* at 150; 152. The decision did not address whether the class period ended on that date, or whether anything occurred after that date that represented a further materialization of a concealed risk. It is certainly arguable – indeed, it seems highly likely – that the ultimate materialization of the risk occurred when Credit Suisse was forcibly merged into UBS and so ceased to exist, which event rendered its securities essentially worthless. Indeed, the greatest loss of value in the stock price between October 27, 2022 and March 2024 – and so the largest aspect of the class's claim for damages – occurred on March 20, the day after the merger was announced. The fact that the merger announcement itself was entirely truthful has nothing to do with when the class period ended; indeed, the announcement that Credit Suisse was going out of business certainly appears to have "cured" the market's belief that its shares had any value.

So the court's decision on the motions to dismiss was not intended to, and as far as I am concerned did not, move back the end of the purported class period by six days. Because he

5

engaged in qualifying transactions on March 16, 2023 and March 17, 2023, Diabat continues to have standing to proceed as lead plaintiff.

   II.   **It Is Not Appropriate to Substitute Plaintiff As for Plaintiff Diabat as Lead Plaintiff**

"The PSLRA does not contemplate any sort of lead-plaintiff proceedings beyond the very earliest stages of the litigation." *In re Allergan PLC Sec. Litig.*, No. 18-cv-12089, 2020 WL 8620082, at *1 (S.D.N.Y. Dec. 7, 2020) (internal citations omitted). "This is evident from the statute itself, which does not include guidance on repeating the lead-plaintiff process and suggests that Congress contemplated invoking the PSLRA's lead plaintiff process only once – at the very beginning of the suit." *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-cv-7273 (S.D.N.Y. June 1, 2023) (internal citations omitted). As Judge Walker of the United States District Court for the Northern District of California has explained, the PSLRA did not "turn securities litigation into a game of snakes and ladders" demanding that "the action must 'go back to square one' and recommence the PSLRA lead plaintiff selection process" again and again. *In re Portal Software Sec. Litig.*, No. C-03-5138, 2005 WL 8179740 at *4 (N.D. Cal. Mar. 9, 2005). Instead, the lead plaintiff provision "is designed only to get cases off on the right foot." *Id*. Following a court's choice of lead plaintiff, the appointment of substitute lead plaintiffs is generally limited to "those instances where it is necessary to maintain representation of the prospective class." *NYSE Specialists*, 240 F.R.D. at 139-40.

The lead plaintiff selection process served its purpose here. Diabat was selected as lead plaintiff following the parties' robust briefing and a full and searching inquiry during the September 7, 2023 Lead Plaintiff Hearing. Although As now reiterates his reasons for contending that Diabat is an inadequate and atypical plaintiff, (*see* As Motion at 2-3), we have already crossed that bridge. Moreover, in one month, Diabat must move for class certification, at which point his

6

adequacy as the class representative will be tested yet again. As my colleague, Judge Liman, held in a recent case involving a similar attempt to replace and/or appoint an additional lead plaintiff, "in the event that [lead plaintiff] is found not adequate under Rule 23, the most appropriate procedure would be to allow other putative class members, including [movant], to move for appointment as lead plaintiff upon [lead plaintiff's] withdrawal." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-CV-08585, 2022 WL 17884165, at *9 (S.D.N.Y. Dec. 23, 2022). As Judge Liman rightly explained, "Waiting till class certification will also not result in substantial prejudice to any of the parties," because class certification would be addressed shortly. *Id.* at 8 (quoting Fed. R. Civ. P. 23(c)(1)(A)). That is equally the case here.

Even if the PSLRA required me to go back to square one and restart the lead plaintiff selection process at this point, I would be disinclined to appoint As's as lead plaintiff – even though it appears that As is the largest qualifying stockholder among the original proposed lead plaintiffs. The proposed lead plaintiff with the largest holding is only presumptively entitled to lead plaintiff status; he is not automatically to be appointed lead plaintiff. Here, Diabat has now sufficiently demonstrated a colorable risk that As is acting on "interests that are antagonistic to the class that he seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. May 9 2006). Within days of a decision that had reduced the remaining class period to an extremely limited span of time, As jumped at the opportunity to sell out his fellow class members by advancing the entirely meritless argument that the court has shortened the class period to remove from its ambit the largest single-day drop in the stock price of Credit Suisse – all in the interest of divesting Diabat and standing and making himself lead plaintiff. (*See* Dkt. # 117 (the "Diabat Opposition") at 4)

7

Diabat aptly questions how As's interests can be aligned with those of the class when As and his counsel were "so quick to interpret the Court's Order in a way that guts the recoverable damages for the Class . . . raising serious questions about whose interest [they are] really seeking to protect." (*Id.*). "[T]he proof needed to rebut the [lead plaintiff] presumption need not establish a plaintiff's inadequacy with absolute certainty; instead it is enough that it presents a colorable risk of inadequacy." *Schaffer v. Horizon Pharma PLC*, No. 16-cv-1763, 2016 WL 3566238 (S.D.N.Y. June 27, 2016). On the evidence before me, I find that "there is at least a potential that the presumptively most adequate lead plaintiff [As] . . . will not fairly and adequately protect the interests of the class."

Moreover, the whole reason for the PSLRA lead plaintiff process is to ensure that securities fraud class actions are client-driven, not lawyer-driven. In my mind, the fact that As's lawyer made a meritless argument that is harmful to the interests of the class as a whole in order to try to divest the Lead Plaintiff of standing raises the strong inference that he did so to further his own interest, rather than the interests of the class. That is the antithesis of client-driven litigation.

I thus deny the motion to substitute As for Diabat as lead plaintiff. *Batter v. Hecla Mining Co.*, No. 19-CV-05719, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (internal citations omitted).

## CONCLUSION

Diabat's status as lead plaintiff is subject to continuing reassessment throughout the course of litigation. But since I disagree with As's assessment that Diabat has lost standing to represent the class, Diabat should remain the lead plaintiff unless and until it is proven that he is not an adequate class representative. As offers no such proof. Therefore, his motion is DENIED.

This constitutes the written decision and order of the court.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. # 112.

Dated: October 24, 2024

                                                        _____
                                                                          U.S.D.J.

BY ECF TO ALL COUNSEL