# Exhibit 2

to July 21, 2025 Stipulation and [Proposed] Order

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALI DIABAT, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>CREDIT SUISSE GROUP AG, et al.<br><br>        Defendants. | No. 1:23-cv-5874-CM-SLC<br><br>**STIPULATED DISCOVERY PROTOCOL REGARDING PRODUCTION OF ESI AND PAPER DOCUMENTS AND SEARCH METHODOLOGY FOR ESI** |

This Stipulated Discovery Protocol Regarding Production of ESI and Paper Documents and Search Methodology for ESI ("ESI Protocol") shall govern the Parties in the above-captioned case (the "Litigation").[1]

Nothing in this ESI Protocol shall be construed to affect the admissibility of discoverable information. Pursuant to the terms of this ESI Protocol, information regarding search process and ESI practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of particular ESI as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.

## I.    GENERAL PROVISIONS

**A.    Applicability:** This ESI Protocol will govern all information produced, given, or exchanged by and among the Parties in the Litigation. To the extent that a Party collected and processed documents prior to the Parties' agreement to this ESI Protocol, and production of such

---

[1] For the avoidance of doubt, all claims against Thomas Gottstein, David R. Mathers, António Horta-Osório, and PricewaterhouseCoopers AG have been dismissed from the Litigation and thus are not "Parties" as that term is used herein.

documents cannot be made in accordance with the terms of this ESI Protocol, the Parties will meet and confer if the other Party raises questions or concerns about the format of that production after receiving it.

**B.    Deadlines:** References to schedules and deadlines in this ESI Protocol shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

**C.    Authenticity and Admissibility:** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any Production Material. All objections to the authenticity or admissibility of any Production Material are preserved and may be asserted at any time.

**D.    Claims of Privilege:** A Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All objections to the production of documents or information based on a claim of privilege are expressly preserved.

**E.    Confidential Information:** Nothing herein shall contradict the Parties' rights and obligations with respect to any Confidential Discovery Material, as that term is defined under the Parties' Stipulated Protective Order ("Stipulated Protective Order").

**F.    Encryption:** To maximize the security of information in transit, any media on which documents are produced may be encrypted or password protected by the party that is producing, or has been asked to produce, documents ("Producing Party"). In such cases, the Producing Party shall transmit the encryption key or password to the party that has requested documents ("Requesting Party"), under separate cover, contemporaneously with sending the encrypted media.

## II.    GENERAL PRODUCTION FORMAT PROTOCOLS

**A.    TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(D). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (*i.e.*, portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information that is viewable within the native file and not subject to claims of privilege or the work product doctrine, shall, to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format along with a placeholder TIFF image stating "Document Produced in Native Format," (*see* paragraph II.C. below regarding native production format requirements) unless such documents require redactions, in which case the documents will be produced in the appropriate format to accommodate the application of redactions. A Producing Party retains the option to produce ESI in alternative formats if so agreed to by the Requesting Party, which may include native format, or a combination of native and TIFF formats.

**B.    Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

1.    **Optical Character Recognition ("OCR"):** A Producing Party will scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate

OCR and will utilize quality OCR processes and technology. Even if OCR is used by a Producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

        2.    **ESI:** Non-redacted emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available and where not subject to claims of privilege or the work product doctrine. OCR text files shall be provided for ESI that does not contain extractable text and for ESI produced with redactions.

      **C.**    **Production of Native Items:** The Parties agree that ESI shall be produced as TIFFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (*e.g.*, MS Excel), presentation files (*e.g.*, MS PowerPoint), personal databases (*e.g.*, MS Access), and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format, unless the file contains redactions. In the case of personal database (*e.g.*, MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. For documents produced in native format pursuant to this provision, a single-page placeholder TIFF image marked with the Bates production number and confidentiality designation shall be produced with the phrase "Document Produced in Native Format." The corresponding load file shall include NativeFileLink information for each native file that is produced. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine the best reasonable form of production of usable data. Through the pendency of the Litigation, the Producing Party shall exercise reasonable, good faith efforts to maintain all

preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

      **D.**    **Bates Numbering:**

      1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (at least nine-digits and 0-padded) across the entire production; (3) be sequential within a given document; and (4) identify the Producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

      2.    If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

      3.    The Producing Party will brand all TIFF images in a manner that does not obliterate or obscure any part of the underlying images.

      4.    Documents produced in native format shall be assigned a Bates number.

      **E.**    **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

      **F.**    **Non-Responsive Family Members:** If a non-responsive parent document has a responsive attachment, the Producing Party will produce the parent document (redacted at the discretion of the Producing Party), as well as all responsive attachments, but need not produce other non-responsive attachments. If the Producing Party chooses to redact a non-responsive parent document, it shall not redact any identifying information (*e.g.*, to, from, subject, date). If a responsive parent document has a non-responsive attachment, the Producing Party need not

produce the non-responsive attachment. In either case, a slip sheet noting that the document has been withheld as non-responsive must be produced in the place of the non-responsive attachment. Moreover, if the Requesting Party has a reasonable basis to believe any attachment or redacted information withheld as non-responsive is actually responsive (*e.g.*, the file name of the withheld attachment suggests the attachment is responsive), the Requesting Party may request that the Producing Party describe the general nature of the non-responsive attachment or redacted information in order to assess the claim of non-responsiveness.

   **G.     Load Files:** All production items will be provided with a delimited data file or ''load file,'' which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available, and to the extent not subject to a claim of privilege or work product protection, and to the extent they exist. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

   **H.     Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the Requesting Party may request that the document or ESI item be produced in its original colors. For such documents, the Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color

for the reasons set forth in this paragraph will not be unreasonably denied by the Producing Party. If a Producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

  **I.**  **Confidentiality Designations:** Any confidentiality designation shall be branded on the document's image in a manner that does not obliterate or obscure any part of the underlying images. Failure to comply with the procedures set forth in this ESI Protocol or the Stipulated Protective Order shall not waive any protection or confidential treatment.

  **J.**  **Production Media & Protocol:** A Producing Party may produce documents via email or via file-sharing service, including any network-based secure file transfer mechanism or FTP protocol. A Producing Party may also produce documents on readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted or password protected, and the Producing Party will provide a decryption key or password to the Requesting Party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three DVDs, the Producing Party may label each DVD in the following manner: "[PARTY] Production January 1, 2017-001," "[PARTY] Production January 1, 2017-002," and "[PARTY] Production January 1, 2017-003." Where the Production Media used is a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, such production media must be sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of Production Media (or in the case of productions made via FTP link, each production transmittal letter) shall include: (1) text

referencing that the production is made in connection with the above-captioned action, (2) the production date, and (3) the Bates number range of the materials contained on such production media item. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced.

 **K.** **Previously Produced Documents:** To the extent a Producing Party produces documents that were previously produced in an action different from this Action, those previously produced documents need not be reprocessed so long as the documents are produced in a reasonably usable form and need not be assigned new Bates numbers as described in Paragraph II.D., so long as the prior Bates prefix is unique and not repeated in this Action. The Parties shall meet and confer if the Requesting Party raises questions or concerns about the format of any such production after receiving it. For the avoidance of doubt, nothing herein shall prevent a Producing Party from reprocessing and/or re-numbering documents produced in a prior action, should that Party so choose.

**III.** **PAPER DOCUMENT PRODUCTION PROTOCOLS**

 **A.** **Scanning:** A Producing Party shall OCR paper documents.

 **B.** **Coding Fields:** The following information (to the extent reasonably practicable) shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, and (e) CustodianAll.

 **C.** **File/Binder Structures:**

  1. **Unitization:** Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable.

2.    **Identification:** Where a document, or a document group — such as folder, clipped bundle, or binder — has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping but need not be repeated for each document within the grouping.

## IV.    ESI METADATA FORMAT AND PROCESSING ISSUES

A.    **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the Parties.

B.    **Metadata Fields and Processing:**

1.    **Date and Time:** No Party shall modify the date or time as contained in any original ESI.

2.    **Time Zone:** To the extent reasonably practicable, ESI items shall be processed and standardized to the Coordinated Universal (UTC) time zone, except to the extent ESI items have already been processed, which will not require standardization.

3.    **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

4.    Except as otherwise set forth in this ESI Protocol, and to the extent not covered by claims of privilege or the work product doctrine, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

5.    The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated

process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, and (e) CustodianAll, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

**C.    Redaction:**

1.    The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (*e.g.*, MS Access), which shall be governed by ¶ II(C), *supra*. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. In some cases, MS Excel documents that need to be redacted may be redacted in native format if reasonably practicable; otherwise they will be produced in TIFF format.

2.    If the items redacted and partially withheld from production are Excel-type spreadsheets as addressed in ¶ II(C), *supra*, and the native items are also withheld, to the extent reasonably practicable, each entire ESI item should be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations, and notes. If the Requesting Party believes in good faith that any spreadsheets produced only as TIFF images are formatted so as to be illegible, then the Requesting Party may request that the Producing Party reproduce that spreadsheet as a TIFF image that is formatted so as to be legible, or in some other reasonable format that allows the Requesting Party to read any unredacted content.

3.    If the items redacted and partially withheld from production are audio/visual files, the Producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to

discuss the appropriate manner for the Producing Party to produce the unredacted portion of the content.

### D.  Email Collection and Processing:

1.  **Email Threading:** The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

2.  **Email Domains:** To the extent reasonably practicable, excluded from any ESI search process shall be uniquely identifiable categories of documents, such as emails from domains typically associated with junk email.

3.  **De-duplication:** A Producing Party may de-duplicate any file globally (*i.e.*, across Document Custodians). The Producing Party shall identify in the CustodianAll field the names of all custodians who were in possession of the deduplicated document. In the event of rolling productions of documents or ESI items, the Producing Party will, as needed, supplement the overlay load files with updated CustodianAll.

4.  Duplicate electronic documents shall be identified by a commercially accepted industry standard (*e.g.*, MDS or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The Producing Party shall produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The Producing Party is not obligated to extract or produce entirely duplicate ESI documents. Any other methodology for identification of duplicates, including email field

selection for hash value creation, must be discussed with the Requesting Party and approved in writing before implementation.

5.      Duplicate messaging files shall be identified by a commercially accepted industry standard (*e.g.*, MDS hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachment(s). Email families bearing an identical value are considered a duplicate group. The Producing Party shall produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

E.      **Zero-byte Files:** The Parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the Requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the Requesting Party may request that the Producing Party produce the zero-byte file. The Requesting Party may provide a Bates number to the Producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

F.      **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a Producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business.

**G.** **Hidden Text:** ESI items processed after the execution date of this ESI Protocol shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

**H.** **Embedded Objects:** The Parties agree that embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a Producing Party (*e.g.*, such embedded objects will be produced within the document itself, rather than as separate attachments). If a Requesting Party believes in good faith that a need exists for a Microsoft Excel (.xls) spreadsheet embedded in a Microsoft Word document that has been produced to be extracted as a separate document and treated like an attachment to the document, the Requesting Party may request the Producing Party do so by providing the Bates number of the Microsoft Word document at issue, and the Producing Party shall make reasonable attempts to do so in response to such good faith requests.

**I.** **Compressed Files:** Compression file types (*i.e.*, .CAB, .GZ, .TAR, .7z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**J.** **Password-Protected, Encrypted, or Proprietary-Software Files:** If a Requesting Party identifies a password-protected or encrypted ESI item that the Requesting Party believes, in good faith, needs to be reviewed, the Requesting Party may request that the Producing Party take reasonable steps to break the password protection. In the event the document cannot be accessed after such reasonable efforts have been made, the Producing Party shall advise the Requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V.    PARAMETERS FOR CULLING AND REVIEWING ESI

### A.    General Provisions:

1.    **Transparency:** With the goal of permitting Requesting Parties an appropriate level of transparency into a Producing Party's electronic search process, but without requiring the disclosure of attorney work product or other privileged information, the Parties will endeavor to be reasonably transparent regarding the universe of documents subject to targeted collections or culling via search terms. To that end, the Parties will agree to exchange in writing the information listed in items (a) through (g) below, to the extent relevant to any Document Requests for which a Producing Party has agreed to provide ESI. The Parties agree and understand that their respective responses are based on their knowledge and understandings as of the date of the response, and each Party agrees to amend or supplement its responses in a timely manner if it learns that in some material respect its response is incomplete or incorrect.

a.    A list of potential Document Custodians (including current employees, former employees and any other individuals or companies whose ESI is in the possession, custody, or control of the Producing Party) the Producing Party believes are likely to have information responsive to one or more Document Requests for which the Producing Party has agreed to provide ESI, including job title and a brief description of job responsibilities and employment period for each individual to the extent that it exists and is reasonably accessible.

b.    A general description of systems for electronic communications and ESI storage the Producing Party believes are likely to contain information (*e.g.*, shared network storage and shared electronic work spaces) responsive to one or more Document Requests for which the Producing Party has agreed to provide ESI, including documents from sources other than a Document Custodian's ESI ("Non-Custodial" documents or information).

c. If unique, non-duplicative ESI within the scope of discovery is lost or destroyed after the legal hold obligations have been triggered in this case, if known.

d. A description of any ESI within the scope of discovery that the Producing Party contends is inaccessible or only of limited accessibility and, hence, not producible by that Party without undue burden and/or expense, including:

i. The reasons for the Party's contention regarding accessibility; and

ii. The proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

2. **Targeted Collections:** Only documents a Producing Party intends to subject to electronic searching parameters should be included in the data set against which search terms are tested.

3. **Meet and Confer:** A Requesting or Producing Party may, in good faith, seek to expand or contract the scope of the search. Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion or contraction.

4. **Non-Waiver:** The Parties' discussion of proposed search terms and appropriate Document Custodians and Non-Custodial document sources does not preclude a Party from requesting additional search terms pursuant to the terms of this ESI Protocol as discovery and the Litigation progress nor does it preclude a Party from objecting to any such additional search terms requested.

**B.    Document Custodians:**

1.    No later than 14 days after receiving the Producing Party's initial list of Document Custodians and Non-Custodial document sources which the Producing Party believes are likely to contain information responsive to one or more Document Requests for which the Producing Party has agreed to produce ESI, the Requesting Party may propose to the Producing Party additional or alternative Document Custodians or Non-Custodial document sources it reasonably believes contain information that would be responsive to one or more Document Requests for which the Producing Party has agreed to produce ESI. The Parties will meet and confer in good faith to resolve any disputes over the identification or number of Document Custodians. Nothing in this paragraph prevents a Requesting Party from subsequently proposing additional or alternative Document Custodians as discovery progresses (*i.e.*, a second round of Document Custodians).

**C.    Non-Custodial Documents and ESI:** Documents or ESI that (i) exist in Non-Custodial document sources identified by the Producing Party as likely to contain information responsive to one or more Document Requests for which the Producing Party has agreed to provide ESI, as set forth in Section V(a)(1)(b), above and (ii) are responsive to one more Document Requests shall be produced without regard to whether such documents or ESI would be captured by any search method described below or developed in accordance with this Order, unless the Producing Party has asserted an objection to producing such documents or ESI or if the Producing Party believes such documents or ESI implicate one or more privileges or protections (in the latter case, such documents shall be logged on a privilege log as set forth in Section VII, below).

**D.    Custodial Cellphone & Personal Communications Data:**

1.    A Producing Party need not in the initial instance produce unique responsive communications located on any cellphones in the possession, custody, or control of the Producing

Party. Upon a good faith request relating to any particular Document Custodian, the Producing Party agrees to take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the Producing Party, and to inform the Requesting Party whether the Producing Party believes that the production of such communications, or some subset thereof, would be reasonably practicable and proportional to the needs of the case. The Parties agree to confer in good faith regarding the parameters of any potential review and/or production of cellphone data.

## VI.   **SEARCH METHOD**

This section sets forth how collected data may be electronically culled in this matter. For the avoidance of doubt, nothing herein is intended to suggest that a Producing Party may not use multiple approaches to data (for example, a combination of TAR/CAL and Search Terms), so long as (i) the Producing Party makes clear to the Requesting Party, prior to undertaking any particular approach, which approach or approaches it intends to use with respect to which categories of data and (ii) the Parties reach agreement on which approach or approaches the Producing Party shall use with respect to each applicable category of data.

A.   **TAR/CAL Search Process:**

1.   **Producing Party TAR/CAL Disclosures:**

a.   No later than 30 days after a Producing Party decides to utilize a TAR/CAL Search Process, a Producing Party who elects to use a TAR/CAL process will disclose the following information regarding its use of a TAR/CAL process: (a) the name of the TAR/CAL software and vendor, (b) a general description of how the Producing Party's TAR/CAL process will work, including how it will train the algorithm, such as using exemplars, keyword search strings, or some other method, (c) a general description of the categories or sources of the

documents included or excluded from the TAR/CAL process, (d) what quality control measures will be taken, and (e) the proposed validation protocols the Producing Party will utilize.

   2.   **Requesting Party Response:**

   a.   Within 14 days of receiving a Producing Party's TAR/CAL Disclosures, the Requesting Party may raise with the Producing Party any concerns with the proposed TAR/CAL process or categories of documents that it proposes should be excluded from the TAR/CAL process. A Requesting Party may also propose any exemplars it proposes be used to train a TAR/CAL tool or narrow keyword search strings it proposes be used to generate exemplars to train a TAR/CAL tool. A Producing Party retains the right to reject and oppose any such requests, subject to resolution by the Court.

   3.   **Cooperation:** The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of TAR/CAL and its processes, recall, and validation protocol.

**B.   Use of Search Terms:**

   1.   **First Phase Search Term Proposals:**

   a.   *Producing Party Proposes an Initial Set of Search Terms*: No later than 30 days after a Producing Party agrees to produce ESI in response to one or more Document Requests and after the Parties have (at least tentatively) agreed on (i) a reasonable time frame for the collection and review of such ESI and (ii) Document Custodians, a Producing Party who elects to use a Search Term process will propose a set of search terms. At the time it makes this disclosure, the Producing Party must provide a hit report (to include unique hits, hits with families, and total number of documents hit) for the search terms applied to each data source the Producing Party has agreed to review.

b.   *Requesting Party's Proposed Revisions*: Within 14 days of receiving the initial proposed search terms and accompanying information, the Requesting Party may provide any proposed revisions or additions to the Producing Party's search terms.

c.   *Producing Party Provides Information*: Within 14 days of receipt of the Requesting Party's proposed additions and revisions, the Producing Party will promptly assess the additional or revised search terms, including by running hit reports, reviewing "null set samples," or performing any other analyses the Producing Party believes would assist the Parties in evaluating the effectiveness of the proposed search terms. The Producing Party must provide hit reports, but may also provide other information.

d.   *Meet and Confer*: After the Producing Party provides its assessment of any proposed additional or revised search terms, the Parties agree to meet and confer in good faith to reach agreement on a definitive set of search terms. While the Parties will endeavor to reach agreement without the need for Court intervention, nothing herein prevents any Party from seeking Court intervention if, after meet-and-confer efforts, the Parties are unable to reach agreement on the use of one or more search terms (or any other issues related to the scope of ESI production).

2.   **Subsequent Search Term Proposals:** If, during the discovery process, a Requesting Party reasonably believes that additional search terms should be used beyond those agreed to as part of the "First Phase" discussed above, the Requesting Party shall provide a list of such proposed search terms and an explanation as to why it believes each such additional term should be used. No later than 14 days after the Requesting Party provides an additional set of proposed search terms, the Producing Party will promptly assess the additional or revised search terms, including by running hit reports, reviewing additional "null set samples," or performing any

other analyses the Producing Party believes would assist the Parties in evaluating the effectiveness of the proposed search terms. The Producing Party must provide hit reports, but may also provide other information. Thereafter, the Parties will meet and confer in good faith as necessary to reach agreement as to whether any additional search terms should be used. For the avoidance of doubt, nothing herein prevents a Producing Party from objecting to any such additional proposed search terms.

3.     **Validation of Search Terms:** The Parties will meet and confer in good faith on the parameters of an appropriate process to ensure that any search parameters used are sufficiently effective at identifying ESI responsive to one or more Document Requests for which the Producing Party has agreed to produce ESI. Such validation shall be performed within a reasonable time after the Parties complete the First Phase Search Term Proposal process (*see* Section VI(B)(1), above) and Subsequent Search Term Proposal process (*see* Section VI(B)(2), above), if any.

4.     **Manual Review:** For the avoidance of doubt, the agreed-upon search terms shall be used to assist in culling responsive documents and other ESI from the agreed-upon custodial sources prior to a manual review of the documents or other ESI to determine whether documents and ESI from those sources should be produced because they are relevant, responsive, and not privileged or otherwise protected. By agreeing to utilize the agreed-upon search terms, the Parties do not waive their right to manually review all documents and other ESI that hit on the agreed-upon search terms in order to make a determination as to whether those documents and ESI should be produced because they are relevant, responsive, and not privileged or otherwise protected.

**C.**     **Other Processes:** Nothing herein prevents the Parties from agreeing to some other process or processes for the review of ESI potentially responsive to one or more Document Requests for which a Producing Party has agreed to produce ESI. If a Requesting Party believes that one or more Document Requests calls for ESI for which the Requesting Party believes the procedures set forth herein would not be appropriate, the Requesting Party shall so inform the Producing Party, after which the Parties shall meet and confer as necessary.

## VII.     CLAIMS OF PRIVILEGE AND REDACTIONS

**A.**     **Production of Privilege Logs:** Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the Producing Party will produce privilege/redaction logs in MS Excel format that allows for text searching, sorting, and organization of data, and shall be produced either: (a) in a cumulative manner, so that each subsequent privilege log includes all privilege claims from prior logs; or (b) in installments using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the receiving parties. Production of Automated Logs (*see* Section (VII)(C)(1), below), if used, shall occur on a rolling basis within a reasonable time (*e.g.*, 30 days) of each production volume(s) to which they relate.

**B.**     **Exclusions from Logging Potentially Privileged Documents:** The following categories of documents do not need to be contained on a Producing Party's initial privilege log, unless good cause exists to require that a Party do so.

1.     Communications seeking or receiving legal advice related to this Litigation (*i.e.*, correspondence after the filing of the initial complaint in this securities class action on March 8, 2023), exclusively between a Producing Party and (i) its in-house or outside counsel to this Litigation, (ii) an agent of such outside counsel other than the Party, (iii) in-house or outside counsel to any other entity or individual named as a Defendant in this Litigation; (iv) any non-

testifying experts in connection with this Litigation; and/or (v) with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

2. Work product created for this Litigation after the filing of the initial complaint in this securities class action on March 8, 2023, by or specifically at the direction of a Party's in-house counsel or outside counsel for this Litigation, an agent of outside counsel other than the Party, any non-testifying experts in connection with this Litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

C. **Privilege Log Requirements:** Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege or protection, including regulatory privileges such as the bank examination privilege and/or other protections concerning the disclosure of confidential supervisory information or similar information ("privilege log"). For electronic documents, each Party may opt at its own discretion to create privilege logs using one of the following methods. For paper documents, each Party shall create privilege logs using the standard privilege log.

1. **Automated Log:** An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

a. SUBJECT
b. FILE NAME
c. AUTHOR
d. SENDER/FROM
e. RECIPIENTS/TO
f. CC
g. BCC
h. SENT DATE TIME
i. RECEIVED DATE TIME
j. FILE CREATED DATE TIME

k.   FILE LAST MODIFIED DATE TIME
l.   PRODBEG
m.   PRODEND

With respect to the SUBJECT or FILENAME fields, the Producing Party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that the fields have been revised.

The log shall contain an indication (*e.g.*, with a ^ or * symbol, but not simply bolding or underlining the name) of which individual(s) (authors and recipients) are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney)

Parties shall include a field with information on privilege type (*i.e.*, work product) and whether the document has been produced with redactions.

If the Requesting Party believes that an entry on the Automated Log does not include sufficient information to assess the basis for the withholding, or should the Requesting Party in good faith have reason to believe a particular entry on the Automated Log does not reflect a privileged document, the Requesting Party may either (1) request, and the Producing Party shall prepare, a manually prepared description of that document that indicates the basis for the privilege, to be produced within two weeks of the request, or within such other reasonable time as the parties may agree or the Court may order; or (2) request additional information regarding the withheld document during a meet and confer with the Producing Party.

   **D.   Standard Log:** A standard privilege log will include these standard fields: author/sender/from; recipients/to; cc; bcc; date; document type; privilege type, and a description sufficient to identify the subject of the document and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the top email in the email string. Parties shall also populate a field with all other participants identified on the face of the

document not already captured in the top email of the email string. Other participants need only be identified for the email strings which are withheld as entirely privileged. <u>Documents dated after the filing of this Litigation containing privileged and/or work product material relating to this Litigation do not need to be logged unless the Requesting Party identifies good cause for such a log.</u>

      **E.**    **Challenges to Privilege Claims:** Following the receipt of a privilege/redaction log, a Requesting Party may identify, in writing, the particular documents or categories of documents that it believes require further explanation. The Producing Party shall endeavor to respond to such a request within 14 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

## VIII.   <u>MISCELLANEOUS PROVISIONS</u>

      **A.**    Nothing herein limits the rights of a Producing Party to object to any Document Request or other discovery request for any reason. Unless and until a Producing Party agrees to produce ESI in response to a given Document Request, it need not propose Document Custodians (or other Non-Custodial sources) or search terms applicable to that Request.

      **B.**    **International Discovery:** The procedures set forth herein apply only to ESI located on servers in the United States. To the extent a given Document Request seeks, or could be interpreted to seek, ESI located on servers outside of the United States, a Producing Party shall so inform the Requesting Party. The Parties shall thereafter meet and confer, as necessary, to discuss the extent to which ESI from the applicable foreign country or countries may be produced, any limitations on or objections concerning a Producing Party's ability to adhere to the procedures set forth herein with respect to such ESI, and potential alternative methods for the production of such ESI, including, if applicable, the procedures set forth in the Hague Evidence Convention of 1970 and any applicable national laws implementing that treaty.

**C.** **Objections Preserved:** Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

**D.** **Variations or Modifications:** Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants. In the event a Producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the Producing Party will notify the Requesting Party of the variation or modification. Upon request by the Requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**SO STIPULATED AND AGREED.**

DATED: December 9, 2024        **KAHN SWICK & FOTI, LLC**

*/s/ Kim E. Miller*
Kim E. Miller (KM-6996)
J. Ryan Lopatka (admitted *pro hac vice*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com
Email: j.lopatka@ksfcounsel.com

-and-

Craig J. Geraci, Jr. (admitted *pro hac vice*)
Matthew P. Woodard (admitted *pro hac vice*)
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: craig.geraci@ksfcounsel.com
Email: matthew.woodard@ksfcounsel.com

*Counsel for Lead Plaintiff Ali Diabat and
Lead Counsel for the Class*

DATED: December 9, 2024        **CAHILL GORDON & REINDEL LLP**

*/s/ Herbert S. Washer*
Herbert S. Washer
Jason M. Hall
Tammy L. Roy
Nicholas N. Matuschak
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Email: hwasher@cahill.com
Email: jhall@cahill.com
Email: troy@cahill.com
Email: nmatuschak@cahill.com

*Attorneys for Defendant Credit Suisse
Group AG*

DATED: December 9, 2024

**GOODWIN PROCTER LLP**

*/s/ Richard M. Strassberg*
Richard M. Strassberg
Daniel P. Roeser
Jessica Vogele
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
Email: rstrassberg@goodwinlaw.com
Email: droeser@goodwinlaw.com
Email: jvogele@goodwinlaw.com

*Attorneys for Defendant Axel P. Lehmann*

DATED: December 9, 2024

**HECKER FINK LLP**

*/s/ Sean Hecker*
Sean Hecker
Kate L. Doniger
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Email: shecker@heckerfink.com
Email: kdoniger@heckerfink.com

*Attorneys for Defendant Dixit Joshi*

DATED: December 9, 2024

**MILBANK LLP**

*/s/ George S. Canellos*
George S. Canellos
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Email: gcanellos@milbank.com

*Attorney for Ulrich Körner*

## ATTESTATION PURSUANT TO ELECTRONIC CASE FILING RULE 8.5

I, Kim E. Miller, attest that concurrence in the filing of this document has been obtained

from all other signatories.

*/s/ Kim E. Miller*
Kim E. Miller

**SO ORDERED.**

DATED: _____, 2024

_____
HONORABLE COLLEEN MCMAHON
UNITED STATES DISTRICT JUDGE

**APPENDIX 1**

ESI Metadata and Coding Fields

| DAT File Field Name | Database Field Name | Sample Data/Formats | Description |
|---|---|---|---|
| BEGDOC | Prod Begin Bates | DOC_000001 | Begin Bates number |
| ENDDOC | Prod End Bates | DOC_000002 | End Bates number |
| BEGATTACH | Prod Begin Attach | DOC_000001 | Begin Bates number of family unit |
| ENDATTACH | Prod End Attach | DOC_000004 | End Bates number of family unit |
| CUSTODIAN | CustID::display Name | Smith, John | Individual from whom the document originated |
| ALLCUSTODIANS | All Processed Custodians::displayName | Smith, John; Smith, Jane | All individuals who have the document |
| PAGECOUNT | Prod Page Count | 2 | Total number of pages in the document |
| PARENTID | Prod ParentID | DOC_000001 | Begin Bates number of parent document |
| ATTACHIDS | Prod AttachIDs | DOC_000003; DOC_000004 | Begin Bates number of each child attachment separated by "; " |
| FROM | From | Jane Smith (jane@smith.com) | Author of the e-mail message |
| TO | To | John Smith (john@smith.com) | Main recipient(s) of the e-mail message |
| CC | CC | Frank Thompson (frank@thompson.com) | Recipient(s) of ï¿½Carbon Copiesï¿½ of the e-mail message |
| BCC | BCC | John Cain (john@cain.com) | Recipient(s) of "Blind Carbon Copies" of the e-mail message |
| DOCUMENT SUBJECT | Document Subject | Chain Letters | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Email Subject | FWD: Chain Letters | Subject field extracted from the metadata of an email file |
| DOCUMENT TITLE | Document Title | My First Document | The title of a document |
| DOCUMENT AUTHOR | Document Author | jsmith | Author field extracted from the metadata of the native file |

| CREATED DATE | Created Datetime | 1/30/2000 | Date file was created |
|---|---|---|---|
| CREATED TIME | Created Datetime | 16:30:05 | Time file was created |
| FAMILY DATE | Family Datetime | 1/30/2000 | For Families: Date of the Parent document. For Single-Loose Files: Date of the Document. Logic: 1. Email - Sent Date 2. Electronic Loose File - Last Mod Date |
| FAMILY TIME | Family Datetime | 16:30:05 | For Families: Time of the Parent document. For Single-Loose Files: Time of the Document. Logic: 1. Email - Sent Time 2. Electronic Loose File - Last Mod Time |
| LAST MODIFIED DATE | Last Modified Datetime | 1/30/2000 | Date document was last modified |
| LAST MODIFIED TIME | Last Modified Datetime | 16:30:05 | Time document was last modified |
| EMAIL SENT DATE | Email Sent Datetime | 1/30/2000 | Date email was sent |
| EMAIL SENT TIME | Email Sent Datetime | 16:30:05 | Time email was sent |
| FILE SIZE | File Size | 765952 | File size in bytes |
| PATH | File Path | Email: \doe_john.pst\FW: Title Electronic Loose File: \Financials\Q1_Status\Demo.doc | Original Path to the document. Includes Folder information for Emails, Windows Directory structure for loose files |
| EXTENSION | File Extension Original | ppt | Original extension of a file (null for emails from container) |
| FILE TYPE | File Type | presentation | File Type: email, image, spreadsheet, presentation, etc. |
| MD5 HASH | MD5 Hash | 1d30c0ebc0e319b4e8147559b42667c1 | Unique identifier of the file |
| FILENAME | Filename | DemoPresentation.pptx | Original name of the file or subject of email |
| TEXTLINK | Generated upon export | .\PRODNAME\TEXT\TEXT001\DOC_000001.txt | Contains Path to .TXT files |

| NATIVELINK | Generated upon export | .\PRODNAME\NATIVES\ NATIVES001\DOC_00000 1.pptx | Contains path to native files |
|---|---|---|---|
| CONFIDENTI ALITY DESIGNATIO N | Confidential | Confidential | The level of confidentiality assigned to the document, if any, by Counsel |
| REDACTIONS | Redactions | Y | Whether the document contains redactions applied by Counsel |
| IMPORTANC E | Importance | Important | Email high priority flag |
| ATTACHCOU NT | Attachment Count | 2 | Number of attachments to the parent document |
| ATTACHNAM ES | Attachment Names | Weekly Summary, Cover Letter | Names of attachments to the parent document |
| DATERCVD | Date Received | 10/10/2005 | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | Time Received | 10:33 AM | Received time of email message, time zone set to GMT |
| HIDDEN DATA | Hidden Data | Y | Whehter any hidden data exists in the document |
| PRODVOL | Production Volume | 8 | Production volume |
| EMAIL THREAD FAMILY ID (if email threading is used by Producing Party) | Email Threading | N/A | Unique identifier from email threading algorithm to denote emails from a single thread and all attachments |