# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALI DIABAT, Individually and On Behalf of All Others Similarly Situated, <br><br>     Plaintiff, <br><br> v. <br><br> CREDIT SUISSE GROUP AG, et al., <br><br>     Defendants. | No. 1:23-cv-5874-CM-SLC <br><br> **PLAINTIFF'S FIRST SET OF MERITS REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, and subject to the Definitions, Instructions, and the Applicable Time Period set forth below, Lead Plaintiff Ali Diabat, through his undersigned counsel, hereby requests that Defendants Credit Suisse, Axel P. Lehmann, Ulrich Körner, and Dixit Joshi produce for inspection and copying the Documents designated under the heading "REQUESTS FOR PRODUCTION" below. Production shall be made in accordance with Federal Rule of Civil Procedure 34(b) at the offices of KAHN SWICK & FOTI, LLC, 1100 Poydras Street, Suite 960, New Orleans, Louisiana 70163, or any such other place as the parties may agree.

## DEFINITIONS

1. "Action" means the above-captioned class action.

2. "Archegos" means Archegos Capital Management.

3. "Archegos Incident" means the drop in market value of Archegos' portfolio with Credit Suisse on or about the week of March 22, 2021, disclosed in a Press Release by Credit Suisse on or about March 29, 2021.

4. "Archegos Report" means the "Credit Suisse Group Special Committee of the Board of Directors Report on Archegos Capital Management" published by Credit Suisse on Form 6-K or about July 29, 2021.

1

5.     "Board" means the Company's board of directors, including current and former members of the Board throughout the Applicable Period. This definition includes any member of the Board acting individually or any two or more members of the Board acting collectively, whether formally or informally. It also includes all sub-committees of the Board, including, but not limited to, the Audit Committee, the Tactical Crisis Committee, the Risk Management Committee, the Conduct and Financial Crime Control Committee, and the Executive Board.

6.     "CFC" means Switzerland's Committee on Financial Crises.

7.     "Class Period" means October 27, 2022, through March 20, 2023, inclusive.

8.     "Complaint" means Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 65), and all "¶ --" references are to the Complaint.

9.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including electronic and otherwise, and all attachments thereto.

10.     "Credit Suisse" or the "Company" means Credit Suisse Group AG and its subsidiaries, divisions, subdivisions, practice groups, departments, affiliates, predecessors, successors and joint ventures, and present and former officers, directors, partners, principals, employees, representatives, agents, attorneys, and advisors (and all other individuals acting or purporting to act on its behalf).

11.     "C-Suite" means any executive position with the word "chief" in the title (*e.g.*, Chief Executive Officer and Chief Financial Officer).

12.     "Defendants" means Credit Suisse and the Individual Defendants.

13.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and Local Rule 26.3. A draft or non-identical copy is a separate document within the meaning of

this term. Document and/or Communication includes text messages and instant messages generated from or by any instant messaging system or software, including, but not limited to, iMessages, Slack, Microsoft Lync, Microsoft Teams, and Skype for Business.

14. "DOJ" means the United States Department of Justice.

15. "Employee" means, without limitation, current and former officers, directors, executives, managers, supervisors, department heads, sales personnel, secretaries, clerical staff, messengers, agents, attorneys, representatives, or any person acting or authorized to act on behalf of You or any division, subsidiary or entity of You, individually or collectively.

16. "FCA" means the United Kingdom's Financial Conduct Authority.

17. "FDF" means the Swiss Federal Department of Finance.

18. "Financial Statement(s)" refers to, but is not limited to, the following (whether audited or unaudited, and whether final, pro forma, complete, weekly, monthly, quarterly, annually or partial): consolidated and non-consolidated balance sheets, statements of earnings, additional paid-in capital, retained earnings, source and application of funds, cash flow, projections, agings of accounts payable and accounts receivable, and notes that pertain to Credit Suisse's past or present condition, including accountants' work papers.

19. "FINMA" means the Swiss Financial Market Supervisory Authority.

20. "GAAP" means United States Generally Accepted Accounting Principles.

21. "ICFR" means internal controls over financial reporting.

22. "Individual Defendants" means Axel P. Lehmann, Ulrich Körner, and Dixit Joshi.

23. "KPMG" means KPMG AG.

24. "Meeting" means the contemporaneous presence of any natural persons, whether in person or by teleconferencing, video conferencing or otherwise, and whether or not such

3

presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

25.    "Merger" means the merger of Credit Suisse with UBS announced by Credit Suisse on or about March 19, 2023 and which closed on June 12, 2023.

26.    "Paul, Weiss" means Paul, Weiss, Rifkind, Wharton & Garrison LLP.

27.    "PwC" means PricewaterhouseCoopers AG.

28.    "SEC" means the United States Securities and Exchange Commission, including any offices or divisions thereof.

29.    "SEC Filings" means all Documents filed or prepared for the purpose of filing with the SEC, including, but not limited to, Forms 20-F and 6-K, all attachments thereto.

30.    "SNB" means the Swiss National Bank.

31.    "SOX Certification" means executed certifications attached to certain Financial Statements pursuant to the Sarbanes-Oxley Act of 2002.

32.    "Strategic Alternatives" means any potential courses of action involving Credit Suisse that were considered in addition to the Merger, including protective measures, nationalization, bankruptcy, restructuring measures, emergency measures, sales, mergers, or any other potential course(s) of action set forth in Credit Suisse's recovery plans.

33.    "UBS" means UBS Group AG and its subsidiaries, divisions, subdivisions, practice groups, departments, affiliates, predecessors, successors and joint ventures, all individuals acting or purporting to act on its behalf.

34.    "You" or "Your" means the Defendants, individually and collectively, and include, as applicable, any agent, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, or representative of any Defendant or other person(s) purporting to act on behalf of any Defendant.

4

## INSTRUCTIONS

1.      Unless otherwise indicated in a Request, the applicable time period for these Requests is from March 1, 2022, to June 30, 2023 (the "Applicable Time Period"). A Document should be considered within the Applicable Time Period if it refers or relates to Communications, Meetings, other events, or Documents that occurred or were created within that time frame, regardless of the date of creation of the responsive Document.

2.      Unless otherwise agreed by the parties, Documents should be produced in accordance with the Parties' ESI Protocol, as well as Fed. R. Civ. P. 26 and 34 and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules").

3.      Any terms defined by Rule 26.3 of the Local Rules shall have the meaning ascribed to them by that rule.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Credit Suisse's Document storage, retention, retrieval and destruction policies, including procedures for the storage, transmission, retention, archiving, retrieval, maintenance, and back-up of text messages, emails, electronic documents, data, paper documents, ESI, and any other business records.

**REQUEST NO. 2:**

Documents and Communications from You to any customer, investor, and/or hedge fund concerning the destruction of documents (¶ 398).

**REQUEST NO. 3:**

Credit Suisse's Code of Business Conduct and Ethics, Corporate Governance Guidelines, and Code of Ethics for Senior Financial Officers during the Class Period.

**REQUEST NO. 4:**

For each of the Individual Defendants and Document Custodians, any employment agreements, compensation and bonus agreements, separation agreements, and nondisclosure agreements.

**REQUEST NO. 5:**

For each of the Individual Defendants and Document Custodians, human resource files if they

contain Documents or Communications concerning the commission or suspected commission of any crimes, issues relating to the violation or suspected violation of any securities laws or regulations, issues relating to the violation or suspected violation of GAAP or any other accounting rules or regulations, character for truthfulness or untruthfulness, credibility, or professional competency.

**REQUEST NO. 6:**

Documents, such as corporate organizational charts, sufficient to show the names, titles, and job responsibilities of the executive and managerial personnel involved with: (i) the SEC Comment Letters and Responses (¶¶ 388-89), (ii) the Merger, (iii) inquiries, investigations, and/or actions by any government, regulatory agency, or governmental agency relating to the subject matters of this Action or Credit Suisse's financial condition during the months leading up to the Merger, (iv) Credit Suisse's asset outflows and inflows, (v) Credit Suisse's liquidity position, (vi) Credit Suisse's financial stability, (vii) Credit Suisse's risk profile and risk management, (viii) ICFR, (ix) Strategic Alternatives, or (x) any other subject matters of this Action not dismissed by the Court.

**REQUEST NO. 7:**

Documents and Communications concerning the drafting, preparation, review, and publication of Credit Suisse's press releases, SEC Filings, and/or calls with or presentations to investors or investment professionals, including all drafts thereof and all comments on drafts thereof, addressing any of the following topics: (i) the SEC Comment Letters and Responses (¶¶ 388-89), (ii) the Merger, (iii) inquiries, investigations, and/or actions by any government, regulatory agency, or governmental agency relating to the subject matters of this Action or Credit Suisse's financial condition during the months leading up to the Merger, (iv) Credit Suisse's asset outflows and inflows, (v) Credit Suisse's liquidity position, (vi) Credit Suisse's financial stability, (vii) Credit Suisse's risk profile and risk management, (viii) ICFR, (ix) Strategic Alternatives, or (x) any other subject matters of this Action not dismissed by the Court.

**REQUEST NO. 8:**

Minutes, agendas, presentation materials, and notes from meetings of the Board concerning the following topics: (i) the SEC Comment Letters and Responses (¶¶ 388-89), (ii) the Merger, (iii) inquiries, investigations, and/or actions by any government, regulatory agency, or governmental agency relating to the subject matters of this Action or Credit Suisse's financial condition during the months leading up to the Merger, (iv) Credit Suisse's asset outflows and inflows, (v) Credit Suisse's liquidity position, (vi) Credit Suisse's financial stability, (vii) Credit Suisse's risk profile and risk management, (viii) ICFR, corporate accounting, or the preparation of Financial Statements, (ix) executive compensation, including, but not limited to, bonuses, (x) Strategic Alternatives, or (xi) any other subject matters of this Action not dismissed by the Court.

**REQUEST NO. 9:**

PwC's, KPMG's, and any other auditor's Credit Suisse audit working papers for the years 2019, 2020, 2021, 2022, and 2023.

**REQUEST NO. 10:**

Management letters relating to any audits of the Financial Statements of Credit Suisse for the years

6

2019, 2020, 2021, 2022, and 2023.

**REQUEST NO. 11:**

Documents and Communications regarding actual, perceived, or potential weakness in Credit Suisse's ICFR for the years 2019, 2020, 2021, 2022, and 2023.

**REQUEST NO. 12:**

Credit Suisse's internal audit review reports/analyses concerning Credit Suisse's ICFR, risk management processes, liquidity, and customer or asset outflows.

**REQUEST NO. 13:**

Documents and Communications regarding the "remediation plan" Credit Suisse purported to be developing to address the material weaknesses in its ICFR (¶ 358).

**REQUEST NO. 14:**

Drafts and signed certifications and sub-certifications in connection with Credit Suisse's SEC Filings for the years 2019, 2020, 2021, 2022, and 2023.

**REQUEST NO. 15:**

Documents and Communications concerning the correspondence from July 15, 2022, through March 12, 2023, with the SEC and/or the SEC's Division of Corporation Finance, including any notes or minutes from Meetings between You and any Employee of the SEC.

**REQUEST NO. 16:**

Documents and Communications, including, but not limited to those exchanged with PwC, KPMG, any other auditors, or any consultants, concerning the following the topics: (i) the SEC Comment Letters and Responses (¶¶ 388-89), (ii) the Merger, (iii) inquiries, investigations, and/or actions by any government, regulatory agency, or governmental agency relating to the subject matters of this Action or Credit Suisse's financial condition during the months leading up to the Merger, (iv) Credit Suisse's asset outflows and inflows, (v) Credit Suisse's liquidity position, (vi) Credit Suisse's financial stability, (vii) Credit Suisse's risk profile and risk management, (viii) ICFR, (ix) Strategic Alternatives, or (x) any other subject matters of this Action not dismissed by the Court.

**REQUEST NO. 17:**

Documents and Communications sufficient to identify when Credit Suisse, the FDF, SNB, FINMA, Swiss regulators and governmental authorities, and/or UBS first discussed the possibility of Strategic Alternatives and the Merger.

**REQUEST NO. 18:**

Documents and Communications concerning the potential reasons and reasons for the Merger.

**REQUEST NO. 19:**

Documents and Communications concerning the valuation of Credit Suisse for the Merger.

**REQUEST NO. 20:**

Documents and Communications, from any time period, concerning investigations, inquiries, or actions relating to the subject matters of this Action, Credit Suisse's financial condition during the months leading up to the Merger, or the Merger by a government, regulatory agency, or governmental agency, including, but not limited to, the SEC, DOJ, FCA, FDF, SNB, and/or FINMA, and the Swiss Parliamentary Investigation Commission.

**REQUEST NO. 21:**

Drafts and final reports and findings, from any time period, prepared by any government, regulatory agency, or governmental agency in connection with inquiries, investigations, and/or actions relating to this subject matter of this Action or Credit Suisse's financial condition during the months leading up to the Merger.

**REQUEST NO. 22:**

Documents and Communications concerning the letter the U.S. House Oversight Committee sent Credit Suisse on or about March 28, 2022, including, but not limited to, both internal Credit Suisse communications and communications between You and any representative or employee of the U.S. House Oversight Committee as well as any response and/or documents produced by You.

**REQUEST NO. 23:**

Documents and Communications concerning Credit Suisse being placed on the FCA's watchlist of institutions requiring tougher supervision in May 2022 (¶ 401).

**REQUEST NO. 24:**

Documents and Communications concerning Paul, Weiss's investigation into the Archegos Incident, the Archegos Report, and its findings.

**REQUEST NO. 25:**

Documents and Communications regarding planned or actual actions taken to strengthen Credit Suisse's risk management environment, risk management processes, and risk and control infrastructure, including the alignment of incentives with roles and accountability.

**REQUEST NO. 26:**

Documents and Communications concerning the "strategic review conducted by the Board of Directors and Executive Board, resulting in a radical restructuring of the Investment Bank, an accelerated cost transformation, and strengthened and reallocated capital, all of which are designed to create a new Credit Suisse" (¶ 232), and any actions Defendants took or planned to take as a result thereof.

**REQUEST NO. 27:**

Documents and Communications concerning the reasons why Credit Suisse needed capital increases or capital raises during the Class Period to further strengthen Credit Suisse's capital base and support its strategic transformation.

**REQUEST NO. 28:**

Documents and Communications concerning any systems in place at Credit Suisse to track customer asset outflows and inflows, including, but not limited to customer deposits, into and out of Credit Suisse.

**REQUEST NO. 29:**

Documents and Communications concerning the "significant level of deposit and assets under management outflows" (¶ 240) during the first two weeks of October 2022.

**REQUEST NO. 30:**

Documents and Communications concerning the "significantly higher withdrawals of cash deposits as well as non-renewal of maturing time deposits" (¶ 242) during the first two weeks of October 2022.

**REQUEST NO. 31:**

Documents and Communications concerning Credit Suisse's short-term and long-term incentive plans in place during the Class Period and any actual or proposed changes thereto, including the instatement or revocation thereof.

**REQUEST NO. 32:**

Documents and Communications concerning potential reasons and the reasons for and reaction to the departures of Rohner, Horta-Osório, Gottstein, and Mathers from Credit Suisse.

**REQUEST NO. 33:**

Documents and Communications concerning the reasons for and reaction to the hiring or promotion of Horta-Osório, Lehmann, Körner, and Joshi by Credit Suisse.

**REQUEST NO. 34:**

Documents and Communications concerning the sufficiency of Credit Suisse's liquidity pool, including, but not limited to, the determination that the liquidity pool "covers unexpected outflows in the event of severe market and idiosyncratic stress" (¶¶ 253, 297).

**REQUEST NO. 35:**

Documents and Communications sufficient to identify the amounts of all asset outflows, including withdrawals of cash deposits, deposit outflows, net asset outflows, assets under management, and nonrenewal of maturing time deposits, at any given time during the Applicable Time Period for each geographical region tracked.

**REQUEST NO. 36:**

Documents and Communications sufficient to identify the amounts of all asset inflows, including deposit inflows, net asset inflows, and assets under management, at any given time during the Applicable Time Period for each geographical region tracked.

**REQUEST NO. 37:**

Documents and Communications concerning how asset outflows and the subsequent use of liquidity buffers led Credit Suisse to fall "below certain legal entity-level regulatory requirements" for liquidity (¶ 253).

**REQUEST NO. 38:**

Documents and Communications concerning strategic actions, including any remediation plan taken to significantly reduce Credit Suisse's risk profile, customer outflows, and/or liquidity, including those discussed or presented to the CFC before, during, or after its initiation of the "Red Phase" on or about October 2022.

**REQUEST NO. 39:**

Documents and Communications concerning any bank runs at Credit Suisse during the years 2022 and 2023.

**REQUEST NO. 40:**

Documents and Communications concerning how outflows had "stabilized" as of October 27, 2022 (¶¶ 242, 244, 251).

**REQUEST NO. 41:**

Documents and Communications concerning the "anecdotes from clients" that led Lehmann to state that "I know that the money will certainly come back over time" in an interview published by the *Financial Times* on December 1, 2022 (¶ 261).

**REQUEST NO. 42:**

Documents and Communications concerning how outflows had "basically stopped" as of December 2, 2022 (¶ 264).

**REQUEST NO. 43:**

Documents and Communications concerning Lehmann's statement that the "main indicators of the bank's financial stability" were strong (¶ 264).

**REQUEST NO. 44:**

Documents and Communications concerning Lehmann's statement on December 5, 2022, that "[t]he business is definitely stable" and that "the embattled bank had seen a stabilization in the outflows of client funds." (¶ 268).

**REQUEST NO. 45:**

Documents and Communications concerning Lehmann's statement on March 13, 2023, that "[w]e have strong capital ratios, a strong balance sheet." (¶ 294).

**REQUEST NO. 46:**

Documents and Communications concerning the March 2023 collapse of Silicon Valley Bank and

10

Signature Bank, including, but not limited to, Körner and Lehmann's statements about differences between Credit Suisse and Silicon Valley Bank (¶ 294).

**REQUEST NO. 47:**

Documents and Communications concerning Körner's statement on March 14, 2023, that Credit Suisse did not have "material risk" in the wake of Silicon Valley Bank's recent collapse (¶ 299).

**REQUEST NO. 48:**

Documents and Communications concerning Körner's statement on March 14, 2023, that things at the bank were "calm," and there had been "material good inflows" the previous day, which was a "positive sign." (¶ 302).

**REQUEST NO. 49:**

Documents and Communications concerning Körner's statement on March 15, 2023, that "[o]ur capital, our liquidity basis is very very strong." (¶ 306).

**REQUEST NO. 50:**

Documents and Communications concerning the decision by the Saudi National Bank to not buy any more of Credit Suisse's shares or securities (¶ 362).

**REQUEST NO. 51:**

Documents and Communications concerning the subpoenas issued to Credit Suisse by the DOJ, as reported on by *Bloomberg* on March 23, 2023 (¶ 402).

**REQUEST NO. 52:**

Documents and Communications concerning the "unhealthy developments, errant behaviors, and wrong incentive systems" and "transactions that should not have been allowed to play out" referenced by Lehmann at Credit Suisse's April 4, 2023 Annual General Meeting (¶ 404).

**REQUEST NO. 53:**

Documents and Communications, from any time period, concerning the investigation by Wenger Plattner into Credit Suisse, including those relating to interviews conducted by employees or representatives of Wenger Plattner on behalf of any government, regulatory agency, or governmental agency, including, but not limited to, the FDF, SNB, FINMA, and/or the Swiss Parliamentary Investigation Commission.

**REQUEST NO. 54:**

Documents sufficient to identify Your transactions in Credit Suisse securities, including any gains or losses resulting from those transactions.

**REQUEST NO. 55:**

Documents and Communications concerning any of Your Rule 10b5-1 trading plans, including, but not limited to, the adoption, modification, or revocation of any such plans.

**REQUEST NO. 56:**

Documents and Communications indicating the misstatements and omissions alleged in the Complaint, and not dismissed by the Court, were or were not false or misleading, and whether any Individual Defendant or any other Credit Suisse Employee knew or recklessly disregarded information suggesting those statements or omissions were false or misleading.

**REQUEST NO. 57:**

All litigation holds, including any distribution or recipient lists, issued by Credit Suisse at any time concerning the disputes or issues relating to or involving the subject matters in this Action or in any other action related to this Action.


DATED: December 4, 2024          Respectfully submitted,

                              **KAHN SWICK & FOTI, LLC**


                              */s/ Kim E. Miller*
                              Kim E. Miller (KM-6996)
                              J. Ryan Lopatka (admitted *pro hac vice*)
                              250 Park Avenue, 7th Floor
                              New York, NY 10177
                              Telephone: (212) 696-3732
                              Fax: (504) 455-1498
                              Email: kim.miller@ksfcounsel.com
                              Email: j.lopatka@ksfcounsel.com

                              -and-

                              Craig J. Geraci, Jr. (admitted *pro hac vice*)
                              Matthew P. Woodard (admitted *pro hac vice*)
                              1100 Poydras Street, Suite 960
                              New Orleans, LA 70163
                              Telephone: (504) 455-1400
                              Fax: (504) 455-1498
                              Email: craig.geraci@ksfcounsel.com
                              Email: matthew.woodard@ksfcounsel.com

                              *Counsel for Lead Plaintiff Ali Diabat*
                              *and Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

On December 4, 2024, a true and correct copy of this document was served via e-mail to counsel for Defendants.

/s/ Kim E. Miller
Kim E. Miller

13