# EXHIBIT E

# CAHILL GORDON & REINDEL LLP

32 OLD SLIP
NEW YORK, NY 10005

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

| | | |
|---|---|---|
| 1990 K STREET, N.W.<br>WASHINGTON, DC 20006<br>(202) 862-8900 | 221 W. 10th STREET<br>WILMINGTON, DE 19801<br>(302) 884-0000 | 20 FENCHURCH STREET<br>LONDON EC3M 3BY<br>+44 (0) 20 7920 9800 |

July 29, 2025

Re:    *In re Credit Suisse Securities Fraud Class Action*, No.
       1:23-cv-05874-CM (S.D.N.Y.)

Dear Craig:

I write on behalf of Defendant Credit Suisse Group AG ("CS") in response to your July 21, 2025 email (the "July 21 Email") raising certain questions and issues not raised in your July 11, 2025 letter (to which CS responded on July 24, 2025).

## I.    Zero-Byte or Unreadable Files

Your July 21 Email asks what the documents are that CS has produced with slipsheets reading "Zero-Byte or Other Unreadable File."  To our understanding, all of these files are unreadable .fntdata or .dat files.  If desired, we can provide the metadata for these files that shows, among other things, the File Names and File Extensions.

## II.    Responsiveness Redactions

Your July 21 Email raises questions as to whether CS is withholding non-responsive parent documents or redacting non-responsive content from otherwise responsive emails.

With respect to parent documents, as indicated in the cover letter accompanying CS's July 23, 2025 production, there were a handful of parent emails in our first production set that we intended to withhold for privilege that inadvertently were produced with a non-responsive slipsheet instead of a privilege slipsheet.  We reproduced the first production set to address that issue, so we believe this issue has been resolved.

With respect to responsiveness redactions in otherwise responsive emails, we are not making any such redactions in U.S.-based documents.  The only example cited in your July 21 Email is a document produced from Switzerland (identifiable by the "CH" in the Bates prefix) in January 2025 in connection with class certification.  We previously informed you that "some of these documents may contain confidential financial data or other highly sensitive information that is not relevant to price impact, which would also be redacted in Switzerland" (*see* Dec. 12, 2025 email from N. Matuschak to C. Geraci) and you did not object to that approach.  That said, if there are specific such redactions for which you would like more information, please identify the specific redactions and we can explore to what extent Swiss law will allow for us to provide any more detail about the redacted content.

CAHILL GORDON & REINDEL LLP

-2-

### III. Relevance vs. Responsiveness

Your July 21 Email asks for confirmation that CS is not "(i) withholding or redacting any 'family member' information based on relevance instead of responsiveness, or (ii) redacting any other produced documents based on relevance."

While we do not entirely understand your concern regarding "relevance redactions," if your question is whether we would intentionally withhold an attachment that was not responsive to your document requests but still relevant to the case, the answer is no. Moreover, as a practical matter, we have a hard time envisioning a scenario in which that distinction would occur given the breadth of Plaintiff's document requests. If your concern is otherwise, we are happy to discuss during tomorrow's call.

### IV. Foreign Discovery

We are puzzled by the suggestion in your July 21 Email that the parties may be at an "impasse" with respect to "foreign privacy or regulatory privilege."

With respect to "foreign privacy" laws (by which we understand you to mean laws in Switzerland or other countries putting restrictions on the sharing of information outside that country's borders), we have never taken the position that such laws completely bar foreign discovery. Indeed, as referenced above, CS already made a production of Swiss documents in connection with class certification. Rather, our position is that it will be most efficient and least burdensome to first produce documents located in the United States so that any review of documents in Switzerland or elsewhere can be focused on documents that do not already exist in the United States. *See* March 3, 2025 Letter from J. Hall to K. Miller at 4. It was our understanding that you agreed with the approach.

With respect to "regulatory privilege," we have made clear to you that while we acknowledge CS cannot itself assert such privileges, it also cannot waive those privileges. As we have also made clear, we continue to work with our client to obtain further information concerning the scope of privileges each implicated regulator may wish to assert. If one or more regulators take the position that they will not assert a privilege over some or all of CS's communications with them, we will, of course, produce or reproduce such communications or references thereto. But we cannot commit to doing so until we know the position of each respective regulator or government body. *See id.* at 4-5. Again, you did not raise any issues with this approach until your recent July 21 Email.

Your July 21 Email seems to imply that you now wish to discuss these topics again based on a single line from a transcript of a preliminary conference held before Judge McMahon over seven years ago. But Judge McMahon did not discuss either of the above issues—namely, whether it makes sense to prioritize U.S. discovery before turning to international discovery and the process for the assertion of regulatory privileges—during that conference.

CAHILL GORDON & REINDEL LLP

-3-

In any event, if your position is that foreign laws may **never** be the basis for redacting or withholding information, or that foreign regulators or government authorities have **no** right to assert privilege over a party's documents, we do not agree that position reflects the law of this Circuit on those topics, and we do not read Judge McMahon's remark as indicating any support for such a position. Indeed, in more recent cases involving related subject matter, Judge McMahon has stated that discovery of "documentary evidence in Switzerland" must be conducted "in a manner that is compliant with Swiss legal restrictions." *Stevenson* v. *Thornburgh*, 2024 WL 645187, at *39 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.); *see also Star Colbert* v. *Dougan*, 724 F. Supp. 3d 304, 330 (S.D.N.Y. Mar. 20, 2024) (using same language and observing that "[t]he parties would need to take evidence in Switzerland by way of international legal assistance, specifically based on the Hague Convention"); *Schur* v. *Dougan*, 2024 WL 4252647, at *13 (S.D.N.Y. Sept. 19, 2024) (using similar language).

With respect to conflicts between foreign privacy statutes and U.S. discovery requests, the Supreme Court has directed courts to decide such issues "with full consideration of international comity" by applying a balancing test that includes, among other things, "the extent to which . . . compliance with the request would undermine important interests of the state where the information is located." *Motorola Credit Corp.* v. *Uzan*, 73 F. Supp. 3d 397, 401 (S.D.N.Y. 2014). Notably, in *Motorola*, Judge Rakoff found that application of such a "comity analysis," which is the "most important factor" in determining the applicability of foreign privacy statutes, weighed in favor of quashing a subpoena seeking documents located in Switzerland because "Switzerland's bank secrecy regime constitutes . . . almost an element of that nation's national identity" and observed that Switzerland pursues "ongoing, vigorous, and serious enforcement" of its bank secrecy laws. *Id.* at 402, 404.[1]

Similarly, there is no support for the suggestion that a foreign banking regulator may never assert a privilege over a foreign bank's communications with that regulator arising from foreign law. But even if U.S. law applied, U.S. courts recognize a common-law bank examination privilege based on the "distinctive necessity for candid and informal regulation of the banking sector—stemming from both practical necessity of day-to-day bank regulation, as well as from necessity to maintain public confidence in the financial system[.]" *Federal Housing Finance Agency* v. *JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013). And because, as you have observed, such privileges "belong to the regulatory authority," the regulator "must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion." *In re*

---

[1] Other elements of the applicable balancing test include "the importance to the . . . litigation of the documents . . . requested" and the "degree of specificity of the request[s]." *Motorola*, 73 F. Supp. 3d at 397. In other words, there is no one-size-fits-all approach when it comes to the applicability of foreign privacy statutes; instead, each request at issue must be considered separately.

CAHILL GORDON & REINDEL LLP

-4-

*LIBOR-Based Financial Instruments Antitrust Litigation*, 2023 WL 2871090, at \*7 (S.D.N.Y. Apr. 10, 2023).

      We are, of course, happy to continue discussions about the most efficient and appropriate process for dealing with questions concerning international discovery in this case but, for the reasons set forth above, do not believe we are anywhere close to an "impasse" on these topics.

      Regards,

      /s/ Jason M. Hall
      Jason M. Hall

Craig J. Geraci, Jr.
Kahn Swick & Foti, LLC
1100 Poydras Street, Suite 960
New Orleans, LA 70163
craig.geraci@ksfcounsel.com

cc:     All Counsel of Record (via email)