**EXHIBIT D**

**171.10**

> *English is not an official language of the Swiss Confederation. This translation is provided for information purposes only and has no legal force.*

# Federal Act
# on the Federal Assembly
## (Parliament Act, ParlA)

of 13 December 2002 (Last amended on 8 September 2025)

*The Federal Assembly of the Swiss Confederation,*

based on Article 164 paragraph 1 letter g of the Federal Constitution[1],
and having considered the report of the Political Institutions Committee of the National Council dated 1 March 2001[2]
and the opinion of the Federal Council dated 22 August 2001[3],

*decrees:*

## Title 1    General Provisions

**Art. 1**    Subject matter

This Act regulates:

   a.   the rights and duties of the members of the Federal Assembly;

   b.   the tasks and organisation of the Federal Assembly;

   c.   the procedure in the Federal Assembly;

   d.   procedural relations between the Federal Assembly and the Federal Council;

   e.   procedural relations between the Federal Assembly and the federal courts.

**Art. 2**    Meetings of the councils

[1] The National Council and the Council of States shall convene regularly for ordinary sessions.

[2] Either council may decide to convene special sessions if the ordinary sessions are not sufficient to deal with the volume of business.

AS **2003** 3543
[1]    SR **101**
[2]    BBl **2001** 3467
[3]    BBl **2001** 5428

³ One quarter of the members of a council or of the Federal Council may request that the councils or the United Federal Assembly be convened for an extraordinary session to deal with the following items of business:

   a.   drafts by the Federal Council or of a Federal Assembly committee of a Federal Assembly enactment;

   b.   identical motions that have been submitted in both councils;

   c.   elections;

   d.   declarations by the Federal Council or identical drafts submitted in both councils for declarations by the National Council and des Council of States.[4]

³ᵇⁱˢ The extraordinary session shall be held immediately if:

   a.   the Federal Council has issued or amended an ordinance based on Article 184 paragraph 3 or 185 paragraph 3 of the Federal Constitution or on a statutory authorisation to deal with a crisis in accordance with Annex 2;

   b.   the draft for an ordinance or for a simple federal decree under Article 173 paragraph 1 letter c of the Federal Constitution or for an urgent federal act under Article 165 of the Federal Constitution is pending;

   c.   the postponement or early termination of the session has been decided in accordance with Article 33*a*.[5]

⁴ An ordinary or an extraordinary session is normally held in both councils in the same calendar week.[6]

### Art. 3          Oath and solemn promise

¹ Each member of the Federal Assembly shall swear the oath or make the solemn promise before assuming office.

² The persons elected by the United Federal Assembly shall swear their oath or make their solemn promise before the United Federal Assembly following their election, unless the law provides otherwise.

³ Any person who refuses to swear the oath or make the solemn promise is prohibited from assuming office.

⁴ The oath is as follows:

«I swear by Almighty God to uphold the Constitution and the law and to fulfil the duties of my office to the best of my abilities.»

⁵ The solemn promise is as follows:

---

[4]   Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[5]   Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[6]   Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

«I solemnly promise to uphold the Constitution and the law and to fulfil the duties of my office to the best of my abilities.»

### Art. 4    Access of public to meetings

[1] The meetings of the councils and of the United Federal Assembly are open to the public. The debates are published in full in the Official Bulletin of the Federal Assembly. The details of publication are regulated in an ordinance of the Federal Assembly.

[2] For the protection of major security interests or for the protection of personal privacy, a meeting in camera may be requested. The following have the right to make such a request:

   a.    a sixth of the members of either council or of the United Federal Assembly;

   b.    a majority of the members of a committee;

   c.    the Federal Council.

[3] The debate on an application for a meeting in camera is itself held in camera.

[4] Any person who participates in a meeting in camera is obliged to preserve secrecy with regard to the proceedings thereof.

### Art. 5    Information

[1] The councils and their organs shall provide comprehensive information in good time about their activities provided there are no overriding public or private interests that prevent this.

[2] The use of sound or image broadcasts from the Assembly chambers, as well as the accreditation of journalists, is regulated in an ordinance of the Federal Assembly or by the respective standing orders of the councils.

## Title 2    **Members the Federal Assembly**
## Chapter 1    **Rights and Duties**

### Art. 6    Procedural rights

[1] The members the Federal Assembly (assembly members) have the right to submit parliamentary initiatives and parliamentary procedural requests and to propose candidates for election.

[2] They may submit proposals relating to pending business and procedure.

[2bis] The standing orders of the councils may provide that the rights in accordance with paragraph 1 may be exercised jointly by two or more council members.[7]

---

[7]    Inserted by No I of the FA of 21 March 2025 (Submission of Procedural Requests and Parliamentary Initiatives), in force since 8 Sept. 2025 (AS **2025** 530; BBl **2024** 1799, 2462).

[3] The right to speak and the time allowed for speeches may be limited by the standing orders of the councils.

[4] If a parliamentary initiative, a motion or a postulate is opposed, a vote may be held only if the originator has been given the opportunity to provide verbal justification. In addition, the person who first requested rejection must at least be given the right to speak.[8]

**Art. 7**        Rights to information

[1] The assembly members have the right to be provided with information by the Federal Council and the Federal Administration and to inspect documents on any matter of relevance to the Confederation, provided this is required for the exercise of their parliamentary mandates.

[2] An individual assembly member has no right to information:

    a.    from the joint reporting procedure and deliberations in Federal Council meetings;

    b.    that is classified as confidential or secret in the interests of state security or the intelligence service, or the disclosure of which to unauthorised persons may be detrimental to national interests;

    c.    that is treated as confidential for the protection of personal privacy.[9]

[3] In the event of any disagreement between an assembly member and the Federal Council as to the extent of rights to information, the assembly member may call on the Presiding College of the council to which he or she belongs. The Presiding College mediates between the assembly member and the Federal Council.

[4] If there is disagreement between an assembly member and the Federal Council, the Presiding College of the council has the final decision on whether the information is required to exercise the relevant parliamentary mandate.

[5] As an alternative to permitting the inspection of documents, the Federal Council may submit a report to an assembly member if there is disagreement between the Federal Council and the assembly member as to whether the assembly member has a right to information in terms of paragraph 2 and the mediation of Presiding College of the council is unsuccessful.

[6] The Presiding College of the council has an unrestricted right to inspect the documents of the Federal Council and the Federal Administration when preparing to mediate.

---

[8]    Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[9]    Amended by No I of the FA of 17 June 2011 (Specification of the Information Rights of the Supervisory Committees), in force since 1 Nov. 2011 (AS **2011** 4537; BBl **2011** 1817, 1839).

### Art. 8            Official secrecy

The assembly members are bound by official secrecy where, through their official activities, they acquire knowledge of information that must be kept secret or confidential in order to safeguard overriding public or private interests, and in particular in order to protect personal privacy or to avoid prejudicing pending court proceedings.

### Art. 9            Income and expenses

Assembly members receive from the Confederation a salary in respect of their parliamentary activities and a contribution to cover the expenses that they incur in connection therewith. The details are regulated by the Parliamentary Resources Act of 18 March 1988[10].

### Art. 10           Duty to attend meetings

Assembly members are obliged to attend the meetings of the councils and committees.

### Art. 10*a*[11]        Virtual attendance at council meetings

[1] If events arise that could prevent several assembly members from physically attending council meetings, a council may permit individual assembly members to attend virtually, provided the quorum is reached in accordance with Article 159 paragraph 1 of the Federal Constitution.

[2] An assembly member may attend council meetings virtually only if their physical attendance is prevented by an official order relating to the events set out in paragraph 1 or due to force majeure. The assembly member shall inform the Council President in good time.

[3] Assembly members who attend virtually shall have the same rights as those who attend physically, with the exception that they are not permitted to participate in elections and meetings in camera (in accordance with Article 4 paragraph 2).

[4] Votes shall not be held again if assembly members are unable to cast their votes on technical grounds.

[5] The council and the public shall be informed as to which assembly members have attended meetings virtually.

[10]   SR **171.21**
[11]   Inserted by No I of the FA of 10 Dec. 2020 (COVID-19: Voting in the National Council; Suspension or Postponement of the Session) (AS **2020** 5375; BBl **2020** 9271, 9283). Amended by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 2 Dec. 2024 (AS **2023** 483, **2024** 675; BBl **2022** 301, 433).

**Art. 10***b*[12]

**Art. 11**        Duties of disclosure

[1] On assuming office and at the start of every year, each assembly member must inform his or her office in writing about his or her:

    a.[13]  professional activities; if the assembly member is an employee, they must give information about their position and their employer;

    b.[14]  further activities on management or supervisory committees as well as advisory committees and similar bodies of Swiss and foreign business undertakings, institutions and foundations under private and public law;

    c.  activities as a consultant or as a specialist adviser to federal agencies;

    d.  permanent management or consultancy activities on behalf of Swiss or foreign interest groups;

    e.  participation in committees or other organs of the Confederation.

[1bis] In the case of activities listed in paragraph 1 letters b−e, the assembly member shall declare whether the activity is voluntary or paid. The reimbursement of expenses is not regarded as payment for an activity.[15]

[2] The Parliamentary Services maintain a public register containing the information provided by assembly members.

[3] Assembly members whose personal interests are directly affected by any matter being considered must indicate their personal interest when making a statement in the council or in a committee.

[4] Professional secrecy in terms of the Swiss Criminal Code[16] is reserved.

**Art. 11***a*[17]        Recusal

[1] In exercising supervisory control in accordance with Article 26, members of committees and delegations shall recuse themselves if they have a direct personal interest in any item of business or could be impartial for any other reasons. The representation of political interests, and in particular those of communities, parties or associations, is not a reason for recusal.

---

[12]    Inserted by No I of the FA of 10. Dec. 2020 (COVID-19: Voting in the National Council; Suspension or Postponement of the Session), in force from 11. Dec. 2020 until 1 Oct. 2021 at the latest (AS **2020** 5375; BBl **2020** 9271, 9283).

[13]    Amended by No I of the FA of 15 June 2018, in force since 2 Dec. 2019 (AS **2018** 3461; BBl **2017** 6797, 6865).

[14]    Amended by No I of the FA of 15 June 2018, in force since 2 Dec. 2019 (AS **2018** 3461; BBl **2017** 6797, 6865).

[15]    Inserted by No I of the FA of 15 June 2018, in force since 2 Dec. 2019 (AS **2018** 3461; BBl **2017** 6797, 6865).

[16]    SR **311.0**

[17]    Inserted by No I of the FA of 17 June 2011 (Specification of the Information Rights of the Supervisory Committees), in force since 1 Nov. 2011 (AS **2011** 4537; BBl **2011** 1817, 1839).

2 In the event of any dispute, the committee or delegation concerned shall make a final decision on recusal after hearing the member concerned.

**Art. 12**    Independence in relation to foreign states

Assembly members are prohibited from acting in an official capacity for a foreign state or from accepting titles or honours from foreign governments.

**Art. 13**    Disciplinary measures

1 Where an assembly member, having been issued with a formal warning, once again infringes the administrative and procedural regulations of the councils, the President may:

   a.    revoke the assembly member's right to speak; or

   b.    exclude the assembly member from the meeting for all or part of its remaining duration.

2 Where an assembly member commits a serious infringement of administrative or procedural regulations or breaches official secrecy, the relevant council office may:

   a.    officially reprimand the assembly member; or

   b.    suspend the assembly member from participation in the committees for up to six months.

3 The council shall decide on any objections raised by the council member in question.

## Chapter 2    Incompatibility Rules

**Art. 14**    Incompatibility

The following persons may not be members of the Federal Assembly:

   a.    persons that it has elected or whose appointment it has confirmed;

   b.    judges of the federal courts whom it has not elected;

   c.[18]    staff of the central and decentralised Federal Administration, the Parliamentary Services and the federal courts, the secretariat of the Supervisory Authority for the Office of the Attorney General of Switzerland, the Office of the Attorney General of Switzerland as well as members of extra-parliamentary commissions with decision-making powers, unless specific statutory provisions provide otherwise;

   d.    members of the armed forces command staff;

   e.    members of the management organs of organisations or entities under public or private law that do not form part of the Federal Administration but which

---

[18]    Amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).

are entrusted with administrative tasks, where the Confederation has control thereover;

f.  persons that represent the Confederation in organisations or entities under public or private law that do not form part of the Federal Administration but which are entrusted with administrative tasks, where the Confederation has control thereover.

### Art. 15        Procedure

[1] In cases of incompatibility in terms of Article 14 letter a, the person concerned must declare which of the two offices he or she has chosen to accept.

[2] In cases of incompatibility in terms of Article 14 letters b–f, the person concerned shall be removed from the Federal Assembly six months from the date of the incompatibility being established, provided he or she has not resigned from the other position by that time.

## Chapter 3    Immunity and Session Attendance Guarantee

### Art. 16        Absolute immunity

Assembly members may not be held legally accountable for statements they make in the Assembly or in its organs.

### Art. 17[19]        Relative immunity

[1] Criminal proceedings may be brought against an assembly member for an offence that is directly related to his or her official position or activity only if authorised by the competent committees of both councils. The standing orders of each council shall designate the competent committee.

[2] If it appears justified given the circumstances of the case, the competent committees may assign the prosecution and adjudication of an offence subject to cantonal jurisdiction to the prosecution authorities of the Confederation.

[3] The United Federal Assembly may appoint a Special Attorney General.

[3bis] The presidents of the competent committees may by mutual agreement return to the prosecution authorities applications providing insufficient grounds for lifting immunity so that these can be rectified.[20]

[4] If an application is clearly untenable, the presidents of the competent committees may by mutual agreement deal directly with the application. They shall inform the

---

[19]    Amended by No I of the FA of 17 June 2011 (Requests to lift Immunity), in force since 5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).
[20]    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

committees in advance. If the majority in a committee elects to discuss an application, the application is dealt with according to the standard procedure under Article 17a.[21]

**Art. 17a[22]**        Relative immunity: Procedure

[1] An application to lift immunity shall first be considered by the competent committee of the council to which the accused assembly member belongs.

[2] If the decisions of both committees on whether to consider the application or lift immunity do not correspond, the committees shall attempt to resolve their differences. The second rejection of an application by a committee is final.

[3] The committees are quorate when a majority of their members is present. The presence of a quorum must be confirmed.

[4] The committees shall hear the accused assembly member. The member may not be represented or accompanied.

[5] The decision of the committees is final.

[6] Once a committee has notified the assembly member concerned, it shall inform the public immediately. At the same time, it shall inform the members of both councils in a written communication.

[7] If the accused assembly member is a member of one of the competent committees, he or she shall recuse him or herself.

**Art. 18**        Suspension of postal and telecommunications secrecy, and other investigative measures

[1] The authorisation of the Presiding Colleges of the councils is required for the suspension of postal and telecommunications secrecy in terms of Article 321ter of the Swiss Criminal Code[23] if:

   a.    it is intended to prosecute a criminal offence committed by an assembly member;

   b.    it is intended to order measures against an assembly member that permit the surveillance of a third party with which the assembly member has dealings by reason of his or her office.

[2] Paragraph 1 also applies by analogy to those cases in which other inquiries or criminal investigation measures are required in respect of an assembly member for an initial clarification of the facts of the case or to secure evidence.

[3] As soon as the measures authorised by Presiding Colleges of the councils have been carried out, authorisation for prosecution must be obtained from the competent

[21]    Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

[22]    Inserted by No I of the FA of 17 June 2011 (Requests to lift Immunity), in force since 5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).

[23]    SR **311.0**

committees of both councils in accordance with Article 17, unless proceedings have already been dropped.[24]

[4] Any arrest made without this authorisation is unlawful.[25]

### Art. 19        Procedure by which the Presiding Colleges grant authorisation

[1] The Presiding Colleges of the councils shall reach their decisions by joint deliberation in camera. The granting of authorisation in terms of Article 18 requires the agreement at least five members.

[2] Authorisation to suspend postal and telecommunications secrecy may only be granted if the relevant authority has approved the order for surveillance to be carried out.[26]

### Art. 20        Session attendance guarantee

[1] Criminal proceedings against an assembly member in respect of a felony or misdemeanour that is not connected with his or her official position or activities may only be initiated during a session with the written consent of the member or with the authorisation of the competent committee of the council to which the member belongs. The standing orders of each council shall designate the competent committee.[27]

[2] The foregoing does not apply to a precautionary arrest due to a risk of absconding or where the member is caught in the act of committing a felony. The authority ordering the arrest must apply within 24 hours directly to the competent committee of the council to which the arrested member belongs for its consent, unless the person concerned has given his or her own consent to being arrested.[28]

[3] If criminal proceedings in respect of the offences named in paragraphs 1 and 2 have already been commenced against an assembly member at the start of a session, the member has the right to request a decision by the competent committee of the council to which he or she belongs on the continuation of any detention that has already been ordered and on any summons to attend court hearings. The submission of such a request has no suspensive effect on orders already made.[29]

[4] The right to attend a session may not be invoked against a legally enforceable judgment that imposes a custodial sentence the execution of which has been ordered prior to start of the session.

---

[24]   Amended by No I of the FA of 17 June 2011 (Requests to lift Immunity), in force since 5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).

[25]   Amended by No I of the FA of 17 June 2011 (Requests to lift Immunity), in force since 5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).

[26]   Amended by annex 1 No 1 of the FA of 17 June 2022, in force since 1 Jan. 2024 (AS **2023** 468; BBl **2019** 6697).

[27]   Amended by No I of the FA of 17 June 2011 (Requests to lift Immunity), in force since 5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).

[28]   Amended by No I of the FA of 17 June 2011 (Requests to lift Immunity), in force since 5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).

[29]   Amended by No I of the FA of 17 June 2011 (Requests to lift Immunity), in force since 5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).

**Art. 21**         Disputes over the necessity for authorisation

In the event of any dispute as to whether authorisation in terms of Articles 17–20 is required, the organ responsible for granting authorisation decides.

## Chapter 4[30]   Liability

**Art. 21***a*

[1] The financial liability of an assembly member for his or her official activities is governed by the Government Liability Act of 14 March 1958[31].

[2] The Administration Delegation shall decide on the liability of an assembly member under Articles 7 and 8 of the Government Liability Act of 14 March 1958.

[3] The assembly member may contest the decision of the Administration Delegation by filing an appeal with the Federal Supreme Court.

## Title 3         Duties of the Federal Assembly

**Art. 22**         Legislation

[1] The Federal Assembly enacts important legislative provisions in the form of a federal act.

[2] It may enact further legislative provisions in the form of a federal act or, provided it is entitled to do so by the Federal Constitution or the law, in the form of an ordinance of the Federal Assembly.

[3] Prior to the enactment of legislative provisions by the Federal Council, the relevant committees of the Federal Assembly shall be consulted if they so request, provided the urgency of the provisions so permits. Draft ordinances in accordance with Article 151 paragraph 2[bis] shall in any case be submitted to the relevant committees for consultation.[32]

[4] Provisions shall be regarded as being legislative if they impose obligations or confer rights or responsibilities in general and abstract terms and with directly binding effect.

**Art. 23**         Amendments to the Federal Constitution

The Federal Assembly submits amendments to the Federal Constitution to the vote of the People and the Cantons in the form of a federal decree.

---

[30]   Inserted by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[31]   SR **170.32**

[32]   Second sentence inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

**Art. 24**          Co-determination of foreign policy

[1] The Federal Assembly shall follow international developments and participate in the decision-making process on important foreign policy issues.

[2] It shall approve the conclusion or amendment of or the withdrawal from international treaties, unless the Federal Council may conclude, amend or withdraw from the treaty at its own behest under Articles **7***a* and **7***b*[bis] of the Government and Administration Organisation Act of 21 March 1997[33].[34]

[3] If the conclusion or amendment of or withdrawal from the international treaty is subject to a referendum, the Federal Assembly shall approve the conclusion, amendment or withdrawal by issuing a federal decree. It this is not the case, it shall approve the conclusion, amendment or withdrawal by issuing a simple federal decree.[35]

[4] It shall participate in international parliamentary conferences and cultivate relations with foreign parliaments.

**Art. 25**          Finances

[1] The Federal Assembly shall decide on expenditures and investments in the budget and its supplements.[36] It shall decide on new or existing unclaimed appropriation credits and payment limits in the budget and its supplements or by separate decree. It shall approve the state accounts.

[2] It shall take its decisions in the form of a simple federal decree.

[3] It shall stipulate the purpose and the amount of the credits in the decision on credits. It may also include in its decision the general conditions for the use of the credit, the schedule for the implementation of the project and reporting by the Federal Council.[37]

**Art. 26**          Supervisory control

[1] The Federal Assembly shall exercise supervisory control over the conduct of business by the Federal Council and the Federal Administration, the federal courts, the Supervisory Authority for the Office of the Attorney General of Switzerland, the Office of the Attorney General of Switzerland and by other persons entrusted with tasks of the Confederation.[38]

---

[33]   SR **172.010**
[34]   Amended by No I 1 of the FA of 21 June 2019 on the Authority to Conclude, Amend or Withdraw from International Treaties, in force since 2 Dec. 2019 (AS **2019** 3119; BBl **2018** 3471, 5315).
[35]   Amended by No I 1 of the FA of 21 June 2019 on the Authority to Conclude, Amend or Withdraw from International Treaties, in force since 2 Dec. 2019 (AS **2019** 3119; BBl **2018** 3471, 5315).
[36]   Amended by Art. 65 No 1 of the Financial Budget Act of 7 Oct. 2005, in force since 1 May 2006 (AS **2006** 1275; BBl **2005** 5).
[37]   Inserted by Art. 65 No 1 of the Financial Budget Act of 7 Oct. 2005, in force since 1 May 2006 (AS **2006** 1275; BBl **2005** 5).
[38]   Amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).

[2] It shall exercise supervisory control over the financial budget in the context of Article 8 of the Federal Auditing Act of 28 June 1967[39].

[3] The Federal Assembly shall exercise supervisory control according to the following criteria:

    a.    legality;

    b.    regularity;

    c.    expediency;

    d.    effectiveness;

    e.    economic efficiency.

[4] Supervisory control shall not include the power to revoke or alter decisions. It shall not include control over the content of the judicial decisions of the Office of the Attorney General of Switzerland.[40]

## Art. 27    Evaluation of effectiveness

The organs of the Federal Assembly designated by law shall ensure that the measures taken by the Confederation are evaluated as to their effectiveness. To this end, they may:

    a.    request the Federal Council to have impact assessments carried out;

    b.    examine the impact assessments carried out on the instructions of the Federal Council;

    c.    instruct impact assessments to be carried out themselves.

## Art. 28    Decisions of general principle and planning

[1] The Federal Assembly shall participate:

    a.    in the significant aspects of the planning of state activities;

    b.    in determining the strategic goals of units that have become autonomous in accordance with Article 8 paragraph 5 of the Government and Administration Organisation Act of 21 March 1997[41].[42]

[1bis] It participates by:

    a.    gathering information on its activities in accordance with paragraph 1 from Federal Council reports or acknowledging such reports;

    b.    mandating the Federal Council:

        1.    to make specific plans or to alter the main elements of a plan, or

---

[39]    SR **614.0**
[40]    Second sentence amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).
[41]    SR **172.010**
[42]    Amended by No I 1 of the FA of 17 Dec. 2010 on the Participation of the Federal Assembly in the Management of Autonomous Units, in force since 1 Jan. 2012 (AS **2011** 5859; BBl **2010** 3377, 3413).

    2.    to determine strategic goals for the units that have become autonomous or to alter such goals;

    c.    taking decisions of general principle and planning decisions.[43]

[2] General principle decisions and planning decisions are preliminary decisions that state that certain goals must be achieved, principles and criteria must be observed or measures must be planned.

[3] General principle decisions and planning decisions shall be issued in the form of a simple federal decree. For general principle decisions and planning decisions of greater importance, the form of a federal decree may be chosen.

[4] If the Federal Council does not adhere to the mandates it has been given or general principle and planning decisions, it must provide justification for doing so.

### Art. 29            Individual legislative acts

[1] The Federal Assembly shall enact individual legislative acts that are not subject to a referendum in the form of a simple federal decree.

[2] Individual legislative acts of the Federal Assembly in respect of which the required statutory basis is not found in the Federal Constitution or in a federal act shall be enacted in the form of a federal decree that is subject to a referendum.

### Art. 30            Further duties

The Federal Assembly shall carry out any additional duties that are assigned to it by the Federal Constitution or federal legislation.

## Title 4            Organisation of the Federal Assembly
## Chapter 1        General

### Art. 31            Organs

The organs of the Federal Assembly are:

    a.    the National Council;

    b.    the Council of States;

    c.    the United Federal Assembly;

    d.    the Presiding Colleges;

    e.    the Offices;

    f.    the Conference for Coordination and the Administration Delegation;

    g.    the committees and their sub-committees and delegations;

---

[43]    Inserted by No I 1 of the FA of 17 Dec. 2010 on the Participation of the Federal Assembly in the Management of Autonomous Units, in force since 1 Jan. 2012 (AS **2011** 5859; BBl **2010** 3377, 3413).

> h.    the parliamentary groups.

**Art. 32**        Seat of the Federal Assembly

[1] The Federal Assembly meets in Bern.

[2] It may by simple federal decree decide by way of exception to meet at a different location.

[3] If it is not possible to convene in Bern, the Conference for Coordination may decide that the Federal Assembly shall meet at a different location.[44]

**Art. 33**        Convening meetings

[1] The National Council and the Council of States are convened by their Offices.

[2] The United Federal Assembly is convened by the Conference for Coordination.

[3] The President of the National Council or, in the event of his or her incapacity, the President of the Council of States is obliged to convene the councils if the security of the federal authorities is endangered or the Federal Council is unable to act.

**Art. 33a[45]**        Postponement or early termination of a session

[1] The decision of one Council to postpone or prematurely end the session requires the consent of the other Council.

[2] If it is not possible to convene in person, the Conference for Coordination may decide to postpone or terminate the session early.


## Chapter 2    The National Council and Council of States

**Art. 34**        Presiding Colleges

The Presiding College of each council comprises the President, the first Vice-President and the second Vice-President.

**Art. 35**        Offices of the councils

[1] Each council shall establish an office to deal with its administration and other related matters.

[2] The office of each council comprises the members of the Presiding College and other members as determined by the respective standing orders of the councils.

---

[44]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[45]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

³ The rights and duties assigned to the committees by this Act also apply to the Offices.

### Art. 36        Council standing orders

Each council shall issue standing orders with the implementing provisions relating to its organisation and procedure.

### Art. 37        Conference for Coordination

¹ The Office of the National Council and the Office of the Council of States constitute the Conference for Coordination.

² The Conference for Coordination has the following duties:

a.[46]  It decides on the calendar week in which the ordinary and extraordinary sessions are held.

b.  It deals with business between the two councils and between the councils and the Federal Council.

c.[47]  …

d.  It elects the General Secretary of the Federal Assembly. The election must be confirmed by the United Federal Assembly.

e.  It approves the formation of new parliamentary groups in accordance with the criteria stated in Article 61.

³ The Federal Council may participate in its meetings in an advisory capacity.

⁴ The decisions of the Conference for Coordination require the agreement of the Offices of the National Council and of the Council of States. Elections in accordance with paragraph 2 letter d shall take place by an absolute majority of the voting members.

⁵ …[48]

### Art. 38        Administration Delegation

¹ The Administration Delegation comprises three members from each of the Offices of the councils as appointed by the Conference for Coordination. The Administration Delegation shall appoint one of its members as its delegate. It constitutes itself.

² The Administration Delegation is responsible for the overall management of the administration of Parliament. Within the scope of its responsibilities for the draft budget

---

[46]  Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[47]  Repealed by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), with effect from 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[48]  Repealed by No I of the FA of 15 June 2018, with effect from 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

of the Federal Assembly, it shall ensure in particular that the Federal Assembly and its bodies have the necessary resources and infrastructure at their disposal. It may issue directives on the allocation of human and financial resources.[49]

3 The Administration Delegation shall take decisions by a simple majority of its voting members.

## Chapter 3    United Federal Assembly

### Art. 39            Office of the United Federal Assembly

1 The Office of the United Federal Assembly comprises the Presiding Colleges of both councils.

2 The chairperson is the President of the National Council or, in the event of his or her incapacity, the President of the Council of States.

3 The Office shall prepare the meetings of the United Federal Assembly.

4 It may appoint committees of the United Federal Assembly. They comprise twelve members of the National Council and five members of the Council of States.

### Art. 40            Pardons and Jurisdiction Committee

1 The Pardons and Jurisdiction Committee considers applications for pardons and decisions on conflicts of jurisdiction between the supreme federal authorities.

2 Its president is elected alternately from the members of the National Council and the members of the Council of States.

3 It shall submit applications for pardons to the Federal Council, which provides it with a report and a proposal thereon.

4 It may inspect the application and the files on the investigation, the court proceedings and the execution of the judgement.

### Art. 40$a$[50]        Judiciary Committee

1 The Judiciary Committee is responsible for the preparation for the appointment and removal from office of:

    a.    judges of the federal courts;

    b.    members of the Supervisory Authority for the Office of the Attorney General of Switzerland;

    c.    the Attorney General of Switzerland and the deputies of the Attorney General of Switzerland;

---

[49]    Amended by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[50]    Inserted by No II of the FA of 13 Dec 2003, in force since 1 Aug. 2003 (AS **2003** 2119; BBl **2001** 4202, **2002** 1181).

    d.[51] the Federal Data Protection and Information Commissioner (the Commissioner).[52]

2 It issues public invitations for applications for vacant positions as federal judges, the Attorney General of Switzerland, the deputies of the Attorney General of Switzerland and the Commissioner.[53] If the law permits part-time positions, the level of occupation is stated in the invitation to apply.[54]

3 The Judiciary Committee submits its election nominations and proposals for removal from office to the United Federal Assembly.

4 It determines the details of the employment contracts of the judges, the Attorney General of Switzerland, or the deputies of the Attorney General of Switzerland.[55]

5 Each parliamentary group has the right to at least one seat on the Committee.

6 The Control Committees and the Finance Delegation shall notify the Judiciary Committee of findings that raise serious questions as to the professional or personal suitability of judges, the Attorney General of Switzerland, the deputies of the Attorney General of Switzerland, and the Commissioner.[56]

### Art. 41        Procedure in the United Federal Assembly

1 Unless otherwise provided in this Act, the provisions of the standing orders of the National Council apply by analogy to the procedure in the United Federal Assembly.

2 The tellers and the substitute tellers of the two councils determine the results of elections and votes.

3 If the standing orders of the National Council do not apply, the United Federal Assembly may draw up its own regulations.

## Chapter 4    Committees
## Section 1    General Provisions

### Art. 42        Standing committees and special committees

1 Each council shall appoint from its members the standing committees provided for by this Act and their respective standing orders.

---

51   Inserted by Annex 1 No II 12 of the Data Protection Act of 25 Sept. 2020, in force since 1 Sept. 2023 (AS **2022** 491; BBl **2017** 6941).
52   Amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).
53   Amended by Annex 1 No II 12 of the Data Protection Act of 25 Sept. 2020, in force since 1 Sept. 2023 (AS **2022** 491; BBl **2017** 6941).
54   Amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).
55   Amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).
56   Amended by Annex 1 No II 12 of the Data Protection Act of 25 Sept. 2020, in force since 1 Sept. 2023 (AS **2022** 491; BBl **2017** 6941).

[2] In exceptional circumstances, the councils may appoint special committees.

### Art. 43        Appointment of the committees

[1] The members of the committees and their chairpersons (president and vice-president) shall be appointed by the office of the relevant council.

[2] Unless otherwise provided by this Act, the chairpersons of joint committees of both councils and of committees of the United Federal Assembly shall be elected by the Conference for Coordination. The president and the vice-president may not belong to the same council.

[2bis] The Conference for Coordination ensures that die Presidents of the Control Committees of both councils do not belong to the same parliamentary group.[57]

[3] The composition of the committees and the allocation of seats among the committee chairpersons are determined by the strengths of the parliamentary groups in the relevant council. Wherever possible, appropriate account should be taken of the official languages and regions of the country.

[4] The term of office of the members of the standing committees is determined by the respective standing orders of the councils.

### Art. 44        Duties

[1] In accordance with the terms of reference under this Act or the standing orders, the committees have the following duties:

   a.    they conduct a preliminary discussion of the business referred to them for the attention of their council;

   b.    they consider and decide on the business referred to them for final decision in terms of this Act;

   c.    they monitor the social and political developments in their areas of responsibility;

   d.    they draw up proposals relevant to their areas of responsibility;

   e.[58]  they are responsible for impact assessments in their areas of responsibility. They submit related proposals to the competent bodies of the Federal Assembly, or issue related mandates to the Federal Council;

   f.    they take account of the results of impact assessments.

[2] The committees shall submit reports on the business referred to them and their proposals thereon to their respective council.

---

[57]    Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).
[58]    Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

**Art. 45**        General powers

[1] In order to fulfil their duties, the committees may:

  a.    submit parliamentary initiatives, parliamentary procedural requests and proposals and compile reports;

  b.    consult external experts;

  c.    consult representatives of the cantons and interest groups;

  d.    conduct inspections.

[2] The committees may appoint sub-committees from their members. These shall report and submit proposals to the committee. Joint sub-committees may be appointed by two or more committees.

**Art. 45a[59]**        Meetings

[1] The meetings of the committees are generally held in accordance with an annual meeting schedule.

[2] The president may cancel meetings or schedule additional meetings. Decisions of the committee to the contrary remain reserved.

[3] Between ordinary meetings, the committee shall be convened on an unscheduled meeting day if the majority of committee members have agreed to a corresponding request by circular resolution, in which an item of business is specified, the handling of which is urgent.

**Art. 45b[60]**        Virtual meetings

[1] The committees may hold their meetings virtually if:

  a.    an in-person meeting is not possible; or

  b.    urgent decisions or decisions on how to proceed are to be taken.

[2] A meeting may only be held virtually if the president and the majority of the committee members have given their consent by circular resolution.

[3] The following persons may be connected virtually to a committee meeting taking place in person:

  a.    committee members for whom representation is not legally possible;

  b.    participants in hearings in accordance with Article 45 paragraph 1 letters b and c.

---

[59]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[60]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

**171.10**

**Art. 46**        Procedure in the committees

[1] The committees are governed by the procedural rules of their respective council, unless this Act or the respective standing orders of the councils provide otherwise.

[2] Resolutions of joint committees of both councils require the agreement of the majority of the voting members from each council, unless this Act provides otherwise.

[3] Persons in the service of the Confederation must normally provide written documents and visual presentations for the committees in two official languages. External experts and representatives of cantons and interest groups shall be notified in the invitation to the committee meeting that they should, if possible, take account of committee being multilingual.[61]

**Art. 47**        Confidentiality

[1] The discussions in the committees are confidential; in particular, no information may be provided on the opinions of individual participants in meetings or on the way in which they voted.

[2] The committees may decide to hold public hearings.

**Art. 47***a*[62]        Classification of minutes and other documents

[1] Minutes of meetings and other committee documents must be classified; the exception being documents that are already publicly available before being passed to the committee.

[2] The committees may declassify their documents and make them publicly available, with the exception of the minutes of their meetings. The conditions for accessing documents are regulated in an ordinance issued by the Federal Assembly.

**Art. 48**        Information for the general public

The committees shall inform the general public of the results of their deliberations.

**Art. 49**        Coordination between the committees

[1] The committees of each council shall coordinate their activities with each other and with the committees of the other council that are considering the same or similar issues.

[2] The procurement of information or the clarification of issues may be carried out in joint meetings or these tasks may be assigned to a single committee.

[3] The Control Committees and the Finance Committees may hold joint preliminary discussions of the annual report and accounts.

---

[61]  Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).
[62]  Inserted by No I of the FA of 15 June 2018, in force since 2 Dec. 2019 (AS **2018** 3461; BBl **2017** 6797, 6865).

[4] In the case of matters concerning more than one area of responsibility, other committees may submit reports to the committees responsible for the preliminary examination.

[5] ...[63]

## Section 2     Finance Committees

### Art. 50        Duties of the Finance Committees

[1] The Finance Committees (FCs) are responsible for the financial management of the Confederation; they shall conduct a preliminary examination of the financial planning, the draft budget and its supplements and the state accounts. They exercise supervisory control over the entire financial budget in accordance with Article 26 paragraph 2, unless this Act provides otherwise.

[2] They may submit reports regarding legislative bills with substantial financial repercussions to the committees responsible for their preliminary examination. Such legislative bills may be referred to them for an accompanying report or for a preliminary examination.[64]

[3] The Finance Committees shall be invited to report on drafts for appropriation credits and payment limits that are not assigned to them for preliminary examination. They have the same rights as the committees responsible for the preliminary examination with regard to representing their proposals in the Assembly.[65]

### Art. 51        Finance Delegation

[1] The Finance Committees shall each appoint three of their members and a permanent deputy for each of those members to the Finance Delegation (FinDel). The Delegation constitutes itself.[66]

[2] The Finance Delegation is responsible for the detailed examination and supervision of the entire financial budget.

[3] The dealings between the Finance Delegation and the Federal Audit Office are governed by Articles 14, 15 and 18 of the Federal Act of 28 June 1967[67] on the Federal Audit Office.

[4] The Finance Delegation shall submit reports and proposals to the Finance Committees.

---

[63]   Repealed by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), with effect from 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[64]   Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[65]   Inserted by Annex No 1 of the FA of 26 Sept. 2014 (New Management Model for the Federal Administration), in force since 1 July 2015 (AS **2015** 1583; BBl **2014** 767).

[66]   Amended by No I 2 of the FA of 17 Dec. 2010 on Safeguarding Democracy, the Rule of Law and the Capacity to Act in Extraordinary Situations, in force since 1 May 2011 (AS **2011** 1381; BBl **2010** 1563, 2803).

[67]   SR **614.0**

[5] It may consider other items of business and notify the Finance Committees or other committees of its findings.

[6] It shall reach decisions by a simple majority of its voting members.

## Section 3        Control Committees

### Art. 52        Duties of the Control Committees

[1] The Control Committees (CC) exercise supervisory control over the conduct of business in accordance with Article 26 paragraphs 1, 3 and 4.

[2] Their supervisory activities focus on the criteria of legality, expediency and effectiveness.

### Art. 53        Control Delegation

[1] The Control Committees each appoint three of their members to the Control Delegation (CDel). The Delegation constitutes itself.

[2] The Delegation supervises activities in the field of state security and the intelligence services and supervises state activities in matters that must be kept secret because their disclosure to unauthorised persons may be seriously detrimental to national interests.[68]

[3] It accepts additional specific mandates that are assigned to it by a Control Committee.

[3bis] The Federal Council shall inform the Delegation at the latest 24 hours after making its decision of orders to safeguard the interests of the country or to safeguard internal or external security.[69]

[4] The Delegation shall submit reports and its proposals thereon to the Control Committees.[70]

[5] It reaches decisions by a simple majority of its voting members.

---

[68]    Amended by No I of the FA of 17 June 2011 (Specification of the Information Rights of the Supervisory Committees), in force since 1 Nov. 2011 (AS **2011** 4537; BBl **2011** 1817, 1839).

[69]    Inserted by No I 2 of the FA of 17 Dec. 2010 on Safeguarding Democracy, the Rule of Law and the Capacity to Act in Extraordinary Situations, in force since 1 May 2011 (AS **2011** 1381; BBl **2010** 1563, 2803).

[70]    Amended by No I 2 of the FA of 17 Dec. 2010 on Safeguarding Democracy, the Rule of Law and the Capacity to Act in Extraordinary Situations, in force since 1 May 2011 (AS **2011** 1381; BBl **2010** 1563, 2803).

## Section 4        Reporting to the Council[71]

**Art. 54**[72]

**Art. 55**        ...[73]

The Finance and Control Committees shall report to their respective council once a year on the principal results of their work.

## Section 5        Drafting Committee

**Art. 56**        Composition and organisation

[1] The Drafting Committee (DrC) is a joint committee of both councils.

[2] It consists of three sub-committees, corresponding to each of the official languages of the Confederation.

[3] The Committee constitutes itself.

[4] It shall reach decisions by a simple majority of its voting members.

**Art. 57**        Duties and procedure

[1] The Drafting Committee verifies the wording of legislative texts and determines the final version prior to the final vote.

[1bis] It is also responsible for editorial corrections which are not subject to a final vote in legislative texts.[74]

[2] It ensures that the texts are formulated in a concise and understandable manner. It shall examine whether they conform to the intentions of the Federal Assembly, and ensures that the versions in the three official languages are consistent.

[3] The Drafting Committee is not authorised to carry out any material corrections. If it encounters any material omissions, ambiguities or contradictions, it must inform the Presidents of the councils.

**Art. 58**        Corrections made after the final vote

[1] Where, following the final vote, an error of form or wording that does not conform with the results of the parliamentary deliberations is discovered, the Drafting Committee shall instruct the required corrections to be made prior to publication in the

---

[71]    Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[72]    Repealed by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), with effect from 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[73]    Repealed by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), with effect from 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[74]    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

Official Compilation of Federal Legislation. An indication must be given of the corrections made.

[2] Following the publication of a legislative enactment in the Official Compilation of Federal Legislation, the Drafting Committee may instruct the correction of obvious errors and alterations of a formal nature. An indication must be given of the corrections made.

[3] The members of the Federal Assembly must be informed of major corrections.

### Art. 59          Implementing regulations

An ordinance of the Federal Assembly shall regulate the details of the composition and duties of the Drafting Committee as well as the procedure for the verification of legislative bills prior to the final vote and for the instruction of corrections following the final vote and following publication.

## Section 6
## Delegations to International Assemblies and for the Maintenance of International Relations

### Art. 60

The organisation, duties and procedures of delegations that represent the Federal Assembly at international parliamentary conferences or in bilateral dealings with parliaments of third countries are regulated in an ordinance of the Federal Assembly.

## Chapter 5    Parliamentary Groups

### Art. 61          Formation

[1] Parliamentary groups are composed of the assembly members who belong to the same party.

[2] Members who do not belong to a party or who belong to more than one party may, provided they share similar political views, form their own parliamentary groups.

[3] A parliamentary group must consist of a minimum of five members from one of the two councils.

[4] Each parliamentary group must notify the General Secretary of the Federal Assembly of its formation, its members, its chairperson and its secretary.

### Art. 62          Duties and rights

[1] Parliamentary groups conduct a preliminary discussion of the business to be submitted to the councils.

[2] They have the right to submit parliamentary initiatives, parliamentary procedural requests, proposals and election nominations.

[3] The standing orders may provide for further rights for parliamentary groups.

[4] Parliamentary groups may establish their own secretariats. These receive the same documents as the assembly members and are subject to official secrecy in accordance with Article 8.

[5] Parliamentary groups shall receive a subsidy to cover the costs of their secretariats. The details of the foregoing are regulated by the Parliamentary Resources Act of 18 March 1988[75].

## Chapter 6    Cross-Party Groups

### Art. 63

[1] Assembly members who share an interest in a specific matter may join together to form a cross-party group. These groups must be open to all assembly members.

[2] The groups must notify the Parliamentary Services of their formation and of their members. The Parliamentary Services keeps a public register of cross-party groups.

[3] The cross-party groups are entitled, as far as possible, to administrative assistance and to conference rooms.

[4] They are not entitled to act as the representatives of the Federal Assembly.

## Chapter 7    Administration of Parliament

### Art. 64          Duties of the Parliamentary Services

[1] The Parliamentary Services assist the Federal Assembly in the fulfilment of its duties.

[2] They carry out the following tasks:

 a. they plan and organise the sessions and the meetings of the committees;

 b. they are responsible for providing secretarial services, carrying out translation work and taking the minutes of the resolutions and debates of the councils, the United Federal Assembly and the committees;

 c. they keep records and offer services in relation to records and information technologies;

 c[bis].[76] they operate information systems used to evaluate data for the fulfilment of the tasks of the Federal Assembly, its organs and the members of the councils;

---

[75] SR **171.21**

[76] Inserted by No I of the FA of 16 March 2018 (Up-to-date parliamentary information and documentation services), in force since 26 Nov. 2018 (AS **2018** 3547; BBl **2017** 6877, 6889).

**171.10**

this data processing may also include particularly sensitive personal data; a Federal Assembly ordinance shall specify the sources used for this purpose and regulate access authorisations and how this data may be disclosed;

d. they advise the assembly members, and in particular the Presiding Colleges of the councils and the chairpersons of the committees on factual and procedural matters;

e. they inform the general public about the Federal Assembly and its activities;

f. they assist the Federal Assembly in its activities with regard to international relations;

g. subject to the reservation of the competencies of the organs of the councils, they are responsible for all other tasks relevant to the administration of Parliament.

### Art. 65        Management of the Parliamentary Services

[1] The Parliamentary Services are subject to the supervision of the Administration Delegation.

[2] The General Secretary of the Federal Assembly is responsible for the management of the Parliamentary Services.

[3] If offices of the Parliamentary Services act for organs of the Federal Assembly, then they work in accordance with their instructions.

### Art. 66        Appointment of the Parliamentary Services staff

Organs of the Federal Assembly as well as the General Secretary of the Federal Assembly are authorised by an ordinance of the Federal Assembly to appoint the staff of the Parliamentary Services.

### Art. 67        Rights to information

The offices of the Parliamentary Services have the same rights to information as the organs of the Federal Assembly on behalf of which they are acting.

### Art. 68        Involvement of the Federal Administration

[1] The organs of the Federal Assembly, and the Parliamentary Services when acting on their behalf, may call on the services of offices of the Federal Administration in order to fulfil their duties.

[2] Such involvement must take place with the consent of the appropriate Department or of the Federal Chancellery.

[3] In the event of any disagreement, the Administration Delegation shall decide after consulting the Federal Council.

**Art. 69**          Right to use Assembly chambers and access to the
                     Parliament Building

[1] The right to use the Assembly chambers is regulated by the Presidents of the councils, and the right to use the other premises of the Federal Assembly and the Parliamentary Services is regulated by the Administration Delegation.

[2] Each assembly member may have an entry pass issued for a specified period to any two persons who wish to have access to the parts of the Parliament Building that are not accessible to the public. The details of these persons and their functions must be recorded in a register that is available for public inspection.

**Art. 69a[77]**

**Art. 70**          Implementing regulations

[1] The Federal Assembly shall enact in the form of ordinances of the Federal Assembly the implementing regulations that determine the rules for the administration of Parliament.

[2] Unless an ordinance of the Federal Assembly provides otherwise, the implementing regulations of the Federal Council or of any of its subordinate offices that apply to the Federal Administration are applied in the administration of Parliament.

[3] Powers that are accorded to the Federal Council or to any of its subordinate offices by such implementing regulations shall be exercised by the Administration Delegation or General Secretary of the Federal Assembly.

**Title 5          Procedure in the Federal Assembly**
**Chapter 1      General Procedural Provisions**

**Art. 71**          Business for consideration

Business in the Federal Assembly includes in particular:

    a.    drafts made by its committees or by the Federal Council of legislative enactments of the Federal Assembly;

    b.    parliamentary initiatives and motions of its members, parliamentary groups and committees as well as cantonal initiatives;

    c.    reports from its committees or from the Federal Council;

    d.    nominations for elections and proposals relating to the confirmation of election nominations;

    e.    proposals relating to procedure made by its members, parliamentary groups, committees or by the Federal Council;

---

[77]    Inserted by No I of the FA of 1 Oct. 2021, in force from 2 Oct. 2021 to 31 Dec. 2022 (AS **2021** 588; BBl **2021** 2181, 2183).

   f.     declarations of the councils or of the Federal Council;

   g.    petitions and submissions;

   h.    appeals, applications and objections.

### Art. 72        Submission of business

[1] Business originating from members or organs of the councils shall become pending in the councils on its submission to the Parliamentary Secretariat.

[2] Popular initiatives and requests made by a canton for the guarantee of its constitution shall become pending in the Assembly on their submission to the Federal Chancellery.

[3] Other business shall become pending in both councils of the Federal Assembly on its submission to the Assembly.

### Art. 73        Withdrawal of business

[1] Business may be withdrawn by its originator at any time before either council has taken a decision thereon for the first time.

[2] A parliamentary initiative or a cantonal initiative may no longer be withdrawn after it has been endorsed by a committee entrusted with its preliminary examination.

[3] The Federal Council may not withdraw business that it has introduced.

### Art. 74        Procedure for legislative bills

[1] Each council shall consider and decide first of all whether it wishes to approve the introduction of a bill (introductory debate).

[2] If it approves the introduction of a bill, it must thereafter examine the enactment article by article (detailed consideration).

[3] Introduction shall be mandatory in the case of popular initiatives, budgets, annual reports, accounts, objections to treaties between cantons or between cantons and foreign states, the guarantee of cantonal constitutions, and in relation to the legislature plan and the financial plan.[78]

[4] After the conclusion of the first detailed consideration, a vote is taken in each council on the text in its entirety. If approval of introduction is mandatory, no vote is taken on the text in its entirety other than in the case of budgets and accounts.

[5] If a bill is rejected by a council in the vote on the entire text, this is equivalent to non-approval of introduction. The rejection of a budget or of accounts in the vote on the entire text is equivalent to a referral back to the Federal Council.

---

[78]    Amended by Annex No 1 of the FA of 26 Sept. 2014 (New Management Model for the Federal Administration), in force since 1 Jan. 2016 (AS **2015** 1583; BBl **2014** 767).

[6] If a bill is approved for introduction, it may be abandoned at the request of the committee responsible for the preliminary examination or the Federal Council if it has become unnecessary.[79]

### Art. 75        Referral for review

[1] Either council may refer a bill that it has approved for introduction, or any other item of business, back to the Federal Council or the committee entrusted with its examination for review or amendment.

[2] It may also refer individual sections or provisions for review at a later stage in the deliberations.

[3] The proposal for referral must indicate what should be reviewed, amended or added.

### Art. 76        Proposals

[1] Any assembly member may submit proposals on a pending matter for consideration in the council and in the committee responsible for the preliminary examination. He or she may apply to the relevant committee for the submission of a parliamentary initiative or of a committee motion.

[1bis] A bill may only be submitted with a proposal if thereby:

    a.    a pending bill is to be divided up;
    b.    a counter-proposal is to be made to a popular initiative on the same constitutional issue (Art. 101).[80]

[2] Proposals that relate to procedure (points of order) must normally be dealt with immediately.

[3] A reconsideration of any decision made may be requested by means of a point of order until a council has concluded its deliberations on an item of business.[81]

[3bis] A point of order requesting the reconsideration of a decision on introduction is not permitted.[82]

[3ter] A point of order requesting the repeat of a vote concluding the Council's deliberations on an item of business may only be made immediately after the vote.[83]

[4] Proposals that have been rejected by the majority of a committee may be submitted as minority proposals.

---

[79]    Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).
[80]    Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).
[81]    Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).
[82]    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).
[83]    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

Parliament Act

**171.10**

### Art. 77    Urgency clause

[1] Where it is intended that a draft Federal Act be declared urgent, the urgency clause shall be exempted from the vote on the enactment in its entirety.

[2] A decision on the urgency clause may be made only after a successful resolution of differences.

[3] If the urgency clause is rejected, the Drafting Committee shall correct the wording of the provisions on the referendum and its entry into force after consulting the presidents of the committees entrusted with the preliminary examination.[84]

### Art. 78    Voting procedure

[1] Where a question may be divided into more than one part, each part may, on request, be voted on separately.

[2] If two proposals in respect of the same subject matter have been submitted and they either relate to the same part of the text or mutually exclude each other, a vote is held on which of the two is to be accepted.

[3] If it is not possible to vote on which proposal to accept, then the proposals shall be voted on individually.

[4] No vote is held on unopposed proposals.

[5] The number of votes is always counted in the case of:

- a.    votes on entire bills;
- b.    votes on a compromise motion;
- c.    votes on provisions requiring the agreement of a majority of the members of each of the two parliamentary councils (Art. 159 para. 3 Cst.);
- d.    final votes.[85]

### Art. 79    Elimination vote

[1] If more than two proposals have been made on the same subject matter, then an elimination vote must be held until a vote can be held on which of two proposals is to be accepted.

[2] The order of voting on the proposals must be structured in such a way that a vote is held first on the proposals that differ the least from each other in content, working through the proposals until those that differ the most are reached.

[3] If it is not possible to decide on the order of voting according to the criteria laid down in paragraph 2, an elimination vote is held dealing firstly with the proposals of the assembly members, then the proposals of the committee minorities and finally the

---

[84]    Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).
[85]    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

proposal of the Federal Council. A vote is then held to decide between the proposal that wins the elimination vote and the proposal of the committee majority.

[4] The order of voting on the proposals may not be altered by a contingent proposal.[86]

**Art. 80**        Voting by the Council President

[1] The Council President shall not participate in the vote. In the event of a tie, the President shall have the casting vote.

[2] If the agreement of the majority of the members of each council is required, the Council President shall participate in the vote.

**Art. 81**        Final vote

[1] A final vote shall be held on:

    a.   a federal act;

    b.   an ordinance of the Federal Assembly;

    c.   a federal decree that is subject to a mandatory or an optional referendum.[87]

[1bis] The final vote shall be held as soon as the councils have reached unanimous decisions on the bill and have approved the wording revised by the Drafting Committee. The two councils shall hold the final vote on the same day.[88]

[2] If both councils approve the bill then the enactment has been passed by the Federal Assembly.

[3] If one or both councils reject the bill then the enactment is not passed.

**Art. 82**        Publication of the voting results

The standing orders of the councils shall determine the cases in which the result of the vote is published in the form of a list of members' names with the votes they cast.

# Chapter 2        Procedure between the councils
## Section 1        Cooperation between the councils

**Art. 83**        Joint decrees of the councils

[1] Federal Assembly decrees require the agreement of both councils.

[2] A joint decree is not required in respect of petitions and reports that are submitted for information purposes.

---

[86]  Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).
[87]  Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).
[88]  Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

### Art. 84        Designation of the first council

[1] Business that must be dealt with separately by the two councils shall be allocated to one of the councils for prior consideration (the first council).

[2] The presidents of the councils shall decide on the allocation of business. If they are unable to reach an agreement, the matter shall be decided by drawing lots.

### Art. 85        Schedule for dealing with business in the councils

[1] Draft amendments to the Constitution and non-urgent federal acts are not normally considered for the first time by both councils in the same session.

[2] The Conference for Coordination may in response to an application by the Federal Council or a committee decide that an item of business in accordance with paragraph 1 will by way of exception be considered by both councils for the first time in the same session.

### Art. 86        Passing business on to the other council

[1] Business that must be considered by both councils and which has been voted on by one council must then be passed on to the other council for consideration.

[2] The first council may consider the matter again only after the other council has voted on it.

[3] Where the drafts of more than one bill are submitted to the Federal Assembly accompanied by the same Federal Council dispatch or a report, these bills may be passed on individually to the other council after the first council has voted on them all.

[4] A federal decree on the counter proposal to a popular initiative must be passed on to the other council with the federal decree on the related popular initiative.[89]

### Art. 87        Referral to the Federal Council and adjournment of the procedure

[1] If one council refers an item of business in its entirety back to the Federal Council, it must give notice of its decision to the other council.

[2] If the other council does not agree with the decision to refer the matter back, the referral will still take effect provided the first council confirms its initial decision.

[3] The same procedure also applies to the decision of a council to adjourn the discussion of an item of business for a period that is expected to exceed one year (suspension of business).

### Art. 88        Sharing the discussion of a bill

[1] By way of exception, a large bill may be divided up by joint decision of both councils and may be passed on to the other council in parts before the bill has been voted on in its entirety.

---

[89]    Inserted by No I of the FA of 3 Oct. 2008, in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[2] Prior to a vote being taken on the bill in its entirety, the members of either council may move that any provision of the entire bill be reconsidered.

[3] Where either of the two councils rejects the proposal to divide the bill and if the council that has rejected the division confirms its decision, the bill is passed on to the other council only after a vote has been taken on the bill in its entirety.

## Section 2        Resolution of Differences between the councils

### Art. 89        Procedure in the event of differences

[1] Where, following consideration of a bill, there are differences between the councils, the divergent decisions of each council shall be referred to the other council for consideration, until agreement is reached between the two councils.

[2] Following the initial consideration in each council, any further consideration shall be limited exclusively to the issues on which no agreement has been reached.

[3] A council may reconsider any other issue only if this becomes necessary as a result of decisions taken in the intervening period or if the preliminary consultation committees of both councils move jointly for the issue to be reconsidered.

### Art. 90[90]        Abandonment of a bill

The councils may in response to a joint motion from their respective preliminary consultation committees abandon a bill during or on completion of the procedure for the resolution of differences.

### Art. 91        Appointment of a conciliation committee

[1] If there are still differences following three detailed discussions in each council, a conciliation committee shall be appointed. This committee is responsible for seeking a compromise solution.

[2] The preliminary consultation committees shall each contribute 13 members to the conciliation committee. If the preliminary consultation committee of a council comprises fewer than 13 members, additional members must be added to reach this number. The composition of the delegations from each committee is governed by Article 43 paragraph 3.

[3] The committee president of the first council shall chair the conciliation committee. The president's deputy and the members of the conciliation committee are appointed in accordance with the relevant provisions of the standing orders.[91]

---

[90]    Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[91]    Second sentence inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

**Art. 92**        Decisions of the conciliation committee

[1] The conciliation committee is quorate when a majority of the members of each of the two delegations is present. The quorum must be expressly confirmed.

[2] The conciliation committee reaches its decisions on the basis of the majority of the votes cast by its members. The committee president may participate in the vote. In the event of a tie, the president has the casting vote.

[3] The conciliation committee shall propose a compromise motion that eliminates the remaining differences in their entirety.

**Art. 93**        Procedure for dealing with the compromise motion in the councils

[1] The compromise motion shall be submitted first of all to the first council and, provided it votes in favour of the motion in its entirety, it shall then be submitted to the other council.

[2] If the compromise motion is rejected by either of the councils, the bill must be abandoned.

**Art. 94**        Settlement of differences on the budget and on
                   supplementary credits

Where a compromise motion on a Federal Decree on the Federal Budget or a supplementary credit is rejected, the decree based on the third round of deliberations that provides for a lower amount shall be accepted.

**Art. 94***a*[92]        Settlement of differences relating to the legislature plan, the financial
                   plan, and the financial framework in the budget[93]

[1] If the federal decree on the legislature plan is the subject of differences between the councils following the first reading of the bill, the conciliation committee shall be appointed.

[2] In the case of the federal decrees on the legislature plan, the financial plan and the financial framework in the budget, the conciliation committee shall propose a compromise motion in respect of each difference.[94] A separate vote is held on each motion.[95]

[3] If any motion is rejected, the related provision shall be deleted.

---

[92]   Inserted by No I of the FA of 22 June 2007 (Legislature Plan), in force since 1 Dec. 2007 (AS **2007** 5231; BBl **2006** 1837, 1857).

[93]   Amended by No I of the FA of 15 March 2024 (Budget Debate), in force since 9 Sept. 2024 (AS **2024** 450; BBl **2023** 2157, 2159).

[94]   Amended by No I of the FA of 15 March 2024 (Budget Debate), in force since 9 Sept. 2024 (AS **2024** 450; BBl **2023** 2157, 2159).

[95]   Amended by Annex No 1 of the FA of 26 Sept. 2014 (New Management Model for the Federal Administration), in force since 1 Jan. 2016 (AS **2015** 1583; BBl **2014** 767).

**Art. 95**          Settlement of differences in special cases

If the divergent decisions of the two councils relate to an entire item of business, the second rejection by either council is final. The foregoing applies in particular to:

a.   the introduction of bill;

b.   the acceptance of a bill in the vote on the bill in its entirety;

c.   the approval of a treaty under international law;

d.   the guarantee of a cantonal constitution;

e.   an opinion on a popular initiative in the form of a general proposal;

f.   the urgency clause;

g.[96]   the decision on whether a cantonal initiative should be endorsed;

h.   the approval of Federal Council ordinances;

i.[97]   ...

j.   the continuation of an item of business in respect of which a motion for abandonment has been made.


## Chapter 3    Procedure for Popular Initiatives

### Section 1
### Popular Initiative for the Complete Revision of the Federal Constitution

**Art. 96**

Where a popular initiative for the complete revision of the Federal Constitution is declared successful, the Federal Assembly shall submit the initiative to the vote of the people.


### Section 2
### Popular Initiative for the Partial Revision of the Federal Constitution
### a. General Provisions

**Art. 97**          Federal Council dispatch and draft decree

1 The Federal Council shall submit to the Federal Assembly:

---

[96]   Amended by No I of the FA of 3 Oct. 2008, in force since 2 March 2009
      (AS **2009** 725; BBl **2008** 1869, 3177).
[97]   Repealed by No I of the FA of 17 June 2011 (Requests to lift Immunity), with effect from
      5 Dec. 2011 (AS **2011** 4627; BBl **2010** 7345, 7385).

a. at the latest one year after submission of a successful popular initiative, a dispatch and the draft of a federal decree for the consideration of the Federal Assembly;

b. at the latest one year after the approval of the people or of the Federal Assembly of an initiative submitted in the form of a general proposal, a dispatch and the draft of a federal decree for a partial revision of the Federal Constitution.

[2] If the Federal Council decides to draw up a draft federal decree on a counter-proposal or a bill that is closely related to the popular initiative, the foregoing period shall be extended to 18 months.[98]

[3] If the Federal Council does not submit its dispatch and the draft of a federal decree to the Federal Assembly in due time, a relevant committee may draw up the necessary bill.[99]

## Art. 98        Validity of popular initiatives

[1] The Federal Assembly shall declare a popular initiative wholly or partly invalid if it holds that the requirements of Article 139 paragraph 3 of the Federal Constitution have not been fulfilled.

[2] If the decisions of the two councils in relation to the validity of the popular initiative or of parts thereof diverge from each other and the council that has approved the validity of the initiative confirms its decision, the popular initiative or, depending on the case, its disputed part, shall be held to be valid.

[3] If the compromise motion on the voting recommendation is rejected, in derogation from Article 93 para. 2 only the provision concerned shall be deleted.[100]

## Art. 99        Prohibition of the amendment of popular initiatives

[1] Popular initiatives, or all the valid parts thereof, must be submitted to the vote of the people as they stand.

[2] The Drafting Committee reserves the right to correct obvious translation errors and to make any formal adjustments necessary to incorporate the proposed constitutional amendment into the Constitution. The Committee shall give the initiative committee the opportunity to express its opinion.[101]

---

[98]   Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

[99]   Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

[100]   Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

[101]   Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

## b. Popular Initiative in the Form of a Draft Proposal

**Art. 100**        Voting recommendation

The Federal Assembly shall decide within 30 months of the submission of a popular initiative in the form of a draft proposal whether it recommends that the people and the Cantons accept or reject the initiative.

**Art. 101**[102]        Counter-proposal

[1] The Federal Assembly may submit its own counter-proposal on the same constitutional issue to the vote of the people and the Cantons at the same time as the popular initiative.

[2] The federal decree on the counter-proposal of the Federal Assembly shall be debated in each council prior to the Assembly deciding on the voting recommendation in the federal decree on the popular initiative.

[3] The final vote on the federal decree on the counter-proposal shall take place no more than eight days before the end of the session which precedes the expiry of the deadline for dealing with the popular initiative. If the federal decree is rejected by either council in the final vote, the conciliation committee shall submit a proposal on the voting recommendation in the federal decree on the popular initiative. A counter-proposal may no longer be put forward.

**Art. 102**[103]        Decisions on voting recommendations and counter-proposals

[1] Where the Federal Assembly submits a counter proposal in addition to the popular initiative to the vote of the people and the Cantons, it may:

    a.    recommend that the popular initiative be rejected and the counter-proposal accepted; or

    b.    recommend that both bills be accepted.

[2] If the Assembly recommends the acceptance of both bills, it shall recommend that voters accept the counter-proposal in the third question.

## c. Popular Initiative in the Form of a General Proposal

**Art. 103**        Approval or rejection and popular vote

[1] The Federal Assembly shall decide within two years of submission of a popular initiative in the form of a general proposal whether it approves or rejects the initiative.

---

[102]    Amended by No I of the FA of 3 Oct. 2008, in force since 2 March 2009
(AS **2009** 725; BBl **2008** 1869, 3177).
[103]    Amended by No I of the FA of 3 Oct. 2008, in force since 2 March 2009
(AS **2009** 725; BBl **2008** 1869, 3177).

[2] If the Federal Assembly rejects the popular initiative, it shall submit the initiative to the vote of the people.

**Art. 104**   Drafting of an amendment to the Constitution by the Federal Assembly

[1] If the Federal Assembly approves a popular initiative, or if the people vote in favour of an initiative, the Federal Assembly shall within two years draft a partial revision to the Federal Constitution.

[2] The draft prepared by the Federal Assembly shall correspond strictly to the content and objectives of the popular initiative.

[3] Where the councils are unable to agree on the draft of the partial revision or if the draft is rejected by one or both councils, the decisions of the councils from the most recent discussion shall be submitted to the vote of the people as alternatives.

## d. Extension and Expiry of Deadlines

**Art. 105**   Extension of deadline

[1] If one council reaches a decision on a counter-proposal or on a bill closely related to a popular initiative, the Federal Assembly may extend the deadline for dealing with the matter by one year.

[1bis] ...[104]

[2] If the councils are unable to agree on an extension of deadline, no extension shall be granted.

**Art. 106**   Expiry of deadline

If the councils are unable to reach a unanimous decision by the statutory deadline, the Federal Council shall order that a popular vote be held.

## Chapter 4   Procedure for Parliamentary Initiatives

**Art. 107**[105]   Subject matter and form

[1] A parliamentary initiative may be used to propose that committee prepare a draft Federal Assembly bill.

---

[104]   Inserted by No II of the FA of 25 Sept. 2009 (Conditional Withdrawal of a Popular Initiative) (AS **2010** 271; BBl **2009** 3591, 3609). Repealed by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), with effect from 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[105]   Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[2] The reasons for the parliamentary initiative must be stated. The statement of reasons must in particular include the aims of the bill.

[3] A committee may submit a bill to its Council by means of a parliamentary initiative.

### Art. 108        Inadmissibility

The parliamentary initiative of a council member or of a parliamentary group shall be inadmissible if it relates to matters that may be submitted as a proposal relating to a bill pending before the Federal Assembly. The Office of the Council may decide on exceptions to the foregoing.

### Art. 109        Procedure for the preliminary examination

[1] Parliamentary initiatives brought by a council member or a parliamentary group, together with proposals submitted to a committee for the preparation of an initiative by that committee shall be subject to a preliminary examination.

[2] The relevant committee of the council to which the initiative has been submitted shall decide within one year of being assigned the initiative whether to endorse the initiative or whether to instruct its council not to endorse the initiative. If the council follows the instructions of the committee, the initiative is regarded as having been dealt with.[106]

[3] The decision to endorse an initiative or to have the committee prepare its own initiative requires the consent of the relevant committee of the other council. This committee shall invite the committee responsible for the initial consideration to appoint a delegation to present its decision. If the latter committee does not consent, the initiative is only endorsed if both councils agree. If the second council does not agree, the initiative is irrevocably rejected.[107]

[3bis] The committee of the other council and, in the event of disagreement, the relevant committees of the councils decide in accordance with paragraph 3 or submit their proposal to their council one year at the latest after the preceding committee or Council decision on the initiative.[108]

[4] If the author of an initiative or the request for the preparation of an initiative is not a member of the committee, he or she may participate in the preliminary examination in an advisory capacity at the meetings of the committee of his or her council.[109]

---

[106]   Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829). See also the transitional provision for this amendment at the end of this text.

[107]   Fourth sentence inserted by No I of the FA of 3 Oct. 2008, in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[108]   Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829). See also the transitional provision for this amendment at the end of this text.

[109]   Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

5 If the author of an initiative leaves the council and if no other assembly member takes up the initiative during the first week of the following session, the initiative shall be abandoned without a council decision unless the committee has already endorsed the initiative.[110]

### Art. 110    Subject matter of the preliminary examination

1 An initiative shall be endorsed or a proposal for the preparation of an initiative shall be approved if the need in principle for legislation is confirmed and a parliamentary initiative is judged to be the appropriate course of action.

2 A parliamentary initiative shall in particular be judged appropriate if:

   a.    the initiative proposes a bill relating to the organisation or procedures of the Federal Assembly;

   b.    the Federal Council has not prepared a bill in time, despite a motion being passed to this effect; or

   c.[111] the preparation of a bill by this means will probably be achieved more quickly than by a motion.

3 The committee shall examine how it can prepare the bill in the time required, taking account of the methods at its disposal.

### Art. 111    Preparation of a bill

1 If an initiative is endorsed, the relevant committee of the council to which the initiative was submitted shall prepare a bill within two years.

2 If the author of an initiative or the request for the preparation of an initiative is not a member of the committee, he or she may participate in the preliminary examination in an advisory capacity at the meetings of the committee of his or her council.[112]

3 The report explaining the committee bill to the Federal Assembly shall fulfil the requirements for a Federal Council Dispatch (Art. 141).

4 The obligations to conduct an assessment under Article 4 and the obligation to estimate regulatory costs under Article 5 of the Business Cost Relief Act of 29 September 2023[113] apply by analogy.[114]

---

[110]  Inserted by No I of the FA of 3 Oct. 2008, in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

[111]  The correction made by the Federal Assembly Drafting Committee dated 17 Feb. 2016, published 1 March 2016, relates to the Italian text only (AS **2016** 657).

[112]  Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[113]  SR **930.31**

[114]  Inserted by Art. 21 of the Business Cost Relief Act of 29 Sept. 2023, in force since 1 Oct. 2024 (AS **2024** 118; BBl **2023** 166).

**Art. 112**        Cooperation with the Federal Council and the Federal
                    Administration

[1] The committee may involve the Federal Department responsible in order to obtain all the legal and material information required for the preparation of a bill.

[2] It shall submit the preliminary draft and its explanatory report for consultation in accordance with the provisions of the Consultation Procedure Act of 18 March 2005[115].[116]

[3] It shall submit the report and bill that it submits to its Council to the Federal Council at the same time in order that the Federal Council may state its opinion thereon within an appropriate period; excepted from the foregoing are provisions on the organisation or the procedures of the Federal Assembly that are not laid down by statute and which do not directly affect Federal Council.[117]

[3bis] In the case of a draft bill under Article 165 or Article 173 paragraph 1 letter c of the Federal Constitution, the deadline for the Federal Council's opinion may be set in such a way that it can be dealt with in the next ordinary or extraordinary session.[118]

[4] If the Federal Council requests any alteration, the committee shall discuss the opinion of the Federal Council before consideration of the bill in the first council.


**Art. 113**        Extension of deadline and abandonment

[1] If the committee does not submit its bill within two years, the council shall decide at the request of the committee or of its office whether the deadline should be extended or the initiative abandoned.

[2] The committee may request the council to abandon the initiative if:

   a.    its purpose has been fulfilled by another bill; or

   b.    the mandate conferred on the committee can no longer be carried out.


**Art. 114**        Debate on the bill in the Assembly

[1] If the council approves its committee's bill in the vote on the bill in its entirety, the initiative is submitted to the other council and is further considered in accordance with the ordinary procedure for bills.[119]


---

[115]   SR **172.061**
[116]   Amended by Art. 12 No 1 of the Consultation Procedure Act of 18 March 2005, in force since 1 Sept. 2005 (AS **2005** 4099; BBl **2004** 533).
[117]   Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).
[118]   Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).
[119]   Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[1bis] If the council does not approve the introduction of its committee's bill or rejects it in the vote on the bill in its entirety, the initiative is regarded as having been dealt with.[120]

[2] In the committee of the second council, the draft from the first council is presented by a member of the committee that prepared it.

## Chapter 5    Procedure for Cantonal Initiatives

### Art. 115[121]        Subject matter and form

[1] Any canton may by means of a cantonal initiative propose that a committee prepare a draft Federal Assembly bill.

[2] The reasons for the cantonal initiative must be stated. The statement of reasons must in particular include the aims of the bill.

### Art. 116        Procedure for preliminary examination

[1] Cantonal initiatives are subject to a preliminary examination.

[2] For the preliminary examination, Article 110 applies by analogy.

[3] The decision to endorse an initiative requires the agreement of the committees responsible in both councils. If one committee does not agree, the council shall decide. If the council does not agree, the initiative shall go to the other council. The second rejection by a council is final.

[3bis] The committees are subject to the time limits in Article 109 paragraphs 2 and 3[bis].[122]

[4] The committee of the first council shall hear a representative of the Canton at the preliminary examination.

### Art. 117        Preparation of a bill

[1] If an initiative is endorsed, it shall be reallocated to one of the councils for initial consideration in accordance with the procedure laid down in Article 84.

[2] For the further procedure, Articles 111–114 apply by analogy. The abandonment of an initiative requires the agreement of the other council. If the first council decides not to approve the draft of the committee, or if the draft is rejected when voted on in its entirety, this shall be regarded as equivalent to abandonment.

---

[120]   Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[121]   Amended by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[122]   Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829). See also the transitional provision for this amendment at the end of this text.

## Chapter 6    Procedure for Procedural Requests
## Section 1    General

**Art. 118**        Forms of procedural request

[1] Parliamentary procedural requests are:

- a. motions;
- b. postulates;
- c. interpellations;
- d. questions.

[2] They shall normally be addressed to the Federal Council.

[3] If they relate to the organisation or procedures of the Federal Assembly, they shall normally be addressed to the office of the council to which they are submitted.

[4] They shall be addressed to the federal courts if they relate to the conduct of business or financial budget of the federal courts; motions are excluded.

[4bis] They shall be addressed to the Supervisory Authority for the Office of the Attorney General of Switzerland if they relate to the management or budget of the Office of the Attorney General of Switzerland or its Supervisory Authority; motions are excluded.[123]

[4ter] They shall be addressed to the Federal Data Protection and Information Commissioner (FDPIC) if they relate to the FDPIC's management or budget; motions are excluded.[124]

[5] In the case of procedural requests made to the offices of the councils and to the federal courts, Articles 120–125 apply by analogy.[125]

**Art. 119**        General procedural provisions for procedural requests

[1] Procedural requests may be submitted by the majority of the members of a committee, as well as by a parliamentary group or an assembly member during a parliamentary session.

[2] If a procedural request relates to more than one material or formal point, a separate discussion and vote may be held on each point.[126]

---

[123]   Inserted by No I of the FA of 21 June 2013 (Improvements in the Organisation and Procedures of Parliament), in force since 25 Nov. 2013 (AS **2013** 3687; BBl **2011** 6793, 6829).

[124]   Inserted by No I of the FA of 21 March 2025 (f Procedural Requests and Parliamentary Initiatives), in force since 8 Sept. 2025 (AS **2025** 530; BBl **2024** 1799, 2462).

[125]   The correction by the Federal Assembly Drafting Committee of 15 Feb. 2018, published 27 Feb. 2018, relates to the French text only (AS **2018** 935).

[126]   Amended by No I of the FA of 21 March 2025 (Submission of Procedural Requests and Parliamentary Initiatives), in force since 8 Sept. 2025 (AS **2025** 530; BBl **2024** 1799, 2462).

[3] The wording of a procedural request may not be altered after its submission; Article 121 paragraph 4 letter b is reserved.[127]

[4] ...[128]

[5] A procedural request made by a council member or a parliamentary group shall be abandoned without a council decision if:

    a.    the council has not finished dealing with the procedural request within two years of its submission; or

    b.    the author leaves the council and no other assembly member takes up the procedural request during the first week of the following session.[129]

[6] ...[130]

## Section 2    Motions

### Art. 120    Subject matter

[1] A motion mandates the Federal Council to submit a bill to the Federal Assembly or to take certain action.

[2] If the Federal Council is responsible for taking action, it shall do so or submit to the Federal Assembly the draft bill by means of which the motion may be implemented.

[3] A motion shall be inadmissible if it seeks to influence an administrative ruling or an appeal decision that must be taken as part of a procedure regulated by the law.

### Art. 121[131]    Procedure in the Assembly

[1] The Federal Council shall normally propose the acceptance or rejection of a motion by the start of the next ordinary session following its submission. It shall submit its proposal in relation to a committee motion that is submitted less than a month before the start of the next ordinary session by the start of the session following the next session.

[1bis] If identical motions have been submitted by committees of both councils no later than one week before the next ordinary or extraordinary session, the Federal Council shall submit its proposal by the time the motion is discussed in that session.[132]

---

127    Amended by No I of the FA of 3 Oct. 2008, in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

128    Repealed by No I of the FA of 3 Oct. 2008, with effect from 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

129    Amended by No I of the FA of 3 Oct. 2008, in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

130    Repealed by No I of the FA of 3 Oct. 2008, with effect from 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

131    Amended by No I of the FA of 3 Oct. 2008, in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

132    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[1ter] Committee motions that request the Federal Council to enact or amend an ordinance based on Article 184 paragraph 3 or Article 185 paragraph 3 of the Federal Constitution or on a statutory authorisation to deal with a crisis in accordance with Annex 2 shall be placed on the agenda of the next or current ordinary or extraordinary session. The Federal Council shall submit its proposal in writing or orally.[133]

[2] If one council rejects a motion, the motion is regarded as having been dealt with. If the council to which the motion has been submitted approves the same, the motion goes to the other council.

[3] A motion accepted by the first council may in the second council be:

    a.    irrevocably accepted or rejected;

    b.    amended on the proposal of the majority of the committee responsible for the preliminary examination or on the proposal of the Federal Council.

[4] If the second council makes an amendment, the first council may in the second consideration:

    a.    agree to the amendment;

    b.    stand by its decision to accept the motion in its original form; or

    c.    irrevocably reject the motion.[134]

[4bis] If the first council in the second consideration stands by its decision to accept the motion in its original form, the second council may agree to this decision or irrevocably reject the motion.[135]

[5] A motion accepted by the first council without the agreement of the second council shall be irrevocably accepted if:

    a.    it relates to organisational or procedural issues of the council to which it has been submitted; or

    b.    it is a committee motion and an identical committee motion is accepted in the other council.

---

[133]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[134]    Amended by No I of the FA of 18 June 2021 (Resolution of Differences in the case of Motions), in force since 1 Nov. 2021 (AS **2021** 612; BBl **2020** 9309; **2021** 138).

[135]    Inserted by No I of the FA of 18 June 2021 (Resolution of Differences in the case of Motions), in force since 1 Nov. 2021 (AS **2021** 612; BBl **2020** 9309; **2021** 138).

**Art. 122**[136]    Procedure for approved motions

[1] If a motion is still pending after two years, the Federal Council shall report to the Federal Assembly each year on what it has done in relation thereto and on how it intends to fulfil the mandate.[137]

[1bis] The Federal Council shall report immediately if:

a. a committee motion requesting the amendment of a Federal Council ordinance that has been in force for less than one year or of a draft Federal Council ordinance is still pending after six months; or

b. a committee motion requesting the enactment or amendment of an ordinance based on Article 184 paragraph 3 or Article 185 paragraph 3 of the Federal Constitution or on a statutory authorisation to manage a crisis in accordance with Annex 2 is still pending after the deadline for reporting provided for in the motion text has expired.[138]

[1ter] The Federal Council's report shall be forwarded to the relevant committees.[139]

[2] A committee or the Federal Council shall request that a motion be closed if its mandate has been fulfilled. The request shall be addressed to both councils unless the motion relates to issues of the organisation or procedure of a specific council.

[3] A request for a motion to be closed may also be made if the mandate has not been fulfilled but the motion should no longer be pursued. The request shall be justified:

a. with a special report on the motion to be closed; or

b. in a dispatch on a Federal Assembly bill on subject matter connected with the motion.

[4] If the decisions of the two councils on the request to close a motion do not correspond, the procedure for the settlement of differences in Article 95 applies.

[5] If a request to close a motion is rejected by both councils, the Federal Council must fulfil the mandate contained in the motion within one year or within the period fixed by the two councils on rejecting the request.

[6] If the Federal Council fails to comply with the period fixed, a decision on extending the period allowed or on closing the motion shall be taken in the next ordinary session in both councils at the request of the committees responsible.

---

[136]    Amended by No I of the FA of 5 Oct. 2007 (Binding effect of the motion), in force since 26 May 2008 (AS **2008** 2113; BBl **2007** 1457, 2149). See also the transitional provision for this amendment at the end of this text.

[137]    Amended by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[138]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[139]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

## Section 3      Postulates

### Art. 123      Subject matter

A postulate mandates the Federal Council to examine and report on whether to submit a bill to the Federal Assembly or to take a measure. It may also request a report on a different matter.

### Art. 124      Procedure

[1] The Federal Council shall normally propose the acceptance or rejection of postulates before the start of the next session. When a committee postulate is submitted less than a month before the start of the next ordinary session, it shall submit its proposal by the start of the session following the next session.[140]

[2] The postulate shall be accepted if either council approves it.

[3] The Federal Council fulfils the terms of a postulate by stating its views thereon in a separate report, or in the annual report or in a dispatch to a bill of the Federal Assembly.

[4] If a postulate is still pending after two years, the Federal Council shall report to the Federal Assembly each year on what it has done in relation thereto and on how it intends to fulfil its mandate. This report is submitted to the committees responsible.

[5] A committee or the Federal Council may request that a postulate be closed if it has been fulfilled or if continuing with the postulate cannot be justified. The council that has approved the postulate must consent to it being closed.

## Section 4      Interpellations and Questions

### Art. 125

[1] An interpellation or a question is a request to the Federal Council to provide information on matters relating to the Confederation.

[2] The Federal Council shall normally reply by the next session.

[3] An interpellation or a question may be declared urgent.

[4] An interpellation is dealt with if the discussion requested by its author has taken place in the council or when the council has rejected the request for the discussion.

[5] A question is not discussed in the council; it is dealt with by the reply from the Federal Council.

---

[140]   Amended by No I of the FA of 3 Oct. 2008, in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

## Chapter 7    Procedure for Petitions and Submissions
## Section 1    Petitions[141]

**Art. 126**[142]    General Provisions

[1] The responsible committee in each council shall decide whether to endorse a petition or whether it shall request its council not to endorse the petition.

[2] If the subject of the petition can be presented in the form of a proposal relating to a matter pending for consideration, the committee shall report on the petition to the council when it is dealing with that business. The committee shall decide either to submit a proposal on the matter or dispense with a proposal. The petition shall be abandoned without a council decision as soon as the matter has been dealt with.

[3] Following the conclusion of the consideration of a petition, the Parliamentary Services shall notify the petitioners as to whether their concerns have been taken into account.

[4] The presidents of the committees responsible for the preliminary examination in each council may respond directly to a petition if:

    a.    its aim cannot be achieved by a parliamentary initiative, a procedural request or a proposal;

    b.    its content is clearly absurd, querulous or offensive.

**Art. 127**[143]    Committee decision to endorse a petition

If the committee endorses a petition, it shall take up the matter to which the petition relates by preparing a parliamentary initiative or a procedural request.

**Art. 128**[144]    Committee decision to not to endorse a petition

[1] The committee shall request its council not to endorse the petition if it:

    a.    rejects the matter to which the petition relates;

    b.    establishes that the matter to which the petition relates has already been dealt with by another competent authority;

    c.    regards the matter to which the petition relates as having been dealt with.

[2] If the council disregards the proposal of the committee and endorses the petition, it shall refer the petition and mandate back to the committee and instruct the committee to take up the matter in a parliamentary initiative or a procedural request.

---

[141]    Inserted by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).
[142]    Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).
[143]    Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).
[144]    Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

## Section 2      Submissions[145]

### Art. 129

A submission on the conduct of business and on the financial policy of the Federal Council, the Federal Administration, the federal courts or of other persons entrusted with tasks by the Confederation shall be allocated to the Control or Finance Committees for a direct response.

## Chapter 8[146]
## Procedure for Objections to Treaties between Cantons or between Cantons and Foreign States

### Art. 129*a*

[1] If the Federal Council files an objection to a treaty between Cantons or between a Canton and a foreign state, it shall submit to the Federal Assembly the draft of a simple federal decree on the approval of the treaty.

[2] If a Canton files an objection, the responsible committee of the first council shall submit to its council the draft of a simple federal decree on the approval of the treaty.

## Title 6
## Elections and Verification of Elections, and Declaration of Inability to Discharge the Duties of Office[147]
## Chapter 1      General Provisions on Elections

### Art. 130      Principles

[1] Voting in elections in the Federal Assembly is carried out by secret ballot.

[2] The persons elected shall be those whose names are written on more than half of the valid ballot papers.

[3] When determining an absolute majority, uncompleted invalid ballot papers shall not be counted.

[4] If more candidates achieve an absolute majority than there are vacant seats, the surplus candidates with the lower numbers of votes shall be eliminated.

---

[145]   Inserted by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).
[146]   Inserted by No II of the FA of 7 Oct. 2005, in force since 1 June 2006 (AS **2006** 1265; BBl **2004** 7103).
[147]   Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

## Art. 131        Invalidity and cancelled votes

1 Ballot papers that contain defamatory statements or obviously irrelevant markings shall be declared invalid.

2 Votes for persons not eligible for election, or who have already been elected or eliminated from the election, together with votes for persons who are not adequately identified are cancelled.

3 If the name of a candidate is written more than once on a ballot paper, the surplus name or names are deleted.

4 If the ballot paper contains more names than there are mandates to be allocated, the surplus names are deleted, beginning from the end of the list.

5 If the number of ballot papers received exceeds that of the ballot papers distributed, the ballot shall be declared invalid and shall be rerun.

## Chapter 2     Elections to the Federal Council

## Art. 132        Complete re-election

1 The members of the Federal Council are elected by the United Federal Assembly in the session following the general election to the National Council.

2 The seats are filled individually, one after the other, in the order of the length of period in office of the serving office holders. Seats for which serving members of the Federal Council are standing as candidates are filled first.

3 In the first two ballots, any person who is eligible for election may be voted for. From the third ballot onwards, no additional candidatures are permitted.

4 Excluded from the election are:

    a.    those who obtain fewer than ten votes from the second ballot onwards; and

    b.    the person who receives the lowest number of votes from the third ballot onwards, unless more than one person receives this same number of votes.

## Art. 133        Election to vacant seats

1 Elections in respect of vacant seats are normally held in the session following receipt of the letter of resignation of the member, following a member unexpectedly vacating his or her seat or following the declaration that the member is unable to discharge his or her duties of office.[148]

2 The newly elected member assumes office at the latest two months after his or her election.

3 If elections are held to more than one vacant seat, the order in which the elections are held is determined by the length of period in office of the previous office holder.

---

[148]    Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

**Art. 134**        Election to the Presidency of the Federal Council

The President of the Confederation and the Vice-President of the Federal Council are elected from its members individually, one after the other, for a term of office of one year.

## Chapter 3    Elections to the Federal Courts

**Art. 135**        Complete re-election

[1] Elections to the federal courts take place before the end of the ongoing term of office. Separate elections are held for each of the various courts, as well as for each of the judges and part-time judges.

[2] The elections take place either by means of the re-election of members who are standing for re-election or, in the case of vacant seats or the removal of a member, by means of a supplementary election.

**Art. 136**        Re-election

[1] The ballot paper is a list of names of the members standing for election, in the order of the length of their period in office.

[2] The voters may delete the names of individual candidates. Additional names are not taken into consideration. Ballot papers on which all the names have been deleted remain valid and count towards the calculation of the absolute majority.

[3] Only one ballot is held. Candidates who do not achieve an absolute majority may stand in the supplementary election.

**Art. 137**        Supplementary Elections

[1] Supplementary elections take place if a vacant seat arises or a member is not re-elected.

[2] If by the day before the elections the office the United Federal Assembly has not received more candidate nominations than there are vacant seats, a list of the names of the candidates in alphabetical order shall serve as the ballot paper, or a list without names but with the same number of lines as there are seats to be filled.

[3] In the first two ballots, all those who are eligible for election may be elected. From the third ballot onwards no further candidatures are permitted.

[4] Excluded from the election are:

a.   those who obtain fewer than ten votes from the second ballot onwards; and

b.   from the third ballot onwards, provided there are more candidates than vacant seats, the person who receives the lowest number of votes, unless more than one person receives this same number of votes.

**Art. 138**        Elections to the Presidency of the Federal Courts

The president and the vice-president of a court are elected for a term of office of two years. They are elected at the same time on two separate ballot papers.

## Chapter 4    Other Elections

### Art. 139

The Federal Assembly shall conduct other elections provided for by the Constitution or the law in accordance with the rules on the elections to the Federal Council.

## Chapter 5    Verification of Elections

### Art. 140

[1] The Federal Assembly shall conduct the verification of elections to the extent that this is provided for by the law.

[2] A committee of the United Federal Assembly shall appraise the elections, with the exception of the election of the General Secretary of the Federal Assembly. The committee may for this purpose hear the person whose election is to be verified, together with a delegation from nominating authority. The committee shall request the United Federal Assembly to confirm the election or not.

[3] The United Federal Assembly shall decide by secret ballot and by a majority of its voting members whether the election is to be confirmed or not. If the election is rejected, the nominating authority must hold a new election.

## Chapter 6[149]
## Declaration that a Federal Councillor or the Federal Chancellor is unable to Discharge the Duties of Office

### Art. 140*a*

[1] The Federal Assembly shall decide on whether to declare a Federal Councillor or the Federal Chancellor unable to discharge their duties of office.

[2] The Office of the Federal Assembly and the Federal Council shall be eligible to request such a declaration.

[3] Inability to discharge the duties of office must be presumed if the following requirements are fulfilled:

---

[149]   Inserted by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

a.   owing to serious health problem or other reasons that prevent him or her from returning to work, the person concerned is manifestly unable carry out his or her duties;

b.   the situation is expected to continue for a considerable length of time;

c.   the person concerned has failed to tender his or her legally valid resignation within a reasonable time.

4 The United Federal Assembly shall make its decision at the latest in the session following the submission of the request.

5 The relevant position shall become vacant upon the declaration that the person concerned is unable to discharge the duties of office.

## Title 7
## Procedural Relations between the Federal Assembly and the Federal Council
### Chapter 1     Federal Council Bills

### Art. 141     Dispatches on bills

1 The Federal Council shall submit its bills to the Federal Assembly together with a dispatch.

2 In the dispatch, the Federal Council shall provide justification for the bill and if necessary comment on the individual provisions. In addition, it shall explain the following points in particular, on condition that it is possible to provide a substantial amount of information thereon:

a.   the legal background, the consequences for constitutional rights, compatibility with superior law and the relationship with European law;

$a^{bis}$.[150] the use of Switzerland's room for manoeuvre in adopting international law;

$a^{ter}$.[151] the observance of the principle of subsidiarity in the allocation and performance of state tasks and the impact of the bill on communes, towns and cities, urban agglomerations and mountain areas;

$a^{quater}$.[152]   any examination of time limit on the bill;

b.   the delegation of powers provided for in a draft act;

c.   the points of view debated in the preliminary stages of the legislative process and their alternatives and the related position of the Federal Council;

[150]   Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).
[151]   Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).
[152]   Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

    d.    the planned implementation of the enactment, the planned evaluation of its implementation and the assessment of the planned implementation that took place in the preliminary stages of the legislative process;

    e.    the coordination of tasks and funding;

    f.[153]    the consequences for staffing and finances of the bill and its implementation for the federal government, cantons and communes, the methods for meeting the costs and the cost-benefit ratio;

    g.[154]    the consequences for the economy, society, the environment and future generations;

    gbis.[155]    the safeguarding of the responsibility and room for manoeuvre of the private individuals affected by a regulation;

    gter.[156]    the impact on the need for information and communication technologies and the related expenditure;

    h.[157]    the position of the bill in relation to the planning of legislation and the financial plan;

    i.    the consequences for gender equality;

    j.[158]    the consequences of the bill for the Swiss living abroad.

**Art. 142**    Budget, updates and the state accounts

[1] The Federal Council shall submit to the Federal Assembly:

    a.[159]    the draft for the Federal Budget;

    b.    the drafts for the ordinary updates and additional credits, two months prior to the start of the session in which they are to be considered;

    c.    the state accounts, every year two months prior to the start of the session in which they are to be considered.

[2] It shall accept the drafts for the budget as well as the accounts of the Federal Assembly, the federal courts, the Federal Audit Office, the Office of the Attorney General of Switzerland, the Supervisory Authority for the Office of the Attorney General of

---

153    Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

154    Amended by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

155    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

156    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

157    Amended by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

158    Inserted by No I of the FA of 15 June 2018, in force since 26 Nov. 2018 (AS **2018** 3461; BBl **2017** 6797, 6865).

159    Amended by Art. 65 No 1 of the Financial Budget Act of 7 Oct. 2005, in force since 1 May 2006 (AS **2006** 1275; BBl **2005** 5).

Switzerland and the FDPIC without modification and incorporate them into its draft budget and the state accounts.[160]

[3] The Federal Supreme Court is responsible for presenting the draft budget and the draft accounts of the federal courts to the Federal Assembly. The Administration Delegation of the Federal Assembly is responsible for presenting the draft budget and accounts of the Federal Assembly, the Finance Delegation for presenting the draft budget and accounts of the Federal Audit Office, and the Supervisory Authority for the Office of the Attorney General of Switzerland for itself and for the Office of the Attorney General of Switzerland. The FDPIC shall present the draft of its budget and its accounts to the Federal Assembly.[161] [162]

[4] The Federal Council shall arrange for projections on the expected annual return to be issued as per 30 June and 30 September. It shall notify the Finance Committees thereof.[163]

### Art. 143[164]      Financial Plan

[1] The Financial Plan covers the three years following the year to which the budget relates.

[2] The structure and content of the Financial Plan combine the legislative planning with the financial planning (integrated legislative and financial planning).

[3] The Federal Council shall submit the financial plan together with the draft budget to the Federal Assembly for its attention in the form of a simple federal decree.

[4] The Federal Assembly may add mandates for an amendment of the financial plan to the simple federal decree.

[5] The Federal Council normally fulfils these mandates in terms of the draft budget for the year after the following year.

### Art. 144        Annual objectives and annual report of the Federal Council

[1] The Federal Council gives notice of its annual objectives for the next year by the start of the final ordinary session of the year. These objectives must be coordinated with the legislature plan.

[2] The Federal Council shall submit to the Federal Assembly the reports on the conduct of its business in the previous year two months before the start of the session in which they are to be considered.

[160]   Amended by No I of the FA of 21 March 2025 (Submission of Procedural Requests and Parliamentary Initiatives), in force since 8 Sept. 2025 (AS **2025** 530; BBl **2024** 1799, 2462).

[161]   Third sentence inserted by Annex 1 No II 12 of the Data Protection Act of 25 Sept. 2020, in force since 1 Sept. 2023 (AS **2022** 491; BBl **2017** 6941).

[162]   Amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).

[163]   Inserted by Art. 65 No 1 of the Financial Budget Act of 7 Oct. 2005, in force since 1 May 2006 (AS **2006** 1275; BBl **2005** 5).

[164]   Amended by Annex No 1 of the FA of 26 Sept. 2014 (New Management Model for the Federal Administration), in force since 1 Jan. 2016 (AS **2015** 1583; BBl **2014** 767).

[3] In its annual report, the Federal Council presents the main aspects of its activities during the financial year. It provides information on whether the main annual objectives for the financial year have been achieved, on the implementation of the legislature plan and of the legislative programme and on the status of the indicators relevant to the general assessment of the situation and the verification of the achievement of objectives. It must justify any divergences from the planned objectives as well as any unplanned activities.[165]

### Art. 145        Procedure for the annual report

[1] The President of the Confederation is responsible for presenting the report of the Federal Council on the conduct of its business to the Assembly, unless the standing orders of the councils provide otherwise.[166]

[2] The Federal Assembly shall approve the report by means of a simple Federal Decree.

### Art. 146[167]        Legislature plan

[1] At the start of each legislature period, the Federal Council shall submit to the Federal Assembly a dispatch on the legislature plan and a draft simple federal decree on the legislature plan.

[2] The simple federal decree shall define the policy guidelines and objectives of the legislature plan and assign to these the legislation of the Federal Assembly that is planned and the additional measures required to achieve each of these objectives.

[3] In the dispatch on the legislature plan, indicators shall be assigned to the objectives that allow the achievement of the objectives to be verified. The dispatch shall also contain an analysis of the situation that is based on the indicators. In addition, it shall provide a summary of all the draft legislation that the Federal Council plans to submit to the Federal Assembly during the legislature period (the legislative programme).

[4] The dispatch shall present the legislature financial plan. This shall set out the financial requirements for the legislature period, and indicate how the requirements are to be met. The objectives and measures of the legislature plan and the legislature financial plan shall be coordinated with each other in terms of subject matter and time scheduling.

### Art. 147[168]        Procedure for the legislature plan

[1] The two councils shall consider the legislature plan in two successive sessions.

[2] The standing orders of the councils may provide that:

---

[165]    Amended by No I of the FA of 22 June 2007 (Legislature plan), in force since 1 Dec. 2007 (AS **2007** 5231; BBl **2006** 1837, 1857).
[166]    Amended by No I of the FA of 3 Oct. 2008 (Annual Report of the Federal Council), in force since 1 March 2009 (AS **2009** 697; BBl **2008** 1095, 1105).
[167]    Amended by No I of the FA of 22 June 2007 (Legislature plan), in force since 1 Dec. 2007 (AS **2007** 5231; BBl **2006** 1837, 1857).
[168]    Amended by No I of the FA of 22 June 2007 (Legislature plan), in force since 1 Dec. 2007 (AS **2007** 5231; BBl **2006** 1837, 1857).

a.    a council, in considering the legislature plan, decides only on proposals and minority proposals made by the committee responsible for the preliminary examination; and

b.    other persons entitled to submit proposals must submit their proposals to this committee before the start of the detailed discussion of the federal decree.

**Art. 148**        Further plans and reports

[1] In addition to the plans and reports required by the law, the Federal Council may submit further plans and reports to the Federal Assembly for its information or attention.

[2] It may submit to the Federal Assembly the objectives or conclusions of significant plans or reports in the form of the draft of a simple federal decree or federal decree.

[3] The Federal Council shall submit a regular report to the Federal Assembly on Switzerland's foreign policy.

[3bis] It shall report regularly to the Federal Assembly on the achievement of the strategic goals laid down for the units that have become autonomous in accordance with Article 8 paragraph 5 of the Government and Administration Organisation Act of 21 March 1997[169].[170]

[3ter] Once the European Commission's legislative proposal for the multiannual financial framework of the European Union has been made available, the Federal Council shall submit a planning report to the Federal Assembly on all its intended associations with the programmes and agencies of the European Union in areas outside of access to the internal market.[171]

[4] The Federal Assembly may also take decisions in principle and planning decisions on important plans and reports in the form of a simple federal decree or a federal decree.

**Art. 149**        Submission of dispatches and reports by the Federal Council

[1] The Federal Council shall submit its dispatches and reports to the Parliamentary Services fourteen days at the latest before the meeting of the committee responsible for the preliminary examination.

[2] The Parliamentary Services shall pass on to the assembly members documents submitted by the Federal Council and by the Federal Administration for the attention of the Federal Assembly or of its committees.

---

[169]   SR **172.010**
[170]   Inserted by No I 1 of the FA of 17 Dec. 2010 on the Participation of the Federal Assembly in the Management of Autonomous Units, in force since 1 Jan. 2012 (AS **2011** 5859; BBl **2010** 3377, 3413).
[171]   Inserted by No I of the FA of 22 Dec. 2023 (Planning Report), in force since 1 June 2024 (AS **2024** 200; BBl **2023** 1081, 1482).

## Chapter 2
## Procedural Relations between the Committees and the Federal Council

**Art. 150**          General rights to information

[1] The committees and the sub-committees appointed by them are, for the fulfilment of their duties, entitled:

  a.   to invite the Federal Council to attend meetings in order to provide information and to request reports from the Federal Council;

  b.   to obtain documents from the Federal Council for inspection;

  c.   to question persons in the service of the Confederation with the consent of the Federal Council.

[2] They have no right to information:

  a.   from the joint reporting procedure or the deliberations in Federal Council meetings;

  b.   that is classified as secret in the interests of state security or the intelligence services or the disclosure of which to unauthorised persons may be seriously detrimental to national interests.[172]

[3] They shall take appropriate precautions to ensure the preservation of secrecy. They may in particular provide that information that is subject to official secrecy in terms of Article 8 is passed on to only one sub-committee.

[4] In the event of any disagreement between a committee and the Federal Council over the extent of rights to information, the committee may call on the Presiding College of the council to which it pertains. The Presiding College mediates between committee and the Federal Council.

[5] The Presiding College shall have the final decision where there is disagreement between the committee and the Federal Council as to whether the information is required by the committees for the fulfilment of their duties in accordance with paragraph 1.

[6] The Federal Council may submit a report to the committee instead of permitting it to inspect the documents, if there is disagreement between it and the committee as to whether the committee has a right to the information in terms of paragraph 2, where mediation by the Presiding College of the Council proves unsuccessful.

[7] The Presiding College of the Council, when preparing to mediate, may inspect the documents held by the Federal Council and the Federal Administration without limitation.

**Art. 151**          Consultation on ordinances

[1] If the Federal Council is preparing an important ordinance, the committee responsible may request that it be consulted with regard to the same.

---

[172]   Amended by No I of the FA of 17 June 2011 (Specification of the Information Rights of the Supervisory Committees), in force since 1 Nov. 2011 (AS **2011** 4537; BBl **2011** 1817, 1839).

[2] If an ordinance requires to be amended or enacted following the adoption of an enactment of the Federal Assembly, the committee shall decide in the vote on the bill in its entirety whether it wishes to be consulted.

[2bis] The Federal Council shall consult the relevant committees on the draft ordinances and amendments to ordinances that it issues on the basis of Article 185 paragraph 3 of the Federal Constitution or on the basis of a statutory authorisation to deal with a crisis in accordance with Annex 2. If the draft contains information classified as 'confidential' or 'secret', it shall inform the Finance Delegation and the Control Delegation instead.[173]

[3] The Federal Council shall inform the Federal Assembly of the ordinances that it is preparing.

**Art. 152**        Information and consultation on foreign policy

[1] The committees responsible for foreign policy and the Federal Council shall have regular contact with each other in order to exchange views.

[2] The Federal Council shall inform the Presiding Colleges of the councils and the committees responsible for foreign policy regularly, comprehensively and in good time of important foreign policy developments. The committees responsible for foreign policy shall also pass on this information to other committees involved in foreign policy related matters.

[3] The Federal Council shall consult the committees responsible for foreign policy on important plans, on planned changes to the number of Switzerland's diplomatic and consular representations abroad, and on the guidelines and directives relating to mandates for important international negotiations before it decides on or amends the same. It shall inform these committees of the status of its plans and of the progress made in negotiations.[174]

[3bis] The Federal Council shall consult the committees responsible before it:

    a.    provisionally applies an international treaty that must be concluded or approved by the Federal Assembly; or

    b.    urgently withdraws from an international treaty when any withdrawal should be approved by the Federal Assembly.[175]

[3ter] If the committees of both councils are against provisional application or immediate withdrawal, the Federal Council shall refrain therefrom.[176]

---

[173]    Inserted by No I of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).

[174]    Amended by Annex No III 1 of the Swiss Abroad Act of 26 Sept. 2014, in force since 1 Nov. 2015 (AS **2015** 3857; BBl **2014** 1915, 2617).

[175]    Inserted by No I 2 of the FA of 8 Oct. 2004 on the Provisional Application of International Treaties (AS **2005** 1245; BBl **2004** 761 1017). Amended by No I 1 of the FA of 21 June 2019 on the Authority to Conclude, Amend and Withdraw from International Treaties, in force since 2 Dec. 2019 (AS **2019** 3119; BBl **2018** 3471, 5315).

[176]    Inserted by No I 1 of the FA of 21 June 2019 on the Authority to Conclude, Amend and Withdraw from International Treaties, in force since 2 Dec. 2019 (AS **2019** 3119; BBl **2018** 3471, 5315).

[4] In urgent cases, the Federal Council shall consult the presidents of the committees responsible for foreign policy. The presidents shall inform their committees without delay.

[5] The committees responsible for foreign policy or other relevant committees may request that they be informed or consulted by the Federal Council.

**Art. 153**[177]        Rights to information of the supervisory committees

[1] In addition to the rights to information under Article 150, the supervisory committees have the right to deal directly with any authorities, offices and other agencies entrusted with the tasks of the Confederation and to obtain the information and documents from them that they require in application of Article 156. They may assign the responsibility for individual investigations to their secretariat.

[2] They may obtain information and documents from persons and offices outside the Federal Administration, provided this is necessary for the fulfilment of their supervisory control. Persons outside the Federal Administration who were previously in the service of the Confederation remain subject to Article 156. The right to refuse to testify under Article 42 of the Federal Act of 4 December 1947[178] on Federal Civil Procedure applies by analogy.

[3] They may summon persons required to provide information by means of a ruling issued by the committee president in analogous application of the Article 49, 50 and 201–209 the Criminal Procedure Code[179] and, in the event that such persons fail to appear without excuse, have them brought before the committees by federal or cantonal police officers.

[4] An objection may be filed against rulings on summonses or enforced appearances within ten days with the president of the council to which the committee president making the decision belongs. The objection has no suspensive effect. If the council president holds that the ruling is unlawful or unreasonable, he or she may award the person making the objection compensation in satisfaction. The decision on the objection is final.

[5] Before the supervisory committees question a member of the Federal Council, they shall inform him or her of the subject matter of the questions. They shall inform the Federal Council prior to questioning persons who are or have been subordinated to it. They shall consult with the Federal Council at its request before persons are required to provide information or hand over documents.

[6] Their decisions on exercising their rights to information are final. They have no right to inspect:

    a.    the minutes of Federal Council meetings;

---

[177]   Amended by No I of the FA of 17 June 2011 (Specification of the Information Rights of the Supervisory Committees), in force since 1 Nov. 2011 (AS **2011** 4537; BBl **2011** 1817, 1839).
[178]   SR **273**
[179]   SR **312.0**

b.    documents that are classified as secret in the interests of state security or the intelligence services or the disclosure of which to unauthorised persons may be seriously detrimental to national interests.

7 They shall take appropriate precautions to preserve secrecy in accordance with Article 150 paragraph 3. For this purpose, as well as in cases where their rights to information are insufficient for the proper exercise of supervisory control, they may mandate their delegations to investigate any specific issue. They shall issue directives on the preservation of secrecy in their area of responsibility, which shall in particular restrict access to accompanying reports.

**Art. 154**        Rights to information of the delegations to the supervisory committees

1 No information may be withheld from the delegations to the supervisory committees.

2 For the purpose of fulfilling their duties, the delegations to the supervisory committees, in addition to the rights to information in terms of Articles 150 and 153, have the right:

a.    to obtain:
    1.    minutes of Federal Council meetings,
    2.    documents that are classified as secret in the interests of state security or the intelligence services or the disclosure of which to unauthorised persons may be seriously detrimental to national interests;

b.    to question persons as witnesses; Article 153 paragraphs 3 and 4 applies by analogy to summonses and enforced appearances.[180]

3 All Federal Council decisions including the proposals and accompanying reports shall be notified to the Finance Delegation and the Control Delegation as they are made. They shall jointly specify the details on service, inspection and safekeeping.[181]

**Art. 154a[182]**    Effect of investigations by the Control Delegation on other procedures and enquiries

1 Federal disciplinary or administrative investigations relating to persons or circumstances that are the subject of an investigation by the Control Delegation may only be commenced or continued with the authorisation of the Control Delegation.

2 The Control Delegation shall decide on authorisation after consulting the Federal Council.

---

[180]    Amended by No I of the FA of 17 June 2011 (Specification of the Information Rights of the Supervisory Committees), in force since 1 Nov. 2011 (AS **2011** 4537; BBl **2011** 1817, 1839).

[181]    Amended by No I of the FA of 17 June 2011 (Specification of the Information Rights of the Supervisory Committees), in force since 1 Nov. 2011 (AS **2011** 4537; BBl **2011** 1817, 1839).

[182]    Inserted by No I of the FA of 17 Dec. 2004, in force since 1 May 2005 (AS **2005** 4793; BBl **2004** 1469, 1477).

Parliament Act                                                              **171.10**

³ If there is any dispute as to whether authorisation is required, it shall require the consent of two thirds of all the members of the Control Delegation.

⁴ An investigation by the Control Delegation shall not preclude the conduct of civil or administrative proceedings or of preliminary investigations and court proceedings in criminal cases.

**Art. 155**        Hearings by delegations to the supervisory committees

¹ Before each hearing, it must be established whether a person is to be interviewed as a person providing information or as a formal witness.

² The formal interviewing of witnesses shall be ordered only if the facts of the case cannot be sufficiently clarified by another means. Any person summoned is obliged to testify.

³ If an investigation is directed solely or mainly towards one person, that person may be interviewed only as a person providing information.

⁴ Witnesses must be reminded of their duty to give evidence and their obligation to tell the truth, and persons providing information of their right to refuse to give information. The right to refuse to testify in terms of Article 42 paragraph 1 of the Federal Act of 4 December 1947[183] on Federal Civil Procedure is reserved.

⁵ In order to maintain a record of the proceedings, the hearings shall be recorded on audio tape. The transcript of the tape shall be signed by the persons interviewed.

⁶ Articles 166–171 apply in respect of the procedure and the rights of the persons concerned.

**Art. 156**        Position of persons in the service of the Confederation

¹ Persons in the service of the Confederation are obliged to provide information completely and truthfully and to indicate all useful documents.

² The right to refuse to testify in terms of Article 42 Paragraph 1 of the Federal Act of 4 December 1947[184] on Federal Civil Procedure is applicable by analogy.

³ Persons in the service of the Confederation may not suffer any prejudice as a result of making truthful statements to a committee. No proceedings may be taken against them based on statements made to a committee without the prior consultation of the committee concerned.

⁴ Persons in the service of the Confederation in terms of this Act are the personnel of the Confederation and persons who are directly entrusted with public duties on behalf of the Confederation. The nature of their relationship with the Confederation is not decisive.

---

[183]  SR **273**
[184]  SR **273**

**Art. 157**          Opinion of the authority concerned

The authority concerned shall have the opportunity to express its opinion before any supervisory committee or delegation thereof issues a report on deficiencies in the conduct of business or in financial management.

**Art. 158**          Recommendations to the responsible authority

[1] A supervisory committee or delegation may make recommendations to the responsible authority that relate to its mandate in the area of supervisory control.

[2] The authority notifies the supervisory committee or delegation of the implementation of the recommendations.

[3] The recommendations and the opinion of the responsible authority are made public unless this is contrary to interests that are worthy of protection.

# Chapter 3
# Representation of the Federal Council in the Federal Assembly

**Art. 159**          Participation of the Federal Council in council meetings

[1] The head of the department responsible for the field of activity to which the business for consideration belongs shall normally participate in the council meetings.

[2] A member of the Federal Council may be accompanied by persons in the service of the Confederation or by experts. By way of exception, such persons may, at the request of the member of the Federal Council, be permitted to speak on matters that require specialist technical knowledge.

**Art. 160**          Participation of the Federal Council in committee meetings

[1] When business is being considered that has been raised by the Federal Council or with regard to which it has expressed an opinion, a member of the Federal Council normally participates in the committee meetings.

[2] The members of the Federal Council may with the agreement of the committee president be represented by persons in the service of the Confederation.

[3] The members of the Federal Council and their representatives have the right to be accompanied by an expert.

**Art. 161**          Participation of the Federal Chancellor

The Federal Chancellor is responsible for matters relating to the business of the Federal Chancellery in the Assembly and in the committees.

## Title 8
## Procedural Relations between the Federal Assembly and the Federal Courts and Supervisory Authority for the Office of the Attorney General of Switzerland[185]

### Art. 162

[1] The following provisions on procedural relations between the Federal Assembly and the Federal Council are applicable in an analogous manner to procedural relations between the Federal Assembly and the federal courts:

    a.    budget and state accounts (Art. 142 para. 1);

    b.    annual report (Art. 144 para. 2 and 145 para. 2);

    c.    dealings between the committees and the Federal Council (7th Title, Chapter 2.);

    d.    parliamentary investigation committee (9th Title).

[2] The Federal Supreme Court shall appoint a member who is responsible in the Assembly and in its committees for matters relating to the drafts of the budget, the accounts and the annual reports of the federal courts as well as their views on parliamentary procedural requests that relate to the conduct of their business or their financial policy.

[3] The member of the Federal Supreme Court may be accompanied in the committees by persons in the service of the Confederation, or, with the agreement of the committee president, be represented by such persons.

[4] The committees shall allow the federal courts the opportunity to express their views where a bill subject to their preliminary examination relates to the competencies, the organisation or the administration of the federal courts.

[5] Paragraphs 1–4 apply by analogy to the Supervisory Authority for the Office of the Attorney General of Switzerland and the FDPIC.[186]

## Title 9         Parliamentary Investigation Committee

### Art. 163        Duties and appointment

[1] The Federal Assembly may in its exercise of supervisory control, if events of importance require investigation, appoint a joint Parliamentary Investigation Committee (PInC) of both councils for the purposes of investigating the circumstances or of obtaining additional information on which to base its assessment.

---

[185]   Amended by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010, in force since 1 Jan. 2011 (AS **2010** 3267; BBl **2008** 8125).

[186]   Inserted by Annex No II 2 of the Law Enforcement Authorities Act of 19 March 2010 (AS **2010** 3267; BBl **2008** 8125). Amended by No I of the FA of 21 March 2025 (Submission of Procedural Requests and Parliamentary Initiatives), in force since 8 Sept. 2025 (AS **2025** 530; BBl **2024** 1799, 2462).

[2] Appointment is by simple Federal Decree following consultation with the Federal Council. The decree shall determine the mandate of the investigation committee and the financial resources available to it.

### Art. 164        Organisation

[1] The investigation committee shall comprise an equal number of members from each council.

[2] For the election of the members and of the chairpersons and for the decision-making procedure, Article 43 paragraphs 1–3 and Article 92 paragraphs 1 and 2 apply respectively by analogy.

[3] The investigation committee shall have its own secretariat. The required staff are made available by the Parliamentary Services. The committee may appoint further staff in accordance with the provisions of the Code of Obligations.

### Art. 165        Procedure

[1] On the basis of its mandate and of the law, the investigation committee shall take the procedural measures required for its investigations.

[2] The authorities of the Confederation and the cantons must provide the investigation committee with the administrative and legal assistance that it requires.

[3] Minutes shall be taken of the principal procedural events.

### Art. 166        Rights to information

[1] For the fulfilment of its mandate as stipulated in the Federal Decree, the investigation committee has the same rights to information as the delegations to the supervisory committees (Art. 150 and 153–156).

[2] In individual cases, the investigation committee may appoint an investigating officer to gather evidence. Investigating officers shall work in accordance with the mandate and the directives of the committee.

[3] The investigation committee is not permitted to delegate the right to interview witnesses to the investigating officers.

[4] Persons questioned by the investigating officer have the right to refuse to make a statement or to hand over documents. In such cases, such persons shall be interviewed by the investigation committee.

[5] For the gathering of evidence, Articles 42–48 and 51–54 of the Federal Act of 4 December 1947[187] on Federal Civil Procedure apply by analogy, provided there is no provision to the contrary in this Act.

---

[187]   SR **273**

### Art. 167   Rights of the Federal Council

[1] The Federal Council has the right to attend the questioning of persons providing information and of witnesses and to ask additional questions as well as to inspect documents that have been handed over together with expert opinions and the transcripts of interviews conducted by the investigation committee.

[2] It may express its views on the result of the investigation before the investigation committee and in a report to the Federal Assembly.

[3] The Federal Council shall appoint one of its members to act on its behalf in dealings with the investigation committee. The member may for the purpose of exercising the rights of the Federal Council in accordance with paragraph 1 appoint a suitable liaison person.

### Art. 168   Rights of persons concerned

[1] The investigation committee shall identify the persons whose interests are directly affected by the investigation and inform these persons without delay about the investigation. They shall be accorded the right conferred by Article 167 paragraph 1, to the extent that they are affected.

[2] The investigation committee may restrict or revoke the rights of the person concerned to be present at hearings and to inspect files if this is required in the interests of the ongoing investigation or for the protection of third parties. In such cases, the committee shall inform the person concerned, either verbally or in writing, of the essential content of statements made or documents and give the person the opportunity to express his or her views thereon and to indicate further evidence.

[3] Evidence that is not made known to a person concerned may not be used against that person.

[4] The investigation committee may permit a person concerned, at their request, to be accompanied by a lawyer for the entire proceedings or at individual meetings, if this is required for the protection of the lawful interests of the person concerned. The lawyer may only request further evidence and ask additional questions.

[5] Following the conclusion of the investigation and prior to the submission of the report to the councils, the persons against whom allegations have been made have the right to inspect the relevant sections of the draft report. They shall have the opportunity to express their views thereon within a reasonable period either verbally or in writing before the investigation committee.

[6] Their verbal or written opinions must be summarised in the report.

### Art. 169   Obligation of secrecy

[1] Any person who participates in meetings and interviews is subject to the obligation of secrecy until the report to the Federal Assembly is published. Persons questioned are in particular not permitted to report to their superiors on the questioning or on requests for documents.

[2] After the submission of the report, the general provisions on the confidentiality of committee meetings apply.

[3] The president and the vice-president of the investigation committee, or if they are no longer members of the council, the president and the vice-president of the Control Delegation shall decide on applications to inspect files during the protective period that applies in terms of Articles 9–12 of the Archiving Act of 26 June 1998[188].

### Art. 170        Perjury by witnesses and expert witnesses

[1] Any person who appears as a witness in proceedings before the investigation committee and gives false evidence or appears as an expert witness and provides a false report or a false expert opinion shall be liable to the penalties provided under Article 307 of the Swiss Criminal Code[189].

[2] Any person who refuses without lawful reason to make a statement or to hand over documents shall be liable to the penalties provided under Article 292 of the Swiss Criminal Code.

[3] Offences, including breach of the obligation of secrecy in terms of Article 169 paragraph 1, are subject to federal jurisdiction.

### Art. 171        Effect on other proceedings and investigations

[1] If the Federal Assembly has decided to appoint an investigation committee, no other committee is permitted to conduct further investigations into the events that are the subject of the mandate of the investigation committee.

[2] The appointment of an investigation committee shall not prevent the conduct of civil or administrative court proceedings or of preliminary investigations and court proceedings under criminal law.

[3] Disciplinary[190] or administrative inquiries at federal level that relate to matters or persons that are or have been the subject of a parliamentary investigation may only be initiated with the authorisation of the investigation committee. Ongoing proceedings must be suspended until the investigation committee authorises their continuation.

[4] In the event of any dispute as to whether authorisation is required, the investigation committee decides. If the investigation committee has been disbanded, the president and the vice-president of the Control Delegation decide.

---

[188]   SR **152.1**
[189]   SR **311.0**
[190]   Term in accordance with No I of the FA of 17 Dec. 2004, in force since 1 May 2005 (AS **2005** 4793; BBl **2004** 1469, 1477).

## Title 10        Final Provisions

**Art. 172**        Repeal and amendment of current legislation

The repeal and the amendment of the current legislation are regulated in the Annex[191].

**Art. 173**        Transitional provisions

*1. Transitional provision relating to Art. 13 (Disciplinary measures)*

Article 13 applies to infringements that are committed after this Act comes into force.

*2. Transitional provision relating to Articles 14 and 15 (Incompatibility)*

[1] For the members of the Council of States whose term of office extends beyond the general election to the National Council that follows the date on which Articles 14 and 15 come into force, the previous provisions on incompatibility apply until the end of their terms of office.

[2] If the Act comes into force after 31 July in the year of a general election to the National Council, Articles 14 and 15 first come into force at the start of the first session following the next general election to the National Council.

*3. Transitional provision relating to the 5th Title (Procedure in the Federal Assembly)*

The previous law also applies to business that is pending in either council on the date on which this Act comes into force.

*4. Transitional provision relating to the 9th Title (Parliamentary Investigation Committee)*

Articles 163–171 apply to parliamentary investigation committees that are appointed after the date on which this Act comes into force.

*5.[192] Transitional provision relating to Art. 40a (Judiciary Committee)*

[1] The Judiciary Committee is responsible for the initial appointment of judges to the divisions of the Federal Administrative Court.

[2] In making the appointments, appropriate account shall be taken of the specialist knowledge of the judges and the official languages shall be taken.

*6. 193 Transitional provision relating to Art. 86 para. 4, 97 para. 2 and 101 para. 2 and 3 (Popular Initiatives)*

The amendments to Articles 86 paragraph 4, 97 paragraph 2 and 101 paragraphs 2 and 3 apply to popular initiatives in respect of which the Federal Council has yet to submit

---

[191]    Today: Annex 1.
[192]    Inserted by Art. 5 No 1 of the FA of 18 March 2005 on the Establishment of the Federal Administrative Court, in force from 1 Oct. 2005 until 31 Dec. 2006 (AS **2005** 4603; BBl **2004** 4787).
[193]    Inserted by No I of the FA of 3 Oct. 2008 (Parliamentary Law. Miscellaneous Amendments), in force since 2 March 2009 (AS **2009** 725; BBl **2008** 1869, 3177).

a draft federal decree on the popular initiative to the Federal Assembly as of the commencement of the amendment to this Act of 3 October 2008.

*7.[194] Transitional provision relating to Art. 105 para. 1[bi] in accordance with the Amendment of 25 September 2009 (Extension of the period for dealing with a Popular Initiative)*

The new law applies to federal popular initiatives that are pending when the Amendment to this Act of 25 September 2009 comes into force.

### Art. 174          Commencement

[1] This Act is subject to an optional referendum.

[2] The Conference for Coordination shall determine the date on which this Act comes into force.

[3] Articles 14, 15 and 61 shall come into force at the start of the first session following the first general election to the National Council to take place after the date on which this Act comes into force.[195] On the same date, Article 18 of the Federal Act of 17 December 1976[196] on Political Rights (Annex[197] No II 1) shall be repealed.

Commencement Date: 1 Dec. 2003[198]

## Transitional Provision relating to the Amendment of 5 October 2007[199]

Article 122 applies in its new version of 5 October 2007 to motions that have not yet been adopted by both councils at the time at which this amendment takes effect.

## Transitional Provision relating to the Amendment of 17 June 2011[200]

The previous law applies when dealing with applications to lift immunity and similar applications that were pending when the Amendment to this Act of 17 June 2011 came into force.

---

[194]  Inserted by No II of the FA of 25 Sept. 2009 (Conditional Withdrawal of a Popular Initiative), in force since 1 Feb. 2010 (AS **2010** 271; BBl **2009** 3591, 3609).
[195]  First day of the winter session 2007 (3 Dec. 2007).
[196]  SR **161.1**
[197]  Today: Annex 1.
[198]  Ordained by the Coordination Conference of the FA of 16 Sept. 2002 (AS **2003** 3593).
[199]  AS **2008** 2113; BBl **2007** 1457, 2149
[200]  AS **2011** 4627; BBl **2010** 7345, 7385

## Transitional Provision relating to Articles 109 paragraphs 2 and 3[bis] and 116 paragraph 3[bis] in accordance with the Amendment of 21 June 2013[201]

The previous law applies to parliamentary initiatives and cantonal initiatives that have already been assigned to a committee for preliminary examination when this amendment comes into force.

---

[201]   AS **2013** 3687; BBl **2011** 6793, 6829

*Annex 1*[202]
(Art. 172)

# Repeal and Amendment of Current Legislation

I

Following enactments are repealed:

1.  Guarantee Act of 26 March 1934[203].

2.  Decree the Federal Assembly of 15 November 1848[204] relating to Oath of Office sworn by the Supreme Federal Authorities.

3.  Parliamentary Procedure Act of 23 March 1962[205]. Article 8[septies] remains in force until Article 61 of the Parliament Act comes into force (Art. 174 para. 3).

II

The following enactments are amended as follows:

---

[202]  Originally: Annex.
[203]  [BS **1** 152; AS **1962** 773 Art. 60 para. 2; **1977** 2249 No I 121; **1987** 226, **2000** 273 Annex No I 414; **2003** 2133 Annex No 3]
[204]  [BS **1** 461]
[205]  [AS **1962** 811; **1984** 768, **1985** 452; **1987** 600 Art. 16 No 3; **1989** 257; **1990** 1642; **1992** 2344; **2000** 273]

Parliament Act **171.10**

*Annex 2*[206]
(Art. 2 para. 3[bis], 121 para. 1[ter], 122 para. 1[bis] and 151 para. 2[bis])

The following provisions contain legal authorisations to deal with a crisis:

1.   Article 55 of the Asylum Act of 26 June 1998[207],
2.   Article 62 of the Debt Enforcement and Bankruptcy Act of 11 April 1889[208],
3.   Articles 31–34 of the National Economic Supply Act of 17 June 2016[209],
4.   Articles 6 and 7 of the Customs Tariff Act of 9 October 1986[210],
5.   Article 48 of the Telecommunications Act of 30 April 1997[211],
6.   Articles 6 and 7 of the Epidemics Act of 28 September 2012[212].

[206]   Inserted by No II of the FA of 17 March 2023 (Improvements in the Organisation and Procedures of Parliament, Especially in Crisis Situations), in force since 4 Dec. 2023 (AS **2023** 483; BBl **2022** 301, 433).
[207]   SR **142.31**
[208]   SR **281.1**
[209]   SR **531**
[210]   SR **632.10**
[211]   SR **784.10**
[212]   SR **818.101.**.

**171.10**                                                        Federal Assembly