```
                      UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK

In re:                                   :
                                               Docket #23cv5874
                                         :
 IN RE CREDIT SUISSE SECURITIES
 CLASS ACTIONS                           :
                                               New York, New York
                                         : November 19, 2025


----------------------------------- :


                        PROCEEDINGS BEFORE
                   THE HONORABLE SARAH L. CAVE,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff Diabat:   KAHN SWICK & FOTI, LLC
                        BY:  CRAIG GERACI, ESQ.
                        1100 Poydras Street, Suite 960
                        New Orleans, Louisiana 70163

                        KAHN SWICK & FOTI, LLC
                        BY:  J. RYAN LOPATKA, ESQ.
                             KIM MILLER, ESQ.
                        250 Park Avenue, Suite 2040
                        New York, New York 10003

For Defendants:         CAHILL GORDON & REINDEL LLP
                        BY:  JASON HALL, ESQ.
                             TAMMY ROY, ESQ.
                             NICHOLAS MATUSCHAK, ESQ.
                        32 Old Slip
                        New York, New York 10005




Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

2

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

PROCEEDING                           3

THE COURT:  Good morning, this is Magistrate Judge Cave.  We're here for a conference in In re Credit Suisse Securities Fraud Class Actions, case number 23cv5874.  May I have the appearances starting with plaintiff's counsel please.

MR. CRAIG GERACI:  Hi, Your Honor, this is Craig Geraci for plaintiff Ali Diabat.

THE COURT:  All right.

MR. J. RYAN LOPATKA:  Good morning – good morning, Your Honor, Jay Lopatka also for lead plaintiff Diabat (inaudible).

THE COURT:  All right.

MS. KIM MILLER:  And Kim Miller for plaintiff.

THE COURT:  Very good.  Thank you.  And for defendants.

MR. JASON HALL:  Good morning, Your Honor, for Credit Suisse you have Jason Hall, Tammy Roy, and Nick Matuschak from Cahill Gordon.

THE COURT:  Okay.  Anyone I've missed?  All right, good morning again.  So I have the parties' letters regarding the list of documents about which Credit Suisse is asking FINMA to consider further to see if they are willing to waive the privilege issues.  So as I understand it, the parties differ as to both the

PROCEEDING                        4

documents that should be on the list as well as potentially the approach or how FINMA will consider the request.  So I guess I'd like to start in reverse order with the defendants since their letter came in first, and so, Mr. Hall, if you or one of your colleagues can elaborate on where things stand in the discussions with FINMA and what it is you're proposing.

MR. HALL:  Sure, Your Honor, I think maybe to start if I can just to level set, it may be helpful. We're in a little bit of an unusual position here because, although the plaintiff's motion is styled as a motion for an order compelling Credit Suisse to produce documents it's withheld or redacted, we're now in a world where we're talking about a lot of documents, meaning the documents cited in these two Swiss public reports, a lot of documents that haven't been elected or reviewed or produced or withheld or redacted.

And so there's a sort of universe of documents at issue here that is a little bit uncertain, and that is sort of the backdrop against which I think FINMA, you know, in the discussion with FINMA now is regressed, FINMA wants to know what it would be agreeing to essentially, which is why we're talking about lists of documents.  And I should say too that, also maybe not

PROCEEDING                    5

totally clear, but the two reports at issue, one was authored by FINMA, the other one was authored by the Swiss parliament or commission of the Swiss parliament, not by FINMA itself.  And so FINMA and we don't have complete visibility to what documents are in, especially that Parliament report which we think accounts for the vast bulk of the documents referenced across these two reports.  And so we're trying to get a handle on essentially what those documents are.

That's where we are, Your Honor, and we can talk about the lists.  I'm happy to talk about how to move forward.

THE COURT:  Right.  I mean, as I understood it when we met at our last conference, and the reason why plaintiffs were moving to compel as to Credit Suisse, is to, again, to step back a little bit, the reports refer to documents or communications between FINMA and Credit Suisse.  And so to the extent that those documents were in Credit Suisse's possession, custody, or control, essentially FINMA, Credit Suisse was saying that, because of the privilege that FINMA has asserted, even Credit Suisse was in a position of not being able to disclose those documents.  Am I stating that correctly?

MR. HALL:  Yes, you're absolutely right, Your

PROCEEDING                6

Honor, but I think maybe just, again, it's a level set. You know, we're talking I think on our list, just for simplicity, we're talking about 70 or so documents. Fewer than ten of those, it's our understanding, are in the United States.  So the (indiscernible) are in Switzerland not in the United States, haven't been part of the collection and review exercise we've done so far. And so essentially we've got 60 documents that we haven't seen, that FINMA hasn't seen and that it wants to see before, I mean it's, I think to put it simply, FINMA doesn't want to buy a pig in a poke here, they want to have clarity on what they're agreeing to before they agree.

I will say the tone of the conversation with FINMA was that they understand, you know, we gave them I think a fair description of what Your Honor's inclination was at the last conference, although you didn't rule, and they understand and are trying to move forward productively.  I don't think they're trying to obstruct.  I think they're trying to find a way to agree, but they don't want to agree sight unseen.  And so that's sort of where we are.

THE COURT:  I understand, but with respect to the other 60 documents, those are in the possession of

PROCEEDING                7

Credit Suisse in Switzerland?

MR. HALL:  So, Your Honor, I guess I should say two things here.  One, my understanding is that the bulk of the documents cited in the report didn't come from us, so it didn't come from the bank but rather came from FINMA at some point on some basis, meaning there was a production of documents to the Swiss Parliament, as we understand it, and then the Swiss Parliament selected the documents that it selected from that production and cited them in the report.

We expect, to the extent that there's a document where FINMA is the sender and Credit Suisse is the recipient or vice versa that those documents will also be in Credit Suisse's possession and in Switzerland.  And so we do expect to find those documents.  As I think we've made clear, we just haven't done the Swiss collection or review exercise yet, as the plaintiff knows.  And so to do that now we're just sort of taking that from scratch, and as I'm sure Your Honor can appreciate, that means collecting vast bulks of documents and then sifting through them to try to find communications.

The other thing that maybe isn't, is a little unusual for us in the U.S., these reports don't refer to

PROCEEDING                    8

exhibits by Bates number or append the exhibits.  These documents are referred to in some general terms, you know, the date of a communication from FINMA to Credit Suisse, not necessarily even indicating the names of the sender and the recipient.  And so it is going to be a search and collect exercise, not just pull the documents out of a folder exercise.

THE COURT:  Okay, so, in other words, Credit Suisse doesn't have either in the U.S. or in Switzerland sort of a repository of the documents that it sent to or received from FINMA?

MR. HALL:  Correct.  So there are going to be ordinary course email communications I think by and large, and so that's – correct, Your Honor.  We were hopeful that maybe someone in Switzerland at the time of the Parliamentary report had gone back and tried to collect the underlying documents, but that does not appear to be the case.

THE COURT:  Right.  Okay.  Well, there's something to be said for footnotes I suppose, would've been helpful, with citations.  Okay.  But I guess is it fair to say with respect, let's start small.  With respect to the ten documents, has Credit Suisse identified those or do you have those kind of collected

PROCEEDING                    9

in a folder?

MR. HALL:  So we do have those, and I think it maybe seven, not ten, but whatever the number is, it's a handful, and we have the ones that we were able to find in the U.S. collected.  Our hope, in terms of the process, was that we would agree with the plaintiffs on a list.  You know, we sent them the list in hopes that they would come back and say, oh, you missed the document that's cited on page 74, and we would add that document and we would have set and make sure that we had collected what we could from the U.S.  We will then I think send somebody from here to Zurich to sit in front of a terminal because of Swiss law restrictions and try to identify the rest in the Swiss collection and then take those documents to FINMA.  That was our hope.

I mean obviously now we're a little bit of a disconnect on the list which we're hoping we can bridge, but in terms of a process we can get them the U.S. documents soon and then I think hopefully soon thereafter the set from Switzerland.

THE COURT:  Right.  Okay.  Is there any merit to at least presenting them with whether it's seven or ten, presenting FINMA with those now and seeing if they're willing to sign off on those?

PROCEEDING                        10

MR. HALL:  We can do that, Your Honor, and we will do that if it's the Court's preference, sure.

THE COURT:  Okay.  All right, and then with respect to the plaintiff's list, have you gone through what they're proposing and are there any that you see on their list that you're willing to add to the list of 70?

MR. HALL:  Your Honor, candidly, and maybe I'm coming at this the wrong way, I didn't think of it that way.  The answer may very well be yes.  There are certainly things on there that we think are problematic which we, you know, as a categorical matter that we wanted to raise and then try to address.  So, candidly, the two lists have come up only in the past few days and the fact that we have this disconnect.

So I think that it would be fruitful for us to get on the phone with them and try to figure out whether there's some of this we can agree to and some that we still disagree on.  I do think there are some issues that their lists reflect that maybe with the Court's instruction could be, or guidance, could be helpful just to help us move that forward.

THE COURT:  Right, I mean I haven't had a chance to go through all 42 pages of the plaintiff's lists, but it seems like there are some things that

PROCEEDING                    11

maybe it's a little bit lost in translation, but you're talking about the same things.  So just looking at the first page, for example, there's a discussion of the assessment letters, and it seems like there's multiple entries for the May 23, 2022 assessment letter.  I don't know if I'm incorrect in doing this, but I assume there's just one May 23, 2022 assessment letter, so that's just one document instead of four entries.  But, you know, and then I'm guessing you have some of the other, just from what you said in your letter, places where it just refers to discussions or refers to regular meetings or something like that but there's not, that's where you're saying that there's not a specific document that you think you can identify.

MR. HALL:  Yeah.  Yeah, and I think, you know, here, Your Honor, it may be just worth pausing for a minute until we take the point, you know, one assessment letter is one assessment letter, and we're not hung up on the counting there.  I think there's a difference maybe of a view on things like references to communications that might be oral communications, and I think that our understanding was we were here on a motion to compel production of documents and we were going to try to find documents.  I think that, you know,

PROCEEDING                    12

we understand the plaintiff's view to be that they would like clarity now on how, you know, how will deposition examination go and things like that which we just, frankly, don't think are ripe yet.  We don't think that they're presented on this motion.  And I guess our view would be it'll be probably more efficient for us to try to get these documents, get an agreed set of documents produced, and then, you know, if we have another issue that needs to be raised to Your Honor or just addressed by the parties before we get to depositions, which, frankly, are months down the road right now, that we come back and do that.

THE COURT:  Well, I tend to agree, but is it your understanding that FINMA takes a different view between producing a document versus Credit Suisse witness testifying about it in a deposition?

MR. HALL:  No, but, candidly, Your Honor, we just haven't asked them that question.  You know, I will say, as Your Honor saw, they gave us an order asserting the privilege broadly.  My having spoken now to them my expectation is that they are considering, in light of Your Honor's inclinations, whether to move from that position on some basis, and obviously they haven't told us what their ultimate position is.  But I think that it

PROCEEDING                      13

would be, in fairness, you know, we should get their position and see if we have a problem before we, you know, we have a dispute with the Court.

THE COURT:  Yeah, I mean it seems to me, while I was suggesting that I might take a different view as to documents, producing documents versus deposition, I'm not saying that that necessarily would be principled or what the Court would endorse.  You know, in other words --

MR. HALL:  Understood, no.

THE COURT:  Once you produce the documents, it's not, you know, precluding people from answering questions about them.  It strikes me as problematic just in the --

MR. HALL:  Yeah, you know, again, I don't – agreed, Your Honor, and we don't want to anticipate problems that may never come to be problems.  So that was where we were --

THE COURT:  Right.  Okay.  All right, but the bottom line is what you can share whether it's seven documents or ten documents, the ones that are in the U.S. that are on your list, you are prepared to provide those to FINMA in the near term and try to see if they're willing to sign off on the production at least

PROCEEDING                    14

of those documents, and then, two, you're willing to meet and confer with the plaintiffs about their proposed list and see if the parties can reach agreement or at least narrow the items, narrow the list of items that might be in dispute.

MR. HALL:  Yes, Your Honor, absolutely. Correct.

THE COURT:  All right, thank you.  Mr. Geraci or one of the other plaintiff's counsel, do you want to weigh in?

MR. GERACI:  Yes, Your Honor.  And, look, we don't have a general problem with getting with defendants and trying to come up with a list of documents that we can identify.  We understood Your Honor's instruction at the last hearing to be to ask FINMA whether they would agree to or be amenable to sort of the U.S. concepts of labor for anything, any communications referenced in the report.  And I went back and read the transcript, and, you know, I didn't see anything about oral versus written.  So when Credit Suisse came to us and asked for a list of communications that we thought were in the report, we, of course, included every potential communication that we could find.  And, of course, being on the plaintiff's side

PROCEEDING                    15

we're a little blind to what documents Credit Suisse might have.  So we were, of course, overinclusive on that list.

So that I don't think is the problem.  I think the bigger issue from our end is what FINMA intends to do with the list.  I didn't understand the Court to be saying you can go through and sort of make a document by document assertion of privilege, and then we were just keep having this back and forth where Credit Suisse reaches out to FINMA and then two to three weeks later they either give a response or they come back asking for more documents, and we're, you know, we're further down the road, we're three weeks down the road from the hearing that we last had, and we still don't have an answer from FINMA.  So that's the biggest concern is pursuing this case efficiently, and, quite frankly, I don't see a reason, and Your Honor sort of touched on it, as to why FINMA would say let me look at seven to ten documents, okay, we agree to waive for those, but I can't look at these very specific oral communications that are described in this report and make a decision on those now.

THE COURT:  I'm confused by oral communications because if it's oral, I'm assuming that it's not a

PROCEEDING                          16

document.

MR. GERACI:  Sure, there are references --

(interposing)

THE COURT:  If it's an oral communication that's memorialized in a document, then it's a written communication.

MR. GERACI:  Okay, let me back up.  I'm confusing you about that.  I meant an oral communication that's described in the pink report or the FINMA report but that's not an actual email to or from FINMA.  And so the reason I'm asking about that is if we were to pick the pink report and we're deposing a Credit Suisse witness and it's a reference to only an oral communication in one of the investigative reports, and we decide to raise the specific conversations from the report and ask something like is that true, under the current construct of what's the process is, right now we would not be able to ask that question because I'm assuming Credit Suisse would assert a supervisory privilege on behalf of FINMA.  The only things we would be able to question the witness about were specific documents that FINMA went through document by document and either decided to assert a privilege or not.

THE COURT:  I understand your concern.  I'm

PROCEEDING                    17

just struggling with how we deal with that now because, A, we're not at the stage of depositions and, B, what we've been focused on is getting you, what I thought this whole motion to compel was about is the documents that are referenced in the report.  So I understand that the report references communications, oral communications, but there's nothing to produce, if it's an oral communication, there's nothing to produce, there's no document to produce about it.  If it's an oral communication that's memorialized in a document, that's what we're talking about now.  If it's just an oral communication for which there is no document, that's not what we're talking about right now.

MR. GERACI:  Sure, and I was just thinking the process would be much simpler to go about it this route, you know, here's the report, everything in here is a communication, you know, every identified communication between FINMA and Credit Suisse.  Here's what we think they are from the report, whether written or just described in the report as some kind of oral communication that was said, and then FINMA could decide whether they were going to on the whole reaffirm I guess their supervisory privilege.  And it seems like that's not the case.

PROCEEDING                    18

THE COURT:  Well, as I understand it, unless we go down the route that we've talking, that I've been talking about with Mr. Hall, you're stuck with FINMA saying no across the board.  What I'm trying to get you, Mr. Hall, Mr. Geraci, I'm sorry, is I'm trying to thread the needle here to get you more information than you have right now and that FINMA seems to be willing to let Credit Suisse produce.  So, you know, if you want to draw a line in the sand and say the plaintiffs are only willing to have it all or nothing, I think you're going to end up with nothing, and we're going to have to rule on the motion, and I don't know how that's going to come out.

But the iterative process, it seems like you're headed toward, either we're going to know soon because FINMA's either going to say yes or no to this seven to ten documents from the U.S. that Mr. Hall was describing, you know, if FINMA says no to those, that's a pretty bad sign for, you know, that I'm just going to have to decide the motion.  But if FINMA says yes as to the seven to ten documents, then it seems like maybe there's a pretty good chance that as to the 70 or whatever the parties' final number is as a result of their meeting and conferring, there's a pretty good

PROCEEDING                    19

chance that you're going to get all those documents. And in the not too distant future maybe.

MR. GERACI:  Sure, and I fully understand, Your Honor, what you're saying and I hear what you're saying, and I didn't want to suggest that we're not willing to engage in the process or that we're drawing a line in the sand and say it's everything or nothing.  It was just our simple thought was that the approach, because we've heard time and time again from Credit Suisse is that dealing with FINMA there's a lot of bureaucratic layers and it takes time to get answers, that it would just be an easier, more simplistic process to go to them once with a broader list of all the communications that we identified, let them review, and then, of course, if they had questions, hey, we're not quite sure what you're asking about for this specific communication, we could attempt to either eliminate it, find it, you know, define it better for them, and that way they were sort of doing this process all at once instead of on a piecemeal basis.  But I understand what you're saying, and if that's the approach that Your Honor is directing us towards, then we will, of course, oblige that.

THE COURT:  I mean I think we can do two things at once, and so I understand that your list is the

PROCEEDING                    20

universe of what you would want.  I think what I would like to end up with as a result of the parties meeting and conferring is a list of what Credit Suisse and the plaintiffs can agree on are the communications that are referenced in the report that Credit Suisse either has or is likely to have possession, custody, or control over and is asking FINMA to consider waiving the privilege as to.  There may be leftovers that you dispute, that the parties dispute, and I'll have to make a ruling on that.  I'll go through, you can provide me with a list of what's not agreed, and I can say yes or no.

And then third what would be what is clearly on your list, an oral communication, we can make a list of the oral communications that are referenced in the report and ask FINMA to make a separate decision as to those.  Right?  And that way we're putting this in buckets that are more, hopefully I'm trying to facilitate FINMA's decision-making process to, not to overly complicate this, I understand it would be simpler if FINMA just across the board would waive the privilege.  It doesn't seem to me like they're going to do that unless the Court orders it.  But if we can go with this slightly bifurcated process of focusing on the

PROCEEDING                    21

written communications and putting the oral

communications separately, and we don't need a decision

about the oral communications right away because the

depositions aren't going to be for some months down the

road, and you'll certainly by then have whatever,

hopefully have whatever written communications FINMA has

been willing to let Credit Suisse provide, maybe all

that's less controversial.

Maybe I'm too optimistic about our ability to

thread the needle in this process, but I guess I'm

hoping that we can take it in steps that will facilitate

the plaintiffs getting more information certainly about

what they have now.

MR. GERACI:  Sure, and personally I like the

idea of bifurcating the issues, and I think that works

for our end.

THE COURT:  Okay.  Great.  All right, so just

to circle back with you, Mr. Hall, then what I'm asking

is for you present to FINMA whether it's seven or ten

documents  that Credit Suisse has possession, custody,

and control over in the U.S. and see what FINMA's

decision is as to those, and then also to meet and

confer with the plaintiffs and see if we can revise the

list in two ways:  one to see if there are any

PROCEEDING                          22

additional documents that the plaintiffs have put, any additional items that the plaintiffs have put on their list that Credit Suisse agrees is a written communication that would get added to the list of 70, and then to have off the entries on the plaintiffs' list that are just purely, it's clear that it just refers to discussions or oral communications, and we can kind of put that a little bit on the backburner, but ultimately we will need to get FINMA to make a decision about that as well.

MR. HALL:  Absolutely, Your Honor, understood --

THE COURT:  Okay.

MR. HALL:  -- and we will take that forward.

THE COURT:  Okay, great.  So I know it's a bureaucratic process and I know Mr. Geraci and his colleagues are getting impatient, and I know we have a holiday next week, but if we were to speak the week of December 8, do you think that would give you enough time, Mr. Hall, to run, both for the parties to meet and confer as well as you to confer with FINMA?

MR. HALL:  Yes, Your Honor, I do.  If we could maybe move it toward the middle of that week, not the Monday if possible, but yes.

PROCEEDING                    23

THE COURT:  Yeah, I'm open on the morning of December 11, Thursday.  How about Thursday, December 11 at 10 a.m., how is that for everybody?

MR. GERACI:  That works for plaintiffs, Your Honor.

THE COURT:  Okay, great.  How about you, Mr. Hall?

MR. HALL:  That's fine for Credit Suisse.

THE COURT:  Okay, great.  All right, and so would it be possible to get a status letter from you by, from the parties say by 5 o'clock on Tuesday, the 9th?

MR. HALL:  Yes, Your Honor.

THE COURT:  Okay.

MR. GERACI:  Yes, Your Honor.

THE COURT:  Great.  And in particular it would be helpful to know, like I said, if FINMA says no to the seven to ten documents, I think where we're headed is we are going to have to go down the road of actually deciding the plaintiff's motion.  But it would be great and it would give us a lot of optimism about being able to have this be a consensual negotiated process if FINMA's decision is as to the seven to ten documents, if those can be produced.  But we'll have to wait and see.

MR. HALL:  Understood, Your Honor.

PROCEEDING                    24

THE COURT:  Okay.  Mr. Geraci, any other discovery points or issues relating to this topic that you want to raise today?

MR. GERACI:  Nothing else, Your Honor.

THE COURT:  Okay, great.  Mr. Hall.

MR. HALL:  Nothing from our side, Your Honor, thank you for your time.

THE COURT:  Okay, great.  All right, we appreciate the parties continuing to work together.  Have a nice Thanksgiving holiday, and we'll speak to you on December 11.  Have a good day, thank you.

ATTORNEY:  Thanks, Your Honor.

(Whereupon, the matter is adjourned to December 11, 2025, at 10 a.m.)

25

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of IN RE CREDIT SUISSE CLASS ACTIONS, Docket #23cv5874, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:   November 19, 2025