UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------:

IN RE:                              : Case No.: 23-cv-5874

CREDIT SUISSE SECURITIES CLASS:

ACTION,                             : New York, New York

                                    : December 18, 2025

------------------------------:


TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE SARAH L. CAVE

UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:          KAHN SWICK & FOTI, LLC
                        BY:  Craig J. Geraci, Esq.
                             Kim Miller, Esq.
                             J. Ryan Lopatka, Esq.
                        250 Park Avenue
                        New York, New York 10003

For Defendant:          CAHILL GORDON & REINDEL LLP
                        BY:  Jason M. Hall, Esq.
                             Tammy Roy, Esq.
                             Nicholas Matuschak, Esq.
                        32 Old Slip
                        New York, New York 10005


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.


AMM TRANSCRIPTION SERVICE - 631.334.1445

THE COURT:  Good afternoon.  This is Magistrate Judge Cave.  We're here for a conference in In Re: Credit Suisse Securities Fraud class action; Case Number: 23-cv-5874.

May I have the appearances, starting with plaintiff's counsel, please.

MR. GERACI:  Good afternoon, your Honor. This is Craig Geraci for the plaintiffs at Kahn Swick & Foti.

THE COURT:  Good afternoon.

MS. MILLER:  And Kim Miller for plaintiff, also Kahn Swick & Foti.

THE COURT:  Okay.  Good afternoon.

MR. GERACI:  Good afternoon.

MR. LOPATKA:  J. Lopatka also for plaintiff, also with Kahn Swick & Foti.

THE COURT:  Good afternoon.  And for defendants?

MR. HALL:  Good afternoon, your Honor.  You have Jason Hall from Cahill Gordon for Credit Suisse, and with me are Tammy Roy and Nick Matuschak.

THE COURT:  Okay.  Good afternoon.

So I know the parties said they didn't think they needed this conference today, but we

thought just as we close out the year and to figure out where we're headed next year and what to expect, we thought it would be good to just check in with everyone.

We have, obviously, the parties' letter from December 9th at ECF Number 167, indicating that there does appear to be a process for providing a list of agreed written communications to provide to FINMA, so that FINMA can let us know whether it will agree to allow those communications to be produced to the plaintiffs.  And that that process seems to be underway, which is great.  And we very, very much appreciate the parties working together collaboratively to figure out if there's a way at all to do this on a consensual basis and get the process moving.  So we're really grateful for that.

So I guess the first question, and maybe I should start with you, Mr. Hall, is just if you have any other updates about where things stand in the process, and then I'll hear from plaintiffs about whether they have any questions or clarifications or concerns about where things stand.

So, Mr. Hall, may I start with you or one of your colleagues?

MR. HALL:  Sure, your Honor.  And just for

AMM TRANSCRIPTION SERVICE - 631.334.1445

clarity, I'm not sure whether the Court has had an opportunity to see it, but we submitted a further letter yesterday afternoon, or I guess the day before yesterday, just clarifying that FINMA has now responded on the initial seven documents that we were able to identify in the United States.  And as to those seven, FINMA has agreed to allow their production.  We will make a production of those documents to the plaintiff tomorrow, I believe.  So those are coming.

And I guess the only other update, as I think your Honor already appreciates, is that we are working to identify the remaining documents, most or all of which we understand will be in Switzerland. And so we do have lawyers in Switzerland now, and I expect after the holidays we will have lawyers back in Switzerland, just pulling those together so we can make a further submission to FINMA.

THE COURT:  Okay.  Thank you for reminding me.  Yes, I have the December 16th letter as well.

And so in terms of that next submission or the next tranche for FINMA to review, do you have a sense both as to the number of documents as well as the timing?

MR. HALL:  So what we're trying to do, your

Honor, is get as big a set as we can.  It may be that, you know, there are some that we aren't at the end of the day able to identify from the plaintiff's list.  We're trying to get as big a set as we can of documents from the plaintiff's list, so that they can be provided to FINMA at once.  I expect that will be in January at this point.  I don't think it's happening before the holidays.

So, you know, I'm not sure exact timing.  We can, obviously, keep the plaintiff updated as we get more clarity.  It's really going to be a question of how quickly are we able to identify the documents on the list.  Some of them are more specifically described than others.  And we'll try to get, you know, at least a critical mass and hopefully a majority of the documents on the list out the door in the next tranche is our plan.

THE COURT:  Right.  Okay.  That's really great to hear.  And if you haven't been already, are you up -- is it possible to update the plaintiffs when you have the next batch and that you've sent it to FINMA, and these are the documents in that batch; is that possible?

MR. HALL:  Yeah, absolutely, your Honor.  We aren't there yet.  Like I say, we have lawyers

sitting in front of terminals right now trying to identify them.  But once we have the next tranche, we will keep Mr. Geraci apprised.

THE COURT:  Okay.  I appreciate that. Thank you.  And hopefully he will as well.

All right.  And then apart from the FINMA type documents or the FINMA documents that are the subject of the motion that we've been talking about so far, are there other aspects of document review and production that Credit Suisse is working on?

MR. GERACI:  Yes, your Honor.  We are continuing to review documents in the United States that have been subject to the parties' search term and custodian agreement.  We made a further production just in the past ten days or so of documents from the U.S., and expect to make a further production after the new year.

And I think that there will still be some further production after that from the U.S.  We are at the same time working on and planning to respond to the plaintiff in the next day or two on a TAR proposal that they sent across, which is essentially to collect additional documents from the U.S. for review beyond the currently agreed search terms and custodians.  And so we're going to come back to them

AMM TRANSCRIPTION SERVICE - 631.334.1445

shortly on that. And I expect that will yield further documents in the U.S. for review.

We haven't yet broached beyond the FINMA issues, a Swiss review, but that, I think, will be kind of on the top of our agenda in the new year. So that's sort of the lay of the land.

THE COURT: Great. Thank you. That's helpful. And what about, just from the opposite perspective, your request, defendant's request to the plaintiffs? Are there -- is there anything outstanding or percolating in what you've requested of the plaintiffs?

MR. HALL: No, your Honor. We, I think have everything we have requested at this point from the Diabat lead plaintiff. It's possible that there could be as to the other plaintiffs in the consolidated case requests, but we don't have anything ripe for the Court at this point.

THE COURT: Great. Thank you very much.

Mr. Geraci, or one of your colleagues, do you have questions or clarifications or comments about what Mr. Hall has described? Let's start with just where we are with FINMA.

MR. GERACI: Yeah -- no, I mean, just -- this is Craig Geraci, by the way.

No, just one issue that I don't think we necessarily need to resolve right this instant, but I just want to sort of flag it for the Court.  The documents that FINMA has agreed to produce, they put some conditions on how they were going to produce them.  Some are obvious that they produce them pursuant to the confidentiality agreement.  We have no problem with that.

Another one was that they were going to redact communications with the -- what's termed the core college.  And that's three regulators, one from the UK, the Federal Reserve and FINMA.  We don't have a problem with that at the moment.

There is one where they said they were going to produce the documents with all the FINMA employees' names redacted.  And so I just want to raise that, that that might raise some issues down the line.  You know, if there are multiple FINMA people on an e-mail, it's going to be difficult to determine is it the same FINMA person speaking, is it a different person speaking.  And then we're also somewhat concerned that it might raise some, you know, issues for the jury down the line regarding weight about, you know, if we can't tell who the person is or what their title is or something along

those lines.

THE COURT:  Okay.  I'm glad you raised that.  And I appreciate that we don't need to resolve that today.  Some thoughts in that respect, if it looks like it's an overwhelming amount of redactions of names that become difficult, maybe there's a way to anonymize them or to just show that -- to replace the name with just a title or something like that, that would make it easier for you to match up A to B, or we can do initials or something else.  But I've dealt with that before and there are a number of alternatives that I'll leave it to the parties in the first instance, if this looks like it's going to be an obstacle that we need to resolve for the parties to explore creatively ways to address that.

MR. GERACI:  Certainly.  And we can have those conversations with defendants once we see the documents and see if it's going to be an issue.

THE COURT:  Okay.  Super.

Any other -- if that's all you have on the FINMA side of things, any other comments about what Mr. Hall reported as to other categories of documents?  Documents from the U.S. or the Swiss review, which sounds like we're not quite there yet

on the latter, but any other points you'd like to raise, Mr. Geraci?

MR. GERACI:  No.  Oh, sorry, your Honor. There was just one other point that -- and it's just more, sort of, looking down the road and, you know, so maybe the parties can kind of have an idea of where the Court is thinking is, I know we had discussed at the last conference potential oral communications and how we were going to deal with that.  I failed to raise -- and this was my fault -- I failed to raise that the motion to compel also deals with documents that I'll refer to as implicating FINMA communications.  And what I mean by that is, purely internal Credit Suisse employee to employee e-mails where they're talking about a communication that they had with FINMA that's possibly referenced in the report.  Those will be logged.

And I'm just wondering if the Court is expecting or wants us to kind of, sort of, take the same process that we're doing with the written communications now, prepare a list, and then are we going to be going back to FINMA, you know, kind of on a rolling basis throughout discovery.  And if that's the case, we can -- you know, we can start

trying to prepare for that process.

THE COURT:  I would think that makes sense in the first instance because -- and it may even be simpler because to the extent that FINMA clears some documents, perhaps those documents that are cleared line up with one of the -- I'll just call them oral communications for lack of a better phrase right now.  They may line up with the oral communications, in which case it'll be an easy yes, hopefully.

So I don't think it hurts to start that list as well.  And then, hopefully, that might go even more efficiently.

MR. GERACI:  Okay.  Great.  Thank you.

THE COURT:  Okay.  Super.

So then I think what the parties propose, not necessarily in the December 16th letter, but in the prior letter to have regular joint letters reporting on the status.  Is that your -- you agree with that approach as well, Mr. Geraci?

MR. GERACI:  I think we're fine with that. We're fine with either having hearings, if that's what your Honor wants to do, or just submitting letters and then the parties can say whether we think, you know, a hearing is needed.

THE COURT:  Right.  Okay.

And so I think the other thing that we're going to do since we're moving forward with this collaborative process with respect to the FINMA documents is we're going to -- with respect to the motion, we'll just administratively close it.  It doesn't -- that's not a ruling one way or the other. It's just, you know, for kind of for our record keeping purposes having, you know, motions lingering out for a long time can become problematic.

But what I would say to the parties is that if at some point it looks like there are issues in dispute or the process within comes to a halt for some reason and we need to go back and there is the necessity -- it does become necessary for the Court to issue a ruling, then we can, you know, reopen the motion and issue a ruling.  The parties wouldn't have to necessarily re-brief it.  But just for kind of administrative purposes, closing the motion for the time being while we have this process ongoing and regular reporting is what we think is the most efficient and clear thing for the record.

So with that, you know, today is the 18th of December.  So if we made the parties' next status report due by, say, January 20th, since the 18th of January falls on a weekend, do you think, Mr. Hall,

in terms of progress between now and then -- I realize there will be a lapse over the holidays and hopefully, you know, people are not having to review documents, but if we have the next status report by January 20th, do you think that would be productive?

MR. HALL:  Yes, your Honor.  I think that's fine from our perspective.

THE COURT:  Great.  And, you know, obviously if something comes up sooner, you can always let me know and we can jump on a conference. And certainly in that letter, if you think it's helpful to have a conference, that's obviously fine, too.  But, you know, maybe we'll see where things are -- if things are rolling ahead smoothly and the parties think it's more efficient to just work between themselves and not have to take the time out for a conference, I appreciate it.  But I'm also here to assist as -- to the extent that's helpful.

Is that all right with you, Mr. Geraci?

MR. HALL:  Thank you, your Honor.

MR. GERACI:  That's fine with plaintiff, yes.

THE COURT:  Super.

Okay.  So very good.  So we'll look forward to your next report in January, on January 20th, or

by January 20th.

In the meantime, we hope you all have a nice holiday and relaxing and, hopefully, get some time off, like I said, from reviewing documents. And we'll speak to you all in the new year, I'm sure.

Thank you very much, everybody.  We'll be adjourned for today.

MR. HALL:  Thanks very much, your Honor.

MR. GERACI:  Great.  Thank you, your Honor.  Thank you.

0O0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of In Re: Credit Suisse Securities Class Actions; Docket #23CV5874 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature ___*Adrienne M. Mignano*___

ADRIENNE M. MIGNANO, RPR

Date:      December 22, 2025