K | S | F
KAHN SWICK & FOTI, LLC

1100 Poydras Street, Suite 960
New Orleans, LA 70163

TEL +1 504.455.1400
FAX +1 504.455.1498
KSFcounsel.com

**NEW ORLEANS**
NEW YORK
DELAWARE
LOS ANGELES
CHICAGO
LUXEMBOURG*

October 2, 2026

**VIA ECF**

Craig J. Geraci, Jr.
Partner – Admitted in LA, MS, AL, TX
Direct: (504) 648-0178
craig.geraci@ksfcounsel.com

The Honorable Sarah L. Cave
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1670
New York, NY 10007

Re: *In re Credit Suisse Securities Fraud Class Actions*, Case No. 1:23-cv-05874-CM-SLC (S.D.N.Y.) (This matter relates to: *Diabat*)

Dear Judge Cave:

Comity reflects the mutual respect nations ordinarily afford each other's judicial processes. FINMA asks this Court to broadly recognize a Swiss supervisory privilege for "all documents relating to the supervisory relationship" (the "FINMA Material"), invoking the "long history of cooperation between the United States and Switzerland in judicial matters." Yet just last week, FINMA's counsel flouted an order of this Court. *See* ECF No. 231 at 1. Comity is not a one-way street: FINMA cannot demand blanket acceptance of Swiss law while defying this Court's lawful orders.

## I. FINMA Expressed No Interest that Outweighs U.S. Interests

"In lieu of participating in [the] conference," FINMA submitted a letter explaining the Swiss statutory basis for its supervisory privilege and requesting that the Court deny Plaintiff's motion to compel on comity grounds. *See* ECF No. 231, Ex. 1. But FINMA ignores that comity requires a balancing test: the Court must consider whether Switzerland's *national* interests in confidentiality outweigh the U.S.'s substantial interests in the fair and efficient adjudication of this securities-fraud action. *See* ECF No. 147 at 6-9 and ECF No. 153 at 1-3. They do not.

First, while FINMA bears the burden of proof in this balancing test, its submission barely addresses Switzerland's interests in keeping the documents confidential—much less the substantial U.S. interests at stake. The only cognizable interest FINMA asserts is that disclosure could deter its supervised entities from "cooperating candidly with their regulator out of fear that their communications will be disclosed in civil litigation." *See* ECF No. 231 at 7.

That concern cannot carry the weight FINMA assigns it. Courts regularly find U.S. interests outweigh foreign regulatory and secrecy interests. *See* ECF No. 147 at 8. Moreover, the PInC explicitly addressed concerns that information in its report could be used against Switzerland in legal proceedings or could result in production of referenced documents. *See* Ex. A (Excerpts

of PInC Report) at 51-52.[1] It nevertheless determined "full transparency" regarding the regulatory failures that contributed to CS's collapse outweighed "the interests of maintaining secrecy." *Id*. The report is especially candid about FINMA's failures—which may explain FINMA's broad application of privilege despite its policy to "only invoke[] supervisory privilege selectively where there is an overriding supervisory interest" and to "limit[] the duration and scope…to the minimum necessary."[2] FINMA offers no explanation why this Court should assign greater weight to its confidentiality concerns than the PInC itself, which found FINMA's supervisory interests *did not* override public interests, particularly when courts in this country routinely "overrid[e]" the U.S. bank examination privilege ("BEP") for good cause. *See* ECF No. 147 at 13-14; *see also Bankcor Group Inc. v. Rodriguez*, 2026 WL 2566299, at *4–5 (11th Cir. Aug. 31, 2026).

Nor does FINMA explain why this concern has meaningful force in this case, where it has allowed the production of 20 documents. If FINMA's theory were correct, the production of those documents (in addition to the documents turned over to the PInC) should already have impaired cooperation between FINMA and the institutions it supervises. Yet FINMA identifies no such harm.

FINMA's cases do not support withholding the FINMA Material either. In *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, the court concluded the documents were of limited importance to the litigation, while confidentiality "play[ed] a significant role in assisting the effective enforcement of European antitrust law." 2010 WL 3420517, at *9 (E.D.N.Y. Aug. 27, 2010). In *In re Qualcomm, Inc.*, the U.S. party sought a "problematic" "end run around existing Korean procedures." 162 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016). In both cases, the courts also emphasized the need to protect third-party informants. *Payment Card*, 2010 WL 3420517, at *9; *Qualcomm*, 162 F. Supp. 3d at 1042. This case involves no attempt to circumvent foreign procedures and no third-party informants who may be exposed.

Additionally, in both cases, the government entities submitted amicus briefs explaining the specific reasons disclosure would impair their regulatory functions. Conversely, FINMA's letter offers little case-specific analysis, effectively asking the Court to recognize the asserted privilege simply because Swiss law permits FINMA to invoke it. This generalized invocation falls well short when weighed against the U.S.'s substantial interests in enforcing its securities laws, protecting its markets, and ensuring full and fair discovery. *See DiDi Glob.*, 2025 WL 267893, at *3.[3]

[1] The full 500+ page report is available to the Court upon request.

[2] https://www.finma.ch/en/supervision/cross-sector-issues/zustimmungsvorbehalt-supervisory-privilege/

[3] FINMA's other cases, *Employees Retirement System for the City of Providence v. Board of Governors of the Federal Reserve System*, 2025 WL 1736602 (S.D.N.Y. June 23, 2025) and *In re Citigroup Bond Litigation*, 2011 WL 8210671 (S.D.N.Y. Dec. 5, 2011), are not about comity, but rather concern the BEP, which FINMA has waived. *See* §III below; ECF No. 153 at 8.

Nor can UBS hide behind FINMA's assertion that disclosure of the materials could "potentially" result in "supervisory measures." ECF No. 231 at 7. Speculative punishment does not suffice. ECF No. 147 at 12. As Judge McMahon has stated:

> If you want to raise money in the United States of America, the only laws that matter to me are the laws of the United States of America. If you don't want to cooperate with discovery as directed by this Court pursuant to the laws of the United States of America, we have the rule, Rule 37, and it calls for remedies for the refusal to cooperate including but not limited to preclusion on any and all issues.

*Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, No. 15-md-2631, ECF No. 179, Tr. at 10:18–11:17 (S.D.N.Y. Jan. 12, 2018).

Second, FINMA did not cull factual material from the withheld documents, which "falls outside the [BEP] privilege," *Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 282 (S.D.N.Y. 2013), and fails to explain how all these communications that took place in such unusual circumstances can even be characterized as the types of regulatory opinions and deliberative processes that have been protected in the context of bank supervision.

Nor has it explained why it allowed production of 20 documents that reflect its supervision of CS but withheld others, including portions of the same communication chains. *See, e.g.*, Chart, Ex. B, Entries 2, 4, 8 (withheld while other documents in the same chain were produced). While CS's counsel "understood" FINMA was drawing the line based on the extent to which each document was referenced in the PInC Report, FINMA's letter does not advance that explanation—understandably so, because some of the produced documents were among the least referenced in the report. *Compare, e.g.*, Ex. B Entry 81 to Entries 2, 37, 41.

FINMA's selective production is especially problematic here because it has expressed an interest in protecting CS in civil litigation. FINMA "may not use international comity as both a shield and a sword," revealing portions of its supervisory record while withholding other portions that may be more damaging to CS. *Permanent Mission of Islamic Republic of Iran to United Nations v. 1030 Fifth Ave. Corp.*, 833 F. Supp. 318, 326 (S.D.N.Y. 1993).

Third, the documents FINMA has allowed to be produced provide direct, un-substitutable insight into FINMA's assessment of CS's financial condition leading up to its collapse. Several already served as a basis for Plaintiff's motion to amend. *See* ECF No. 199 at 1. Although the Court has not ruled on that motion, Judge McMahon observed the documents "certainly appear[] at first blush to be relevant to falsity and to materiality." ECF No. 194 at 7. Thus, though FINMA does not argue otherwise, the importance of the FINMA Material can no longer reasonably be disputed. Plaintiff has nevertheless included in its chart a brief explanation of the relevance of each withheld document. *See* Ex. B.

## II. Publication Waived FINMA's Privilege

FINMA also fails to address why the publication of the PInC Report did not waive any privilege applicable to the FINMA Material described in it. *See* ECF No. 163at 12:23-24 (inclusion of documents in public reports "is a pretty clear waiver under U.S. law even as to any regulatory privilege."); *see also id*. at 18:13-15.

Under Second Circuit attorney-client privilege law, which is instructive, "[m]atters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak." *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987). Disclosure of the substance of a privileged communication is sufficient; the communication need not be published verbatim. *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 469–70 (S.D.N.Y. 1996). In *Kidder*, publication of an investigative report waived privilege as to portions of underlying documents "specifically alluded to" in the report. *Id*. Similarly, courts have found waiver in other cases where public reports described privileged materials. *See, e.g.*, *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 440 (W.D. Tex. 2017); *Peck v. U.S.*, 514 F. Supp. 210, 213 (S.D.N.Y. 1981).

The same principle applies here. The PInC Report extensively disclosed the substance of the FINMA Material. The cat cannot be put back in the bag.

## III. The BEP Has Been Waived

FINMA has also waived any claim to the BEP. FINMA retained U.S. counsel and submitted a letter addressing the requested discovery, relying exclusively on a Swiss supervisory privilege. It had every opportunity to assert the BEP and did not.

Moreover, CS cannot continue to assert the BEP on FINMA's behalf because the privilege belongs to the regulator only. *See Wultz*, 61 F. Supp. 3d at 282. Any attempt to assert the privilege on FINMA's behalf in CS's privilege logs should be rejected, and any existing references to the BEP should be removed.

## IV. Conclusion

In this case, FINMA's interest in confidentiality is substantially reduced because some FINMA documents have already been produced and the others have been publicly described in the PInC Report. As a result, even assuming FINMA's interest equates to the Swiss national interest, which is unclear given the PInC's rejection of FINMA's concerns, that interest cannot outweigh the U.S.'s substantial interests in full discovery, securities-law enforcement, and public accountability. FINMA selectively allowed the production of some documents while withholding others without a principled basis—and for seemingly no reason other than to protect Defendants. The FINMA documents speak to issues at the heart of this litigation, have served as a key basis for a motion to amend, and have been recognized "at first blush" to be relevant. The Court should therefore reject FINMA's request and compel CS to produce the FINMA Material.

KAHN SWICK & FOTI, LLC

Respectfully submitted,

*/s/ Craig J. Geraci, Jr.*
Craig J. Geraci, Jr.

cc: All counsel of record (via ECF)

**WORD COUNT CERTIFICATION**

I, Craig J. Geraci, Jr., certify that the foregoing letter complies with the word-count limitations set forth in the Court's September 24, 2026 Order (ECF No. 231), because the body of the letter contains 1746 words.

*/s/ Craig J. Geraci, Jr.*
Craig J. Geraci, Jr.