# Exhibit 1

# DECISION

## of the Swiss Financial Market Supervisory Authority FINMA

## dated October 13, 2026

in the matter of

**UBS Group AG (as the legal successor to Credit Suisse Group AG),** Bahnhofstrasse 45, 8001 Zurich

## regarding

## Application dated September 29, 2026, for approval regarding the disclosure of documents arising from the supervisory relationship pursuant to Art. 42c(5) FINMAG (Supervisory Privilege) in the U.S. proceeding Case 1:23-cv-5874 (S.D.N.Y.)

Laupenstrasse 27
3003 Bern
Tel. +41 (0)31 327 91 00
**www.finma.ch**

**Facts**

(1) Wenger Plattner, commissioned by FINMA, prepared a report as the audit firm on the topic of "Crisis Management by Credit Suisse" covering the period from January 2022 to June 12, 2023. In light of a media leak[1], UBS Group AG (hereinafter: **"UBS")**, as the legal successor to Credit Suisse Group AG (hereinafter: **"CSG"**), contacted FINMA on March 6, 2025, noting that the plaintiffs in the proceeding "Case 1:23-cv-5874" against CSG (hereinafter: **"U.S. proceedings"**) before the U.S. District Court for the Southern District of New York (hereinafter: **"U.S. Court S.D.N.Y."**) had requested documents relating to the audit firm Wenger Plattner.

(2) In an order dated October 8, 2025, FINMA imposed a requirement on UBS to obtain prior approval for the disclosure of documents arising from the supervisory relationship pursuant to Art. 42c(5) FINMAG[2] (Supervisory Privilege) in the U.S. proceedings and ordered that any transmission, publication, or disclosure of all documents arising from the supervisory relationship with FINMA, as well as the report by the special investigator Wenger Plattner, UBS's comments on that report, and all documents arising from the supervisory relationship that are related to the investigation by the special investigator Wenger Plattner, requires FINMA's approval, provided that the relevant actions are directed toward foreign third parties. FINMA initially set a time limit for this approval requirement until December 31, 2027, subject to extension.

(3) Subsequently, UBS referred to the order of October 8, 2025, on several occasions and, in letters dated December 12, 2025, February 12, 2026, April 21, 2026, June 23, 2026, and August 6, 2026, requested FINMA's approval to transmit certain documents—which UBS had made available to FINMA via a data-sharing platform operated by a law firm retained by UBS—to the plaintiffs in the relevant U.S. proceedings.

(4) FINMA subsequently conducted an assessment in each case to determine whether, and if so, to what extent, consent to the transmission of the relevant documents could be granted. In doing so, it found that the documents in question were primarily documents that had been mentioned and/or discussed in publicly accessible sources, in particular in reports by FINMA[3] and the Parliamentary Commission of Inquiry[4]. When reviewing such documents, FINMA focuses primarily on whether the core content of these documents is already in the public domain or not. Against this background, FINMA granted its consent to the release of 21 documents in letters dated December 16, 2025, February 26, 2026, May 22, 2026, July 15, 2026, and August 20, 2026. For all remaining 33 documents (hereinafter: **"undisclosed documents")** out of the total of 54 documents, FINMA did not grant approval, as it concluded in each case that the core content of these documents had not been made public and that the public interest in preserving the confidentiality of supervisory communications outweighs other considerations.

---

1 See the article "FINMA Conducts Secret Investigation Against Credit Suisse's Former Executives" in the SonntagsZeitung of September 21, 2024.

2 Financial Market Supervision Act (FINMAG; SR 956.1).

3 FINMA report on lessons learned from the CS crisis dated December 19, 2023 (hereinafter: **"FINMA report"**).

4 Report of the Special Parliamentary Commission (PUK) on the Management of Federal Authorities in the Context of the CS Crisis dated December 17, 2024 (as published in the Federal Gazette on February 24, 2025, BBl 2025 515; hereinafter: **"PUK Report"**).

(5) On September 10, 2026, the U.S. District Court for the Southern District of New York (S.D.N.Y.) held a conference call to discuss the status of the discovery process with the legal representatives of UBS and the plaintiffs. During this conference, UBS's U.S. legal counsel informed the court that FINMA had retained a U.S. law firm. The presiding*U.S. magistrate judge* subsequently scheduled another conference call for September 24, 2026, and ordered that, in addition to the parties, FINMA and its legal counsel also participate.

(6) In a letter dated September 23, 2026, the U.S. law firm retained by FINMA informed the U.S. magistrate judge, among other things, that FINMA, as an independent Swiss supervisory authority, would not participate in private-law proceedings in the United States, had no legal basis for such participation, was not subject to the jurisdiction of the U.S. District Court for the Southern District of New York (S.D.N.Y.) and that it had already decided which of the documents in question could be transmitted by UBS to the plaintiffs—and which could not—based on the *Supervisory Privileges* it had ordered on October 8, 2025.

(7) In an order dated September 24, 2026, the U.S. District Court for the Southern District of New York (S.D.N.Y.) set a deadline of October 2, 2026, for the plaintiffs to file their briefs, while the deadline for UBS to file its response was set for October 9, 2026. UBS was also required to submit,*as soon as practicable*, a letter outlining the procedure by which it would present the redacted documents for in **camera** review by the U.S. District Court for the Southern District of New York (hereinafter: **"in camera review"**).

(8) In a letter dated September 29, 2026, UBS requested FINMA's approval to submit the non-disclosed documents to the U.S. District Court for the Southern District of New York (S.D.N.Y.) for an *in camera review*. UBS explains that the *in camera procedure* is a common practice before U.S. courts, in which documents whose disclosure is disputed due to an asserted legal protection are submitted to the court for review, excluding the public and the other party, in order to assist the court in assessing and clarifying the issue in dispute.

(9) At UBS's request, the U.S. District Court for the Southern District of New York (S.D.N.Y.) extended the deadline for filing a response (see para. (7)) until October 20, 2026, and further ordered UBS to provide the court, within the same timeframe, with a *"read-only"* link via email for data access, through which the court can access the non-disclosed documents to conduct the *in camera review*.

## Considerations

### 1. Jurisdiction

(10) Pursuant to Art. 1(1) in conjunction with Art. 6(1) of the Financial Market Act (FINMAG), FINMA is responsible for ensuring compliance with and the application of financial market laws and the FINMAG. The former include, in particular, the Banking Act.[5]

(11) UBS Group AG (UBS) acts as the holding company of the UBS Group and is subject to supervision by FINMA within the framework of consolidated supervision. UBS is subject to the Banking Act and to FINMA supervision as a financial group, with group supervision supplementing the supervision of individual institutions.[6] For the purposes of consolidated supervision, financial groups within the meaning of Art. 3d(1) of the Banking Act are to be regarded as supervised entities within the meaning of FINMAG.[7] In this context, the ultimate parent company, UBS, is considered, for supervisory purposes, to be the addressee of the financial group's obligations and thus of the supervisory approval requirement (supervisory privilege) pursuant to Art. 42c(5) FINMAG.

(12) The "supervisory privilege" constitutes a condition of approval by FINMA. The law is structured such that FINMA imposes this condition of approval on the supervised institution. When individual documents are subsequently submitted, FINMA grants or denies its consent to the disclosure of records arising from the supervisory relationship with the institution. Thus, under the Swiss framework, the Supervisory Privilege differs from some of its foreign counterparts.

(13) When deciding whether to consent to the disclosure of documents subject to the supervisory privilege, FINMA may take into account the extent to which the documents have already been made publicly available. However, the mention of documents subject to the supervisory privilege in publicly available materials does not constitute a waiver of the supervisory privilege and does not relieve the parties subject to the supervisory privilege of the requirement to obtain FINMA's consent for the disclosure of such documents (see also margin note (25) on this point). The question of whether documents are subject to supervisory privilege, as well as the subsequent question of whether certain documents subject to supervisory privilege may be disclosed, is governed by Swiss law and is at FINMA's discretion, subject to review by Swiss courts (see also margin note (29)).

(14) There is no legal provision for FINMA to assert this privilege by appearing itself in court proceedings or before foreign civil courts, nor does this correspond to FINMA's long-standing practice. However, UBS is free to share this order with foreign authorities. In light of the foregoing, FINMA, as the supervisory authority for UBS at both the group and individual institution levels, is therefore competent to issue this order against UBS.

---

Banking Act (BankG; SR 952.0)

[6] Art. 3d and 3e(1) BankG.

[7] DU PASQUIER/RAYROX, in: Watter/Bahar (eds.), Basel Commentary on the FINMAG/FinfraG, 3rd ed., Basel 2019, Art. 3 FINMAG N 16.

**2. Assessment of the Application dated September 29, 2026**

2. Order Granting Supervisory Privilege by Decision of October 8, 2025, and Reference to a Previous Review

(15) In its decision of October 8, 2025, FINMA explained the legal basis on which it granted the supervisory privilege and conducted the balancing of interests required under Art. 42c(5) FINMAG. In this regard, UBS is referred to the considerations set forth in the decision of October 8, 2025.

(16) As part of the requests mentioned in margin note (3), UBS sought approval to disclose the non-disclosed documents to the plaintiffs in the U.S. proceedings. The non-disclosed documents had therefore already been subject to a review by FINMA. In connection with these requests, FINMA weighed the interests in disclosure against the public interest in preserving the confidentiality of supervisory communications and concluded, with respect to the non-disclosed documents, that the public interest in preserving the confidentiality and integrity of supervisory communications outweighs the interests asserted in favor of disclosure.

(17) As part of this review, FINMA granted UBS permission to transmit 21 documents to the plaintiffs in the U.S. proceedings. FINMA was able to approve the transmission of the documents in question because the core content of these documents is already known from publicly available sources (see para. (4)) and, therefore, there is no longer a sufficient interest in maintaining the confidentiality of these documents.

(18) The non-disclosed documents, by contrast, consist of supervisory correspondence whose core content is not publicly known. Unlike the disclosed documents, they contain essential information that is not accessible to the public and whose confidentiality is specifically intended to be protected by the Supervisory Privilege ordered on October 8, 2025. As already stated in the order of October 8, 2025, the mere mention of files from FINMA's supervisory relationship in publicly accessible reports does not make the content of these files public; does not constitute a waiver of FINMA's Supervisory Privilege under Swiss law, nor does it override the statutory authority vested in FINMA pursuant to Art. 42c(5) FINMAG.[8]

2.2 Interests of UBS

(19) In its motion dated September 29, 2026, UBS requests FINMA's approval to submit the documents that have already been reviewed but not released for the purpose of conducting a so-called *in camera review* by the presiding judge of the U.S. District Court for the Southern District of New York (S.D.N.Y.). UBS justifies its request by arguing that, if submitted for an *in camera review*, the non-disclosed documents would not become public and the supervisory privilege would therefore not be forfeited. Because the U.S. District Court for the Southern District of New York (S.D.N.Y.) has ordered UBS to produce the documents, UBS is obligated under U.S. law to submit the non-disclosed documents. If UBS were to refuse, (1.) according to UBS, it is likely that the U.S. District Court for the Southern District of New York (S.D.N.Y.) would order it to provide the non-disclosed documents to the plaintiffs. Furthermore, (2.) UBS would face

---

[8] Order of October 8, 2025, para. 26, with reference to para. 21.

face financial or other non-criminal sanctions if it failed to comply with a U.S. court order. There is (3.) a risk that the U.S. court, the S.D.N.Y., might take a generally more negative view of UBS and/or FINMA, which could (negatively) influence subsequent motions or other proceedings. Finally (4.), a refusal by UBS would become public knowledge, and it is very likely that this would attract significant media attention.

(20) Unlike the previous requests for consent to disclosure (see para. (3)), the present case involves an order from the U.S. District Court for the Southern District of New York (S.D.N.Y.) requiring UBS to make the non-disclosed documents available for an *in camera review*. Accordingly, UBS's private interests in the present case must be given greater weight than in the previous requests, since—as UBS explains in its request dated September 29, 2026—failure to comply with the court's order could result in sanctions against the bank.

2.3 Overriding Public Interests in Confidentiality

(21) However, for the following reasons, the public interest in the confidentiality of the non-disclosed documents continues to prevail.

(22) The review of the non-disclosed documents by the U.S. District Court for the Southern District of New York (S.D.N.Y.) would only serve a practical purpose if FINMA, in the event that the S.D.N.Y. concludes, after reviewing them, that certain documents should be disclosed by UBS to the plaintiffs, were to revise its previous assessment and grant UBS permission to disclose these documents.

(23) However, the U.S. District Court for the Southern District of New York's assessment following an *in camera review* would not alter the balancing of interests already conducted or FINMA's review result as communicated in the letter mentioned in para. (4) (see also paras. 28 et seq.). Accordingly, the utility of such *an in camera review* and UBS's interest in it are questionable. Rather, it is to be expected that an *in camera review* would merely postpone—but not resolve—a conflict for the bank between the U.S. District Court for the Southern District of New York's (S.D.N.Y.) request to produce the non-disclosed documents and FINMA's request not to disclose them. An *in camera review* could only resolve or avoid this conflict if, after reviewing the documents, the U.S. District Court for the Southern District of New York (S.D.N.Y.) concluded that the supervisory privilege remains fully intact and that UBS is not required to disclose any non-disclosed documents to the plaintiffs.

(24) However, the risk that the protected information contained in the documents could become public—at least indirectly—despite an *in camera proceeding* argues against consenting to the production of the documents in the hope that this scenario (see para. (23)) will materialize. It cannot be ruled out that the U.S. court, the S.D.N.Y., might cite individual documents or paraphrase or summarize their content in its reasoning for the decision. By submitting the documents to the U.S. District Court for the Southern District of New York (S.D.N.Y.), FINMA would relinquish control over whether and in what form information subject to supervisory privilege is disclosed. This risk must be taken into account in the balancing of interests and weighs against the submission of the non-disclosed documents.

(25) The fact that FINMA, in application of Art. 42c(5) FINMAG, concludes that there is a substantial, overriding public interest in the confidentiality of the non-disclosed

documents, FINMA has already communicated this to UBS in the letters mentioned in margin note (4). The reasons on the basis of which consent to the transmission of the non-disclosed documents to the plaintiffs was denied apply equally to their submission to the U.S. court S.D.N.Y. for non-public review in the context of an *in camera review*. The mere fact that the existence of a document qualifying as a supervisory file is mentioned in a public report does not alter its character as confidential supervisory correspondence. The same applies when individual details from supervisory files are reproduced in public reports, provided that the essential contents of the supervisory file have not been disclosed. It should be noted once again at this point that the undisclosed documents are records that were created in connection with the CSG crisis management within the context of the relationship of trust between the authorities involved, as well as in the open exchange between the bank and FINMA. They contain information that, precisely because of the need to protect this relationship of trust and to ensure future open communication between supervised entities and FINMA, has not been reproduced in publicly available sources such as the PUK report and the FINMA report. Disclosing these documents would thus undermine the very confidentiality whose protection is a prerequisite for effective supervision (see also the decision of October 8, 2025).

(26) According to Federal Supreme Court case law, unlawful disclosure of the non-released documents to the U.S. District Court for the Southern District of New York (S.D.N.Y.) could constitute a violation of Art. 271 of the Swiss Criminal Code[9], under which it is a criminal offense for a person to perform acts on Swiss territory on behalf of a foreign state—without the appropriate authorization—that are reserved for a Swiss authority or a Swiss public official.[10]

(27) UBS argues that it would face financial or other non-criminal sanctions if it were to disregard a U.S. court order. FINMA concludes that, given the public interest in the confidentiality of the supervisory correspondence in question, any such sanctions are not sufficient to tip the balance of interests in favor of granting approval. The same applies to the other hypothetical risks cited by UBS, namely that the U.S. court S.D.N.Y. might generally take a more negative stance toward UBS and/or FINMA, or that this case would attract significant media attention (para. (19)).

(28) Finally, it must be taken into account in this context that FINMA alone decides on the content and scope of the supervisory privilege pursuant to Art. 42c(5) FINMAG, and that the review of whether FINMA is lawfully applying Art. 42c(5) FINMAG falls within the jurisdiction of Swiss courts and not foreign courts. By consenting to the production of the non-disclosed documents for an *in camera review* by the U.S. District Court for the Southern District of New York (S.D.N.Y.), FINMA would (implicitly) agree that the U.S. District Court for the Southern District of New York review the scope of the supervisory privilege and thus the correct application of Art. 42c(5) FINMAG with respect to UBS's previous requests (see para. (3)), by determining whether and to what extent UBS must produce the non-disclosed documents to the plaintiffs.

(29) FINMA has already communicated this in its letter dated September 23, 2026, addressed to the U.S. court S.D.N.Y., in which it states that the Swiss

---

Swiss Criminal Code (StGB, SR 311.0).

[10] See BGE 148 IV 66 E. 1.4.2, according to which, in all circumstances, only records and information that may be freely disposed of may be disclosed. See also Du PASQUIER/MENOUD, in: Watter/Bahar (eds.), Basler Kommentar zum FINMAG/FinfraG, 3rd ed., Basel 2019, Art. 42c FINMAG, notes 3, 10, and 71.

The law does not provide that FINMA is to defend the content and scope of the supervisory privilege in private-law disputes involving financial institutions it supervises abroad, nor does it provide for negotiations there regarding the application of Art. 42c(5) FINMAG. Consequently, UBS must be referred to the Swiss courts.[11] By contrast, there is neither a legal basis in the Swiss legal system nor a relevant international treaty for a foreign court to review a supervisory privilege ordered by FINMA. Conversely, due to the principle of territoriality, it is not the responsibility of the Swiss Financial Market Supervisory Authority to enforce foreign legal provisions in Switzerland.[12] It therefore remains the case that the assessment of the supervisory privilege ordered by FINMA falls within the exclusive jurisdiction of the Swiss courts.

(30) Furthermore, the present case concerns documents arising from the supervisory relationship, and neither the requirements for international administrative assistance under Art. 42 FINMAG nor those for the direct transmission of information by supervised entities under Art. 42c FINMAG are met. The U.S. court S.D.N.Y. is neither a competent foreign financial market supervisory authority, nor does the requested information serve exclusively to enforce financial market law.[13] Rather, the present case involves a civil matter in a foreign civil proceeding. Consequently, there is a risk that confidential supervisory communications could be introduced into civil proceedings for the assessment of potential liability issues, which could permanently undermine the openness and willingness of supervised entities to cooperate beyond this specific case and thus significantly impair the objectives of financial market supervision—the protection of financial market participants and the proper functioning of financial markets pursuant to Art. 4 FINMAG —could significantly impair the objectives of financial market supervision—namely, the protection of financial market participants and the proper functioning of financial markets. This is precisely what the supervisory privilege is intended to prevent.[14] As already stated in the decision of October 8, 2025, civil plaintiffs in Switzerland also have no right to inspect supervisory documents, and FINMA has no legal basis for providing administrative assistance to national civil courts. This is because documents arising from the supervisory relationship serve to protect public interests and not the interests of parties in civil proceedings.[15] The situation is no different with respect to foreign civil plaintiffs or civil courts.

(31) Overall, UBS's interest in the disclosure of the documents for the purpose of conducting an *in camera review* by the U.S. District Court for the Southern District of New York (S.D.N.Y.) does not outweigh the conflicting substantial public interest in the confidentiality of the undisclosed documents.

### 2.4 Confirmation of the Supervisory Privilege and Notice of Consequences for Non-Compliance

(32) Against this background, FINMA confirms and clarifies the supervisory privilege it has already ordered with respect to UBS, as the legal successor to CSG, regarding the non-disclosed documents, pursuant to which the bank is prohibited from any transmission, publication, submission, disclosure, or making available in any other form of documents arising from the supervisory relationship within the meaning of the order of October 8, 2025, is prohibited, provided that such actions are directed toward foreign third parties, including the U.S. District Court for the Southern District of New York (S.D.N.Y.), unless FINMA has given its explicit consent. Due to the overriding public interests at stake in

[11] Art. 54(1) FINMAG in conjunction with Art. 44 VwVG (Administrative Procedure Act; SR 172.021) and Art. 31 et seq. as well as Art. 33(e) VGG (Administrative Court Act; SR 173.32).

[12] BGE 142 II 243, para. 3.1; Federal Supreme Court judgment 4A_454/2025 of March 3, 2026, para. 5.2.3; Federal Administrative Court judgment B-5256/2024 of June 29, 2026, para. 7.7.3.

[13] See Art. 42c(1)(a) in conjunction with Art. 42(2)(a) FINMAG.

[14] See DAVID WYSS, "The Supervisory Privilege for Documents Arising from the Supervisory Relationship," SZW 2023, pp. 145 ff., 148.

[15] Decision of October 8, 2025, para. 18, citing BGE 139 II 279, paras. 2 and 4, as well as BVGE 2014/19, paras. 7 et seq. and 9.3.

In light of the confidentiality of the non-disclosed documents, FINMA denies UBS's request of September 29, 2026, and prohibits UBS from making the non-disclosed documents available to the U.S. court S.D.N.Y. for the purpose of an *in camera review*.

(33) The supervisory privilege ordered herein shall remain in effect at least until December 31, 2027, and may be extended if circumstances warrant.

(34) Violations of this order may result in supervisory measures (see Art. 29 et seq. FINMAG) against the institution or persons acting on its behalf (in particular, organizational measures as well as the possibility of professional bans of up to five years), as such violations may, in particular, call into question the guarantee of sound business management (Art. 3 para. 2 let. c BankG). Furthermore, UBS and its governing bodies are advised of any potential criminal consequences in the event of a violation, in particular the penalty provided for under Art. 48 FINMAG. In order to ensure that due regard is given to the overriding interests in effective supervisory activity and to guarantee the enforcement of the ordered supervisory privilege, this decision is to be issued with a reference to the penalty for noncompliance with FINMA decisions pursuant to Art. 48 FINMAG. This does not restrict UBS's options for action; rather, certain actions—which are already prohibited—are subject to an additional penalty. The reference to this penalty is therefore proportionate.[16]

**3. Costs**

(35) Pursuant to Art. 15 FINMAG and Art. 5(1)(a) FINMA-GebV[17], the party that gives rise to a ruling is liable to pay fees. The costs for issuing a ruling are calculated based on the time required and the significance of the matter for the party liable to pay fees (Art. 8(3) and (4) FINMA-GebV).

(36) UBS gave rise to this decision (see above, para. (8)). The procedural costs for this decision amount to CHF 10,000 and are to be imposed on UBS.

[16] See, regarding cease-and-desist orders, the judgment of the Federal Administrative Court B-2343/2022 dated June 2, 2025, para. 6.5.
[17] FINMA Fees and Charges Ordinance (FINMA-GebV; SR 956.122).

**Reference:**
G01561458;G01561458-000255

**The Swiss Financial Market Supervisory Authority FINMA orders:**

1. The application filed by UBS Group AG on September 29, 2026, seeking approval to submit the non-disclosed documents for a non-public review by the U.S. District Court for the Southern District of New York ("in camera review") is denied, and UBS Group AG is prohibited from making the non-disclosed documents available to the U.S. District Court for the Southern District of New York.

2. In the event of a violation of the preceding operative provision, UBS Group AG and its governing bodies are subject to the penalty provided for in Art. 48 FINMAG:

   **Art. 48 FINMAG: Failure to Comply with FINMA Orders**

   *"A fine of up to 100,000 Swiss francs shall be imposed on anyone who intentionally fails to comply with a final order issued by FINMA with reference to the penalty provided for in this article or with a decision of the appellate authorities."*

3. UBS Group AG is ordered to pay procedural costs of CHF 10,000. These will be invoiced separately and must be paid within 30 days of the decision becoming final.

**Swiss Financial Market Supervisory Authority FINMA**

Stefan Walter
Director
Alain Girard
Banking Division

**Information on Appeals:**

An appeal against this order may be filed with the Federal Administrative Court (P.O. Box, CH-9023 St. Gallen) within 30 days. The appeal must be substantiated and submitted in two

signed copies. The decision and the documents cited as evidence must be enclosed.

**To be served on:**

- **UBS Group AG**, Ms. Barbara Levi, Bahnhofstrasse 45, 8001 Zurich (registered mail with return receipt)

**For information to:**

- **UBS Group AG**, Mr. Christoph Speth, Bahnhofstrasse 45, 8001 Zurich (Registered mail/Confidential)
- **UBS Group AG**, Ms. Emma Molvidson, Bahnhofstrasse 45, 8001 Zurich (Registered mail/Confidential)
- **Ernst & Young AG**, Mr. Hannes Smit, Maagplatz 1, 8010 Zurich (Registered mail/Confidential)

**Date of mailing:**