CAHILL GORDON & REINDEL LLP
32 OLD SLIP
NEW YORK, NY 10005
TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

1990 K STREET, N.W.
WASHINGTON, DC 20006
(202) 862-8900

221 W. 10th STREET
WILMINGTON, DE 19801
(302) 884-0000

20 FENCHURCH STREET
LONDON EC3M 3BY
+44 (0) 20 7920 9800

October 20, 2026

Re: *In re Credit Suisse Securities Fraud Class Action*, Case No. 1:23-cv-05874-CM-SLC (S.D.N.Y.)

Dear Judge Cave:

We represent Defendant Credit Suisse Group AG ("CS") and respond to Lead Plaintiff Ali Diabat's October 2, 2026 letter (ECF No. 236; "Plaintiff's Letter").[1]

Plaintiff's Letter asks the Court to compel the production of 29 communications between CS and FINMA addressed in Plaintiff's Letter (the "FINMA Documents") despite the fact that FINMA has expressly asserted its Swiss-law supervisory privilege over all of them.[2] For the reasons set forth below, applicable principles of international comity weigh strongly ***against*** compelling production of the FINMA Documents, and Plaintiff's suggestion that FINMA has somehow waived its privilege are unavailing.

The Court should deny Plaintiff's motion.

## I. BACKGROUND

The governing factors from Section 442 of the Restatement (Third) of Foreign Relations Law of the United States continue to be (1) the documents' importance; (2) the request's specificity; (3) whether the information originated in the United States; (4) the availability of alternative means; and (5) the competing national interests. *See* CS Opp. at 5. Courts also consider the "hardship of the [producing] party" and "whether that party has demonstrated good faith." *Id.*

These factors still weigh strongly against production of the FINMA Documents.

[1] CS incorporates herein the arguments and definitions in its October 10, 2025 opposition (ECF No. 150; "CS Opp.") to Plaintiff's prior motion to compel.

[2] Plaintiff's chart at ECF No. 236-2 ("Plaintiff's Chart") highlights thirty rows in red, but CS identified and submitted to FINMA one document for Rows 1 and 2.

## II. BOTH SWISS AND U.S. INTERESTS STRONGLY WEIGH AGAINST PRODUCTION

Plaintiff suggests that Switzerland's only interest is to avoid deterring supervised entities from cooperating with FINMA, and that FINMA has not offered a "case-specific analysis" as to its privilege assertion. Plaintiff's Letter at 1-2.[3] Both points are incorrect.

***First***, Switzerland has a strong interest in ensuring that supervised entities will cooperate with FINMA ***and*** that FINMA's privilege is enforced abroad, so foreign plaintiffs are not "better off than domestic plaintiffs." FINMA Order ¶ 19. This is why the Swiss legislature codified the privilege in 2016. *See* ECF No. 151 ("Huber Decl.") ¶ 18; CS Opp. at 11-12.

If FINMA's existing orders and letters were somehow not sufficient, the Swiss Ambassador to the United States wrote to the Court yesterday, October 19, to confirm that while Switzerland "takes no position on [the] merits" of this litigation, FINMA's privilege "reflects bedrock principles of Swiss law;" that "[a]ny disclosure" of privileged documents "would both violate Swiss law and undermine Swiss policy;" and that Switzerland has an "important sovereign interest in upholding FINMA's unilateral ability (subject to review by Swiss courts) to control the public disclosure of its communications" with supervised institutions. *See* **Exhibit 2** hereto ("Swiss Embassy Ltr.") at 1.

***Second***, the FINMA Order contains precisely the case-specific analysis that Plaintiff claims is missing. *See* FINMA Order ¶¶ 1-8, 20-27. In its October 13, 2026 order, FINMA reconfirmed this analysis (*see* ECF No. 245-2 ¶¶ 25, 30) and provided further information concerning its privilege decisions. *See id.* ¶¶ 4, 17-18.

FINMA allowing CS to produce some communications (*see* Plaintiff's Letter at 2-3) is consistent with how FINMA's privilege operates: after its initial invocation of privilege, it assessed the privilege for each specific document it was asked to consider. *See* FINMA Order ¶¶ 11, 27-28. Nor is this in any sense "a shield and a sword" situation (Plaintiff's Letter at 3); FINMA is not a party, and neither FINMA nor CS relies on any FINMA communication for a claim or defense.

FINMA's privilege determinations are "at FINMA's discretion, subject to review by Swiss courts." ECF No. 245-2 ¶ 13; *see also id.* ¶ 28; Swiss Embassy Ltr. at 1. A Swiss court can overrule FINMA only where "overriding public interest[s]" such as "security and national interests" are at stake, or where asserting the privilege would "amount to a *de facto* deprivation of

---

[3] Plaintiff accuses FINMA of "flout[ing] an order of this Court." Plaintiff's Letter at 1. Not so. FINMA, a non-party foreign regulator, explained that Swiss law provides no legal basis for it to participate in private civil litigation, yet still submitted its position to the Court in writing. ECF No. 231 at 5-6; *see also* FINMA Order ¶ 11.

the [requesting] party's right to due process[.]" Huber Decl. ¶ 37.[4] Neither scenario is present here.[5] FINMA's privilege assertion would be enforced in a Swiss court, and Switzerland has a strong interest in ensuring the same treatment in the United States.

The U.S. also has a strong interest in protecting the confidentiality of regulatory communications, which outweighs the general interest of full discovery, particularly because here Plaintiff can obtain the same information elsewhere. *See* CS Opp. at 12-15.

## III. THE FINMA DOCUMENTS ARE NOT IMPORTANT TO THE LITIGATION

Plaintiff claims that "the importance of the FINMA [Documents] can no longer reasonably be disputed," relying on ***other*** FINMA communications that have already been produced. Plaintiff's Letter at 3. But that is not enough to establish the FINMA Documents at issue here are relevant.

Moreover, even if Plaintiff could explain why each FINMA Document is ***relevant***, the governing standard considers whether they are "***central***," "***necessary***," or "***important***" to the case. CS Opp. at 8-9 (emphasis added). Plaintiff has not explained why each FINMA Document meets that standard—indeed, to the extent Plaintiff identifies any specific content as relevant at all,[6] it is content that is or will be available through the Public Reports and CS's production of thousands of internal CS emails. *See id.*; ECF No. 207 at 17-19.

## IV. THE OTHER GOVERNING FACTORS WEIGH AGAINST PRODUCTION

***First***, as reflected in **Exhibit 1** hereto, only three of the 29 FINMA Documents are located in the United States, and even they concern information that did not "originate[]" here. *See* CS Opp. at 15-16.

---

[4] Plaintiff argues that ***U.S.*** privilege requires regulators to distinguish between "factual material" and "opinions and deliberative processes." Plaintiff's Letter at 3. But Plaintiff never claims FINMA's ***Swiss-law*** privilege requires any such distinction.

[5] The PInC did not find that "FINMA's supervisory interests *did not* override public interests." Plaintiff's Letter at 2 (emphasis in original). It sought to "balance the interests of maintaining secrecy against the interests of its investigation" by discussing portions of documents without publishing them, and acknowledged that it "is not a judicial authority." ECF No. 236-1 at 51-52.

[6] Many of Plaintiff's relevance arguments suggest, implausibly, that a communication's temporal proximity to an alleged misstatement alone makes it relevant. Some of Plaintiff's explanations do not even include that level of explanation. *See, e.g.*, Plaintiff's Chart, Rows 15, 33, 36, 54, 56, 70, 73, 79. Others focus on Plaintiff's proposed second amended complaint, but the Court has not ruled on Plaintiff's motion to amend. *See, e.g.*, *id.*, Rows 1, 2, 4, 8, 21.

***Second***, the information is available through alternative means. *See* Section III, above; CS Opp. at 16.

***Third***, UBS, as CS's successor-in-interest, and/or individuals acting on behalf of UBS face significant risk of being penalized if CS is compelled to produce the FINMA Documents. *See* Huber Decl. ¶¶ 48-51; ECF No. 231 at 7. FINMA has now formally prohibited UBS from making the FINMA Documents available even to this Court, subject to fines, professional bans, and criminal liability. ECF No. 245-2 ¶¶ 26, 32-34 & at 10; Swiss Embassy Ltr. at 2.[7] That risk is not merely "speculative" (Plaintiff's Letter at 3), and even a small risk represents a significant hardship. *See* CS Opp. at 16-17. And as discussed above, because FINMA alone (subject to limited review by Swiss courts) has control of the privilege from a Swiss-law perspective, an order from this Court would not relieve UBS of FINMA's prohibition, subjecting UBS to conflicting obligations.

***Fourth***, CS has acted in good faith, locating the FINMA Documents, submitting a broader set than it initially proposed, coordinating with Plaintiff, and seeking FINMA's consent to *in camera* review. *See* ECF No. 245-2 ¶ 8. FINMA, too, has acted in good faith, consenting to production of numerous documents and explaining its position in writing on multiple occasions.

## V. PLAINTIFF'S WAIVER ARGUMENTS FAIL

Plaintiff argues that "[t]he PInC Report extensively disclosed [the FINMA Documents'] substance." Plaintiff's Letter at 4. This argument fails.

***First***, waiver is not relevant to the comity analysis. In any event, under Swiss law, the fact that the PInC referenced certain FINMA communications in its Report, "without actually publishing or disclosing such documents as part of the final report," does not waive the privilege. Huber Decl. ¶ 45; *accord* FINMA Order ¶ 26.

***Second***, Plaintiff overstates the extent to which the FINMA Documents are "specifically alluded to" in the PInC Report. Plaintiff's Letter at 4. Many are not specifically referenced at all.[8] *See* **Exhibit 1**, Rows 1, 2, 4, 19, 22, 30, 37, 89. Many other references are brief and akin to a

---

[7] CS takes very seriously this Court's order denying CS's request to stay the deadline for submission of the FINMA Documents *in camera* (ECF No. 248), but because FINMA's order filed at ECF No. 245-2 also threatens serious consequences, CS anticipates filing objections to the Court's order pursuant to Fed. R. Civ. P. 72(a) and a letter motion to this Court requesting a stay of that order pending the District Court's determination of CS's Rule 72(a) objections.

[8] At Plaintiff's request, CS submitted a broader set of documents that ***might*** be implicated by vaguer references in the Public Reports.

privilege log entry, which cannot logically constitute waiver. *See id.*, Rows 1, 2, 4, 15, 19, 22, 30, 33, 44, 45, 51, 54, 56, 59, 61, 63, 70, 73, 79, 89.

Plaintiff's cases confirm this level of description would be insufficient even under U.S. law. *See In re Kidder Peabody Securities Litigation*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (finding waiver where a public report "directly quote[d] from" or "offer[ed] a ***very specific*** purported paraphrase" of the communication) (emphasis added); *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) (no reason "to broaden the waiver beyond those matters ***actually revealed***") (emphasis added).

Indeed, under *Kidder*, even where a public report does "specifically allude[]" to a communication, privilege is waived only over "those ***portions*** of the . . . documents that are specifically alluded to[.]" 168 F.R.D. at 469-70 (emphasis added). Thus, even if the Court applied U.S. waiver principles, which are inapplicable here, those principles would apply only to the ***specific portions*** referenced in the Public Reports.

Respectfully submitted,

**CAHILL GORDON & REINDEL LLP**

By: /s/ Herbert S. Washer

Herbert S. Washer
Jason M. Hall
Edward N. Moss
Tammy L. Roy
Nicholas N. Matuschak
32 Old Slip
New York, New York 10005
(212) 701-3000
hwasher@cahill.com
jhall@cahill.com
emoss@cahill.com
troy@cahill.com
nmatuschak@cahill.com

*Counsel for Defendant Credit Suisse Group AG*

The Honorable Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street, Room 18A
New York, New York 10007

**VIA ECF**

cc: All Counsel of Record

**WORD COUNT CERTIFICATION**

I, Herbert S. Washer, certify that the foregoing letter complies with the word-count limitations set forth in the Court's September 24, 2026 Order (ECF No. 231). According to the word count of the word-processing program used to prepare the letter (Microsoft Word), and exclusive of the letterhead, subject line, signature block, and address block, there are 1,726 words in the document.