# Exhibit 1

**<u>Exhibit 1 to CS's October 20, 2026 Letter Brief</u>**

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 1 | April 2022 | **<u>From PInC Report</u>**: "Credit Suisse's revised stabilization plan will be re-examined in 2021 to determine whether it can be implemented. FINMA approves it in 2022. According to Credit Suisse's structural deficit situation, FINMA invited the bank at the beginning of the second quarter of 2022 to draw up concrete emergency measures based on the stabilization plan, to be able to react to unforeseeable events. Further interactions, both written and verbal, followed during the summer of 2022; in particular, the bank was asked to prepare for an unfavorable scenario should the market deem the strategic reorientation not credible, should the capital increase fail, or should another major incident occur. It was only after several requests from FINMA that Credit Suisse finally began to prepare and implement the various measures in its stabilization plan." at 142.<br><br>**<u>From FINMA Report</u>**: "FINMA reviewed and approved CS's recovery plans as they met the statutory requirements...FINMA also criticised the fact that the recovery plan only described the effects of the individual measures at consolidated level and did not contain an overview of how these would affect material group | Switzerland | CS was able to locate, and thus submitted to FINMA, a single document that might relate to this Row and/or Row 2 below.<br><br>The relevant text does not identify a single specific document. Instead, it refers to a series of "interactions" between FINMA and CS. CS submitted to FINMA one communication that might be one of the referenced "interactions."<br><br>None of those "interactions" are described in sufficiently specific detail to find waiver even under U.S. waiver principles. *See* CS's accompanying letter brief ("CS Ltr. Br.") at 5. |

[9] To avoid confusion, CS has included in this column the same text found in the column in Plaintiff's Chart titled "Description from PInC and/or FINMA Reports." For the avoidance of doubt, CS's quotation of this text is not intended to be an acknowledgment that Plaintiff's translation of the PInC Report is accurate or admissible. In fact, even the small portion of Plaintiff's translation attached to its Letter evidences facial issues with the quality of the translation. *See, e.g.,* ECF No. 236-1 at 52 (appearing to contain two slightly different translations of the same paragraph).

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| | | companies – in particular the parent bank. Already at the beginning of Q2 2022, due to the structural loss situation at CS, FINMA demanded that the bank draw up specific emergency measures based on the recovery plan so that it would be able to react to unforeseeable events. Further interactions followed over the summer of 2022, as well as a request to the bank to prepare for an adverse scenario should the strategic reorientation not be viewed as credible by the market, the capital increase fail or another significant event occur. Only after several requests from FINMA did CS finally initiate the preparation and implementation of individual measures from its recovery plan." at 69. | | |
| 2 | April 11, 2022 | **From PInC Report**: "In both the April 2022 letter and the 2021 assessment letter, FINMA addressed the parent company's low capitalization and profitability, and asked the Board of Directors and management to take measures to strengthen the bank's financial resilience." at 141.<br><br>**From FINMA Report**: "FINMA had been increasingly drawing CS's attention to the need for emergency measures since April 2022." at 19.<br><br>"On a number of occasions, FINMA drew the attention of CS's Board of Directors to the low capital base of CS AG (parent bank) and the risks in connection with its capital plan. In April 2022, FINMA called on the bank to develop a plan and set out various potential courses of action that could be put into place and implemented to strengthen the capital base in an emergency should the situation deteriorate. FINMA | Switzerland | CS submitted to FINMA a communication dated April 11, 2022, but it is not clear that all of the text to which Plaintiff points refers to the same communication.<br><br>Regardless, none of the references to communications in the relevant text are described in sufficiently specific detail to find waiver even under U.S. waiver principles. *See* CS Ltr. Br. at 5. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| | | reiterated these concerns in May and informed the responsible parties at CS that, in the meantime, the Group too was now falling short of its medium-term capital targets of 14%, with a CET1 ratio of 13.8%." at 31.<br><br>"The losses and strategy adjustments towards the end of 2021 also led to a reduction in the valuation of the subsidiaries, and the capital situation of CS AG deteriorated. FINMA pointed out this fact in April 2022 and asked the bank's managers to take the appropriate steps." at 61.<br><br>"Due to the ongoing loss situation, FINMA instructed the bank's Board of Directors already in April 2022 to develop concrete emergency measures." at 70. | | |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 4 | June 30, 2022 | **<u>From FINMA Report</u>**: "In June 2022, [CS] voluntarily called a USD 1.5 billion AT1 instrument for redemption on the first call date. For the purposes of compliance with capital requirements, FINMA required a substitute issuance, which CS carried out for an amount of USD 1.65 billion. This instrument was issued with a coupon of 9.75%, a much higher coupon than for CS's other AT1 instruments or for issues by comparable institutions.... As a result of these developments, FINMA once again intensified the discussions around emergency measures it had compelled CS to take in spring 2022. At the end of June 2022, CS informed FINMA of further strategy adjustments at the investment bank, which would also comprise the sale of parts of its business." at 32. | Switzerland | CS submitted to FINMA a communication dated June 30, 2022, but it is not clear that communication is the same one referenced in the relevant text, particularly given that text does not refer to a specific date, but instead only to a communication made "[a]t the end of June 2022."<br><br>Moreover, the "end of June 2022" communication referenced in the relevant text is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. |
| 8 | July 25, 2022 | **<u>From PInC Report</u>**: "In its response of July 25, 2022 [to FINMA's July 14, 2022 letter], Credit Suisse sets out various capital scenarios for Credit Suisse Group AG and Credit Suisse AG. The bank also presents four options for strengthening the capital of both units. It also addresses the overview requested by FINMA of the planned AT1 bond issue, and informs the supervisory authority that, in view of the tense macroeconomic situation and specific concerns regarding its current profitability, it has taken various measures to preserve its liquidity." at 210. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id*. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 15 | October 4, 2022 | **From PInC Report**: "Letter from FINMA to CS inviting CS to develop contingency options." at Appendix 4. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that FINMA sent a letter to CS concerning "contingency options" without providing any further details about the letter. |
| 18 | October 14, 2022 | **From PInC Report**: "In a letter to FINMA dated October 14, 2022, Credit Suisse presented various measures designed to restore liquidity buffers. Overall, the bank was optimistic about the refinancing opportunities it hoped to find on the market following the presentation of the new strategy on October 27, 2022. Nevertheless, it is requesting authorization to use Pillar 2 liquidity buffers until the proposed measures take effect." at 217. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id*. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 19 | October 14, 2022<br>1:00 PM CET | **From PInC Report**: "As a result, in October, before the bank announced its new strategy, FINMA repeatedly authorized Credit Suisse to temporarily use liquidity buffers to meet liquidity requirements, so that the bank could guarantee sufficient liquidity to the various Group companies. At the same time, FINMA is asking Credit Suisse to take further measures to increase its liquidity." at 217 (citing both an Oct. 14, 2022 email and an Oct. 19, 2022 email (Entry 22)). | Switzerland | As Plaintiff acknowledges, the relevant text conflates two different communications, without identifying what references come from which document. Moreover, the descriptions of the documents, even collectively, are not detailed enough to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. |
| 21 | October 18, 2022 | **From PInC Report**: "At the exchange on October 17, 2022, Credit Suisse presented the work in progress on the sale of the securitized products segment: in addition to a total sale and a partial sale, a third option was to reduce securitized assets within the 9% threshold. In its letter dated October 18, 2022, FINMA informed Credit Suisse in writing of the conditions it had to meet in order for the relevant relief to apply." at 224. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that FINMA informed CS of certain conditions it had to meet without providing any information concerning what those conditions were. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 22 | October 19, 2022<br>6:27 PM CET | **From PInC Report**: "As a result, in October, before the bank announced its new strategy, FINMA repeatedly authorized Credit Suisse to temporarily use liquidity buffers to meet liquidity requirements, so that the bank could guarantee sufficient liquidity to the various Group companies. At the same time, FINMA is asking Credit Suisse to take further measures to increase its liquidity." at 217 (cites 10/14 email and 10/19 email, unclear what parts come from which email). | Switzerland | As Plaintiff acknowledges, the relevant text conflates two different communications, without identifying what references come from which document. Moreover, the descriptions of the documents, even collectively, are not detailed enough to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. |
| 23 | October 20, 2022 | **From PInC Report**: "As the liquidity situation continues to deteriorate in the week prior to the strategy announcement on October 27, 2022, Credit Suisse is informing FINMA of this development negative on October 20, 2022. It is asking for further temporary easing of Pillar 2 and net stable funding ratio requirements, and for temporary permission to use even partial Pillar 1 buffers. While capital outflows continue unabated, dramatically worsening the situation, Credit Suisse management is confident that it will be able to restore Pillar 2 liquidity buffers to regulatory requirements by the end of 2022, thanks to the positive market reaction to the announcement of the new strategy." at 217-18. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id*. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 25 | October 26, 2022 | **From PInC Report**: "[O]n October 26, 2022, Credit Suisse informs FINMA that the bank risks no longer meeting the liquidity buffer requirements, whose thresholds FINMA has already lowered, by the end of the week, and that if capital outflows continue, it could no longer meet Pillar 1 requirements and, by the end of October, no longer comply with the net stable funding ratio. Credit Suisse is informing FINMA of the liquidity injection measures it has already taken, the medium-term measures it plans to take until the end of the year, and the measures that are not feasible due to the idiosyncratic crisis in which it finds itself." at 218. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id.* |
| 30 | November 3, 2022 | **From PInC Report**: "On November 3 … FINMA is not satisfied with the data provided by the Bank. In his view, the weekly report on Credit Suisse's key figures was incomplete, partly outdated and not detailed enough to enable FINMA to make any decisions on the basis of reliable data." at 227. | United States | The relevant text does not identify a single specific document, but rather refers to "weekly report[s]." CS was able to locate, and thus submitted to FINMA, one document that might be one example of such a report.<br><br>The relevant text does not describe in sufficient detail the document CS submitted, or, for that matter, any other weekly report, to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. Among other things, the date quoted in the relevant text references the date |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| | | | | FINMA reportedly expressed dissatisfaction with the weekly reports, not the date of any weekly report itself. |
| 33 | November 10, 2022 | **From PInC Report**: "Credit Suisse's Chairman of the Board and Chief Executive Officer show understanding, promising to react quickly to FINMA's requests for information and to provide better quality data... In the meantime, the bank's problems continue unabated, and on November 10, 2022, Credit Suisse again notifies FINMA that it does not meet the liquidity requirements." at 220. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. |
| 36 | November 16, 2022 | **From PInC Report**: "On November 16, 2022, FINMA questions the bank's ability to meet its Pillar 2 liquidity requirements by the end of 2022. FINMA once again points out to the bank that all measures taken to date to avoid any breach of the Pillar 1 requirements are insufficient. It therefore orders the bank to take immediate steps to stabilize its liquidity and cash position on a long-term basis." at 221. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id*. |
| 37 | December 5, 2022 | **From PInC Report**: "On December 5, 2022, FINMA informed the CFC that Credit Suisse's capital outflows were not drying up and that a substantial improvement in the situation in this respect could not be expected by the end of the year, even with the implementation of containment measures. Several scenarios aimed at stabilizing or even saving Credit Suisse are being discussed in the meantime: among others, the use of ELA, the sale of the bank, the | United States | CS submitted to FINMA a document that involved a communication from CS to FINMA concerning outflows, but the relevant text does not identify any specific communication between FINMA and CS at all, but rather a communication from |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| | | introduction of a PLB as liquidity assistance without reorganization and the introduction of a PLB as part of a reorganization. The possibility of bankruptcy is also raised. FINMA believes that a reorganization can be implemented, but prefers another solution that also achieves the objectives of creditor protection. In its view, a credible sales scenario meets this requirement." at 259. | | FINMA to other governmental bodies.<br><br>There is thus nothing in the relevant text that would warrant production of the document submitted to FINMA even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. |
| 41 | December 12, 2022 | **<u>From PInC Report</u>**: "The critical letter issued by FINMA on December 6, 2022, irritated the management of Credit Suisse. On December 12, it criticizes the tone of the letter and FINMA's accusations as harsh and unjustified, and rejects all the accusations made in the letter. At the same time, the bank's CEO and Chairman of the Board of Directors assured the supervisory authority that the fight against the liquidity crisis was a top priority. They emphasize the measures taken since October and the bank's sound liquidity position prior to the October outflows, without which the bank would not have survived the massive outflows. In the same letter, the management presents the considerations that led it to implement or reject certain measures, the reasons for the repeated discrepancies between prognoses on Credit Suisse's liquidity situation and the data actually provided, and an overview of future measures and plans on the liquidity front. Credit Suisse calls for a discussion at the highest level on the consequences of the FINMA threat." at 222. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id*. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| | | "Credit Suisse certainly replies that the situation will remain worrying until the end of the first quarter of 2023." at 261 (citing this letter). | | |
| 44 | December 23, 2022 | **From PInC Report**: "According to the information provided by FINMA at the CFC meeting, Credit Suisse has drawn up a long list[1308] of potential buyers, most of them foreign, which is based, however, on the assumption that a sale would take place in the medium term and, therefore, that there are still several months left to make the necessary contacts. FINMA, which in December 2022 repeatedly insisted that Credit Suisse prepare for a possible sale and reduce the time needed for implementation, comes to the conclusion that only a Swiss buyer is a viable option in the event of an emergency sale, namely UBS." at 262. FN 1308: "On 23.12.2022, Credit Suisse sent FINMA a brief analysis of potential buyers, including JP Morgan, Bank of America, Morgan Stanley, Goldman Sachs, BNP Paribas, Barclays, Deutsche Bank, Standard Chartered, Saudi National Bank and UBS." | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that CS sent FINMA a "brief analysis of potential buyers" without providing any description of the content of the analysis. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 45 | December 28, 2022 | **From PInC Report**: "In view of the increasingly critical liquidity situation, on December 28, 2022, FINMA imposed new requirements on Credit Suisse's emergency measures." at 222. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that FINMA imposed new requirements on CS without providing any information concerning what those requirements were. |
| 49 | January 3, 2023 | **From PInC Report**: "As FINMA had already feared in December (see chap. 6.3.1.1), it noted on January 3 that Credit Suisse would temporarily no longer be able to meet liquidity requirements until the end of January 2023. It then requested written justification for the underperformance as well as a funding plan by January 12, 2023, that Credit Suisse then gives." at 268. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id*. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 51 | January 6, 2023 | **From PInC Report**: "After FINMA had asked it, on December 13, to develop other concrete measures to stabilize the bank (see chap. 6.3.1.1), on January 6, 2023, Credit Suisse provided a list of all measures implemented or planned." at 271. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that CS provided a list of certain measures without providing any information concerning what those measures were. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 52 | January 12, 2023 | **<u>From PInC Report</u>**: "According to the information available to the PInC, work on the preparation of the virtual data room intensified in January and February. At the beginning of the year, FINMA criticized Credit Suisse's preparatory work and demanded that the latter make the virtual data room available more quickly and upload updated data to it. In the letter dated January 12, Credit Suisse confirmed to FINMA that the majority of the data required for the virtual data room is now ready and that the latter can be operational within 48 hours. Credit Suisse also provided an overview of the documents already filed in the virtual data room. FINMA took note of this information in its letter dated January 23, 2023, and asked the bank to upload essential additional documents to the data room; for example, the financial planning and capital planning documents were missing." at 270.<br><br>**<u>Additional From FINMA Report</u>**: "Following the October 2022 bank run, FINMA required the bank to establish a virtual data room and sequence a sale under stress in preparation for a sale of the Group." at 19. | Switzerland | Even if U.S. waiver principles applied here (they do not; *see* CS Ltr. Br. at 5), they would not require the production of any portions of this communication beyond those specifically discussed in the relevant text. *See id*. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 54 | Between February 17 and 22, 2023 | **From PInC Report**: FINMA and the SNB "sent Credit Suisse a detailed questionnaire concerning the available guarantees that would qualify as legal liens under the ELA+." at 282. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only the general subject matter of the questionnaire, not any of its actual contents. |
| 56 | March 13, 2023 | **From PInC Report**: "FINMA letter to Credit Suisse: New requests for contingent options by the FINMA." at Appendix 4. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that FINMA sent a letter to CS concerning "contingent options" without providing any further details about the letter. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 59 | March 15, 2023 | **From PInC Report**: "In the ELA request of March 15, 2023, and in the ELA+ requests of March 17 and 19, 2023, Credit Suisse explained to the SNB and FINMA that it was unable to generate enough liquidity on the money market, the capital market or elsewhere to cover its needs in this area."<br><br>**From FINMA Report**: "In the meantime, the further deterioration of the bank's liquidity situation had become unstoppable. As early as Friday, 17 March 2023, CS had to once again apply for liquidity assistance, for an amount of CHF 20 billion (ELA+). In its application for further liquidity support from the SNB, CS confirmed that the bank was unable to procure sufficient liquidity either via the money or capital markets or in any other way to cover the liquidity requirements in place. It argued it required further assistance so as to increase its liquidity holdings with immediate effect to allow it to continue to make payments without creating any further alarm among its various agent banks, settlement and clearing bodies, and – first and foremost – its clients. Following this, the SNB granted further liquidity (ELA+) for a total of CHF 20 billion.35 Without this further support, CS would have become immediately insolvent by midday on Friday, 17 March 2023." at 37. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5.<br><br>The references Plaintiff quotes from the FINMA Report are to a ***different*** CS request for liquidity assistance dated March 17, 2023. As reflected in Plaintiff's Chart, FINMA has already allowed the production of, and CS has produced, that subsequent March 17, 2023 request. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 61 | March 16, 2023, evening | **From FINMA Report**: "With regard to the numbers in the restructuring plan, FINMA was dependent on the bank providing accurate data from the valuation in resolution. As time was running out, FINMA submitted the restructuring plan to the bank on the evening of Thursday, 16 March 2023, asking it to complete it with the data from the valuation in resolution and to ensure that the plan and the bail-in could be implemented in a legally compliant manner." at 73-74. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that FINMA sent a restructuring plan to CS, without describing the content of that plan. |
| 63 | March 17, 2023, morning | **From PInC Report**: "The deadline for Credit Suisse to finalize its restructuring plan is extended until 5 a.m. on Friday [March 17, 2023]." at 318.<br><br>At 4:56am "Responding to the request of the FINMA, Credit Suisse presents a reorganization plan likely to be approved." at 322. | Switzerland | The text in Plaintiff's Chart does not align with the relevant text in the parties' agreed-upon chart, which focused on language from page 73 of the FINMA Report referring to CS "submit[ting] its comments and suggestions for improvements to the prepared restructuring plan."<br><br>Regardless, neither the language in Plaintiff's Chart nor the language quoted above from the FINMA Report describes any communication in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 70 | March 18, 2023<br>12:15 PM | **From PInC Report**: "FINMA sent CS a letter regarding the submission of an acceptable restructuring plan." at 334. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that FINMA sent CS a letter concerning its restructuring plan, without describing the content of the letter. |
| 73 | March 18, 2023<br>6:15 PM | **From PInC Report**: "FINMA asks Credit Suisse to submit an acceptable restructuring plan by Saturday [March 18] lunchtime. At 6.15 pm on the same day, FINMA receives the restructuring plan adapted by Credit Suisse." at 345. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that CS sent a restructuring plan to FINMA, without describing the content of that plan. |

| Row in Plaintiff's Chart | Date of Communication(s) as Referenced in Public Reports | Relevant Text from Public Reports as Quoted in Plaintiff's Chart[9] | Location of Document Submitted to FINMA | Other Comments |
|---|---|---|---|---|
| 79 | March 19, 2023<br>6:10 PM | **<u>From PInC Report</u>**: At 6:10pm on March 19, 2023: "Second request from ELA+ from Credit Suisse to the SNB for 30 billion francs." at 356.<br><br>"While the Federal Council was still examining these issues, it learned at around 4.45 p.m. [on March 19] that Credit Suisse and UBS had reached an agreement on the new conditions. Once an agreement was reached, Credit Suisse once again applied for an ELA+, for up to 30 billion francs, at the SNB, which also fulfills this request." at 365. | Switzerland | This communication is not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. The relevant text references only that CS made an application for emergency liquidity assistance, without providing any detail about the content of that application. |
| 89 | November 8, 2022 | **<u>From FINMA Report</u>**: "Owing to the massive outflows within a very short time in October 2022, it was decided during that month that FINMA's operational crisis readiness for an intervention should be set at seven to ten days. Hence the runway period, comprising the final preparations for a resolution, was shortened in order to take account of the circumstances of the (still) ongoing bank run. FINMA requested the weekly submission of the "funding in resolution" reports from the bank – which show the liquidity requirement in the event of a PONV." at 72. | United States | As discussed in Plaintiff's Chart, CS submitted a communication dated November 8, 2022 that was logged on one of CS's privilege logs to FINMA at Plaintiff's request, despite the fact that it is not at all clear to CS that the logged document is referenced in any way in the relevant text.<br><br>Even if the document is one of the "funding in resolution" reports referenced in the relevant text, those reports are not described in sufficient detail to warrant a finding of waiver even if U.S. waiver principles applied. *See* CS Ltr. Br. at 5. |