# Exhibit 2

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

**Schweizerische Botschaft in den Vereinigten Staaten von Amerika**

VIA EMAIL AND EXPRESS COURIER

The Honorable Sarah L. Cave
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Courtroom 18A
New York, NY 10007-1312

Re: *In re Credit Suisse Securities Fraud Class Action*, 23 Civ. 5874 (CM) (SLC) (S.D.N.Y.)

Dear Judge Cave:

Switzerland understands that the Court is considering a request by the plaintiff in this action to have the Court compel the defendant, UBS Group AG ("UBS"), to produce certain documents concerning former Credit Suisse Group AG over which the Swiss Financial Market Supervisory Authority (FINMA) has asserted its supervisory privilege. I write respectfully to inform the Court of Switzerland's interest in, and views on, these important matters that implicate Swiss sovereignty.

Let me begin by stating that the Government of the Swiss Confederation has no stake in the outcome of this litigation and takes no position on its merits. However, the Government of the Swiss Confederation has an important sovereign interest in upholding FINMA's unilateral ability (subject to review by Swiss courts) to control the public disclosure of its communications with the financial institutions that it supervises on Swiss soil and to uphold the Swiss law that explicitly grants FINMA that authority. In situations like this, the United States Supreme Court has stated that courts should "take care to demonstrate due respect [...] for any sovereign interest expressed by a foreign state." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 546 (1987). *See also Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

Accordingly, I offer three points for the Court's consideration.

*First*, the existence of the Swiss supervisory privilege, and FINMA's role in assessing and asserting that privilege, reflects bedrock principles of Swiss law. The privilege is critical to the effective supervision and regulation of Swiss financial markets, one of the most important sectors of the Swiss economy. The privilege facilitates candid and comprehensive communication between FINMA and the entities it supervises. FINMA is independent, even from the Swiss Government, and it has the authority to assert privilege and to determine its scope and application. This allows supervised institutions to communicate freely with FINMA without the threat that the privileged nature of those communications could be second-guessed by outside parties.

This policy was sufficiently important that the Swiss legislature enacted Article 42c, paragraph 5 of the Swiss Financial Market Supervision Act (FINMASA) in 2015 (effective as of January 1, 2016), which expressly codified FINMA's ability to assert and administer its supervisory privilege. Any disclosure of documents or information over which FINMA has asserted supervisor privilege would both violate Swiss law and undermine Swiss policy regarding the regulation of Swiss financial institutions.

2900 Cathedral Ave. N.W.,
Washington D.C. 20008-3499,
USA
Tel: (202) 745 7900 / Fax:
washington@eda.admin.ch / www.swissemb.org

*Second*, if the Court were to order UBS to disclose documents designated by FINMA as privileged and UBS were to comply with such order, UBS would violate Swiss supervisory law. Disclosure without authorization may also trigger the application of Article 271 of the Swiss Criminal Code. Since 1937, Article 271, paragraph 1 of the Swiss Criminal Code protects Switzerland's territorial sovereignty by prohibiting, absent lawful authorization, the performance in Switzerland on behalf of a foreign state of acts that, under Swiss law, are reserved to public authorities. Violations are punishable by imprisonment of up to three years or a monetary penalty. U.S. courts have long recognized the strong interest of Switzerland in defending its sovereignty and the integrity of its laws. *See, e.g., Motorola Credit Corp. v. Uzan*, No. 02 Civ. 666, 2003 WL 203011 (S.D.N.Y. Jan. 29, 2003); *Minpeco v. Conticommodity Services, Inc.*, 116 F.R.D. 517 (S.D.N.Y. 1987); *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224 (Fed. Cir. 1996); *In re Two Grand Jury Subpoenas Duces Tecum (Union Bank of Switzerland)*, 158 Misc. 2d 222 (N.Y. Sup. Ct. 1993).

*Third*, if the Court were to order UBS to disclose materials that FINMA has determined to be privileged, such an order could be seen as displacing the determination of the competent Swiss authority with respect to materials falling within its supervisory remit. This would raise significant concerns under principles of international comity, which counsel due regard for the laws, regulatory interests, and policy choices of other nations.

International comity rests on notions of reciprocity. The equality of states is one of the most fundamental principles governing relations among states and of international law. Swiss courts afford due respect to U.S. sovereignty, law, and policy, armed with the knowledge that U.S. courts will do the same. Thus, if the Court were to disregard FINMA's privilege assertions in this case, it would not only interfere with FINMA's mission, it also would erode the trust between Switzerland and the United States that each nation's foreign law will be treated with mutual respect.

We thank you for your consideration of these comments.

Sincerely,

Ambassador Ralf Heckner

Cc: - District Judge Hon. Colleen McMahon (ChambersNYSDMcMahon@nysd.uscourts.gov)

- Plaintiffs' counsel, Craig J. Geraci (craig.geraci@ksfcounsel.com)

- Defendant's counsel, Jason M. Hall (jhall@cahill.com)