KSF
KAHN SWICK & FOTI, LLC

1100 Poydras Street, Suite 960
New Orleans, LA 70163

TEL +1 504.455.1400
FAX +1 504.455.1498
KSFcounsel.com

**NEW ORLEANS**
NEW YORK
DELAWARE
LOS ANGELES
CHICAGO
LUXEMBOURG*

October 20, 2026

**VIA ECF**

Craig J. Geraci, Jr.
Partner – Admitted in LA, MS, AL, TX
Direct: (504) 648-0178
craig.geraci@ksfcounsel.com

The Honorable Sarah L. Cave
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1670
New York, NY 10007

Re: *In re Credit Suisse Securities Fraud Class Actions*,
No. 1:23-cv-05874-CM-SLC (S.D.N.Y.) (This matter relates to: *Diabat*)

Dear Judge Cave:

We write to respond to FINMA's latest order (ECF No. 243-1), and the Swiss Ambassador's Letter (ECF No. 249-2), which were both submitted after Plaintiff's supplemental letter (ECF No. 236), and respectfully request that the Court consider these arguments when deciding Plaintiff's Motion to Compel (ECF No. 146).

The 29 documents CS currently withholds are not ordinary discovery materials. The PInC "analysed a very large number" of records during its investigation into CS's collapse, and selected these documents for inclusion in its report. ECF No. 133-2 at 3. That selection, made by an independent Swiss body with full access to the record, is itself strong evidence of their importance here.

FINMA, who has conceded that it seeks to protect CS from civil liability, refuses to allow CS to submit them even for an *in camera* review. *See* ECF No. 243-1. Instead, CS and FINMA ask the Court to simply take them at their word: that the undisclosed documents are unimportant, and that their "core content" is not reflected in any public report (thus not justifying waiver or production). *See* ECF Nos. 243-1 at 2; 249 at 3.[1] These are precisely the types of assertions that only the documents themselves could confirm or refute. A party or non-party withholding evidence from the Court's review should not be able to simultaneously ask the Court to credit its unverifiable characterizations of that evidence. CS's refusal even to permit *in camera* review also bears directly on its good faith. Thus, the Court should decline to give these untested assertions any weight when considering CS's comity and waiver arguments. *See In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 381 (2d Cir. 2003) (when a law firm failed to submit Swiss

[1] Without the ability to review these documents, the Court cannot even assess whether any supervisory privilege would attach. This Court is not duty-bound to adopt wholesale FINMA's ever-shifting and often contradictory orders as definitive statements of "Swiss law." Particularly here, where the actions of CS—alongside FINMA—shook global markets and allegedly defrauded U.S. investors, such carte blanche deference would unreasonably subordinate the interests of the U.S. and its citizens.

banking records for *in camera* review, its characterizations of the documents were "simply too conclusory to meet their burden to show a 'real, rather than speculative, concern'") (citation omitted).

Swiss Ambassador Ralf Heckner's eleventh-hour letter catalogs Switzerland's interest in FINMA's supervisory privilege, calling it a "bedrock" principle of Swiss law—despite only having been established in 2015. But like the latest FINMA Order, it never acknowledges that anything sits on the other side of the scale. The very decision the letter invokes, *Aérospatial*e, does not instruct courts simply to defer to a foreign sovereign's stated interests. Rather, it calls for a case-specific comity analysis that weighs those interests against the interests of the United States. *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 543–46 (1987). Courts in this Circuit have accordingly found that similar letters "added little" to that balance. *See Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 448 (E.D.N.Y. 2008) (French Ministry of Justice letter warning that disclosure would violate French law did not justify altering order compelling production); *cf. also Kashef v. BNP Paribas*, No. 16-cv-3228, ECF No. 943 (S.D.N.Y. Sept. 3, 2025) (Judge Hellerstein chose to disregard a letter from the same Swiss ambassador, Ralf Heckner).

On the other side of the scale is the reason this case is in a U.S. court: CS chose to access U.S. capital markets when doing so served its interests. Since then, Judge McMahon found it plausible that CS defrauded those investors through the very statements it made to U.S. markets. *See* ECF No. 109. The U.S.'s interest in enforcing its securities laws is therefore not abstract. It is this interest in ensuring that a foreign issuer that sought out investors on American markets cannot, once accused of fraud, withhold the evidence detailing the scope of its alleged fraud. *See, e.g., In re DiDi Glob. Inc. Sec. Litig.*, No. 21-CV-5807, 2025 WL 267893, at *3 (S.D.N.Y. Jan. 22, 2025). The discovery sought here concerns that very conduct and weighs strongly in favor of production. The Ambassador's letter does not address any of these points.[2]

Lastly, the Ambassador's warning that UBS would be forced to violate Swiss law does not alter the analysis. The Supreme Court has made clear that foreign statutes "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Aérospatiale*, 482 U.S. at 544 n.29. And granting Plaintiff's motion would not compel UBS to violate Swiss law. It would require UBS to confront the consequences of the choices CS made when it entered the U.S. markets and plausibly violated U.S. law. As one court explained, "We do not seek to force any defendant to violate foreign law. But we do seek to make each defendant feel the full measure of each sovereign's conflicting commands, so that, in the words of Chief Judge Kaufman of the Second Circuit, it now

[2] Notably, courts regularly compel production over foreign governments' objections. *See, e.g.*, *Schansman v. Sberbank of Russia PJSC*, 768 F. Supp. 3d 619, 643–44 (S.D.N.Y.), *reconsideration denied*, 781 F. Supp. 3d 184 (S.D.N.Y. 2025) (objection letter from Russian Deputy Minister of Finance); *Linde v. Arab Bank, PLC*, 706 F.3d 92 (2d Cir. 2013) (declining to vacate discovery sanctions despite Jordan's amicus brief); *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 559 (S.D.N.Y. 2012) (letter from China's Ministry of Justice); *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1155–56 (N.D. Ill. 1979) (Canadian amicus brief and diplomatic notes).

'must confront . . . the need to "surrender to one sovereign or the other the privileges received therefrom" or, alternatively a willingness to accept the consequences.'" *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1156 (N.D. Ill. 1979) (quoting *United States v. First Nat'l City Bank*, 396 F.2d 897, 905 (2d Cir. 1968)). If Plaintiff's motion is granted, UBS will be in exactly that position. Switzerland's preference that UBS never have to make that choice is not a reason for this Court to excuse it.

Respectfully submitted,

*/s/ Craig J. Geraci, Jr.*
Craig J. Geraci, Jr.

cc: All counsel of record (via ECF)